RECEIPT #
AMOUNT $ 150
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. FoM
DATE 1-26-04

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
2004 JAN 26 P 3:50

U.S. DISTRICT COURT
DIST. OF MASS.

---

In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE INSURANCE COMPANY,
    Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

Civil Action No.

**04 10181 MLW**

MAGISTRATE JUDGE _____

---

## JOHN HANCOCK LIFE INSURANCE COMPANY'S
## PETITION TO COMPEL ARBITRATION PROCEEDINGS

Petitioner, John Hancock Life Insurance Company (f/k/a John Hancock Mutual Life Insurance Company, hereinafter "John Hancock"), hereby petitions the Court to compel arbitration proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§201 et. seq. In support thereof, John Hancock avers the following:

### I.    THE PARTIES

1.    Petitioner, John Hancock, is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

2.    Respondent, Sphere Drake Insurance Limited (f/k/a Sphere Drake Insurance Plc and Odyssey Re (London) Ltd., hereinafter "Sphere Drake"), is a corporation organized under the laws of England and Wales, with its principal place of business in Brighton, England.

## II.   JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C §1332, as there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Sphere Drake pursuant to M.G.L. c. 223A §3(a) and (f), because Sphere Drake entered into several reinsurance agreements with John Hancock, a Massachusetts corporation. As such, Sphere Drake transacted business and provided reinsurance coverages to John Hancock in Massachusetts. This action arises from these reinsurance transactions.

5. Venue is proper under 28 U.S.C. §1391 because John Hancock's principal place of business is in this district.

## III.   FACTUAL ALLEGATIONS

### A.   **BACKGROUND**

6. Between 1997 and 1998 John Hancock and Sphere Drake entered into several reinsurance agreements pursuant to which Sphere Drake agreed to indemnify John Hancock with regard to underlying business commonly referred to as workers' compensation carve-out business and other similar reinsurance business. The seven reinsurance agreements at issue in this matter (collectively the "Agreements"), as evidenced by supporting contractual documentation, are U.S. contracts which are subject to Massachusetts law and jurisdiction.

7. Under the Agreements, Sphere Drake accepted premium from John Hancock in exchange for reinsuring a portion of the business John Hancock wrote with certain of its underlying insurers. The Agreements are thus "retrocessional" contracts,

2

i.e. reinsurance of reinsurance, pursuant to which John Hancock is the "retrocedent" and Sphere Drake is the "retrocessionaire."

    8.    The Agreements at issue in this matter are designated as follows:

        a.    Specific Realm Agreement – (Broker Ref. AH0094197) – (effective 1/7/97-6/30/97) ("Realm 1");

        b.    Specific Realm Agreement- (Broker Ref. AH0094297) – (effective 1/7/97-6/30/97) ("Realm 2");

        c.    Specific Realm Agreement – (Broker Ref. AH0094397) - effective 1/7/97-6/30/97 ("Realm 3");

        d.    Specific Realm Agreement – (Broker Ref. AH0104997) – (effective 1/7/97-6/30/97) ("Realm 4");

        e.    Specific Realm Agreement – (Broker Ref. AH0105097) – (effective 1/7/97-6/30/97) ("Realm 5") (collectively the "Realm Agreements);

        f.    BE LMX Quota Share Agreement – (Broker Ref. TNC0906/98) – (effective 1/1/98-12/31/98) (hereinafter "Quota Share Agreement"); and

        g.    95% Quota Share Retrocession – (Broker Ref. TNC0887/98) – (effective 1/1/98- continuous) (hereinafter "95% Facility Quota Share Agreement.")

**B.    <u>THE REALM AGREEMENTS AND THE QUOTA SHARE AGREEMENT</u>**

    9.    The Realm Agreements and the Quota Share Agreement are each evidenced by contractual documentation consisting of the following: (a) a signed slip

3

executed by Sphere Drake which identifies salient terms and conditions and summarizes the risks to be reinsured; (b) a covernote issued by the reinsurance intermediary to John Hancock advising of the reinsurance coverage effected with Sphere Drake; and (c) an unsigned wording which details the terms and conditions of the agreement in accordance with the slip and covernote.

10. Specifically, the contractual documentation for each of the Realm Agreements and the Quota Share Agreement is as follows:

    a. Realm 1:

        i. Slip (See the Affidavit of Mitchell S. King ("King Aff.") which is incorporated by reference herein and filed herewith, ¶ 2, and Ex. 1(a) attached thereto);

        ii. Covernote (See King Aff., ¶ 2, and Ex. 1(b) attached thereto); and

        iii. Wording (See King Aff., ¶ 2, and Ex. 1(c) attached thereto);

    b. Realm 2

        i. Slip (See King Aff., ¶ 2, and Ex. 2(a) attached thereto);

        ii. Covernote (See King Aff., ¶ 2, and Ex. 2(b) attached thereto);

        iii. Wording (See King Aff., ¶ 2, and Ex. 2(c) attached thereto);

    c. Realm 3

        i. Slip (See King Aff., ¶ 2, and Ex. 3(a) attached thereto);

4

      ii.      Covernote (See King Aff., ¶ 2, and Ex. 3(b) attached thereto);

      iii.     Wording (See King Aff., ¶ 2, and Ex. 3(c) attached thereto);

  d.    Realm 4

      i.      Slip (See King Aff., ¶ 2, and Ex. 4(a) attached thereto);

      ii.     Covernote (See King Aff., ¶ 2, and Ex. 4(b) attached thereto);

      iii.    Wording (See King Aff., ¶ 2, and Ex. 4(c) attached thereto);

  e.    Realm 5

      i.      Slip (See King Aff., ¶ 2, and Ex. 5(a) attached thereto);

      ii.     Covernote (See King Aff., ¶ 2, and Ex. 5(b) attached thereto);

      iii.    Wording (See King Aff., ¶ 2, and Ex. 5(c) attached thereto);

  f.    Quota Share

      i.      Slip (See King Aff., ¶ 2, and Ex. 6(a) attached thereto);

      ii.     Covernote (See King Aff., ¶ 2, and Ex. 6(b) attached thereto); and

      iii.    Wording (See King Aff., ¶ 2, and Ex. 6(c) attached thereto.)

11.    Each Slip and Covernote for the Realm Agreements identifies the

respective contract as a "U.S. Reinsurance Treaty." The Quota Share Slip and Covernote identify the contract as "U.S. Reinsurance."

12. The contractual documentation for the Realm Agreements mandates arbitration with regard to any disputes between the parties. Specifically, the Slips and Covernotes for the Realm Agreements provide for an "Arbitration Clause." (See King Aff., Ex. 1(a) and (b); Ex. 2(a) and (b); Ex. 3(a) and (b); Ex. 4(a) and (b); and Ex. 5(a) and (b) thereto.)

13. In accordance with the Slips and Covernotes, the wordings for the Realm Agreements provide in relevant part, as follows:

> ARBITRATION CLAUSE
>
> **Disputes between the parties arising out of this Reinsurance which cannot be resolved by compromise,** including but not limited to any controversy as to the validity of this Reinsurance, whether such disputes arise before or after termination of this Reinsurance **shall be submitted to arbitration.**
>
> \* \* \*
>
> **[A]ll proceedings pursuant hereto shall be governed by the law of the State of Massachusetts, U.S.A.**

(emphasis added) (See King Aff., Ex.1(c), Art. 26; Ex.2(c), Art. 26; Ex.3(c), Art. 25; Ex.4(c), Art. 25; and Ex.5(c), Art. 25.)

14. The wordings for the Realm Agreements also contain a law and jurisdiction clause pursuant to which the contract will be governed and construed. Specifically, the wordings provide:

> [t]his Reinsurance shall be governed and construed in accordance with the laws of the state of Massachusetts, U.S.A. under the jurisdiction of the courts of the state of Massachusetts, U.S.A.

(See King Aff., Ex.1(c), Art. 25; Ex.2(c), Art. 25; Ex.3(c), Art. 24; Ex.4(c), Art. 24; and Ex.5(c), Art. 24, thereto.)

6

15.     Similar to the Realm Agreements, the Slip and Covernote for the Quota Share Agreement also provide that the Agreement is subject to an "Arbitration Clause." (See King Aff., Ex.6 (a) and (b) thereto.)

16.     In accordance with the Slip and Covernote, the wording for the Quota Share Agreement, provides, in relevant part:

> ARBITRATION
>
> Should any difference of opinion arise between the Reinsurer and the Cedant which cannot be resolved in the normal course of business with respect to the interpretation of this Agreement of the performance of the respective obligations of the parties under this Agreement, **the difference shall be submitted to arbitration.**
> * * *
> **The laws of the State of Massachusetts shall govern the arbitration.**

(emphasis added) (See King Aff., Ex.6(c), Art. XIV.)

17.     Moreover, the Quota Share and Realm Agreements all contain standard U.S. Service of Suit clauses pursuant to which Sphere Drake agreed to submit to the jurisdiction of a court of competent jurisdiction in the United States with regard to any disputes thereunder. Specifically, the Slips and Covernotes provide for a "Service of Suit Clause U.S.A." (See King Aff., Ex. 1(a) and (b); Ex. 2(a) and (b); Ex. 3(a) and (b); Ex. 4(a) and (b); Ex. 5(a) and (b); and Ex. 6(a) and (b), thereto.)

18.     In accordance with the "Service of Suit Clause U.S.A." provision in the Slips and Covernotes, the respective Wordings for the Realm Agreements and the Quota Share Agreement provide, in relevant part:

> It is agreed that in the event of the failure of the Reinsurers hereon to pay any amount claimed to be due hereunder, the **Reinsurers, hereon . . . will submit to the jurisdiction of a court of competent jurisdiction within the United States.**

7

(emphasis added) (See King Aff., Ex. 1(c), Art. 12; Ex. 2(c), Art. 12; Ex. 3(c), Art. 11; Ex. 4(c), Art. 11; Ex. 5(c) Art. 11; and 6(c) Art. XV, thereto.)

C. **95% FACILITY QUOTA SHARE**

19. In addition, there is a 95% Facility Quota Share Agreement that is evidenced by a signed slip and a covernote. (See King Aff., Ex. 7(a) and (b) attached thereto.)

20. The Slip and Covernote for the 95% Facility Quota Share Agreement provide that the Agreement is subject to an "Arbitration Clause." (See King Aff., Ex. 7(a) and (b) attached thereto.)

21. Moreover, the Slip and Covernote for the 95% Facility Quota Share Agreement provide that the Agreement is subject to a "Service of Suit Clause." (See King. Aff., Ex. 7(a) and (b) attached thereto.)

22. The 95% Facility Quota Share Agreement was part of an overall, pre-existing reinsurance program (the "Facility Quota Share Program") in which various reinsurers or retrocessionaires participated, in varying percentages, in exchange for premium payments by John Hancock.

23. Although 1998 was Sphere Drake's first year of participation, the 95% Facility Quota Share Program had been in force and continually renewed since 1991. (See King Aff., ¶ 6, and Exemplar wording for the Facility Quota Share Program attached as Ex. 8 thereto.)

24. All previous wordings governing the 95% Facility Quota Share Program contained an Arbitration Clause which provides, in relevant part:

> As a condition precedent to any right of action hereunder, **any dispute or difference hereafter** arising with reference to the

> interpretation, application, or effect of this Agreement or any part
> hereof, whether arising before or after termination of this
> Agreement, **shall be referred to a Board of Arbitration ... The
> seat of the Board of Arbitration shall be in Massachusetts,
> unless the disputants agree otherwise.**

(emphasis added) (See King Aff., ¶ 6, and Ex. 8, Art. XIX thereto.)

25. All previous wordings governing the Facility Quota Share Program contain a Service of Suit Clause which provides, in relevant part:

> In the event of the failure of the Retrocessionaires hereon to pay
> any amount claimed to be due hereunder, the Retrocessionaires, at
> the request of the Retrocedent, will submit to the jurisdiction of
> any court of competent jurisdiction within the United States. . .

(See King Aff., ¶ 6, and Ex. 8, Art. XVIII thereto.)

26. All previous wordings governing the Facility Quota Share Program contain a Governing Law clause which provides, in relevant part:

> [t]his Agreement shall be governed by and construed in accordance with
> the laws and regulations of the Commonwealth of Massachusetts.

(See King Aff., ¶ 6, and Ex. 8, Art. XX thereto.)

27. It was essential to John Hancock and understood by all reinsurers, including Sphere Drake, that there needed to be a consistency of terms and conditions governing the Facility Quota Share Program.

### D. SPHERE DRAKE'S FAILURE TO PAY AND REFUSAL TO ARBITRATE IN THE UNITED STATES

28. Collectively, over $8,800,000.00 in balances are due and owing to John Hancock under the Agreements. (See King Aff., ¶ 11.)

29. Sphere Drake has failed to pay the balances owed under the Agreements notwithstanding requests from John Hancock. (See King Aff., ¶ 11.)

30. Sphere Drake has declared its intention to rescind the Agreements. (See

9

King Aff., ¶ 9, and Ex. 10 thereto.)

31. Consistent with the intent of the parties, as evidenced by the contractual documentation for the Agreements, as well as the course of conduct between the parties and the custom and practice in the reinsurance industry, the Agreements are United States contracts subject to Massachusetts law and arbitration proceedings in the United States. Having disputes between the parties resolved in arbitration proceedings in the United States was a bargained for element in each of the Agreements.

32. Contrary to the intent of the parties as reflected in the contractual documentation, the course of conduct between the parties, and the custom and practice in the reinsurance industry, Sphere Drake has declared its intention to arbitrate its claims under the Agreements against John Hancock in United Kingdom arbitration proceedings under United Kingdom procedure and law. (See King Aff., ¶ 8, and Ex. 9 attached thereto.) This is despite the clear and express arbitration, service of suit, and law and jurisdiction language in the contractual documentation for the Agreements.

33. John Hancock has advised Sphere Drake that the Agreements are U.S. contracts governed by Massachusetts law and procedure and subject to arbitration proceedings in the United States. (See King Aff., ¶¶ 10 and 13, and Ex. 11 and 14 attached thereto.)

34. John Hancock made a demand for arbitration proceedings against Sphere Drake ("Arbitration Demand") to take place in the United States subject to Massachusetts law and procedure pursuant to the Agreements' arbitration provisions. (See King Aff., ¶ 11, and Ex.12 attached thereto.)

35. Sphere Drake has refused to submit to arbitration proceedings as

demanded by John Hancock and maintains that the arbitration proceedings should take place in the United Kingdom subject to United Kingdom law and procedure. (See King Aff., ¶ 12, and Ex. 13 attached thereto.)

**WHEREFORE**, based upon the intent of the parties as evidenced by the contract documentation, the course of dealing between the parties, and the custom and practice in the industry as set forth herein and in its Memorandum of Law in Support filed herewith, John Hancock respectfully requests the Court enter an Order:

(1) Directing that Sphere Drake proceed to individual arbitration proceedings pursuant to each of the Agreements' arbitration provisions and John Hancock's Arbitration Demand;

(2) Awarding John Hancock costs, disbursements, and attorneys' fees; and

(3) Awarding such other relief as the Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

John Hancock hereby requests oral argument on its Petition to Compel Arbitration as it believes such will assist the Court in its ruling on this matter.

Respectfully Submitted,

Mitchell S. King, Esq. BBO# 272810
Rhonda L. Rittenberg, Esq. BBO# 550498
Michael A. Calawa, Esq. BBO# 643517
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Of Counsel
David A. Silva, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Attorneys for
John Hancock Life Insurance Company

Dated: January 26, 2004