IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------

In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE INSURANCE COMPANY,
    Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

---------------------------------------------------------------

Civil Action No.

04 10181 MLW

# JOHN HANCOCK LIFE INSURANCE COMPANY'S VERIFIED AMENDED PETITION TO COMPEL ARBITRATION PROCEEDINGS

## INTRODUCTION

Petitioner, John Hancock Life Insurance Company (f/k/a John Hancock Mutual Life Insurance Company, hereinafter "John Hancock"), hereby petitions the Court to compel arbitration proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§201 et. seq, with respect to seven reinsurance agreements (the "Seven Agreements"). By separate motions, John Hancock also seeks: 1) a Temporary Restraining Order and Preliminary Injunction enjoining Sphere Drake from instituting a competing action or actions in the United Kingdom ("U.K.") in order to maintain the status quo and assure that this Court's rulings govern the parties' arbitration rights under the Seven Agreements; and 2) a prompt hearing on the merits of its claims for arbitration in order to assure that John Hancock's rights under the Seven Agreements

are not subverted or foreclosed by competing foreign actions in the U.K.

In support of the Verified Amended Petition to Compel Arbitration Proceedings, John Hancock avers the following:

## I. THE PARTIES

1. Petitioner, John Hancock, is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

2. Respondent, Sphere Drake Insurance Limited (f/k/a Sphere Drake Insurance Plc and Odyssey Re (London) Ltd., hereinafter "Sphere Drake"), is a corporation organized under the laws of England and Wales, with its principal place of business in Brighton, England.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C §1332, as there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Sphere Drake pursuant to M.G.L. c. 223A, §3(a) and (f), because Sphere Drake entered into several reinsurance agreements with John Hancock, a Massachusetts corporation. As such, Sphere Drake transacted business and provided reinsurance coverages to John Hancock in Massachusetts. This action arises from these reinsurance transactions.

5. Venue is proper under 28 U.S.C., §1391 because John Hancock's principal place of business is in this district.

### III. FACTUAL ALLEGATIONS

#### A. BACKGROUND

6. Between 1997 and 1998 John Hancock and Sphere Drake entered into a number of reinsurance agreements pursuant to which Sphere Drake agreed to indemnify John Hancock (the "John Hancock/Sphere Drake Ceded Contracts" or the "Contracts") with regard to two types of underlying reinsurance business commonly referred to as workers' compensation carve-out business ("Carve-Out") and London Market Excess ("LMX") and similar London market business.

7. The Seven Agreements specifically at issue in this matter are a sub-set of the John Hancock/Sphere Drake Ceded Contracts. The terms of the Seven Agreements are evidenced by supporting contractual documentation as well as a broader course of dealing between the parties in connection with the John Hancock/Sphere Drake Ceded Contracts, which conclusively demonstrate that the Seven Agreements are U.S. contracts that are subject to Massachusetts law and jurisdiction.

8. Under the Seven Agreements, Sphere Drake accepted premium from John Hancock in exchange for reinsuring a portion of the business John Hancock wrote with certain of its underlying insurers. The Agreements are thus "retrocessional" contracts, i.e., reinsurance of reinsurance, pursuant to which John Hancock is the "retrocedent" and Sphere Drake is the "retrocessionaire." Under these Agreements, Sphere Drake agreed to indemnify John Hancock with respect to losses in connection with the business.

9. The Seven Agreements are designated as follows:

    a. Specific Realm Agreement – (Broker Ref. AH0094197) – (effective 1/7/97-6/30/97) ("Realm 1");

    b.    Specific Realm Agreement- (Broker Ref. AH0094297) – (effective 1/7/97-6/30/97) ("Realm 2");

    c.    Specific Realm Agreement – (Broker Ref. AH0094397) – (effective 1/7/97-6/30/97 ("Realm 3");

    d.    Specific Realm Agreement – (Broker Ref. AH0104997) – (effective 1/7/97-6/30/97) ("Realm 4");

    e.    Specific Realm Agreement – (Broker Ref. AH0105097) – (effective 1/7/97-6/30/97) ("Realm 5")

    (collectively, the "Realm Agreements);

    f.    BE LMX Quota Share Agreement – (Broker Ref. TNC0906/98) – (effective 1/1/98-12/31/98) ("Quota Share Agreement"); and

    g.    95% Quota Share Retrocession – (Broker Ref. TNC0887/98) – (effective 1/1/98- continuous) ("95% Facility Quota Share Agreement".)

**B.**     <u>**THE CONTRACTUAL DOCUMENTATION**</u>

<u>**The Realm Agreements and the Quota Share Agreement**</u>

10.     The Realm Agreements and the Quota Share Agreement are each evidenced by contractual documentation consisting of the following: (a) a signed "slip" executed by Sphere Drake which identifies salient terms and conditions and summarizes the risks to be reinsured; (b) a "covernote" issued by the reinsurance intermediary to John Hancock advising of the reinsurance coverage effected with Sphere Drake; and (c) an unsigned wording which details the terms and conditions of the agreement in accordance with the slip and covernote.

11.     Specifically, the contractual documentation for each of the Realm Agreements and the Quota Share Agreement is as follows:

    a.    Realm 1:

4

        i.       Slip (Affidavit of Joseph P. Welch ("Welch Aff.") which is incorporated by reference herein, ¶ 2, and Petitoner's Exhibit ("Pet. Ex.") 1(a));

        ii.      Covernote (Welch Aff., ¶ 2, and Pet. Ex. 1(b)); and

        iii.     Wording (Welch Aff., ¶ 2, and Pet. Ex. 1(c));

b.    Realm 2

        i.       Slip (Welch Aff., ¶ 2, and Pet. Ex. 2(a));

        ii.      Covernote (Welch Aff., ¶ 2, and Pet. Ex. 2(b));

        iii.     Wording (Welch Aff., ¶ 2, and Pet. Ex. 2(c));

c.    Realm 3

        i.       Slip (Welch Aff., ¶ 2, and Pet. Ex. 3(a));

        ii.      Covernote (Welch Aff., ¶ 2, and Pet. Ex. 3(b));

        iii.     Wording (Welch Aff., ¶ 2, and Pet. Ex. 3(c));

d.    Realm 4

        i.       Slip (Welch Aff., ¶ 2, and Pet. Ex. 4(a));

        ii.      Covernote (Welch Aff., ¶ 2, and Pet. Ex. 4(b));

        iii.     Wording (Welch Aff., ¶ 2, and Pet. Ex. 4(c));

e.    Realm 5

        i.       Slip (Welch Aff., ¶ 2, and Pet. Ex. 5(a));

        ii.      Covernote (Welch Aff., ¶ 2, and Pet. Ex. 5(b));

        iii.     Wording (Welch Aff., ¶ 2, and Pet. Ex. 5(c));

f.    Quota Share

        i.       Slip (Welch Aff., ¶ 2, and Pet. Ex. 6(a));

        ii.      Covernote (Welch Aff., ¶ 2, and Pet. Ex. 6(b)); and

           iii.      Wording (Welch Aff., ¶ 2, and Pet. Ex. 6(c).)

12.      The contractual documentation for the Realm Agreements mandates arbitration with regard to any disputes between the parties. Specifically, the Slips and Covernotes for the Realm Agreements provide for an "Arbitration Clause." (Pet. Ex. 1(a) and (b); Pet. Ex. 2(a) and (b); Pet. Ex. 3(a) and (b); Pet. Ex. 4(a) and (b); and Pet. Ex. 5(a) and (b).)

13.      In accordance with the Slips and Covernotes, the wordings for the Realm Agreements provide in relevant part, as follows:

> ARBITRATION CLAUSE
>
> **Disputes between the parties arising out of this Reinsurance which cannot be resolved by compromise**, including but not limited to any controversy as to the validity of this Reinsurance, whether such disputes arise before or after termination of this Reinsurance **shall be submitted to arbitration.**
>
> \* \* \*
>
> **[A]ll proceedings pursuant hereto shall be governed by the law of the State of Massachusetts, U.S.A.**

(emphasis added) (see Welch Aff., Pet. Ex.1(c), Art. 26; Pet. Ex.2(c), Art. 26; Pet. Ex.3(c), Art. 25; Pet. Ex.4(c), Art. 25; and Pet. Ex.5(c), Art. 25.)

14.      The wordings for the Realm Agreements also contain a law and jurisdiction clause pursuant to which the contract will be governed and construed. Specifically, the wordings provide:

> [t]his Reinsurance shall be governed and construed in accordance with the laws of the state of Massachusetts, U.S.A. under the jurisdiction of the courts of the state of Massachusetts, U.S.A.

(See Pet. Ex. 1(c), Art. 25; Pet. Ex. 2(c), Art. 25; Pet. Ex. 3(c), Art. 24; Pet. Ex. 4(c), Art. 24; and Pet. Ex. 5(c), Art. 24.)

6

15.  Similar to the Realm Agreements, the Slip and Covernote for the Quota Share Agreement also provide that the Agreement is subject to an "Arbitration Clause." (See Pet. Ex. 6 (a) and (b).)

16.  In accordance with the Slip and Covernote, the wording for the Quota Share Agreement, provides, in relevant part:

> ARBITRATION
>
> Should any difference of opinion arise between the Reinsurer and the Cedant which cannot be resolved in the normal course of business with respect to the interpretation of this Agreement of the performance of the respective obligations of the parties under this Agreement, **the difference shall be submitted to arbitration.**
>
> \* \* \*
>
> **The laws of the State of Massachusetts shall govern the arbitration.**

(emphasis added) (See Pet. Ex. 6(c), Art. XIV.)

17.  Moreover, the Quota Share and Realm Agreements all contain standard U.S. Service of Suit clauses pursuant to which Sphere Drake agreed to submit to the jurisdiction of a court of competent jurisdiction in the United States with regard to any disputes thereunder. Specifically, the Slips and Covernotes provide for a "Service of Suit Clause U.S.A." (See Pet. Ex. 1(a) and (b); Pet. Ex. 2(a) and (b); Pet. Ex. 3(a) and (b); Pet. Ex. 4(a) and (b); Pet. Ex. 5(a) and (b); and Pet. Ex. 6(a) and (b).)

18.  In accordance with the "Service of Suit Clause U.S.A." provision in the Slips and Covernotes, the respective Wordings for the Realm Agreements and the Quota Share Agreement provide, in relevant part:

> It is agreed that in the event of the failure of the Reinsurers hereon to pay any amount claimed to be due hereunder, the **Reinsurers, hereon . . . will submit to the jurisdiction of a court of**

**competent jurisdiction within the United States.**

(emphasis added)(See Pet. Ex. 1(c), Art. 12; Pet. Ex. 2(c), Art. 12; Pet. Ex. 3(c), Art. 11; Pet. Ex. 4(c), Art. 11; Pet. Ex. 5(c), Art. 11; and 6(c), Art. XV.)

### The 95% Facility Quota Share Agreement

19. In addition, there is a 95% Facility Quota Share Agreement that is evidenced by a signed slip and a covernote. (See Welch Aff., ¶2 and Pet. Ex. 7(a) and (b).)

20. The Slip and Covernote for the 95% Facility Quota Share Agreement provide that the Agreement is subject to an "Arbitration Clause." (See Pet. Ex. 7(a) and (b).)

21. Moreover, the Slip and Covernote for the 95% Facility Quota Share Agreement provide that the Agreement is subject to a "Service of Suit Clause." (See Pet. Ex. 7(a) and (b).)

22. The 95% Facility Quota Share Agreement was part of an overall, pre-existing reinsurance program (the "Facility Quota Share Program") in which various reinsurers or retrocessionaires participated, in varying percentages, in exchange for premium payments by John Hancock. The 95% Facility Quota Share Agreement indemnifies John Hancock's Accident and Health and related reinsurance recoveries. (See Welch Aff., ¶ 5.)

23. Although 1998 was Sphere Drake's first year of participation, the 95% Facility Quota Share Program had been in force and continually renewed since 1991. (See Welch Aff., ¶ 6, and Pet. Ex. 8.)

24. All previous wordings governing the 95% Facility Quota Share Program

contained an Arbitration Clause which provides, in relevant part:

> As a condition precedent to any right of action hereunder, **any dispute or difference hereafter** arising with reference to the interpretation, application, or effect of this Agreement or any part hereof, whether arising before or after termination of this Agreement, **shall be referred to a Board of Arbitration ... The seat of the Board of Arbitration shall be in Massachusetts, unless the disputants agree otherwise.**

(emphasis added) (See Welch Aff., ¶ 6, and Pet. Ex. 8, Art. XIX.)

25. All previous wordings governing the Facility Quota Share Program contain a Service of Suit Clause which provides, in relevant part:

> In the event of the failure of the Retrocessionaires hereon to pay any amount claimed to be due hereunder, the Retrocessionaires, at the request of the Retrocedent, will submit to the jurisdiction of any court of competent jurisdiction within the United States...

(See Welch Aff., ¶ 6, and Pet. Ex. 8, Art. XVIII.)

26. All previous wordings governing the Facility Quota Share Program contain a Governing Law clause which provides, in relevant part:

> [t]his Agreement shall be governed by and construed in accordance with the laws and regulations of the Commonwealth of Massachusetts.

(See Welch Aff., ¶ 6, and Pet. Ex. 8, Art. XX.)

27. It was essential to John Hancock and understood by all reinsurers, including Sphere Drake, that there needed to be a consistency of terms and conditions governing the Facility Quota Share Program.

## C. THE BROADER COURSE OF DEALING BETWEEN THE PARTIES EVIDENCING THE APPLICATION OF MASSACHUSETTS LAW UNDER THE SEVEN AGREEMENTS

28. There are a total of twenty-nine (29) John Hancock/Sphere Drake Ceded Contracts, all of which contain arbitration provisions. (See Welch Aff., ¶2.) There is a

9

consistent course of dealing between the parties in connection with the law governing the arbitration provisions of all of the Contracts.

29. John Hancock's demand for arbitration proceedings leading to this dispute involved a total of twenty (20) John Hancock/Sphere Drake Ceded contracts. (See Amended Affidavit of Mitchell S. King ("Amended King Aff."), ¶ 8, and Pet. Ex.14.) Sphere Drake has contested the demands only with respect to the Seven Agreements. With respect to the thirteen (13) other demands for U.S. arbitrations applying Massachusetts law found in the same demand letter, Sphere Drake advised that it would "provide a further response in due course." (See Amended King Aff., ¶ 9 and Pet. Ex. 15.)

30. Each of the thirteen (13) Contracts for which Sphere Drake has not contested U.S. arbitrations and application of Massachusetts law, is evidenced by some combination of slips, covernotes and wordings indicating that they are governed by U.S. and/or Massachusetts law. In particular, the slips for each of those contracts reference "Service of Suit Clause (USA)" or similar Canadian clauses. Each of these thirteen (13) Contracts also reinsure U.S. business; the choice of laws provisions are consistent with the country of origin of the underlying reinsured business. (See Welch Aff., ¶ 10 and Pet. Exs. 9(a), 9(b) and 9(c).)

31. There are nine (9) other John Hancock/Sphere Drake Ceded Contracts that John Hancock acknowledges as being governed by U.K. law and procedure. In contrast to the other twenty (20) Contracts, none of the slips for these Contracts refer to applicable "Service of Suit Clause (USA)" or similar clauses. Moreover, each of these Contracts reinsures LMX or other London market business, or the underlying business itself is

expressly governed by English law. (See Welch Aff., ¶ 10 and Pet. Exs. 10(a) and 10(b).) In other words, the choice of law provisions are consistent with the country of origin of the underlying reinsured business.

### D. SPHERE DRAKE'S FAILURE TO PAY AND REFUSAL TO ARBITRATE IN THE UNITED STATES AND SPHERE DRAKE'S COMPETING EFFORTS TO SUBVERT JOHN HANCOCK'S RIGHTS

32. Collectively, over $9,900,000.00 in balances is due and owing to John Hancock under the Seven Agreements. (See Welch Aff., ¶ 7.)

33. Sphere Drake has failed to pay the balances owed under the Agreements notwithstanding requests from John Hancock. (See Welch Aff., ¶ 8.)

34. Sphere Drake has declared its intention to rescind the Agreements. (See Amended King Aff., ¶ 6, and Pet. Ex. 12.)

35. Consistent with the intent of the parties as evidenced by the contractual documentation for the Seven Agreements as well as by the broader course of dealing between the parties and the custom and practice in the reinsurance industry, the Seven Agreements are United States contracts subject to Massachusetts law and arbitration proceedings in the United States. Having disputes between the parties resolved in arbitration proceedings in the United States was a bargained for element in each of the Seven Agreements.

36. Contrary to the intent of the parties as reflected in the contractual documentation, the course of conduct between the parties, and the custom and practice in the reinsurance industry, Sphere Drake has declared its intention to arbitrate its claims with respect to the Seven Agreements against John Hancock in U.K. arbitration proceedings under U.K. law and procedure. (See Amended King Aff., ¶¶ 8-10 and Pet.

11

Exs. 14-16.) This is despite the clear and express arbitration, service of suit, and law and jurisdiction language in the contractual documentation for the Agreements.

37. John Hancock has advised Sphere Drake that the Agreements are U.S. contracts governed by Massachusetts law and procedure and subject to arbitration proceedings in the United States. (See Amended King Aff., ¶¶ 7 and 8, and Pet. Exs. 13 and 14.)

38. John Hancock has demanded arbitration under the Seven Agreements pursuant to U.S. procedure and Massachusetts law and Sphere Drake has refused. Sphere Drake has instead demanded arbitration under U.K. law and procedure. (See Amended King Aff., ¶ 9 and Pet. Ex. 15.)

39. On January 26, 2004, John Hancock filed its Petition to Compel Arbitration Proceedings and Memorandum in Support in this Court. Courtesy copies of the John Hancock's Petition to Compel Arbitrations and supporting papers, were sent to the U.K. solicitors firm of Clyde & Co, Sphere Drake's U.K. Counsel. (Amended King Aff., ¶ 10.)

40. On January 28, 2004 John Hancock served a Summons with a five (5) day return pursuant to Section 4 of the FAA and accompanying papers upon Sphere Drake through the Massachusetts Commissioner of Insurance under the Massachusetts Unauthorized Insurer's Process Act and through the law firm of Mendes & Mount in New York, pursuant to the Service of Suit clause referenced in the Slips and Wordings for the Seven Agreements. (See Affidavit of Service, ¶¶ 8 and 9 and Amended King Aff., ¶ 11.) That same day John Hancock sent Butler, Rubin, Saltarelli & Boyd ("Butler Rubin"), Sphere Drake's U.S. counsel, a courtesy copy of the Summons and the January

28, 2004 cover letters to the Massachusetts Commissioner of Insurance and Mendes & Mount via facsimile. John Hancock also sent Butler Rubin a courtesy copy of the Summons and papers by Certified Mail, Return Receipt Requested. (See Affidavit of Service, ¶ 12 and Amended King Aff., ¶ 11.)  John Hancock sent Clyde & Co, Sphere Drake's U.K. counsel, a courtesy copy of the Summons and the January 28, 2004 cover letters to the Massachusetts Commissioner of Insurance and Mendes & Mount via facsimile. John Hancock also sent Clyde & Co a copy of the Summons and the papers by International Registered Mail, Return Receipt Requested. (See Affidavit of Service, ¶ 11 and Amended King Aff., ¶ 11.)

41. On January 28, 2004, Sphere Drake's U.S. counsel acknowledged receipt of a facsimile copy of the Summons and accompanying papers, and requested an extension of time in which to respond. (See Amended King Aff., ¶ 12.)

42. On January 29, 2004, John Hancock offered an extension of time to respond, subject only to conditions which would not prejudice John Hancock's ability to expeditiously litigate its arbitration rights before this Court without the immediate threat of competing U.K. litigation. (See Amended King Aff.,¶ 13 and Pet. Ex. 17.)

43. Sphere Drake's U.S. counsel responded, advising it would not accept an extension subject to any conditions on other actions Sphere Drake might take. (See Amended King Aff., ¶ 14.)

44. By letter of January 30, 2004, John Hancock counsel responded, acknowledging Sphere Drake's position and asking counsel to clarify Sphere Drake's position on service pursuant to the Service of Suit provisions in the slips. (See Amended King Aff.,¶ 15 and Pet. Ex. 18.) Sphere Drake has failed to respond to the request for

clarification.

45. Based upon Sphere Drake's actions and its declination of John Hancock's offer of an extension of time to respond subject only to an agreement that the parties will litigate their respective arbitration rights in this Court without interference from U.K. courts, John Hancock believes Sphere Drake has filed or will filed a competing action in the U.K. king to subvert or strip John Hancock of its right to have an adjudication of its arbitration rights under the Seven Agreements before this Court.

**WHEREFORE**, based upon the intent of the parties as evidenced by the contract documentation, the course of dealing between the parties, and the custom and practice in the industry as set forth herein and as further set forth in its Memorandum of Law in Support filed and other motions and supporting memoranda, John Hancock respectfully requests the Court enter an Order:

(1) Under Section 4 of the FAA ordering an expedited hearing on Petition to Compel Arbitration as set forth in the accompanying Motion for Hearing and Memorandum in Support;

(2) Under Section 4 of the FAA directing that Sphere Drake proceed to individual arbitration proceedings pursuant to each of the Seven Agreements' arbitration provisions and John Hancock's Arbitration Demands;

(3) Under Fed. R. Civ. P. 65, granting John Hancock a Temporary Restraining Order and Preliminary Injunction precluding any competing actions in the U.K. by Sphere Drake in order to maintain the status quo and allow John Hancock to litigate its rights before this Court, as set forth in the accompanying Motion and Memorandum in Support;

(4) Awarding John Hancock costs, disbursements, and attorneys' fees; and

(5) Awarding such other relief as the Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

John Hancock hereby requests oral argument on its Petition to Compel Arbitration as it believes such will assist the Court in its ruling on this matter.

Respectfully Submitted,

Mitchell S. King, Esq. BBO# 272810
Rhonda L. Rittenberg, Esq. BBO# 550498
Michael A. Calawa, Esq. BBO# 643517
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Of Counsel
David A. Silva, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Attorneys for
John Hancock Life Insurance Company

Dated: February 4, 2004

VERIFICATION

Joseph P. Welch hereby states:

1. I am Vice President and Treasurer of John Hancock Management Company and General Director of John Hancock Life Insurance Company.

2. I have read the foregoing complaint, which I declare to be true and correct to the best of my knowledge, information and belief.

SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY UNDER THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS AND THE UNITED STATES.

Executed on February 4, 2004, at Boston, Massachusetts.

16