IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE INSURANCE COMPANY,

    Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

---

Civil Action No.
04 10181MLW

## MEMORANDUM OF LAW IN SUPPORT OF JOHN HANCOCK LIFE INSURANCE COMPANY'S VERIFIED AMENDED PETITION TO COMPEL ARBITRATION PROCEEDINGS

Petitioner, John Hancock Life Insurance Company (f/k/a John Hancock Mutual Life Insurance Company, hereinafter "John Hancock") submits this Memorandum of Law in Support of its Verified Amended Petition to Compel Arbitration Proceedings (the "Amended Petition") pursuant to the Federal Arbitration Act ("FAA") 9 U.S.C. §4 and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") 9 U.S.C. §§201 *et. seq.* This Petition is being brought because Sphere Drake has refused to proceed with arbitration as required by the agreements at issue in this matter, instead taking the position that the disputes between the parties under the agreements are subject to arbitration proceedings in the United Kingdom and subject to United Kingdom law and procedure.

### I.    FACTUAL BACKGROUND

**A.    BUSINESS AND AGREEMENTS AT ISSUE**

Between 1997 and 1998 John Hancock and Sphere Drake entered into a number

of reinsurance agreements pursuant to which Sphere Drake agreed to indemnify John Hancock (the "John Hancock/Sphere Drake Ceded Contracts" or the "Contracts") with regard to two types of underlying reinsurance business commonly referred to as workers' compensation carve-out business ("Carve-Out") and London Market Excess ("LMX") and similar London market business.

The seven agreements specifically at issue in this matter (the "Seven Agreements") are a sub-set of the John Hancock/Sphere Drake Ceded Contracts. The terms of the Seven Agreements are evidenced by supporting contractual documentation as well as a broader course of dealing between the parties in connection with the John Hancock/Sphere Drake Ceded Contracts, which conclusively demonstrate that the Seven Agreements are U.S. contracts that are subject to Massachusetts law and jurisdiction.

Under the Seven Agreements, Sphere Drake accepted premium from John Hancock in exchange for reinsuring a portion of the business John Hancock wrote with certain of its underlying insurers. The Seven Agreements are thus "retrocessional" contracts, i.e., reinsurance of reinsurance, pursuant to which John Hancock is the "retrocedent" and Sphere Drake is the "retrocessionaire." Under these Seven Agreements, Sphere Drake agreed to indemnify John Hancock with respect to losses in connection with the business.

The Seven Agreements are designated as follows:

    a.    Specific Realm Agreement – (Broker Ref. AH0094197) – (effective 1/7/97-6/30/97) ("Realm 1");

    b.    Specific Realm Agreement- (Broker Ref. AH0094297) – (effective 1/7/97-6/30/97) ("Realm 2");

    c.    Specific Realm Agreement – (Broker Ref. AH0094397) – (effective 1/7/97-6/30/97) ("Realm 3");

  d. Specific Realm Agreement – (Broker Ref. AH0104997) – (effective 1/7/97-6/30/97) ("Realm 4");

  e. Specific Realm Agreement – (Broker Ref. AH0105097) – (effective 1/7/97-6/30/97) ("Realm 5")

  (collectively the "Realm Agreements");

  f. BE LMX Quota Share Agreement – (Broker Ref. TNC0906/98) – (effective 1/1/98-12/31/98) ("Quota Share Agreement"); and

  g. 95% Quota Share Retrocession – (Broker Ref. TNC0887/98) – (effective 1/1/98- continuous) ("95% Facility Quota Share Agreement".)

(See Amended Petition, ¶¶ 8-9; Affidavit of Joseph P. Welch ("Welch Aff.") which is incorporated by reference herein, ¶2) (Copies of the contractual documentation evidencing the Agreements are located at Petitioner's Exhibit ("Pet. Ex.") 1-7 .)

**B. THE CONTRACTUAL DOCUMENTATION**

**The Realm Agreements and the Quota Share Agreement**

The Realm Agreements and the Quota Share Agreement are all evidenced by contractual documentation which consists of the following: (a) a signed "slip" executed by Sphere Drake which identifies salient terms and conditions and summarizes the risks to be reinsured; (b) a "covernote" issued by the reinsurance intermediary to John Hancock advising of the reinsurance coverage effected with Sphere Drake; and (c) an unsigned wording which details the terms and conditions of the agreement in accordance with the slip and covernote. (See Amended Petition, ¶¶ 10-11; Welch Aff., ¶ 2; and Pet. Exs. 1(a), (b) and (c); 2(a(a), (b) and (c); 3(a), (b) and (c); 4(a), (b) and (c); 5(a), (b) and (c); and 6(a), (b) and (c).)

The Realm Agreements comprise various layers of retrocessional coverage purchased to indemnify John Hancock in respect of its participation in a quota share

3

treaty reinsuring Realm National Insurance Company. (See Welch Aff., ¶ 3.) The Quota Share Agreement is a 66.6666% quota share agreement indemnifying John Hancock in respect of the business written and allocated by John Hancock to its Personal Accident Non-Proportional account. (See Welch Aff., ¶ 4.)

The contractual documentation for the Realm Agreements contains arbitration language requiring that the parties submit disputes relating to the reinsurance to arbitration. The Slips and Covernotes for the Realm Agreements provide for an "Arbitration Clause." (See Amended Petition, ¶12, and Pet. Exs.1(a) and (b); 2(a) and (b); 3(a) and (b); 4(a) and (b); 5(a) and (b).) Consistent with this language, the wordings for the Realm Agreements provide as follows:

> ARBITRATION CLAUSE
>
> **Disputes between the parties arising out of this Reinsurance which cannot be resolved by compromise**, including but not limited to any controversy as to the validity of this Reinsurance, whether such disputes arise before or after termination of this Reinsurance **shall be submitted to arbitration**.
>
> * * *
>
> **[A]ll proceedings pursuant hereto shall be governed by the law of the State of Massachusetts, U.S.A.**

(emphasis added) (See Amended Petition, ¶13, and Pet. Exs.1(c), Art. 26; 2(c), Art. 26; 3(c), Art. 25; 4(c), Art. 25; and 5(c), Art. 25.)

The wordings for the Realm Agreements also contain a law and jurisdiction clause pursuant to which the contract will be governed and construed. Specifically, the wordings provide:

> [t]his Reinsurance shall be governed and construed in accordance with the laws of the state of Massachusetts, U.S.A. under the jurisdiction of the courts of the state of Massachusetts, U.S.A.

4

(See Amended Petition ¶14, and Pet. Exs. 1(c), Art. 25; 2(c), Art. 25; 3(c), Art. 24; 4(c), Art. 24; and 5(c), Art. 24.)

Similar to the Realm Agreements, the Slip and Covernote for the Quota Share Agreement also provide that the Agreement is subject to an "Arbitration Clause." (See Pet. Ex. 6 (a) and (b).) In accordance with the Quota Share Agreement's Slip and Covernote, the wording for the Quota Share Agreement, provides, in relevant part:

> ARBITRATION
>
> Should any difference of opinion arise between the Reinsurer and the Cedant which cannot be resolved in the normal course of business with respect to the interpretation of this Agreement of the performance of the respective obligations of the parties under this Agreement, **the difference shall be submitted to arbitration**.
>
> \* \* \*
>
> **The laws of the State of Massachusetts shall govern the arbitration.**

(emphasis added) (see Amended Petition, ¶16 and Pet. Ex.6(c), Art. XIV.)

Furthermore, the contractual documentation for the Realm Agreements and the Quota Share Agreement contain U.S. Service of Suit clauses which require Sphere Drake to submit to a court of competent jurisdiction in the United States. Service of suit clauses are included in reinsurance contracts entered into between U.S. cedents and foreign reinsurers in order that the cedents are not required to pursue litigation in a foreign jurisdiction in the event of a dispute. See Barry R. Ostrager and Mary Kay Vyskocil, Modern Reinsurance Law and Practice, §2.03[g] (2000) (purpose of the service of suit clause is to permit courts to exercise personal jurisdiction over a foreign or alien insurer), International Surplus Lines Ins. Co. v. University of Wyo. Research Corp., 850 F. Supp. 1509,1528 (D. Wyo. 1994) ("the purpose behind a service of suit clause is to protect the

5

insured from having to litigate in an inconvenient forum selected by the insurer.") In this case, the Slips and Covernotes for the Quota Share and Realm Agreements provide that each Agreement will contain a "Service of Suit Clause U.S.A." (See Amended Petition, ¶17 and Pet. Exs. 1(a) and (b); 2(a) and (b); 3(a) and (b); 4(a) and (b); 5(a) and (b); and 6(a) and (b).) In accordance with the Slips and Covernotes, the Wordings to the Realm Agreements and the Quota Share Agreement provide, in relevant part, as follows:

> It is agreed that in the event of the failure of the Reinsurers hereon to pay any amount claimed to be due hereunder, **the Reinsurers**, hereon, at the request of the [Reinsured], **will submit to the jurisdiction of a court of competent jurisdiction within the United States.**

(emphasis added) (See Amended Petition, ¶18 and Pet. Exs. 1(c), Art. 12; 2(c), Art. 12; 3(c), Art. 11; 4(c), Art. 11; 5(c), Art. 11; and 6(c) Art. XV.)

The abundance of language within the contractual documentation of the Realm Agreements and the Quota Share Agreement referencing the law and jurisdiction of the State of Massachusetts and allowing suit within the U.S. is a clear indication that the parties intended that the mandated arbitration proceedings relating to the Realm Agreements and the Quota Share Agreement occur within the jurisdiction of the United States pursuant to Massachusetts law and procedure. As such, Sphere Drake should be compelled to arbitrate any disputes under the Realm Agreements and the Quota Share Agreement in the United States.

### The 95% Facility Quota Share Agreement

The 95% Quota Share Agreement is part of an overall pre-existing reinsurance program (the "Facility Quota Share Program") in which various reinsurers or retrocessionaires participated, in varying percentages, in exchange for premium payments

from John Hancock. (See Welch Aff., ¶ 5.)  The 95% Facility Quota Share Agreement indemnifies John Hancock's Accident and Health and related reinsurance coverages which accrue from all assumed reinsurance or retrocession. (See Welch Aff., ¶ 5.) Although 1998 was Sphere Drake's first year of participation, the Facility Quota Share Program had been in force and continually renewed since 1991. (See Welch Aff., ¶ 6 and Pet. Ex. 8.)

The 95% Quota Share Agreement is evidenced by a signed slip and a covernote. (See Amended Petition, ¶19 and Pet. Ex. 7(a) and (b).) As with the Slips and Covernotes to the Realm Agreements and the Quota Share Agreement, the Slip and Covernote for the 95% Facility Quota Share Agreement provide for an "Arbitration Clause" and a "Service of Suit Clause." (See Amended Petition, ¶¶ 20 and 21 and Pet. Ex. 7(a) and (b).) All previous wordings to the 95% Facility Quota Share Agreement contain an Arbitration Clause providing, in relevant part:

> As a condition precedent to any right of action hereunder, **any dispute or difference hereafter arising** with reference to the interpretation, application, or effect of this Agreement or any part hereof, whether arising before or after termination of this Agreement, **shall be referred to a Board of Arbitration . . . The seat of the Board of Arbitration shall be in Massachusetts, unless the disputants agree otherwise.**

(emphasis added) (See Amended Petition, ¶24; Welch Aff., ¶ 6; and Pet. Ex. 8, Art. XIX.)

All previous wordings to the 95% Facility Quota Share also contained a Service of Suit Clause which provided, in relevant part:

> In the event of the failure of the Retrocessionaires hereon to pay any amount claimed to be due hereunder, the Retrocessionaires, at the request of the Retrocedent, will submit to the jurisdiction of any court of competent jurisdiction within the United States. . .

7

(See Amended Petition, ¶25; Welch Aff., ¶ 6; and Pet. Ex. 8, Art. XVIII.)

Moreover, all previous wordings for the Facility Quota Share Program contain a Governing Law clause which provides, in relevant part:

> [t]his Agreement shall be governed by and construed in accordance with the laws and regulations of the Commonwealth of Massachusetts.

(See Amended Petition, ¶ 26; Welch Aff., ¶ 6; and Pet. Ex. 8, Art. XX.)

Both John Hancock and Sphere Drake understood the need for consistency of terms and conditions governing the Facility Quota Share Program. It is clear that the parties intended to have the contracts governed by and construed in accordance with the laws of the State of Massachusetts and to have any arbitration relating to the 95% Facility Quota Share occur in Massachusetts subject to Massachusetts law and procedure in accordance with custom and practice and the prior course of dealing between the parties. Sphere Drake should therefore, be compelled to arbitrate the disputes under the 95% Facility Quota Share Agreement in the United States as demanded by John Hancock.

### C. THE BROADER COURSE OF DEALING BETWEEN THE PARTIES EVIDENCING THE APPLICATION OF MASSACHUSETTS LAW UNDER THE SEVEN AGREEMENTS

There are a total of twenty-nine (29) John Hancock/Sphere Drake Ceded Contracts, all of which contain arbitration provisions. (See Welch Aff., ¶2.) There is a consistent course of dealing between the parties in connection with the law governing the arbitration provisions of all of the Contracts.

John Hancock's demand for arbitration proceedings leading to this dispute involved a total of twenty (20) John Hancock/Sphere Drake Ceded contracts. (See Amended Affidavit of Mitchell S. King ("Amended King Aff."), ¶ 8 and Pet. Ex.14.)

Sphere Drake has contested the demands only with respect to the Seven Agreements. With respect to the thirteen (13) other demands for U.S. arbitrations applying Massachusetts law found in the same demand letter, Sphere Drake advised that it would "provide a further response in due course." (See Amended King Aff., ¶ 9 and Pet. Ex. 15.) Each of the thirteen (13) Contracts for which Sphere Drake has not contested U.S. arbitrations and application of Massachusetts law, is evidenced by some combination of slips, covernotes and wordings indicating that they are governed by U.S. and/or Massachusetts law. In particular, the slips for each of those contracts reference "Service of Suit Clause (USA)" or similar Canadian clauses. Each of these thirteen (13) Contracts also reinsure U.S. business; the choice of laws provisions are consistent with the country of origin of the underlying reinsured business. (See Welch Aff., ¶ 10 and Pet. Exs. 9(a), 9(b) and 9(c).)

There are nine (9) other John Hancock/Sphere Drake Ceded Contracts that John Hancock acknowledges as being governed by U.K. law and procedure. In contrast to the other twenty (20) Contracts, none of the slips for these Contracts refer to applicable "Service of Suit Clause (USA)" or similar clauses. Moreover, each of these Contracts reinsures LMX or other London market business, or the underlying business itself is expressly governed by English law. (See Welch Aff., ¶ 11 and Pet. Exs. 10(a) and 10(b).) In other words, the choice of law provisions are consistent with the country of origin of the underlying reinsured business.

D.   **REFUSAL TO ARBITRATE PURSUANT TO THE AGREEMENTS**

The Agreements are U.S. retrocessional treaties ceding U.S. workers' compensation carve-out business and other similar reinsurance business from John

9

Hancock, a Massachusetts corporation, to Sphere Drake, an English corporation. As reflected in the contractual documentation and clauses cited above, the parties intended and John Hancock bargained to have disputes thereunder arbitrated in the United States with Massachusetts law and jurisdiction applicable thereto. (See Amended Petition, ¶ 35.) Disputes relating to the Agreements have now arisen and despite the clear intent of the parties, Sphere Drake refuses to arbitrate in accordance with the Agreements. (See Amended Petition, ¶ 36.)

John Hancock and Sphere Drake have disputes with regards to amounts Sphere Drake owes John Hancock under the Agreements. Collectively, over $9,900,000 in balances are due and owing to John Hancock from Sphere Drake under the Seven Agreements. (See Amended Petition, ¶ 32 and Welch Aff., ¶7.) Sphere Drake maintains that the Agreements are void or alternatively voidable and have been avoided and proposed arbitrations under English law and procedure. (See Amended King Aff., ¶ 6 and Pet. Ex. 12.) John Hancock responded, informing Sphere Drake that the Agreements are all governed by Massachusetts law and procedure and expressed John Hancock's willingness to arbitrate in the United States with respect to the Agreements accordingly. (See Amended King Aff., ¶¶ 7 and 10; Pet. Exs. 13 and 16.)

Because Sphere Drake failed to pay its share of the losses due and owing to John Hancock under the Agreements, John Hancock demanded arbitration proceedings with respect to each of the Agreements. (See Amended Petition, ¶ 38; Welch Aff., ¶¶ 7-9; and Pet. Ex. 14.) Sphere Drake has refused to arbitrate the disputes under the terms of the Agreements and instead, demanded arbitration under the English 1996 Arbitration Act. (See Amended Petition, ¶¶ 36-37; Amended King Aff., ¶ 9 and Pet. Ex. 15.)

Consistent with intent of the parties as evidenced by the contractual documentation for the Seven Agreements, as well as by the broader course of dealing between the parties and the custom and practice in the reinsurance industry, the Seven Agreements are United States contracts subject to Massachusetts law and arbitration proceedings in the United States. Having disputes between the parties resolved in arbitration proceedings in the United States was a bargained for element in each of the Seven Agreements. John Hancock's Amended Petition seeks an order requiring Sphere Drake to proceed with the arbitration proceedings in the United States and under Massachusetts law, as demanded by John Hancock in accordance with the intent of the parties and the Seven Agreements.

## II.    ARGUMENT

### SPHERE DRAKE SHOULD BE ORDERED TO PROCEED WITH ARBITRATIONS IN THE UNITED STATES AS DEMANDED BY JOHN HANCOCK.

The contractual documentation for the Agreements contains arbitration language which obligates the parties to submit disputes thereunder to arbitration. In this situation, there are disputes as to amounts due and owing from Sphere Drake to John Hancock under the Agreements. Sphere Drake has refused to proceed with arbitration as required by the contractual documentation of the Agreements, instead taking the position that the Agreements are subject to arbitration proceedings in the United Kingdom and subject to United Kingdom law and procedure. Under the FAA § 4 (9 U.S.C. §4) and the Convention, 2 U.S.C. § 201 et. seq., this Court should effectuate the arbitration provisions of the contracts and order the arbitrations to proceed in the United States as demanded by John Hancock.

The Convention applies specifically to international arbitration disputes. 2 U.S.C. § 201 et. seq. The provisions of the FAA also apply to such disputes, provided they do not conflict with the Convention. See 9 U.S.C. §208. The Convention authorizes a district court to compel arbitration in accordance with the agreement between the parties. See 2 U.S.C. § 201 et. seq. Section 4 of the FAA states in relevant part:

> A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement....

The FAA does not merely suggest or allow for arbitration of disputes; rather, it requires that district courts enforce valid arbitration clauses to ensure that disputes proceed expeditiously to arbitration. In Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983), the United States Supreme Court held that the FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the Act" and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24 (emphasis added). See also Shaw's Supermarkets, Inc. v. UFCW, Local 791, 321 F.3d 251, 254 (1st Cir. 2003), quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 n.8 (1995), Controlled Sanitation Corp. v. District 128 of the International Ass'n of Machinists and Aerospace Workers, 524 F.2d 1324, 1328 (3d Cir. 1975) (stating that all doubts or ambiguities should be resolved in favor of arbitration), cert. denied, 424 U.S. 915 (1976). Indeed, since Moses H. Cone, the Supreme Court has repeatedly held that

when a district court is faced with a dispute in which the parties have agreed to arbitrate, and the FAA applies, the district court <u>must</u> compel arbitration. See, e.g., Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) ("[t]he Arbitration Act standing alone, therefore mandates enforcement of agreements to arbitrate ... claims"), *rhrg. denied*, 483 U.S. 1056 (1987); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). See also Painewebber Inc. v. Elahi, 87 F.3d 589, 595 (1st Cir. 1996)(holding that a question with regard to the NASD Code is for the arbitrators.)

As stated in New England Reinsurance Corp. v. Tennessee Ins. Co., 780 F.Supp. 73, 76 (D. Mass. 1991)

> In an action under section four of the [FAA], the only questions before the court are (1) whether an arbitration clause exists, and (2) whether the parties have complied therewith. 9 U.S.C. §4. If the court determines that no question exists as to these two issues, it may proceed to compel arbitration in accordance with the parties' agreement.

See also Baggesen v. Am. Skandia Life Assur. Corp., 235 F. Supp. 2d 30, 32 (D.Mass. 2002) ("The court's inquiry is limited to ascertaining the existence of an agreement to arbitrate and the viability of the arbitration clause." (citation omitted)) .

There is no question that the arbitration clauses exist. In fact, Sphere Drake has not disputed this point. (See Amended King Aff., ¶ 3.) Nonetheless, as described above, Sphere Drake has refused to arbitrate disputes under the Agreements in the United States as required by the Agreements. Therefore, pursuant to the arbitration language of the Agreements, John Hancock petitions this Court to compel Sphere Drake to proceed with

United States arbitration proceedings pursuant to Massachusetts law and procedure as demanded by John Hancock.

### III.   CONCLUSION

Based on the foregoing, petitioner John Hancock Life Insurance Company respectfully requests that the Court enter an Order:

(1)   Directing that Sphere Drake proceed to individual arbitration proceedings pursuant to each of the Agreements' arbitration provisions and John Hancock's Arbitration Demand;

(2)   Awarding John Hancock costs, disbursements, and attorneys' fees; and

(3)   Awarding such other relief as the Court deems just and proper.

Respectfully Submitted,

_/s/_

Mitchell S. King, Esq. BBO#272810
Rhonda L. Rittenberg, Esq. BBO# 550498
Michael A. Calawa, Esq. BBO# 643517
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Of Counsel
David A. Silva, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Attorneys for
John Hancock Life Insurance Company

Dated: February 4, 2004