IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE INSURANCE COMPANY,  Civil Action No.
Petitioner,                            04-10181 MLW

and

SPHERE DRAKE INSURANCE LIMITED,
Respondent.

---

**AMENDED AFFIDAVIT OF MITCHELL S. KING
IN SUPPORT OF VERIFIED AMENDED PETITION TO COMPEL
ARBITRATION PROCEEDINGS**

MITCHELL S. KING, being duly sworn, deposes and says

1. I am a member of the law firm Prince, Lobel, Glovsky & Tye LLP and a member in good standing of the bar of the Commonwealth of Massachusetts. At all times material hereto, I have represented the petitioner, John Hancock Life Insurance Company ("John Hancock") in connection with the business and disputes described further below. I have personal knowledge of the matters set forth herein. This Amended Affidavit is submitted in support of John Hancock's Verified Amended Petition to Compel Arbitration Proceedings.

2. Between 1997 and 1998 John Hancock (f/k/a John Hancock Mutual Life Insurance Company") and Sphere Drake Insurance Limited (f/k/a Sphere Drake Insurance Plc and Odyssey Re (London) Ltd., hereinafter "Sphere Drake"), entered into twenty nine (29) reinsurance agreements pursuant to which Sphere Drake agreed to indemnify John Hancock ("John Hancock/Sphere Drake Ceded Contracts" or

"Contracts") with regard to two types of underlying reinsurance business commonly referred to as workers' compensation carve-out business ("Carve-Out") and London Market Excess ("LMX") business. This includes seven reinsurance agreements (the "Seven Agreements") that are the subject matter of the dispute before the Court and which are more fully described in the Affidavit of Joseph P. Welch, filed herewith.

3. The parties agree that each of the Seven Agreements contains an arbitration clause. On December 23, 2003, Clyde & Co., U.K. counsel for Sphere Drake, sent a letter to Mr. Simon Kilgour, John Hancock's U.K. counsel, which states that "there is express provision for arbitration in the slips" of the Agreements. A true and accurate copy of the letter is filed herewith as Petitioner's Exhibit 11.

4. The December 23, 2003 letter also declares Sphere Drake's desire to apply ostensibly "standard" U.K. market wordings applying U.K law and procedure or to use "ARIAS [U.K] Arbitration Rules" applying U.K. law to conduct arbitrations of the Seven Agreements in the U. K.

5. Also by separate letter of December 23, 2003, Mr. Nick Bentley of Sphere Drake sent a Notice of Termination of a May 1999 Standstill Agreement between the parties, purporting to terminate the Standstill Agreement on January 22, 2004 pursuant to a thirty (30) day termination provision. In fact, under the terms of the Standstill Agreement requiring thirty (30) days notice by Certified Mail of the intention to terminate, the Notice of Termination did not appear to terminate as of the date cited by Mr. Bentley.

6. On January 8, 2004 Clyde & Co sent a letter on behalf of Sphere Drake to Mr. Simon Kilgour, John Hancock's U.K. counsel, stating that Sphere Drake maintains

that the Ceded Contracts, including the Seven Agreements are "void or alternatively voidable and have been avoided." A true and accurate copy of the January 8, 2004 letter is filed herewith as Petitioner's Exhibit 12.

7. In response to Mr. Bentley's December 23, 2003 letter declaring the Standstill Agreement to have terminated on January 22, 2004, on January 22, 2004, I sent a letter on behalf of John Hancock to Sphere Drake's U.K. counsel, Mr. Ray Bell, Esq., of Clyde & Co, advising Sphere Drake that the Seven Agreements are governed by Massachusetts law and procedure and expressing John Hancock's willingness to arbitrate in the United States with respect to the Agreements accordingly. A true and accurate copy of the January 22, 2004 letter is filed herewith as Petitioner's Exhibit 13.

8. Because Sphere Drake failed to pay its share of the losses under the Agreements, by letter of January 23, 2004, John Hancock demanded individual arbitration proceedings with respect to twenty (20) separate John Hancock/Sphere Drake Ceded Contracts, subject to Massachusetts law and procedure. By agreement of the parties, the Standstill Agreement was deemed terminated effective January 25, 2004, and the demand for arbitrations was deemed served on January 26, 2004. A true and accurate copy of John Hancock's January 23, 2004 demand for arbitration proceedings is filed herewith as Petitioner's Exhibit 14.

9. In a January 23, 2004 letter, Sphere Drake refused to submit to arbitrations as demanded by John Hancock with respect to the Seven Agreements, and instead demanded arbitration proceedings relating to the Seven Agreements in the U.K. subject to U. K. law and procedure, specifically the English Arbitration Act 1996. With respect to the other thirteen (13) Contracts that were the subject of John Hancock's demands,

3

Sphere Drake did not refuse to arbitrate as demanded but rather, advised "we note the position you have taken and you will receive a further response under separate cover in due course." By agreement of the parties, Sphere Drake's January 23, 2004 letter containing arbitration demands was deemed served on January 26, 2004, simultaneous to John Hancock's demands. A true and accurate copy of the Sphere Drake January 23, 2004 letter is filed herewith as Petitioner's Exhibit 15.

10. On January 26, 2004, I sent a letter on behalf of John Hancock to Mr. Ray Bell, Esq., Sphere Drake's U.K. counsel, stating that the 95% Facility Quota Share Agreement and arbitration demand is to be governed by the laws and procedure of the State of Massachusetts (as opposed to New York law as erroneously stated in my letter of January 23, 2004 (Ex. 14)). That letter also rejected Sphere Drake's assertion that the Seven Agreements are governed in any way by U.K. law or procedure. Under cover of the same letter, I sent to Mr. Bell, courtesy copies of the John Hancock's Petition to Compel Arbitrations and supporting papers, which had been filed in the U.S. District Court of Massachusetts that same day. A true and accurate copy of the January 26, 2004 letter is filed herewith as Petitioner's Exhibit 16.

11. On January 28, 2004 John Hancock served a Summons with a five (5) day return pursuant to Section 4 of the FAA and accompanying papers upon Sphere Drake through the Massachusetts Commissioner of Insurance under the Massachusetts Unauthorized Insurer's Process Act and through the law firm of Mendes & Mount in New York, pursuant to the Service of Suit clause referenced in the Slips for the Seven Agreements. (See Affidavit of Service, ¶¶ 8 and 9.) That same day John Hancock sent Butler, Rubin, Saltarelli & Boyd ("Butler Rubin"), Sphere Drake's U.S. counsel, a

courtesy copy of the Summons and the January 28, 2004 coverletters to the Massachusetts Commissioner of Insurance and Mendes & Mount via facsimile. John Hancock also sent Butler Rubin a courtesy copy of the Summons and papers by Certified Mail, Return Receipt Requested. (See Affidavit of Service, ¶ 12.) John Hancock sent Clyde & Co, Sphere Drake's U.K. counsel, a courtesy copy of the Summons and the January 28, 2004 coverletters to the Massachusetts Commissioner of Insurance and Mendes & Mount via facsimile. John Hancock also sent Clyde & Co a copy of the Summons and the papers by International Registered Mail, Return Receipt Requested. (See Affidavit of Service, ¶ 11.)

12. On January 28, 2004, I received a telephone call from Sphere Drake's U.S. counsel, acknowledging receipt of a facsimile copy of the Summons and coverletters to the Massachusetts Commissioner of Insurance and Mendes & Mount, and requested an extension of time in which to respond.

13. On January 29, I responded on behalf of John Hancock, offering an extension of time to respond, subject to conditions which would not prejudice John Hancock's ability to expeditiously litigate its rights before this Court without the immediate threat of competing U.K. litigation. A true and accurate copy of the January 26, 2004 letter is filed herewith as Petitioner's Exhibit 17.

14. By email of January 30, 2004, Sphere Drake's U.S. counsel responded, advising it would not accept an extension subject to any conditions on other actions it might take.

15. By letter of January 30, 2004, I responded on behalf of John Hancock, acknowledging Sphere Drake's position and asking its U.S. counsel to clarify Sphere

5

Drake's position on service pursuant to the Service of Suit provisions in the slips. A true and accurate copy of the January 30, 2004 letter is filed herewith as Petitioner's Exhibit 18. Sphere Drake has failed to respond to the request for clarification

16. Based upon Sphere Drake's actions and its declination of John Hancock's offer of an extension of time to respond subject only to an agreement that the parties will litigate their respective arbitration rights in this Court, John Hancock believes Sphere Drake has filed or will filed a competing action in the U.K. seeking to strip John Hancock of its right to have a binding adjudication of its rights under the Seven Agreements before this Court.

SWORN UNDER THE PAINS AND PENALTIES OF PERJURY THIS 4TH DAY OF FEBRUARY, 2004

_____
Mitchell S. King, Esq. (BBO#272810)

Dated: February 4, 2004