IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings Between

JOHN HANCOCK LIFE INSURANCE COMPANY,     Civil Action No. 04 10181
   Petitioner,     MLW

and

SPHERE DRAKE INSURANCE LIMITED,
   Respondent.

---

### SPHERE DRAKE'S MEMORANDUM OF LAW IN OPPOSITION TO JOHN HANCOCK'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

John Hancock Life Insurance Company ("Hancock") has not only asked this Court to compel Sphere Drake Insurance Limited ("Sphere Drake") to submit to arbitration in Massachusetts to resolve disputes concerning seven putative reinsurance Contracts,[1] but also to enjoin Sphere Drake from pursuing any type of litigation or arbitration proceedings in England with respect to the seven disputed Contracts. Hancock seeks this extraordinary injunctive relief for one reason; it does not want to arbitrate the enforceability of the disputed contracts in England because a Commercial Court judge in London recently ruled, after a one hundred-day trial, that Hancock's agent defrauded Sphere Drake in placing the seven disputed Contracts.

However, the foundation of Hancock's request for an injunction against English proceedings – that Hancock will lose its "bargained-for contractual right" to arbitrate the Contracts in Massachusetts if this Court does not intervene – rests on a faulty premise. As

---

[1] In referring to these seven putative contracts as the "Contracts," and in agreeing to submit to arbitration to resolve disputes arising out of those agreements, Sphere Drake does not agree that any of the "contracts" is valid or enforceable. As described in the Affidavit of Raymond G. Bell ("Bell Aff."), submitted with Sphere Drake's initial Motion to Dismiss or Stay, Sphere Drake maintains that the seven Contracts were never validly formed as they were procured through the fraud of Hancock's agent.

Sphere Drake demonstrated in the Memorandum of Law in Support of Sphere Drake's Motion to Dismiss or Stay Hancock's Verified Amended Petition to Compel Arbitration Proceedings ("Sphere Drake's Memorandum in Support of its Motion to Dismiss or Stay" or "Sphere Drake Mem."), the evidence reveals no "bargain" or agreement of any type between Sphere Drake and Hancock as to the situs of the arbitration. ("Sphere Drake Mem. at 9-14.)[2] Hancock's "evidence" of an agreement to arbitrate in Massachusetts consists wholly of unsigned documents never even submitted to Sphere Drake or its agent. (*Id.* at 9-11.) Because the parties never agreed on a location for the arbitration, Hancock cannot demonstrate any of the factors that would entitle it to injunctive relief.

As this Court has stated, the standard for obtaining a preliminary injunction is familiar. *Cablevision of Boston, Inc. v. Public Improvement Comm'n*, 38 F. Supp. 2d 46, 53 (D. Mass. 1999).

> The burden of proof is on the plaintiff. The court is required to weigh four factors. The first is whether the plaintiff has shown a likelihood of success on the merits. The second is whether the plaintiff has established an imminent threat of irreparable harm in the absence of a preliminary injunction. The court is also required to balance the hardship to the plaintiff if no injunction is issued against the hardship to the defendants if the requested injunction is ordered. In addition, the court must consider the effect of the proposed injunction on the public interest.

*Id.* (citations omitted). This burden of proof is applied with special care where, as here, the movant seeks to enjoin the conduct of a foreign judicial proceeding. *See In re Lernout & Hauspie Securities Litigation*, No. 00CV11589, 2003 WL 22964378 at *1-*2 (D. Mass. Dec. 12, 2003).

---

[2] As explained in Sphere Drake's Memorandum in Support of its Motion to Dismiss or Stay, the parties have agreed to submit their disputes over the seven Contracts to arbitration. However, the parties disagree as to where this arbitration should be held. (Sphere Drake Mem. at 2.)

The critical misstatement at the root of Hancock's motion for injunctive relief is that "the intent of the parties, as reflected in the contractual documentation evidencing the Seven Agreements and the parties' course of conduct, was that any arbitration proceedings thereunder are to take place in the United States, governed under the law and procedure of Massachusetts and subject to the jurisdiction of the courts in Massachusetts." (Hancock Motion for Temporary Restraining Order at 3.) Hancock's argument on each factor rests squarely on its fabricated claim that the parties have agreed on the situs of the arbitration. From this flawed premise, Hancock asserts: (1) that it is likely to succeed on the merits of its Petition to Compel Arbitration in Massachusetts because the Court will enforce the parties' intent; (2) that Hancock's "bargained for contractual right to have the arbitrations occur in the United States" would be "irreparably harmed" if English proceedings on the contracts were to go forward; (3) that the harm to Hancock outweighs the potential harm of injunctive relief upon Sphere Drake, "as it would merely require Sphere Drake to submit to the jurisdiction it agreed to"; and (4) that the public interest would be served by enjoining the English proceedings so as to promote "stability in international contracts by enforcing bargained for arbitration." (*Id.* at 3-4.) Because there is no evidence of any agreement to arbitrate the seven disputed Contracts in the United States, Hancock's argument on each factor is fatally flawed and it cannot meet its burden of proof. Hancock's desperate attempt to avoid proceedings in England, where its agent has already been found to have committed fraud in the placement of the Contracts, must be rejected.

I. **The Extraordinary "Anti-suit Injunction" Sought by Hancock is Not Warranted.**

An "anti-suit injunction" to halt foreign judicial proceedings "necessarily affects the court and compromises 'the comity which the federal courts owe to courts of other jurisdiction.'" *Compagnie Des Bauxites De Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 (3d Cir. 1981)

3

(quoting *Canadian Filters (Harwich) Ltd. v. Lear-Sigler, Inc.*, 412 F.2d 577, 578 (1st Cir. 1969)). Accordingly, such anti-suit injunctions are granted "only with care and great restraint" because of the effect they have on international relations. *Canadian Filters*, 412 F.2d at 578 (recognizing courts' "self-imposed reluctance to interfere with courts of foreign countries"); *Gau Shan Co. v. Bankers Trust Co.*, 956 F.2d 1349, 1354 (6th Cir. 1992) ("Comity dictates that foreign anti-suit injunctions be issued sparingly and only in the rarest of cases.").

In this case, Hancock has offered absolutely no legitimate grounds for any injunctive relief, much less the extraordinary relief it seeks. Because Sphere Drake never agreed to arbitrate in Massachusetts, Hancock has no "bargained for right" that it will lose if a preliminary injunction is not issued. Hancock's perceived harm is therefore non-existent and does not support the drastic remedy of an anti-suit injunction.

### A. Hancock is Not Entitled to an Anti-Suit Injunction Under Either the "Restrictive" or "Lenient" Standard Applied in the Federal Courts.

There are two distinct lines of authority dictating the circumstances in which federal courts will issue foreign anti-suit injunctions. Under the more restrictive approach, the remedy is available in only two situations: (1) to protect the (domestic) enjoining court's jurisdiction; and (2) to prevent evasion of important public policies of the forum. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 160-61 (3d Cir. 2001); *Gau Shan Co.*, 956 F.2d at 1352-53; *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36-37 (2d Cir. 1987); *Laker Airways Ltd. v Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984). In addition to these grounds, courts that have adopted a more "lenient" approach may also grant an anti-suit injunction where prosecution of the foreign action would (1) be vexatious or oppressive; (2) prejudice other equitable considerations; and according to some courts (3) result in delay, inconvenience, expense, inconsistency, or a race to judgment. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626-

27 & n.9 (5th Cir. 1996); *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981). Under the "restrictive" approach, even a finding that a foreign action is "harassing and vexatious," without more, will not justify the "breach of comity" that results from granting such an injunction. *Compagnie Des Bauxites*, 651 F.2d at 887.

While the First Circuit Court of Appeals has yet to expressly adopt either approach, the court's only relevant opinion on the issue suggests that it would choose the more restrictive standard. *See Canadian Filters*, 412 F.2d at 578. Noting that the determination of whether to enjoin a party from pursuing foreign litigation hinges on notions of international comity, the court in *Canadian Filters* stated that the effect such an injunction has on "a foreign sovereign requires that such action be taken only with care and great restraint." *Id.* Indeed, several courts of appeals adopting the more restrictive approach have interpreted *Canadian Filters* as supporting the proposition that an anti-suit injunction is an extraordinary remedy to be granted sparingly. *See, e.g., China Trade*, 837 F.2d at 36; *Compagnie Des Bauxites*, 651 F.2d at 887 n.10. Moreover, in considering whether to issue an anti-suit injunction in the *Lernout & Hauspie Securities Litigation* case cited above, the District Court of Massachusetts focused on the two grounds for anti-suit injunctions recognized by courts applying the restrictive approach. *Lernout*, 2003 WL 22964378 at *1 (granting anti-suit injunction "to protect this Court's jurisdiction over discovery, and to vindicate . . . important public policy").

Based on the court's analysis in *Canadian Filters*, this Court should adopt the more restrictive approach, under which Hancock's motion can be granted only if necessary to preserve this Court's jurisdiction or to prevent Sphere Drake from eluding an important public policy of Massachusetts. The *Lernout* case, cited by Hancock (Memorandum of Law in Support of Hancock's Motion for Temporary Restraining Order ("Hancock Mem.") at 5-6), provides an

example of circumstances that would justify issuance of an anti-suit injunction under the "restrictive" approach. The defendant disregarded a discovery order of the district court and, on a federal holiday, filed an *ex parte* writ in a Belgian court to nullify the district court's order. 2003 WL 22964378, at *2. The district court found that it was clear that the defendant had attempted an "end-run on this Court's jurisdiction." *Id.* at *2.[3] In contrast, Hancock's unsupported and unexplained statement that "U.K. arbitration proceedings and/or litigation are counter to and would frustrate the process of this Court's jurisdiction" (Hancock Mem. at 8) does not demonstrate the need for an anti-suit injunction in the present circumstances. The proceedings initiated by Sphere Drake in England do not threaten to usurp this Court's jurisdiction. Rather, this Court remains free to preside over Hancock's Amended Petition to Compel Arbitration unfettered by the parallel proceedings pending in England. *See, also, e.g., China Trade*, 837 F.2d at 37 ("While the Korean court may determine the same liability issue as that before the southern district, the Korean court has not attempted to enjoin the proceedings in New York. Neither the Korean court nor Ssangyong has sought to prevent the southern district from exercising its jurisdiction over this case.")[4].

Hancock would not be entitled to relief even under the "lenient" approach applied in cases cited by Hancock such as *Northwest Airlines, Inc. v. R&S Co. S.A.*, 176 F. Supp. 2d 935

---

[3] Even in the circumstances presented to the court in *Lernout*, the court granted the injunction "with reluctance because the Belgian courts and law must be treated with great respect." 2003 WL 22964378, at *2.

[4] Hancock's "policy" argument, for which it cites M.G.L. c. 175B § 1, is similarly misplaced. (*See* Hancock Mem. at 8.) By its terms, the Unauthorized Insurer's Process Act was enacted to provide "a method of substituted *service of process* upon" unauthorized foreign insurers to enable Massachusetts residents to bring suit against such insurers in Massachusetts. *Id.* (emphasis added). The Massachusetts Supreme Court has recognized that a service of suit clause in an insurance contract "does not lock an insurance company into the jurisdiction selected by its insured nor does such a provision bar a court in that jurisdiction from considering a plea of forum non conveniens." *W.R. Grace & Co. v. Hartford Acc. & Indem. Co.*, 407 Mass. 572, 580 (1990). Thus, by commencing proceedings in England, Sphere Drake has not upset any Massachusetts policy. In any event, courts recognize that "only the evasion of the most compelling public policies of the forum will support the issuance of an antisuit injunction." *Gau Shan*, 956 F.2d at 1358. Hancock has offered nothing to support a finding that the policies promoted by Section 1 of the Unauthorized Insurers' Process Act would fall within that narrow category.

6

(D. Minn. 2001). (Hancock Mem. at 7). This is because the harm Hancock seeks to avoid is the loss of its non-existent "bargained for right to have any disputes under the Seven Agreements take place in the United States pursuant to Massachusetts law and jurisdiction." (Hancock Mem. at 8.) In contrast, the parties in *Northwest Airlines* had signed a contract that contained both an express choice of law provision directing the application of U.S. law, and an arbitration clause providing for arbitration in accordance with the rules of the American Arbitration Association. 176 F. Supp. 2d at 938. In granting the requested injunction, the court recognized that if the defendant "is allowed to pursue its wrongful termination claim in Lebanon, NWA faces the precise risk it bargained and contracted to avoid." *Id.* at 941. Here, Hancock has not "contracted to avoid" arbitration in England; the Contracts are silent as to the situs of the arbitration, and *Northwest Airlines*, therefore, does not apply.

Put simply, Hancock is not entitled to interfere with foreign judicial proceedings where it cannot establish that it has a contractual "right" to avoid such a forum or that it would be harmed by the normal adjudication of the foreign proceedings. Even if Hancock's request for injunctive relief did not implicate issues of international comity, it would not be warranted under the circumstances of this case.

## II. Hancock has Not Met Its Burden of Demonstrating the Prerequisites for Injunctive Relief.

### A. Hancock is Not Likely to Succeed on the Merits as It Has Produced No Evidence of an Agreement as to the Location of the Arbitration.

The likelihood of success on the merits "is of primary importance" in assessing a request for a preliminary injunction. *Cablevision of Boston, Inc.*, 38 F. Supp. 2d at 53. With regard to each of the contracts at issue, Hancock claims that the "parties intended" that the arbitration take place within the United States subject to Massachusetts law based on various clauses in language

in purported contract wordings. (Hancock Mem. at 10-14.) However, Hancock concedes, as it must, that neither Sphere Drake nor its agent who purported to accept the contracts ever signed any of the contract wordings Hancock submits as "evidence" of the parties' agreements. (Amended Petition, ¶¶ 10, 23 and Petitioner's Exs. 1(c), 2(c), 3(c), 4(c), 5(c), 6(c), 8.) Indeed, there is no evidence to establish that Sphere Drake or Euro International Underwriting Limited ("EIU") *ever saw* these contract wordings. This is because they did not. (Bell Aff., ¶¶ 21-24, 28, 31, 55(1).) As Sphere Drake established in its Memorandum in Support of its Motion to Dismiss or Stay, the only documentary evidence of the purported contractual agreements between the parties is seven "slips" executed by Sphere Drake identifying salient terms and conditions and summarizing the risks to be reinsured. (Sphere Drake Mem. at 2, 9-11.) These slips were prepared by Stirling Cooke Reinsurance Broker Limited ("Stirling Cooke") on behalf of Hancock and were executed by EIU on behalf of Sphere Drake. (*Id.* at 6.) None of the slips contains a choice of law provision or a forum selection clause, or even mentions the state of Massachusetts. (Petitioner's Exs. 1(a), 2(a), 3(a), 4(a), 5(a), 6(a), 7(a).) Rather, each merely includes the statement "Arbitration Clause" and either "Service of Suit Clause U.S.A." or simply "Service of Suit Clause." (*Id.*)[5]

Undoubtedly recognizing that Sphere Drake did not sign any document containing an agreed-to location for arbitration on the seven disputed Contracts, Hancock claims that a "course of conduct" between the parties dictates that arbitration occur in Massachusetts. (Hancock Mem. at 14-15.) The parties have agreed to arbitrate certain contracts in England, and certain others in Massachusetts, by virtue of the express terms in the slips for those contracts. (Sphere Drake Mem. at 13.) The fact that there is *no* reference to a choice of law or venue in the seven slips in

---

[5] As Sphere Drake explained in its Memorandum, the existence of a service of suit clause does not preclude a party from initiating or transferring a proceeding to another jurisdiction. (Sphere Drake Mem. at 11-13.)

dispute means that there was no agreement on that issue, not that Sphere Drake thereby agreed to arbitrate in whatever jurisdiction Hancock today prefers.

Hancock goes on to suggest that the contracts that provide for arbitration in England reinsure LMX or other London market business, or the underlying business itself is expressly governed by English law, whereas those contracts that are to be arbitrated in the U.S. reinsure domestic U.S. business. (Hancock Mem. at 15-16.) However, as explained in Sphere Drake's Memorandum, this supposed "division of business" does not exist; indeed, Hancock has ceded LMX business to both the Facility Quota Share and the Quota Share Agreement, two of the seven contracts in dispute. (Sphere Drake Mem. at 14.) Moreover, the Quota Share Agreement was explicitly intended to replace the Hancock Per JEH Re Program (Program 1), which was subject to arbitration in England. (*Id.*) Finally, the JEH Re Centaur Contract (Program 24), which Hancock concedes is subject to arbitration in England (Bell Aff. Ex. 18 at p. 59), reinsures business written in the United States. (Sphere Drake Mem. at 14.)

Because Hancock has proffered no evidence that Sphere Drake agreed to arbitrate the Contracts in any particular location, it has not demonstrated a likelihood of success on its request for an order compelling Sphere Drake to arbitrate the contracts in Massachusetts. Injunctive relief is not warranted where the plaintiff has not established a "reasonable likelihood of success on the merits, the *sine qua non* for obtaining a preliminary injunction." *Cablevision of Boston*, 38 F. Supp. 2d at 62.

### B. Hancock Has Not Established Any "Bargained For Right" Facing an "Imminent Threat of Irreparable Harm" in the Absence of a Preliminary Injunction.

For the same reasons it fails to show a likelihood of success on the merits, Hancock fails to meet its burden on the second of the four requirements for preliminary injunctive relief.

9

Hancock claims that unless this Court enjoins Sphere Drake from proceedings in the U.K, Hancock "will lose the benefit of U.S. arbitration proceedings that it bargained for when it entered into the Seven Agreements." (Hancock Mem. at 17.) Because it had no "bargain" with Sphere Drake regarding the location of the arbitration, Hancock has no "right" subject to forfeiture. As noted above, the factors supporting issuance of an anti-suit injunction in *Northwest Airlines, Inc.* are not present here because the parties in this case did not agree to avoid litigation or arbitration in a foreign jurisdiction.

Hancock also complains of harm associated with submitting to a "foreign arbitration forum" whose procedures "are alien in almost every aspect to those under the FAA." (Hancock Mem. at 17.) Although it cites differing procedures for arbitrator selection, differing roles for the arbitrators, differing rules with respect to communication with arbitrators and the taking of discovery, differing standards of equity, and differing standards for appeal, Hancock gives no hint at to the substance of these "differences" between English and U.S. arbitration. (*Id.*) This is not surprising, as the allegedly "alien" arbitration procedures of English law, as described in the Supplemental Affidavit of Raymond G. Bell ("Supplemental Bell Affidavit" or "Supp. Bell Aff.")[6] present no barrier to Hancock's efforts to present the merits of its case in England. (Supp. Bell. Aff. at ¶¶ 3-10.) The English arbitration procedures, and the rules applied by English courts in enforcing those procedures, are designed to ensure a fair hearing before an impartial tribunal. (*Id.* at ¶ 7.) Additionally, U.S. courts have long recognized the ability of the English courts to adjudicate fairly the issues presented by the parties. *See, e.g., WIWA v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000) ("[w]e regard the British courts as exemplary in their fairness and commitment to the rule of law"); *Society of Lloyd's v. Ashenden* ,

---

[6] The Supplemental Bell Affidavit is submitted as Exhibit 3 to Sphere Drake's Memorandum in Support of its Motion to Dismiss or Stay.

10

233 F.3d 473, 476 (7th Cir. 2000) (noting that the English Courts "are highly regarded for impartiality, professionalism, and scrupulous regard for procedural rights").

Finally, where (as here) the parties have not designated the situs of the arbitration, the English Commercial Court presiding over Sphere Drake's pending claim has the power to determine the situs "having regard to the parties' agreement and all the relevant circumstances." (Supp. Bell Aff. at ¶ 5.) Thus, there is no harm to Hancock as it may continue to press its case for arbitration in Massachusetts in the English court proceedings.

### C. The Only Party Potentially Harmed by Enjoining the English Proceedings is Sphere Drake, Not Hancock.

As Hancock has failed to demonstrate a "bargained for contractual right" that could be affected by the proceedings in the U.K., it cannot establish that the "balance of hardships" favors entry of injunctive relief. To the contrary, Sphere Drake is the only party with the potential to suffer harm if the English proceedings are enjoined. As shown in the initial Bell Affidavit (submitted in support of Sphere Drake's original Motion to Dismiss or Stay), the witnesses relevant to the fraudulent placement of these contracts by Hancock's agent are located in England. (Bell Aff., ¶ 64.) Under Section 4 of the Federal Arbitration Act (9 U.S.C. § 4), the only place this Court can order the parties to arbitrate is within this District, where the arbitration panel would be unable to compel any of these key witnesses to testify. *See, e.g., Legion Ins. Co. v. John Hancock Ins. Co.*, No. MISC. 01-162, 2001 WL 1159852, at *1 (E.D. Pa. Sept. 5, 2001), *aff'd* 33 Fed. Appx. 26, 2002 WL 537652 (3d Cir. April 11, 2004). As a result, the only party potentially harmed by an injunction would be Sphere Drake, as it may be foreclosed from presenting live testimony from any of the witnesses with information concerning the fraud perpetrated by Hancock's agent, Stirling Cooke, in placing the Contracts. Hancock's haste to evade an English arbitral forum is no doubt fueled by its desire to keep the witnesses to its

11

agent's fraud away from the arbitration panel. The "balance of hardships" does not support the relief requested by Hancock, but rather dictates denial of Hancock's motion.

### D. The "Public Interest" Would Be Adversely Affected by Inappropriate Interference with the Proceedings in the English Commercial Court.

Hancock again relies on its purported right to enforce "bargained for arbitration" as the basis for its argument that "there is public interest in enforcing the Seven Agreements as intended between Sphere Drake and John Hancock by way of U.S. arbitrations subject to Massachusetts law and jurisdiction." (Hancock Mem. at 18.) But, there can be no "public interest" in enforcing a non-existent bargain. Indeed, as noted in Section I above, the need to preserve international comity provides a compelling public policy reason for a federal court to refrain from the kind of unwarranted intervention in foreign litigation and arbitration proceedings urged by Hancock in its motion.

Similarly, Hancock's claim that there is a "public interest" in having this Court preside over actions involving a Massachusetts company and its foreign reinsurer assumes too much. Neither of the statutes cited by Hancock – the Unauthorized Insurers' Process Act (M.G.L. c. 175B, §1 et seq.) or the Massachusetts long-arm statute (M.G.L. c. 223A, §3) – guarantees a Massachusetts company the "right" to litigate or arbitrate in its home forum. And, as Sphere Drake has noted above (footnote 4, *supra*), the fact that foreign reinsurers may be subject to service of process in Massachusetts does not preclude a Massachusetts court from sending the dispute to the appropriate forum for adjudication.

Hancock's claim that parallel English proceedings are designed only to "circumvent this Court's jurisdiction and irreparably deprive John Hancock of the forum for which it bargained" (Hancock Mem. at 19) suffers the same willful blindness to the fact that there was no agreement on the location of the arbitration. Given that Hancock has expressly agreed to submit certain of

its other putative reinsurance contracts with Sphere Drake to English arbitration panels (*see* Sphere Drake's Mem. at 7), there is no compelling public policy requiring that Hancock be allowed to dictate the arbitral forum on contracts to which no location has been agreed.

## Conclusion

For the foregoing reasons, Respondent Sphere Drake respectfully requests that this Court deny Hancock's Motion for a Temporary Restraining Order and Preliminary Injunction. Sphere Drake, instead, requests that this Court abstain from exercising its jurisdiction over Hancock's Verified Amended Petition to Compel Arbitration and either dismiss the Petition or stay it pending the outcome of the English proceedings.

SPHERE DRAKE INSURANCE LIMITED
By its attorneys,

*/s/ Andrea Peraner-Sweet*
Andrea Peraner-Sweet (BBO#550515)
Heather V. Baer (BBO#566746)
SALLY & FITCH
225 Franklin Street
Boston, MA 02110
(617) 542-5542

OF COUNSEL:
Harold C. Wheeler (Attorney I.D. No. 2996960)
Teresa Snider (Attorney I.D. No. 06210115)
Kevin J. O'Brien (Attorney I.D. No. 06193882)
Mark A. Schwartz (Attorney I.D. No. 6270580)
Butler, Rubin, Saltarelli & Boyd LLP
3 First National Plaza
70 West Madison Street, Suite 1800
Chicago, Illinois 60602
(312) 444-9660

W:\S\Sphere\Hancock\Pleadings\mem opp tro. final.doc

## CERTIFICATE OF SERVICE

I, Andrea Peraner-Sweet, hereby certify that a copy of this document was served upon all counsel of record by hand on February 4, 2004.

*/s/ Andrea Peraner-Sweet*
Andrea Peraner-Sweet