IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE INSURANCE COMPANY,     Civil Action No.
   Petitioner,    04 10181 MLW

and

SPHERE DRAKE INSURANCE LIMITED,
   Respondent.

---

**OPPOSITION OF JOHN HANCOCK LIFE INSURANCE COMPANY TO THE MOTION OF RESPONDENT SPHERE DRAKE INSURANCE LIMITED TO DISMISS OR, IN THE ALTERNATIVE, STAY THE VERIFIED AMENDED PETITION OF JOHN HANCOCK LIFE INSURANCE <u>COMPANY TO COMPEL ARBITRATION PROCEEDINGS</u>[1]**

## I.  INTRODUCTION

Petitioner, John Hancock Life Insurance Company ("John Hancock") respectfully submits this Opposition to the Motion Of Respondent Sphere Drake Insurance Limited To Dismiss Or, In The Alternative, Stay The Verified Amended Petition Of John Hancock Life Insurance Company To Compel Arbitration Proceedings ("Sphere Drake Motion to Dismiss").[2]

John Hancock filed a Verified Amended Petition to Compel Arbitration Proceedings ("Petition") under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, to require Sphere Drake Insurance Limited ("Sphere Drake") to submit to arbitration in the United States with respect to seven reinsurance agreements (the "Seven

---

[1] Although this Opposition is substantially similar to the Opposition of John Hancock to the Motion of Sphere Drake to Dismiss or, in the Alternative, Stay the Petition to Compel Arbitration Proceedings filed on February 11, 2004, it sets forth additional points for the Court's consideration.

[2] In addition to the Motion to Dismiss, Sphere Drake has filed a Memorandum of Law in Support of Sphere Drake's Motion To Dismiss or Stay John Hancock's Verified Amended Petition to Compel Arbitration Proceedings ("Sphere Drake Memo in Support".)

Agreements"). Section 4 of the FAA provides that the court "**shall** hear the parties…. [and] [i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed to summary trial thereof…." (emphasis added) (9 U.S.C. § 4.) Once there is a determination that there is an agreement to arbitrate, the court must order the parties to arbitrate within the district in which the court sits. *Id*.

Sphere Drake concedes this Court's personal and subject matter jurisdiction. (*See* Sphere Drake Memo in Support, p. 2-3.) Sphere Drake concedes that the disputes are governed by arbitration as reflected in the signed slips. (*See* Sphere Drake Memo in Support, p. 7.) Sphere Drake also concedes that the contracts contain U.S. "Service of Suit" clauses and acknowledges that under Section 4 of the FAA this Court can order the parties to arbitrate, albeit only in Massachusetts. (*See* Sphere Drake Memo in Support, p. 2 .) Given such admissions, the only appropriate action for the Court to take is to compel arbitration as mandated by Section 4 of the FAA. Sphere Drake asserts, nonetheless, that the cases should be arbitrated in England, not Massachusetts.

Subsequent to John Hancock filing its Petition with this Court, Sphere Drake filed a competing action in the United Kingdom. Sphere Drake now moves this Court to dismiss, or in the alternative, stay the Petition. It does not proffer evidence that these contracts reflect or intend an agreement to arbitrate in England. Rather, the only basis for its claim is that Massachusetts is an inconvenient forum and that the Court should, therefore, abstain and allow the English action to proceed.

Sphere Drake's Motion to Dismiss fails and indeed, John Hancock's claims for Massachusetts arbitrations prevail on the existing record. Section 4 of the FAA mandates

that where the Court finds an agreement to arbitrate, it must order arbitration in its district. Here, the parties agree that disputes regarding the Seven Agreements are to be arbitrated. The Service of Suit clauses which Sphere Drake admits are in the contracts, mandate that Sphere Drake will accede to the jurisdiction chosen by John Hancock for purposes of a motion to compel arbitration under Section 4 of the FAA. It follows that Sphere Drake has effectively conceded the Massachusetts venue where John Hancock has exercised its right to compel arbitration in Massachusetts. Moreover, under the mandatory language of Section 4 of the FAA, given Sphere Drake's agreement under the Service of Suit Clauses to submit to U.S. jurisdiction, this Court must rule in favor of John Hancock and cannot abstain in favor of an English Court which has no authority to compel arbitration in the United States.[3]

Although John Hancock submits that these points are dispositive, absent a ruling on that basis, Section 4 of the FAA instructs that the Court "shall" proceed to summary trial on the terms of the arbitration agreements. In that context, it is notable that the Sphere Drake Motion to Dismiss rests upon the incorrect assertion that there is no evidence of any intention to arbitrate in Massachusetts. To the contrary, there is significant evidence regarding the contractual law and jurisdiction selection under the Seven Contracts including, but not limited to, the Service of Suit clauses. There is also a consistent, established course of dealing between the parties which supports John Hancock's position.

Sphere Drake dedicates a significant portion of its papers to discussion of a separate English action to which neither John Hancock nor its underwriting agent were parties. Not only is the discussion of the *Euro Int'l Underwriting Ltd.* inflammatory and

---

[3] *See* Second King Aff. ¶ 6 and Petitioner's Exhibit ("Pet. Ex."), 41.

prejudicial, it is completely irrelevant to the limited issue before the Court, namely, whether Sphere Drake should be compelled to arbitrate disputes under the Seven Agreements in Massachusetts as mandated under Section 4 of the FAA. Compounding the offense, Sphere Drake's case is submitted through the improper affidavit of Sphere Drake's English solicitor, Raymond G. Bell ("Bell Affidavit"), which John Hancock has moved to strike.[4] These materials are irrelevant and have no bearing on the Court's sole consideration under Section 4 of the FAA of whether there is an agreement to arbitrate under the Seven Agreements.

Finally, Sphere Drake's arguments that it cannot or should not have to arbitrate its cases in Massachusetts are completely disingenuous. Sphere Drake has both litigated and arbitrated similar actions with other parties in the U.S. and will be doing so with John Hancock in Massachusetts with respect to at least thirteen other reinsurance agreements involving the same underlying U.S. workers' compensation carve out business. Sphere Drake is an active forum shopper within U.S. shores when it perceives an advantage in a U.S. forum. The Court should not be swayed by Sphere Drake's disingenuous arguments. Sphere Drake's Motion to Dismiss should be denied.

## II.   THE CONTRACTUAL EVIDENCE

**A.   The Twenty-Nine Contracts and the Parties' Course of Dealing.**

Sphere Drake and John Hancock are parties to twenty-nine contracts under which John Hancock is the retrocedent and Sphere Drake is the retrocessionaire (the "John

---

[4] On February 11, 2004, John Hancock filed a Motion to Strike both portions of the Bell Affidavit and Sphere Drake's discussion of *Sphere Drake Ins. Ltd. v. Euro Int'l Underwriting Ltd.*, Case No. 2000 Folio 249, 2003 WL 21729222 (Q.B. July 8, 2003) in its Memorandum in Support of its Motion to Dismiss John Hancock's Petition to Compel Arbitration Proceedings. John Hancock has also filed, along with these papers, an additional Motion to Strike portions of Sphere Drake's discussion of the *Euro Int'l Underwriting Ltd.* case in its Memo in Support.

Hancock/Sphere Drake Ceded Contracts" or the "Contracts").  The parties agree that nine Contracts specifically provide that England is the proper forum for arbitration.  (*See* Sphere Drake Memo in Support at p. 1 fn. 1 and p. 7.)  John Hancock has demanded U.S. arbitration proceedings with respect to the remaining twenty Contracts.  Of the twenty Contracts, Sphere Drake agrees that thirteen of the Contracts specifically provide that Massachusetts is the proper forum for arbitration.  *Id*.  The parties disagree as to the proper location of the arbitration proceedings or choice of law for the Seven Agreements.[5]

Similar to the thirteen Contracts for which the parties agree that Massachusetts is the proper forum for arbitration, the underlying business for the Seven Agreements is largely U.S. workers compensation carve-out business.  Additionally, as is the case with each of the thirteen Contracts for which it is undisputed that Massachusetts is the proper forum for arbitration, each of the Seven Agreements contains a Service of Suit clause.[6]  In contrast, none of the nine John Hancock/Sphere Drake Ceded Contracts under which it is undisputed that England is the proper forum for arbitration contain a Service of Suit clause.[7]  (*See* Second Welch Aff., ¶2 and Pet. Ex. 32-40.)  The reason for this is clear - a

---

[5]  John Hancock maintains that the contractual documentation evidences that the parties intended Massachusetts to be the location of arbitrations under the Seven Agreements.  (*See* Petition, ¶¶ 10-31.) Sphere Drake maintains that there is no indication of the parties' intent as to where the arbitrations should be located.  (*See* Sphere Drake Memo in Support, p. 2.)

[6] The contracts either specifically contain Service of Suit clauses or specifically follow the terms, clauses and conditions of underlying reinsurance which contains a Service of Suit clause.  (*See* Second Affidavit of Joseph P. Welch ("Second Welch Aff."), ¶2, and  Petitioner's Ex., 19(a), 20(a), 21(a), 22(a), 23(a), 24(a), 25(a), 26(a), 27(a), 28(a), 29(a), 30(a), and 31(a).)   The Seven Agreements contain U.S. Service of Suit clauses which are "included to obviate potential proble ms with obtaining jurisdiction over the parties." *Security Life Ins. Co. of America v. Hannover Life Reassurance Co. of America*, 167 F.Supp.2d 1086, 1088 (D.Minn. 2001), quoting *Old Dominion Ins. Co. v. Dependable Reinsurance Co*., 472 So.2d 1365, 1368 (Fla.App. 1985).

[7]  One slip provides for a Service of Suit Clause - if applicable.  (*See* Pet. Ex. 32.)  A service of suit clause which follows the terms of an underlying contract would not be applicable, however, because the

Service of Suit clause was not included in these agreements because it was not intended that John Hancock would be entitled to compel arbitration in the United States with respect to the business which was largely LMX[8] or other London Market business, rather than U.S. workers' compensation carve out business, or because the underlying business itself was expressly governed by English law.[9]

The consistent course of dealing between the parties confirms John Hancock's position that the parties intended that the arbitrations with respect to the Seven Agreements would occur in the United States. Viewed in this light, the executed slips, cover notes and unsigned wordings for the Seven Agreements consistently reflect both the intended jurisdiction, choice of law and Service of Suit provisions and further confirm the intent of the parties. (*See* Petition, ¶¶ 10-31.) Sphere Drake does not explain why the slips for the Seven Agreements contain U.S. Service of Suit clauses similar to the thirteen Contracts under which there is no dispute that Massachusetts is the proper location for arbitrations; nor does it explain why the nine Contracts, which specifically call for the arbitration forum to be England, do not contain Service of Suit clauses. The reason is obvious and the inescapable conclusion is that the choice of law and jurisdiction provisions are consistent with the country of origin of the underlying reinsured business,

---

underlying contract called for English law and jurisdiction.

[8] LMX is London market excess of loss reinsurance.

[9] Sphere Drake cites to the "Quota Share Facility Agreement," the "JEH Re Centaur Contract (Program 24)" and the "Quota Share Agreement" as examples of contracts which do not follow the general course of dealing described above. (*See* Sphere Drake Memo in Support p. 5.) These assertions are untrue. The Quota Share Facility Agreement contains a Service of Suit Clause and the underlying business is largely U.S. workers' compensation carve-out business. (*See* Pet. Ex. 7(a).) The JEH Re Centaur Contract (Program 24) is a facultative placement where the underlying business was expressly governed by English law and, therefore, the reinsurance was expressly governed by English law even though the contract reinsured U.S. business. (*See* Pet. Ex. 10(b).) The Quota Share Agreement contains a "Service of Suit Clause – USA" and is largely business other than LMX business. (*See* Pet. Ex. 6(a).) Accordingly, each of these contracts is consistent with the general course of dealing between the parties.

and the Service of Suit clauses guarantee that jurisdiction. The Seven Agreements are U.S. contracts and are governed by Massachusetts law and jurisdiction, as reflected in the signed slips, the covernotes and the unsigned wordings.

**B.  Sphere Drake Will Be Arbitrating All Relevant Issues In Massachusetts Under the Thirteen Contracts.**

The thirteen John Hancock/Sphere Drake Contracts which the parties agree are properly venued in Massachusetts will be arbitrated as thirteen separate arbitrations between John Hancock and Sphere Drake (unless consolidated) in Massachusetts. These thirteen Massachusetts arbitrations will involve the same type of U.S. workers' compensation carve-out business as that involved in the Seven Agreements and will involve similar, if not the identical, witnesses as described in the Sphere Drake Memo In Support. (*See* Sphere Drake Memo in Support pgs. 2, 7.) In each of the arbitrations, Sphere Drake is expected to assert similar if not the identical legal arguments and rely on the same evidence. (*See* Pet. Ex., 15.)

Under the circumstances, Sphere Drake cannot credibly assert that Massachusetts is not an appropriate site for arbitration of the Seven Agreements. (*See* Sphere Drake Memo in Support, pp. 2-3.) It will, in fact, be arbitrating the same issues with the same witnesses in Massachusetts. Sphere Drake's position is disingenuous and its position reflects transparent forum shopping.

### III.  LEGAL DISCUSSION

**A.  There Are No Grounds For Sphere Drake's Motion To Dismiss.**

Sphere Drake presents its case in the form of a Motion to Dismiss John Hancock's Petition. Sphere Drake makes no reference to Fed. R. Civ. P. 12(b)(6) as grounds for dismissal and in fact, in the circumstances of this case there is no basis for dismissing a

7

Petition under Section 4 of the FAA. Dismissal is unwarranted and unavailable to this Court because both parties agree there are seven contracts containing arbitration clauses and that the disputes between the parties are to be arbitrated. Section 4 requires the Court to rule on whether there is an arbitration clause and if there is a question of the existence or substance of an arbitration clause, "the court shall proceed to summary trial thereof."

The sole question before the Court pursuant to Section 4 of the FAA is whether there is an agreement to arbitrate under the Seven Agreements. In this case there is no dispute that all disputes with respect to the Seven Agreements "will be resolved in arbitration" "in accordance with the guidance of the slips themselves." (*See* Sphere Drake's Memo in Support at p. 8 and February 12, 2004 Hearing Transcript before the Honorable Mark L. Wolf United States District Judge ("February 12, 2004 Tran."), at p. 8.)[10] Therefore whether the agreements will or will not be considered void by an arbitration panel(s), the exclusive forum in which Sphere Drake intends to submit the claim, is superfluous and irrelevant to the Court's analysis under Section 4 of the FAA. (*See* February 12, 2004 Tran. at p. 22.) Accordingly, Section 4 of the FAA mandates that the Court compel arbitration proceedings in Massachusetts.

Nonetheless, if Sphere Drake's Motion to Dismiss is to be considered as one pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff. *Monohan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 988 (1st Cir. 1992). In its Petition, John Hancock has alleged that the terms of the Seven Agreements as well as the broader course of dealing between the parties, conclusively demonstrate that the Seven Agreements are U.S. contracts that are subject to Massachusetts law and jurisdiction. *See*

---

[10] Relevant portions of the February 12, 2004 Hearing Transcript have been attached hereto as Exhibit 1.

Petition, ¶¶ 7, 10-27.   Drawing all reasonable inferences in favor of John Hancock, John Hancock has sufficiently stated a viable claim that the parties' disputes regarding the Seven Agreements are subject to arbitration in the United States governed by Massachusetts law.  Under that standard, Sphere Drake's Motion to Dismiss must be denied.

B.  **This Court Must Exercise Its Jurisdiction Under The FAA And Cannot Abstain To An English Court Which Has No Authority To Compel Arbitration In The United States.**

1.  **Abstention Is Inappropriate In This Case.**

In its Memorandum in Support, Sphere Drake expressly concedes this Court's subject matter jurisdiction and power to compel arbitration in Massachusetts concerning the Seven Agreements.  Sphere Drake acknowledges that it has "agreed" to arbitrate and admits that under Section 4 of the FAA, this Court "can only" order the parties to arbitrate in Massachusetts.  (*See* Sphere Drake Memo In Support, p. 2.)  According to Sphere Drake, "the only issue before the court is where the arbitration should be held."  It invokes the doctrine of "international abstention" to urge this Court to dismiss John Hancock's Petition or to stay these proceedings pending the resolution of the English proceedings which it commenced *after* John Hancock filed its Petition. (Sphere Drake Memo in Support, p. 3.)

In support of its abstention argument, Sphere Drake incorrectly posits that when the Court limits its consideration to the slips, "Hancock has no evidence supporting its contention that Massachusetts is the appropriate forum for arbitrating disputes arising out of the contracts."  (Sphere Drake Memo in Support, p. 11.)  This argument is plainly

9

wrong because the slips contain Service of Suit clauses.[11]  As described below, these Service of Suit clauses establish the grounds upon which John Hancock can compel arbitration under the contracts in the United States.  Combined with John Hancock's Petition under Section 4 of the FAA, these clauses mandate this Court to exercise its jurisdiction to compel arbitration in Massachusetts and do not permit the Court to abstain to an English Court which has no authority to compel arbitration outside of England.

Service of suit provisions are typical in international reinsurance agreements and are "included to obviate potential problems with obtaining jurisdiction over the parties." *Security Life Ins. Co. of America v. Hannover Life Reassurance Co. of America,* 167 F.Supp.2d 1086, 1088 (D. Minn. 2001), *quoting Old Dominion Ins. Co. v. Dependable Reinsurance Co.*, 472 So.2d 1365, 1368 (Fla. App. 1985).  It is well established that Service of Suit clauses do not abridge agreements to arbitrate, but rather, compliment arbitration provisions by becoming the mechanism by which an aggrieved party can compel arbitration.  *Security Life Ins. Co. of America* at 1088-89, *citing McDermott Int. V. Lloyds Underwriters of London,* 944 F.2d 1199, 1205 (5th Cir. 1991).

Courts routinely read arbitration provisions in conjunction with Service of Suit clauses to ensure that the federal policy goals of favoring arbitration are upheld, while also giving credence to the negotiated provisions of commercial contracts.  *See Travelers Ins. Co. v. Keeling*, 1993 U.S. Dist. LEXIS 491, at *13-14 (S.D.N.Y. 1993)(underwriters would submit to any U.S. court chosen by insurer "in any lawsuit, whether it be to

---

[11] The Service of Suit reference in the slip for the Facility Quota Share Agreement does not expressly specify "U.S.A."  Nevertheless, by including a Service of Suit clause in that slip the parties recognized John Hancock's right to demand that Sphere Drake submit to arbitration.  Otherwise, there would be no need for such a clause as evidenced by the absence of a Service of Suit clause in the reinsurance contracts where English jurisdiction governs.  For an example of the standard Service of Suit Clause, (USA) wording found in the *Lloyd's Underwriters' Non-Marine Association Limited [NMA] U.S.A. and Canada Non-Marine Policy Forms and Wordings.  (See* Second King Aff., ¶ 9.)

10

determine the arbitrable nature of the dispute, to confirm an arbitration award, to compel arbitration…") *See also Credit General Ins. Co. v. John Hancock Mutual Life Ins. Co.*, 2000 U.S.Dist. LEXIS 9009, at *15-16 (N.D.Ohio 2000)(granting John Hancock's motion to compel arbitration, the court stated both "logic and simplicity" dictate arbitration provision given effect together with service of suit clause, including for purpose of compelling arbitration through chosen court of competent jurisdiction.)

In this case, Sphere Drake admits the validity and binding nature of the slips and concedes that all of the slips, with the exception of the facility quota share agreement, have service of suit clauses that provide: "Service of Suit Clause – U.S.A." (Sphere Drake Memo in Support, p. 11.)[12] These Service of Suit clauses reflect the unequivocal bargained for agreement between the parties that either party can petition to compel arbitration or enforce an arbitration award in the United States. *Security Life Ins. Co. of America* at 1088-89 (D.Minn. 2001); *Travelers Ins. Co. v. Keeling*, 1993 U.S. Dist. LEXIS 491, at *13-14 (S.D.N.Y. 1993). The clauses evidence an unequivocal intent by Sphere Drake to submit to the jurisdiction of U.S. courts.

John Hancock has invoked its right to petition this Court to compel arbitration under Section 4 of the FAA in the District of Massachusetts. The John Hancock Petition is appropriately brought in this district because Massachusetts is John Hancock's principal place of business. Under Section 4 of the FAA, Congress mandates this Court to exercise its jurisdiction over disputes involving arbitrations to uphold the clear intent of Congress that arbitration clauses are to be enforced. *Dean Witter Reynolds, Inc., v.*

---

[12] As noted above, the inclusion of a Service of Suit Clause (even if it does not specifically state U.S.A.) in the slip for the facility quota share recognizes John Hancock's right to demand that Sphere Drake submit to arbitration in the United States. Otherwise, there would be no need for such a clause as evidenced by the absence of a Service of Suit clause in the reinsurance contracts where English jurisdiction governs.

11

*Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241 (1985) (the FAA "leaves no place for the exercise of discretion by a District Court, but instead mandates that District Court shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.")  Because there is no question or disagreement between the parties as to the existence of the arbitration agreements the Court must compel arbitration under the FAA.  As John Hancock has properly invoked this Court's jurisdiction under the FAA, this Court must exercise its jurisdiction and has no authority to abstain to an English court having no jurisdiction to compel arbitration in the United States.  (*See* Pet. Ex. 41.)

      **2.**      **This Court Should Exercise Its Jurisdiction.**

When a federal court is asked to abstain in favor of a parallel litigation pending in another court, the presumption is against abstention.  *Allendale Mut. Ins. Co. v. Factory Mut. Int'l*, 10 F.3d 425, 430 (7th Cir. 1993) citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976); and *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359, 105 L. Ed. 2d 298, 109 S. Ct. 2506 (1989).  The general rule is "that a federal court has a duty to exercise the jurisdiction that Congress has given it."  *Allendale Mut. Ins. Co.*, 10 F.3d at 430.  "Traditionally federal courts have shown reluctance to decline jurisdiction in the face of this 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them.'"  *Goldhammer v. Dunkin' Donuts*, Inc., 59 F.Supp.2d 248, 251 (D. Mass. 1999), *quoting Colorado River Water Conservation Dist.* at 817.

The FAA requires this Court to exercise its jurisdiction with respect to John Hancock's Petition to compel arbitration.  Specifically, Section 4 provides that following service and notice of a petition to compel arbitration that: "The court *shall* hear the

parties, and upon being satisfied that the making of the agreement for arbitration… the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C § 4, (emphasis added). When Congress employs the word "shall" it often means that "Congress has imposed a mandatory duty upon the subject of the command." *United States v. Mass. Water Res. Auth.*, 256 F.3d 36, 51 (1st Cir. 2001), *Citing Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999). In contrast, "The word 'may,' when used in a statute, usually implies some degree of discretion." *United States v. Rodgers*, 461 U.S. 677, 706, 103 S. Ct. 2132 (1983).

As the First Circuit has held, Section 4 of the FAA "requires that a court, 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" *KKW Enters. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50 (1st Cir. 1999), *quoting* 9 U.S.C. § 4. The venue for such an arbitration is the district in which the Court sits. 9 U.S.C. §4. There is no dispute that the parties are to arbitrate their disputes in accordance with the slips. Therefore, under the mandate of the FAA, this Court must act on John Hancock's Petition and may not abstain in favor of the action filed by Sphere Drake in England.

In its Memorandum In Support, Sphere Drake asserts that John Hancock "appears" to take the position that a service of suit clause is a mandatory forum selection clause. (Sphere Drake Memo in Support, pgs. 11-12.) This mischaracterizes John Hancock's argument that the Service of Suit clause compels Sphere Drake to submit to the jurisdiction of a United States Court and, having done so, John Hancock can compel

Sphere Drake to arbitrate in this district pursuant to Section 4 of the FAA.  In other words, it is the operation of the Service of Suit clause, in conjunction with the mandatory provisions of Section 4 of the FAA, that dictate the proper venue for arbitration under the circumstances of this case.

In its Memo in Support, Sphere Drake incorrectly relies heavily on *Goldhammer v. Dunkin' Donuts*, Inc., 59 F.Supp.2d 248 (D. Mass. 1999) in support of its argument that this Court has the power to stay and abstain John Hancock's Petition in favor of the parallel action filed by Sphere Drake in an English Court.  (*See* Sphere Drake Memo in Support, p. 15.)   The *Goldhammer* case is completely distinguishable and provides no support for Sphere Drake's argument.

First, *Goldhammer* does not involve a petition to compel arbitration under Section 4 of the FAA.  Second, in *Goldhammer* the parallel English action was filed one year before the second action was commenced in the District Court in Massachusetts.  In denying a motion to dismiss but granting a stay of the Massachusetts action, the *Goldhammer* court employed the following six factor balancing test:  (1) similarity of parties and issues involved in the foreign litigation; (2) the promotion of judicial efficiency; (3) adequacy of relief available in the alternative forum; (4) issues of fairness to and convenience of the parties, counsel, and witnesses; (5) the possibility of prejudice to any of the parties; and (6) the temporal sequence of the filing of the actions. *Id*. at 252-253 (citations omitted).  Discussing these six factors, the court found that the critical factor in the circumstances of that case was the temporal sequence of the filing of the actions.  The court noted that "[t]he sequence of these actions heavily favors a stay" of the Massachusetts action because the lawsuit in England had been filed one year prior to

the action in the Massachusetts District Court, discovery was ongoing and the English action was proceeding to trial. *Id*. at 255, (citations omitted). None of these factors are present in this case and *Goldhammer* provides no support for Sphere Drake's argument that this Court should stay John Hancock's Petition and abstain in favor of Sphere Drake's English action.

In support of its argument that the Service of Suit clause is inconsequential and permits a party to submit a dispute to a foreign tribunal, Sphere Drake cites *Brooke Group Ltd. V. JCH Syndicate 488*, 87 N.Y.2d 530, 663 N.E.2d 635 (1996). (Sphere Drake Memo in Support, pgs. 12-13.) This case is not on point and provides no support to Sphere Drake as it involved a civil action for damages and not a petition to compel arbitration as in the instant case. In *Brooke Group,* the plaintiff sought to use the Service of Suit clause as "an alternative to arbitration" to allow the action to be litigated and not arbitrated. The defendant responded to the action by initiating arbitration in London and moving to dismiss the New York litigation on forum non conveniens grounds. *Id.* at 533.

Moreover, unlike *Brooks Group*, in this case Sphere Drake has not made a claim that John Hancock's Petition must be dismissed on forum non conveniens grounds.[13] The New York Court of Appeals dismissed the *Brooke Group* case on forum non conveniens grounds because the parties were both foreign corporations, the insurance was issued in England, and the covered property was in Russia. *Id*., at 533. The Court found that dismissal on forum non conveniens grounds was proper because there was no

---

[13] The argument that has been asserted by Sphere Drake is that dismissal or a stay is warranted on grounds of international abstention. For the same reasons that abstention is not warranted, a forum non conveniens claim by Sphere Drake would be unfounded because Sphere Drake has consented to and will be arbitrating thirteen agreements with John Hancock in Massachusetts. No additional burden would be imposed on Sphere Drake by requiring it to arbitrate the seven additional agreements at issue in John Hancock's Petition to Compel in Massachusetts.

15

connection to the New York forum other than the lawsuit. In this case, John Hancock has selected a forum that is related to the dispute. John Hancock is a Massachusetts corporation which has invoked its contractual right to bring Sphere Drake into its domestic forum for purposes of compelling arbitration.

  C.    **Sphere Drake's Claim That These Disputes Must Be Litigated Or Arbitrated In England Is Completely Inconsistent With Its Prior Positions and Actions.**

As noted above, Sphere Drake and John Hancock will be arbitrating thirteen of the John Hancock/Sphere Drake ceded contracts in Massachusetts under Massachusetts law. In a transparent exercise in forum shopping, Sphere Drake argues that with respect to the seven agreements at issue in this case "England is the only appropriate place for the arbitration to proceed." (Sphere Drake's Memo in Support at p. 2-3.). This position is disingenuous as it is contrary to positions Sphere Drake has taken in previous litigation in the United States involving the same business, and is inconsistent with recent arbitration(s) in the United States in which Sphere Drake has participated with respect to the same underlying business. Sphere Drake has repeatedly availed itself of the jurisdiction of the courts in the United States when it perceived an advantage in doing so, but reverses course when it sees advantage in another forum. Sphere Drake's shifting forum positions are clear evidence that England is not the only appropriate forum for arbitration as Sphere Drake claims.

    1.    **Odyssey Re Action in United States District Court for the Southern District of New York.**

In 1999, Sphere Drake (formerly known as Odyssey Re (London) Limited) filed an action in the United States District Court for the Southern District of New York against "a group of British and Bermudian insurance and reinsurance companies, their

subsidiaries, and a number of individual principals of those companies" (the "Odyssey Re Action").  *See* Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd. et al., 85 F.Supp.2d 282, 286 (S.D.N.Y. 2000).  Sphere Drake brought the Odyssey Re Action in New York against its own English underwriting agent, the English reinsurance intermediary and other individual defendants.  Sphere Drake alleged that the "defendants engaged in an international conspiracy to fraudulently induce [Sphere Drake] to reinsure drastically unprofitable worker's compensation policies."  *Id*.  The Odyssey Re Action involved the same underlying business and some, if not all, of the Seven Agreements at issue before the Court.  (*See* Second King Aff., ¶10 and Pet. Ex. 43 ¶¶ 61-63 and 74.)

Unlike the current action, where John Hancock, a Massachusetts corporation, is seeking to avail itself of its domestic forum, the Odyssey Re Action involved a dispute between British and Bermudian companies (with the sole American company being dismissed.)  *See Odyssey Re (London) Ltd.*, 85 F.Supp. 2d at 309.  Nonetheless, Sphere Drake filed its suit in the federal district court in New York and repeatedly argued that it was properly before the U.S. Court.  Responding to motions to dismiss by various defendants under the doctrine of forum non conveniens, Sphere Drake argued: [A]lthough some parties and documents are located in London and others in Bermuda, this dispute . . . [is] centered in and arise[s] from the workers' compensation insurance and reinsurance market in the United States." (*See* Second King Aff. ¶11 and Pet. Ex., 44 p.28.)  Moreover, Sphere Drake highlighted its "significant connection to the United States" stating that Sphere Drake "is a licensed excess and surplus lines insurer in 47 states . . . and is accredited and trusteed in 23 states." (*See* Second King Aff., ¶ 11 and Pet. Ex., 44 p. 31.)  Critically, Sphere Drake argued that the potential of witnesses being

unavailable in London and Bermuda was immaterial.  With respect to the availability of witnesses, Sphere Drake argued as follows:

> [T]here is a distinction between "unwilling" witnesses, as to whom the question is whether they can be compelled to appear, and "willing" witnesses, as to whom the question is the cost associated with having them appear.
>
> The SCB Defendants have failed to produce evidence, or even to allege, that particular people would be unwilling to testify . . . nor have they offered any suggestion as to what this testimony might be and whether their inability to obtain it would be prejudicial to them.  Moreover, the testimony of various witnesses probably can be secured pursuant to letters rogatory, perhaps even in the manner customary in U.S. courts.

(citations omitted)  (*See* Second King Aff., ¶11 and Pet. Ex. 44, p. 32.)

In response to potential public interest factors that may have been an issue, Sphere Drake asserted that there are substantial connections to the United States with regard to the underlying workers' compensation business.  (*See* Second King Aff., ¶11 and Pet. Ex. 44, p. 34.)

The inconsistencies of Sphere Drake's present arguments are glaring.  Where Sphere Drake initiates an action with respect to U.S. workers' compensation business in the United States involving the same business, as that at issue in the New York action, it argued that connections to the United States are stronger and clearly outweigh those to England.  Sphere Drake also argued that witness availability was of little to no concern.  Now that a Massachusetts corporation has selected its domestic forum, however, Sphere Drake reverses course and takes the opposite position.  The only consistent aspect of Sphere Drakes' positions is that it will shop for the forum it believes is most beneficial to its case.

### 2. Sphere Drake v. Clarendon National Insurance Company Commenced by Sphere Drake in the Southern District of New York and the Subsequent Arbitration.

In 2000, Sphere Drake brought an action against Clarendon National Insurance Company in the Southern District of New York seeking an order of the court declaring certain reinsurance contracts void ("Clarendon Action"). (*See* Second King Aff., ¶ 12 and Pet. Ex. 45, ¶3.) As in this action, the Clarendon Action concerned underlying U.S. workers' compensation carve-out business and issues of agent authority. *Id*. (*See* Second King Aff., ¶ 12 and Pet. Ex. 45, ¶¶ 3 and 8.)

Even though the action concerned the same relevant witnesses that Sphere Drake now claims may not be available if it is compelled to arbitrate in Massachusetts, Sphere Drake elected to institute an action in the Southern District of New York. This is another clear example of Sphere Drake availing itself of the courts of the United States when it feels it is to its advantage. Again, in this instance, where John Hancock has initiated the action in its domestic forum, Sphere Drake has determined that even though the same issues and witnesses will be involved, Massachusetts cannot be an appropriate locale for arbitrations. Sphere Drake's argument is untenable.

Indeed, in the Clarendon Action, the court ordered Sphere Drake to proceed to arbitration. (*See* Second King Aff., ¶12 and Pet. Ex. 45, ¶¶ 4, 6 and 8.) Even though purportedly relevant witnesses were located in England, it appears there was no problem with witnesses availability. *Id.* In fact, it appears Sphere Drake did not even use live witnesses before the arbitration panel, instead submitting its case on summary judgment on the basis that the English Judgment in the *Euro Int'l Underwriting Ltd.* action collaterally estopped Clarendon from challenging Sphere Drake's claims. (*See* Second

King Aff., ¶12 and Pet. Ex. 45, ¶ 16.)

These are clear examples of Sphere Drake availing itself of the jurisdiction of the courts of the United States.[14] Sphere Drake's extensive use of the United States judicial system with respect to issues and business similar to those in this action renders its claim that England is "the only appropriate place for arbitration to proceed" suspect and unavailing. Sphere Drake has not stated or provided any evidence that any of the witnesses are unavailable or unwilling to testify.[15] In fact, Sphere Drake has not represented that it actually intends to call any witnesses. Sphere Drake's witness availability claim is a red herring as there is a letter rogatory mechanism through which the parties can seek to obtain witness testimony. Accordingly, the Court should deny Sphere Drake's Motion to Dismiss.

## IV.   CONCLUSION

For all of the above reasons, John Hancock respectfully requests the Court deny Sphere Drake's Motion to Dismiss or In The Alternative to Stay the Verified Amended Petition to Compel Arbitration.

Respectfully Submitted,

Of Counsel
David A. Silva, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
(212) 804-4200
March 10, 2004

Mitchell S. King, Esq. BBO# 272810
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

---

[14] *See also*, *Sphere Drake Ins. Ltd. v. American Life Ins. Co.*, 2003 U.S. Dist LEXIS 23533, *2 (N.D. Ill. September 22, 2003) (Underlying dispute concerned whether Sphere Drake was liable to an Illinois corporation on a retrocession insurance policy.

[15] As stated above, Sphere Drake has also not addressed the fact that there are thirteen additional arbitrations between Sphere Drake and John Hancock that will take place in Massachusetts with respect to the same issues and requiring the same evidence that will be necessary in the arbitrations with respect to the Seven Agreements.