IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings Between

JOHN HANCOCK LIFE INSURANCE COMPANY,
    Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

Civil Action No. 04 10181 MLW

---

### SPHERE DRAKE'S MEMORANDUM OF LAW IN OPPOSITION TO HANCOCK'S MOTION TO STRIKE PORTIONS OF SPHERE DRAKE'S SUPPORTING MEMORANDUM AND THE AFFIDAVIT OF RAYMOND GORDON BELL WITH EXHIBITS

John Hancock Life Insurance Company ("Hancock") has moved this Court to strike certain portions of Sphere Drake Insurance Limited's ("Sphere Drake's") Memorandum in Support of its Motion to Dismiss ("Sphere Drake's Memorandum in Support"), certain paragraphs of the Affidavit of Raymond Gordon Bell ("Bell Affidavit" or "Bell Aff."), and certain exhibits Sphere Drake submitted in support of its Motion to Dismiss. None of Hancock's arguments in favor of its motion to strike has any merit, and the motion should be denied in its entirety.

**I.  Rule 12(f) of the Federal Rules of Civil Procedure Does Not Provide Any Support for Hancock's Motion to Strike.**

Hancock relies on Rule 12(f) of the Federal Rules of Civil Procedure to support its motion to strike all portions of Sphere Drake's Memorandum in Support that refer to the litigation in England between Sphere Drake and its agent EIU and Hancock's agent Stirling

Cooke (the "English Action").[1] (Memorandum in Support of Hancock's Motion to Strike ("Hancock's Memorandum in Support"), p. 2.) However, by its terms, Rule 12(f) applies only to pleadings. Sphere Drake's Memorandum in Support is not a pleading. *See* Fed. R. Civ. P. 7(a) (limiting pleadings to complaints, answers, replies to counterclaims, answers to cross-claims, third-party complaints, and third-party answers).

Courts strictly construe the "pleading" language in Rule 12(f), and consistently deny motions to strike documents that are not pleadings under Rule 7(a). In *Stow v. Peterson*, 204 F. Supp. 2d 40, 43 n.2 (D. Me. 2002), for example, the plaintiff moved to strike under Rule 12(f) a report upon which the defendant had relied in his reply statement of material facts. The court denied the motion to strike, reasoning:

> Rule 12(f) applies only to pleadings. *See Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 868 (1st Cir. 1997) (noting that Rule 12(f) has no applicability to motions made in pursuit of or in opposition to summary judgment). Neither the statement in the Grimes Affidavit nor the information from the NEFCO report was made in a pleading. Consequently, Rule 12(f) is inapplicable and Plaintiffs [sic] Motion to Strike will be denied.

*Stow*, 204 F. Supp. 2d at 43 n.2; *see also Pilgrim*, 118 F.3d at 868 ("Rule 12(f) applies only to pleadings and has no applicability to motions made in pursuit of or in opposition to summary judgment"); *Phinney v. Paulshock*, 181 F.R.D. 185, 207 (D. N.H. 1998) ("Plaintiffs' allegations against defendants and Attorney Bouchard were not made in a pleading. Consequently, Rule 12(f) is inapplicable to this case.").

---

[1] After hearing nearly a year of testimony in the English Action, Lord Justice Thomas, applying the criminal standard of proof, found that Hancock's agent committed fraud against Sphere Drake in placing the Contracts presently in issue. A copy of the judgment Lord Justice Thomas rendered in the English Action (the " English Judgment") was submitted to the Court on February 11, 2004.

Hancock's reliance on Rule 12(f) in support of its motion to strike portions of Sphere Drake's Memorandum in Support is therefore misplaced, and the Court should deny Hancock's motion to strike as it relates to Sphere Drake's Memorandum in Support.

## II. References to the English Action Are Relevant and Are Not "Immaterial" or "Inflammatory."

Hancock maintains that all references in Sphere Drake's Memorandum in Support and in the Bell Affidavit relating to the English Action, as well as all documents relating to the English Action, must be stricken because "they have absolutely no bearing on this Court's consideration of the Petition and only serve to inflame and obscure the issues before the Court." (Hancock's Memorandum in Support, p. 4.) Hancock is mistaken in its characterization of the English Action as irrelevant.

To succeed in its motion to strike, Hancock bears the burden of establishing the inadmissibility of each statement and document to which it objects. *See, e.g., AT&T Co. v. Shared Communication Services of 1800-80 JFK Blvd., Inc.*, No. 93-CV-3492, 1995 WL 555868, at *3 (E.D. Pa. Sept. 14, 1995) (attached as Exhibit A). Motions to strike "are generally disfavored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Demoulas v. Sullivan*, No. 91-12533, 1993 WL 81500, at *6 (D. Mass. Feb. 26, 1993) (quotation marks omitted) (attached as Exhibit B). Moreover, "'an affidavit should be excluded only when its irrelevance is clear.'" *Lewis v. New Mexico Dep't of Health*, 275 F. Supp. 2d 1319, 1328 (D. N.M. 2003) (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2748 (3d ed. 1998)). Here, Hancock has established neither that references to the English Action

may cause it prejudice,[2] nor that those references are clearly irrelevant. In fact, the portions of the English Judgment to which Sphere Drake has cited provide information that is directly relevant to the issue before this Court – the appropriate situs for the arbitration. *See, e.g., Lewis*, 275 F. Supp. 2d at 1330 (denying motion to strike where affidavit contained "relevant background information").

Sphere Drake maintains that the arbitration should be held in England because the negotiations and fraudulent placement of the Contracts took place in England, and because every witness with relevant information concerning the formation of the putative contracts and the Stirling Cooke-EIU fraud resides in England. The collusion between Stirling Cooke and EIU, as found by Lord Justice Thomas, is at the heart of Sphere Drake's defense to enforceability of the Contracts, and is clearly relevant to the situs issue before the Court. The English Judgment contains detailed factual findings concerning the placement of each of the Contracts and the collusion between Stirling Cooke and EIU. (*See* English Judgment, Part I, ¶¶ 1552-1684; Part II, ¶¶ 165-213, 606-655.) Lord Justice Thomas specifically found that:

- Negotiation and placement of the Specific Realm Contracts (Program 9) took place in London between EIU and Stirling Cooke (English Judgment, Part I, ¶¶ 1174-79);

- EIU's written confirmation of the Specific Realm Contracts (Program 9) took place at EIU's office in London (*Id.*, Part I, ¶ 1197);

- Negotiation and placement of the 95% Facility Quota Share Agreement (Program 28) took place at Stirling Cooke's office in London (*Id.*, Part I, ¶¶ 1215-16);

- Negotiation and placement of the Quota Share Agreement (Program 33) took place at EIU's office in London (*Id.*, Part I, ¶¶ 1572, 1579);

---

[2] Hancock's bald assertion that references to the English Action are "inflammatory" does not make it so. Indeed, Hancock has offered nothing to establish any prejudice whatsoever, and has thus utterly failed to carry its burden. *See, e.g., E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003) (quotation marks omitted) ("party moving to strike has the burden of showing that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial").

4

- Stirling Cooke's and EIU's attempted cover up of their wrongdoing concerning the Quota Share Agreement (Program 33) took place in England (*Id.* Part I, ¶¶ 1613-29, 1680-84).

These findings provide relevant information that will help the Court determine whether England – where all of the key witnesses reside and where the fraudulent placement of each of the Contracts took place – is the proper location for the litigation over the arbitration situs and for the arbitration itself. Hancock's objection to references to the English Judgment on relevance grounds has no merit, and the Court should deny Hancock's motion to strike those references. *See, e.g., Lewis*, 275 F. Supp. 2d at 1330.

### III. The Statements in the Bell Affidavit Are Based on Personal Knowledge.

Hancock also maintains that portions of the Bell Affidavit that are based on Bell's review of documents do not satisfy Rule 56(e)'s personal knowledge requirement. (Hancock's Memorandum in Support, p. 4.) The law is clearly to the contrary. *See, e.g., In re Real Estate Assoc. Ltd. P'Ship Litigation*, No. 98-7035, 2002 WL 31027557, at *1 (C.D. Cal. 2002) (attached as Exhibit C) ("personal knowledge can be based on a review of documents"); *Vote v. U.S.*, 753 F. Supp. 866, 868 (D. Nev. 1990) ("Vahe's affidavit complies with Rule 56(e) in that it is based upon her personal familiarity with plaintiff's case and her review of plaintiff's file"). Indeed, Hancock's own authority defeats its contention that Bell's review of the documents to which he referred in his affidavit is insufficient to establish his personal knowledge. *See Washington Cent. R.R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993) (cited in Hancock's Memorandum in Support at 3) ("Personal knowledge . . . is not strictly limited to activities in which the declarant has personally participated. As a case which plaintiff cites clearly demonstrates, personal knowledge can come from review of the contents of files and records. . . . Gill has personal knowledge and that knowledge comes from his review of the records and files.").

Hancock's characterization of Bell's assertions as speculation is equally spurious. The contents of the affidavit make clear that Bell's assertions are based not on speculation, but rather, on his personal knowledge and his review of the documents produced to Sphere Drake by EIU and Stirling Cooke. For example, Bell asserted in Paragraph 22 of the Bell Affidavit that "[n]either the disclosure by EIU nor SCB [Stirling Cooke] in the commercial court proceedings included any draft wording for the contracts with Hancock under programme 9. . . ." (Bell Aff., ¶ 22.) Having reviewed the documents produced to Sphere Drake by EIU and Stirling Cooke, Bell was competent to make such an assertion in his affidavit.

The same can be said for all of the paragraphs of the Bell Affidavit to which Hancock has objected on "personal knowledge" grounds. (*See* Bell Aff. ¶ 21 (asserting, based on review of files, that there was no evidence that full contract wording for the Specific Realm Contracts was ever presented to or agreed by Sphere Drake or its agents); *id.*, ¶ 23 (asserting, based on review of files, that Stirling Cooke failed to disclose draft contract wordings for the Specific Realm Contracts, which would indicate that no such documents existed); *id.*, ¶ 24 (asserting, based on review of files, that EIU did not produce draft wordings for the Specific Realm Contracts in prior "delivery up" action); *id.*, ¶ 28 (asserting, based on review of files, that there was no evidence that full contract wording for the Facility Quota Share Agreement was ever presented to or agreed by Sphere Drake or its agents); *id.*, ¶ 31 (asserting, based on review of files, that there was no evidence that full contract wording for the Quota Share Agreement was ever presented to or agreed by Sphere Drake or its agents); *id.*, ¶ 55(1) (asserting, based on review of files, that there was no evidence that full contract wording for any of the Contracts was ever presented to or agreed by Sphere Drake or its agents); *id.*, ¶ 64 (asserting that the Contracts were placed by

London brokers (Stirling Cooke) in London with London underwriting agents (EIU) purporting to bind a London insurance company (Sphere Drake)).)

Bell's review of the documents produced by Stirling Cooke and EIU in the English Action establish his competence to testify as to the assertions in each of these paragraphs of the Bell Affidavit. Hancock's argument that Bell lacked personal knowledge as to these assertions should be rejected.

## IV. The Portions of the Bell Affidavit and Exhibits Relating to English Law and London Practice Are Proper.

Hancock argues that the assertions in the Bell Affidavit concerning English law are not "appropriate in an [sic] fact witness' affidavit." (Hancock Memorandum in Support, p. 5.) This contention ignores the liberal approach to proving foreign law provided for in the Federal Rules of Civil Procedure. Rule 44.1 states, "The court, in determining foreign law, may consider *any relevant material or source*, including testimony, whether or not submitted by a party or admissible under the Federal rules of Evidence." Fed. R. Civ. P. 44.1 (emphasis added). Indeed, affidavits by foreign attorneys "are an acceptable form of proof in determining issues of foreign law." *Whallon v. Lynn*, 230 F.3d 450, 458 (1st Cir. 2000).

Indeed, Hancock's position on this point is particularly baffling in light of the Second Affidavit of Mitchell S. King, in which Hancock's *U.S. counsel* states his understanding as to certain legal conclusions regarding English law based on advice he received from Hancock's English counsel. (Second Affidavit of Mitchell S. King, ¶¶ 5-7.) Unlike Sphere Drake's English counsel Bell, King does not even have personal knowledge regarding the legal conclusions asserted in the Second King Affidavit.[3] (*Id.*) Hancock cannot have things both ways – either

---

[3] *See* February 12, 2004 Transcript of Proceedings, p. 25, wherein King admitted that he is not an expert on English law.

7

foreign law can be established through affidavits (as the Federal Rules and cases provide), or it cannot. Hancock's attempt to introduce conclusions of English law through its U.S. counsel (who has no personal knowledge concerning English law) while moving to strike similar statements of Sphere Drake's English counsel cannot be countenanced.

With no explanation, Hancock also objects to Bell's inclusion of the Lloyd's of London Fact Sheet at Exhibit B(20) to the Bell Affidavit on the ground that the document is either "argumentative" or that it "state[s] legal conclusions." (Hancock Memorandum in Support, p. 5.) Whether Hancock's position is that the Fact Sheet is "argumentative," or that it "state[s] legal conclusions" – and Hancock has not bothered to indicate which – the position is incorrect. And, having failed to support this bald assertion with any supporting argument or explication, Hancock has failed to carry its burden for striking this document. Moreover, Hancock itself has submitted, through the Second King Affidavit, a "true copy of the standard Service of Suit Clause (U.S.A.) wording found in the <u>Lloyd's Underwriters' Non-Marine Association Limited [NMA] U.S.A. and Canada Non-Marine Policy Forms and Wordings</u> form book." (Second Affidavit of Mitchell S. King, ¶ 9.) Hancock's attempt to introduce certain Lloyd's wordings, while at the same time moving to strike the Lloyd's Fact Sheet, is blatantly inconsistent.

Also, in stark contrast to the Bell Affidavit submitted by Sphere Drake, Hancock improperly attempts to introduce conclusions of substantive law that fall outside the context of Rule 44.1, through the Affidavit of Joseph P. Welch. The Welch Affidavit is replete with statements in which Welch describes the documents "evidencing [the] agreement" between the parties. (Welch Affidavit, ¶ 2(a)-(f).) These statements, which go to the issue of contract formation, are clearly legal conclusions. *See Cardente v. Fleet Bank of Maine, Inc.*, 796 F. Supp. 603, 610 n.12 (D. Me. 1992) ("allegation that the loan documents form a "single contract" is a

legal conclusion"); *see also Lambert v. Kysar*, 983 F.2d 1110, 1115 n.4 (1st Cir. 1993) ("As the evidentiary foundation for determining the formation of the parties' contract was either undisputed or consisted of writings, Lambert's present challenge raises issues of law for the court."). As Hancock concedes, "an affiant's statements of legal opinion or conclusion do not constitute facts under Rule 56(e) and may not be considered by the Court." (Hancock's Memorandum in Support, p. 3.)

The portions of the Bell Affidavit and exhibits identified by Hancock in Section II(C) of its Memorandum in Support were all properly submitted to this Court in aid of its determination of issues involving English law. Accordingly, the Court should deny Hancock's motion to dismiss these parts of Sphere Drake's submission.

### V.   Bell Is Qualified to Attest to the Accuracy of the Documents to Which He Refers in His Affidavit.

Hancock provides no explanation to support its incorrect assertion that "Mr. Bell is not qualified to attest to the accuracy of the contractual documents submitted." (Hancock Memorandum in Support, p. 5.) To the extent Hancock's position is that Bell lacks personal knowledge to attest to the accuracy of the documents referred to, such an argument is unsupported by established law. *See, e.g., In the Matter of Blankstyn v. U.S.*, No. 93-2062, 1994 WL 713730, at *2 (D. Ariz. Sept. 26, 1994) (attached as Exhibit D) ("Knight's declaration merely states that true and correct copies of various documents are attached. Knight's statements are based on his review of Blankstyn's file and thus satisfies the personal knowledge requirement of Rule 56(e)."). If Hancock's position is that the documents referred to by Mr. Bell have not been properly authenticated, that objection fails as well. *See, e.g., John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F. Supp. 2d 77, 89 n.4 (D. Mass. 1999) (denying motion to strike copies of insurance policies and portions of attorney's affidavit in which attorney averred that "true and

accurate copies of the original [insurance] policies" were attached to affidavit, where affidavit was sufficient for a reasonable factfinder to find in favor of authentication) (internal quotation marks omitted); *see also, e.g., U.S. v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994) ("[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims") (internal quotation marks omitted).

Again, Hancock's position is in direct conflict with its own submissions to the Court in this case. In the first Affidavit of Mitchell S. King, Hancock's counsel purported to attach "[t]rue and accurate copies of the slip, covernote and wording[s]" for the Specific Realm Contracts, the Quota Share, and the Facility Quota Share. (Affidavit of Mitchell S. King, ¶ 2.) Hancock's attorney is no more "qualified to attest to the accuracy of the contractual documents submitted" than is Sphere Drake's attorney. (Hancock's Memorandum in Support, p. 5.) Given Hancock's own submissions to the Court, its objection concerning Bell's competence to attest to the accuracy of the documents submitted is specious. The Court should deny Hancock's motion to strike.

### Conclusion

Hancock has not satisfied its burden for striking any portion of Sphere Drake's submissions to the Court. Hancock improperly relies on Rule 12(f) to support its motion to strike portions of Sphere Drake's Memorandum in Support. Moreover, Hancock fails to establish that Sphere Drake's references to the English Action and the English Judgment are clearly irrelevant to the situs issue before the Court. Indeed, the English Action provides relevant information concerning the negotiation and fraudulent placement of each of the Contracts before the Court. Hancock's "personal knowledge" objections to the Bell Affidavit

and its contention that Bell is not competent to attest to the accuracy of the documents to which he refers, are also without merit. Bell's review of the files produced to Sphere Drake during the course of the English proceedings establishes his competence to testify as to the matters to which Hancock objects. Finally, Bell's assertions concerning English law are proper under Rule 44.1 of the Federal Rules of Civil Procedure, which liberally enables a party to prove foreign law through "any relevant material or source." For all of these reasons, Hancock's motion to strike should be denied in its entirety.

SPHERE DRAKE INSURANCE LIMITED
By its attorneys,

_/s/ Heather Baer_
Andrea Peraner-Sweet (BBO#550515)
Heather V. Baer (BBO#566746)
SALLY & FITCH
225 Franklin Street
Boston, MA 02110
(617) 542-5542

OF COUNSEL:
Harold C. Wheeler (Attorney I.D. No. 2996960)
Teresa Snider (Attorney I.D. No. 06210115)
Kevin J. O'Brien (Attorney I.D. No. 06193882)
Mark A. Schwartz (Attorney I.D. No. 6270580)
BUTLER, RUBIN, SALTARELLI & BOYD LLP
3 First National Plaza
70 West Madison Street, Suite 1800
Chicago, Illinois 60602

CERTIFICATE OF SERVICE

I, Heather V. Baer, hereby certify that a copy of this document was served upon all counsel of record by hand on March 10, 2004.

_/s/ Heather Baer_
Heather V. Baer

W:\S\Sphere\Hancock\Pleadings\resp. mot. to strike final.doc