IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE INSURANCE COMPANY,    Civil Action No.
Petitioner,    04 10181 MLW

    and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

---

**JOHN HANCOCK LIFE INSURANCE COMPANY'S REPLY
TO SPHERE DRAKE'S MEMORANDUM OF LAW IN OPPOSITION
TO HANCOCK'S MOTION TO STRIKE PORTIONS OF SPHERE
DRAKE'S SUPPORTING MEMORANDUM AND THE AFFIDAVIT
OF RAYMOND GORDON BELL WITH EXHIBITS**

John Hancock Life Insurance Company ("John Hancock") submits this reply in response to Sphere Drake's Opposition ("Opposition") to John Hancock's Motion to Strike. Sphere Drake's Memorandum in Support of its Motion to Dismiss[1] and the Affidavit of Raymond Gordon Bell (the "Bell Affidavit") include references to and attach as exhibits portions of the decision in the *Sphere Drake Insurance Ltd. v. Euro Int'l Underwriting Ltd.* case (the "English Action").[2] The references to and documents from the English Action pertain to Sphere Drake's substantive contractual defenses which are

---

[1] Sphere Drake's Motion and Memorandum in Support of its Motion to Dismiss or in the Alternative Stay John Hancock's Petition to Compel Arbitration Proceedings should be considered pleadings for purposes of Fed. R. Civ. P. 12 (f) in view of the fact that under 9 U.S.C. § 4 ("Section 4") of the Federal Arbitration Act ("FAA") a Petition to Compel is akin to a complaint for purposes of initiating an action in federal court under the FAA.

[2] In a separate motion filed on March 10, 2004, John Hancock moved to strike the entire decision in the English Action as well as any references to such decision in Sphere Drake's Memorandum in Support of its Motion to Dismiss or in the Alternative Stay the Verified Amended Petition. The arguments set forth herein, in support of John Hancock's February 11, 2004 Motion to Strike, also support striking the entire decision in the English Action and any references thereto as addressed in John Hancock's March 10, 2004 Motion to Strike.

to be presented in an arbitration forum as agreed between the Parties. Because these defenses are irrelevant to the sole issue before the Court -- whether there is an agreement to arbitrate between the parties with regard to the seven contracts at issue -- the references to and documents from the English Action must be stricken.

Additionally, as set forth below and in John Hancock's Memorandum in Support of its Motion to Strike ("Memo to Strike"), the Bell Affidavit should be stricken because it is not based on personal knowledge, it inappropriately characterizes documents and because there is no issue as to foreign law.

### I. References To The English Action Are Irrelevant, Immaterial And Not Properly Before The Court On A Section 4 Petition To Compel.

Hoping to expand the sole issue before the Court, Sphere Drake improperly uses the English Action in an attempt to persuade the Court that it must determine whether arbitration with respect to the seven contracts at issue should be in England or Massachusetts. (*See* Sphere Drake's Opposition at p. 4.) In this action, the Court is solely determining whether there is an agreement to arbitrate between the parties, not the appropriate situs for arbitration. Consequently, Sphere Drake's references to the English Action, including its assertions and discussion regarding fraud (*see e.g.* Bell Affidavit ¶ 6 (discussing fraud of Stirling Cooke Brown)), where the placement of the relevant contracts took place (*see e.g.* Bell Affidavit ¶ 2 (stating "relevant contracts were broked in the London market")), where the witnesses are located (*see e.g.* Bell Affidavit ¶ 2 (stating that "the brokers and agents involved . . . reside in England")), and what an English Court's decision states about various "programmes" (*see e.g.* Bell Affidavit ¶ 11 (consisting of a laundry list of "detailed findings")) are all irrelevant, immaterial and improperly before the Court under a Section 4 inquiry.

2

Critically, Sphere Drake has admitted before the Court and in its papers that there is an agreement to arbitrate with respect to each of the seven contracts at issue. Therefore, Section 4 mandates that the Court compel arbitration in Massachusetts in view of the service of suit clause agreed to by the parties.

Accordingly, the Court should strike all references to the English Action in Sphere Drake's Memorandum in Support and the Bell Affidavit and exhibits as set forth in Section II (A) of the Memo to Strike (i.e. Section A of Sphere Drake's Memorandum in Support of its Motion to Dismiss; the Bell Affidavit ¶¶ 3-18, ¶¶ 20-22, ¶ 27, ¶ 29, ¶ 30, and ¶ 36; and Bell Affidavit Exhibits A, B(1)-(11), G, and H).

## II.  The Bell Affidavit Inappropriately Characterizes And Provides Narrative Relating To The Contents Of Documents.

Throughout his affidavit, Mr. Bell improperly characterizes the contents and includes narrative descriptions of various documents, including the decision in the English Action. *See e.g.*, Bell Affidavit ¶ 5 (discussing a binding authority described in the decision of the English Action); ¶ 6 (characterizing the decision in the English Action stating "Sphere Drake was the victim of a major fraud practiced by brokers Stirling Cooke Brown" and its directors); ¶ 7 (narrative regarding the total of 119 contracts written by EIU discussed in the decision of the English Action); ¶ 8 (narrative description of Stirling Cooke Brown's business discussed in the English Action); ¶ 11 (narrative description of finding made in the decision of the English Action); ¶12 (narrative description and characterization of findings in and of Sphere Drake's position reflected in the decision of the English Action); ¶ 16 (narrative description of JEH Re's connection with Stirling Cooke Brown); ¶ 17 (characterization of holding in the decision to the English Action); ¶ 20 (characterization of holding of the decision in the English Action);

3

¶ 27 (characterization of holding in the decision to the English Action); ¶ 29 (characterizing programme 33 as being "of central importance" during the English Action); ¶ 30 (characterization of the findings in the decision to the English Action); and ¶ 36 (narrative description of Programme 24 as "a retrocession of 50% of Hancock's reinsurance of business accepted by Mr. Cackett (through Centaur) for Sun Life and Phoenix." ).

Characterization of the contents of documents and narrative description of attached exhibits, however, is inappropriate in an affidavit.  In *John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F.Supp.2d 77, 89 n.4 (D. Mass. 1999), a case cited and relied upon by Sphere Drake in its Opposition, the court struck as improper portions of the affidavit of the plaintiff's attorney which contained characterizations of deposition testimony and characterizations of the contents of other documents attached to the affidavit.  *See also*, *The Hartford Sales Practices Litigation v. ITT Hartford Life and Annuity Ins. Co.*, 192 F.R.D. 592, 596-597 (D. Minn. 1999) (court struck portions of the affidavit of the plaintiff's attorney "consisting of narrative descriptions of [ ]attached exhibits.").

Consistent with *Beaudette*, portions of the Bell Affidavit set forth in Section II (A) of the Memo to Strike should be stricken (i.e. ¶¶ 5-8; ¶¶ 11-12;  ¶¶ 16-17; ¶ 20; ¶ 27; ¶ 29; ¶ 30; and ¶ 36).

### III.     The Bell Affidavit Is Not Based On Personal Knowledge Or Facts.

Contrary to the assertions in Sphere Drake's Opposition, the Bell Affidavit is filled with speculation and assertions to which Mr. Bell has no personal knowledge.

For example, paragraph 23 of the Bell Affidavit provides:

> 23. It is possible that [Stirling Cooke Brown] and its lawyers may have considered that a draft wording which had never been sent to EIU could not be of any relevance to the issues in the action and therefore would not fall to be disclosed. However any communications between SCB and EIU sending or discussion draft wordings, let alone approving or agreeing any draft wordings, would in my view certainly fall within the scope of disclosure. The absence of such documents in the SCB disclosure (and EIU's disclosure) would indicate that there were in fact no such documents.

In paragraph 23, Mr. Bell ventures inside the minds of SCB and its lawyers, theorizing as to their thoughts and considerations when they prepared files and documents for disclosure in the English Action. He speculates as to the understanding of SCB and its attorneys, leaping to a conclusion that if documents were not produced in the English Action, they must not exist.

Similarly, the Bell Affidavit contains statements that as far as Mr. Bell is aware, certain materials were not presented or prepared. *See e.g.,* Bell Affidavit ¶21 ("so far as I am aware, no full contract wording replacing the slips was ever presented . . ."); ¶28 ("I am not aware that any wording was ever presented. . ."); and ¶ 31 ("so far as I know no wording was ever presented to or included any draft wording. . ."). Such statements are akin to statements made upon information and belief. In fact, it appears the entire Bell Affidavit is based on information and belief. *See* Bell Affidavit ¶ 67 (Mr. Bell asserts that the contents of the affidavit are "true to the best of my knowledge and belief.").

Statements made on information and belief, however, cannot substitute personal knowledge in an affidavit. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) (finding affidavit improper because there was no way to ascertain which portions of the affidavit were based on personal knowledge, as opposed to information and belief); *Murphy v. Ford Motor Co.*, 170 F.R.D. 82, 84 (D. Mass. 1997) (striking

5

portion of affidavit based on information and belief); and *Carnrite v. Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 449 (W.D.N.Y. 1997) (striking affidavit because "[a]n attorney's affidavit not based on personal knowledge is an impermissible substitute for the personal knowledge of a party."). Assertions by Sphere Drake's attorney relating to his awareness and/or belief cannot substitute for the personal knowledge of Sphere Drake. Consequently, the Bell Affidavit should be stricken.

The Bell Affidavit also contains narrative descriptions of programs and contracts to which it is clear Mr. Bell has no personal knowledge and to which Mr. Bell is not competent to testify. *See e.g.*, Bell Affidavit ¶ 19 (describing program 9 and discussing EIU's and John Hancock's protections of Realm); ¶ 25 (stating "[e]ach of the Hancock contracts under programme 9, including the arbitration agreement, is contained in or evidenced by the slip alone"); ¶ 36 (describing Programme 24 as "a retrocession of 50% of Hancock's reinsurance business accepted by Mr. Cackett (through Centaur) for Sun Life Phoenix"); ¶ 37 (describing Programme 24 as "a general protection covering the whole of Mr. Cackett's account from 1 January 1998.").

Generally, the Bell Affidavit does not cite to documentation reviewed which support these assertions and provides no indication of specific knowledge or why Bell is competent to testify as to these matters. Sphere Drake is inappropriately attempting to submit an affidavit of its attorney (with assertions which are not based on personal knowledge and to which he is not competent to testify), in lieu of the personal knowledge of the party.

Accordingly, the paragraphs of the Bell Affidavit identified at Section II (B) and II (D) of the Memo to Strike should be stricken (i.e. ¶ 19; ¶¶ 21-26; ¶ 28; ¶29; ¶¶ 31-34;

6

¶¶ 36-39; ¶¶ 41-45; ¶ 55(1); and ¶ 64).

### IV. Statements That Are Argumentative Or State Legal Conclusions Should Be Stricken.

In response to John Hancock's Motion to Strike portions of the Bell Affidavit that are argumentative or state legal conclusions, Sphere Drake states that assertions in the Bell Affidavit with respect to English law and London Practice are appropriate to prove foreign law. (*See* Sphere Drake Memorandum in Opposition at p. 7.) Sphere Drake ignores the fact that under a Section 4 analysis there is no question before the Court as to foreign law.[3]

Accordingly, the portions of the Bell Affidavit and which are argumentative or state legal conclusions, as set forth in section II (C) of the Memo to Strike should be stricken (i.e. Bell Affidavit ¶ 2 (last sentence only), ¶25, ¶31, ¶ 42, ¶ 44, ¶¶ 46-54 (to the extent Mr. Bell argues and interprets the correspondence between the parties rather than allowing the documents to speak for themselves), ¶¶ 55(1)-(4), and ¶¶ 56-62; and Bell Affidavit Exhibit B(20)).

---

[3] The references to the English Arbitration Act in the Second Affidavit of Mitchell S. King cited in Sphere Drake's Opposition (*see* Sphere Drake's Opposition at p. 7) were primarily submitted in support of John Hancock's Motion for a Preliminary Injunction to demonstrate irreparable harm and not to establish foreign law.

                    Respectfully Submitted,

                    _____/s/_____

Mitchell S. King, Esq. BBO#272810
Rhonda L. Rittenberg, Esq. BBO# 550498
Michael A. Calawa, Esq. BBO# 643517
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Of Counsel
David A. Silva, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Attorneys for
John Hancock Life Insurance Company

Dated: March 24, 2004