IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings Between

JOHN HANCOCK LIFE INSURANCE COMPANY,
    Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

---

Civil Action No. 04 10181 MLW

## SPHERE DRAKE'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS OR STAY JOHN HANCOCK'S VERIFIED AMENDED PETITION TO COMPEL ARBITRATION PROCEEDINGS

John Hancock Life Insurance Company's ("Hancock's") objection to Sphere Drake Insurance Limited's ("Sphere Drake's") Motion to Dismiss or Stay is based on fundamentally erroneous contentions. First, Hancock maintains that Sphere Drake has expressed its agreement to arbitrate disputes arising out of the Seven Agreements in Massachusetts both through "contractual documentation" and prior course of dealing between the parties. Second, Hancock contends that this Court has no discretion to abstain from exercising its jurisdiction over Hancock's petition to compel arbitration, but instead *must* exercise that jurisdiction and compel Sphere Drake to arbitrate in Massachusetts. However, there is no evidence that Sphere Drake ever agreed to arbitrate the Seven Agreements in Massachusetts, and in fact, the circumstances here indicate that England is the appropriate situs for those arbitrations. Moreover, the law is clear that this Court does have discretion to abstain in favor of the proceedings pending in England. Sphere Drake's involvement in proceedings in the United States with other ceding companies does not change these facts or this law. Because abstention is particularly appropriate

here, the Court should grant Sphere Drake's motion and either dismiss Hancock's amended petition, or stay it pending the outcome of the English proceedings.

## I. There is *No* Evidence That the Parties Ever Agreed to Arbitrate Disputes Arising Out of the Seven Agreements In Massachusetts.

Hancock erroneously contends that the parties, both through "contractual documentation" and through a consistent course of dealing, agreed to arbitrate disputes arising out of the Seven Agreements in Massachusetts. However, the evidence is clearly to the contrary. To begin with, Sphere Drake contends that each of the twenty-nine purported contracts between Sphere Drake and Hancock (including the Seven Agreements at issue here) is void and unenforceable because Hancock's agent Stirling Cooke knew that Sphere Drake's agent EIU lacked authority to enter into the contracts. Indeed, Lord Justice Thomas' findings in the English Judgment compel this conclusion. (*See* Sphere Drake Mem. in Support, pp. 4-5.) Nonetheless, despite its assertion that the contracts (and the arbitration clauses contained therein) are void, Sphere Drake has agreed to submit the dispute over the existence and enforceability of all twenty-nine purported contracts (including the Seven Agreements at issue here) to arbitration rather than litigation. With regard to the Seven Agreements before the Court, even if those contracts were otherwise valid, the only documentation Sphere Drake or its agent ever received were the "slips" summarizing the contract terms to be agreed. Although the slips refer to the inclusion of an "arbitration clause," none of the slips contains any terms fixing the site of any arbitration.

### A. The Slips Provide the Only Possible Documentary Evidence as to the Terms of the Seven Agreements.

In the memorandum of law in support of its verified amended petition, Hancock dedicates substantial attention to its argument that the "contractual documentation," including covernotes and unsigned contractual wordings, evidences Sphere Drake's intention that disputes arising out of the Seven Agreements be arbitrated in Massachusetts. (Hancock Mem. in Support, pp. 3-8;

2

*see also* Hancock Amended Petition, ¶¶ 10-27.) In its response to Sphere Drake's Motion to Dismiss or Stay, Hancock all but abandons the absurd contention that covernotes and contract wordings, documents that neither Sphere Drake nor its agent ever agreed to or even saw, could have any bearing on Sphere Drake's contractual intent. Indeed, in Hancock's latest filing, this contention is relegated to an assertion that the "slips, cover notes and unsigned wordings" for the Seven Agreements reflect the intent of the parties (Hancock Resp., pp. 6-7), and a single footnote making reference to the "contractual documentation." (*Id.*, p. 5 n.5.) The lack of vigor with which Hancock now pushes its "contractual documentation" argument illustrates Hancock's belated recognition of what Sphere Drake has said from the outset – that the slips provide the *only possible* evidence of the parties' intent in entering into the Seven Agreements. (*See* Sphere Drake Mem. in Support, pp. 9-11.)[1]

In contrast to the slips for the Seven Agreements (which contain no forum selection clause or choice of law provision), the slips for nine of the twenty-nine purported contracts between Sphere Drake and Hancock provide that "the arbitration contract shall also be subject to English law and jurisdiction." (*See* Bell Aff., ¶¶ 33-34, 38 & Ex. B Tabs 13 & 16.) Under English law, an arbitration contract contained in a reinsurance agreement is severable from the larger agreement, and enforceable even if the latter is void. Arbitration Act 1996 (attached as Exhibit A to the Supplemental Affidavit of Raymond Gordon Bell), Chapter 23, Part I, Section 7 ("Unless otherwise agreed by the parties, an arbitration agreement which forms or was intended

---

[1] In fact, Hancock itself realizes that Sphere Drake cannot be held to "contractual documentation" that it never signed, as Hancock has taken that exact position in its current litigation with Gan Insurance Company, which is pending before this Court. *See* Plaintiff John Hancock Life Insurance Company's Objection Pursuant to Fed. R. Civ. P. 72(a) To the Report & Recommendation of the Hon. Marianne B. Bowler, C.M.J., at 11, *John Hancock Life Ins. Co. v. Gan Ins. Co. Ltd.*, No. 03-10691 (D. Mass. Feb. 4, 2004) (attached hereto as Exhibit 1) ("Gan signed wordings for two of the contracts, but neither John Hancock nor its agent signed any of them. Thus none of the wordings is enforceable against John Hancock; and the simple fact that the wordings were prepared and sent to Gan for signature by John Hancock's supposed agent, Willis Faber, does not change things under the law.").

to form part of another agreement (whether or not in writing) shall not be regarded as invalid, non-existent or ineffective because that other agreement is invalid, or did not come into existence or has become ineffective, and it shall for that purpose be treated as a distinct agreement."). Accordingly, Sphere Drake initiated arbitration on the nine contracts whose slips provide for English law and jurisdiction. (*See* Original Bell Aff., Ex. B Tab 18 pp. 41-44; January 26, 2004 demands, attached hereto as Exhibit 2.)

The slips for thirteen of the twenty-nine contracts provide in their General Conditions that arbitration shall be subject to Massachusetts law and jurisdiction. (*See* Original Bell Aff., ¶¶ 41-44 & Exs. C-E.) Unlike English law, U.S. law holds that a party cannot be compelled to arbitrate pursuant to an arbitration provision within a void contract. *See Sphere Drake Ins. Ltd. v. Clarendon Am. Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001) ("If a party alleges that a contract is void and provides some evidence in support, then the party need not specifically allege that the arbitration clause in that contract is void, and the party is entitled to a trial on the arbitrability issue. . . ."); *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001) (this is "a situation in which no contract came into being; and as arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrator. . . ."). Thus, Sphere Drake need not arbitrate disputes arising out of these thirteen allegedly void contracts. However, Sphere Drake proposed, in response to Hancock's demand to arbitrate those thirteen contracts, a mechanism by which it would agree to arbitrate the parties' disputes arising out of those contracts in Massachusetts. In responding to Hancock's demand to arbitrate these thirteen contracts, Sphere Drake stated, "[n]otwithstanding (and fully reserving) its position that the contracts are void, Sphere Drake will agree to arbitrate the parties' dispute over the existence and enforceability of these contracts in a United States forum. . . ." (*See* February 20, 2004 letter

4

from KevinO'Brien to Mitchell King, attached hereto as Exhibit 3.) Thus, Sphere Drake made it abundantly clear that its agreement to arbitrate those thirteen contracts in the United States did not emanate from the purported contracts, but from a separate, independent agreement.

With regard to the Seven Agreements at issue before this Court, Sphere Drake has agreed to submit the dispute over the existence and enforceability of the Seven Agreements to arbitration rather than litigation, despite its contention that these contracts are void for lack of authority. Even were these valid contracts, the only written terms that Sphere Drake or its agent ever saw for these Seven Agreements (and thus the only written terms that may properly be considered) are the slips, which contain no term pertaining to the location of the arbitration. Nor does the "course of dealing" between the parties evidence any agreement or understanding by Sphere Drake that these disputes be arbitrated in Massachusetts. Hancock's position is thus wholly without merit.

### B. Neither the Slips Nor the "Course of Dealing" Between the Parties Evidences An Agreement to Arbitrate in Massachusetts.

None of the slips for the Seven Agreements contains a forum selection clause mandating that arbitration under the agreements take place in Massachusetts. None contains a choice of law provision designating Massachusetts law as applicable to disputes arising thereunder. Nonetheless, Hancock continues to maintain that the slips provide conclusive evidence of an agreement by the parties to arbitrate disputes in Massachusetts. Hancock purports to find such evidence in the service of suit provisions in the slips.[2] Yet, Hancock concedes that the purpose

---

[2] Hancock claims that the service of suit provision in the slip for the Facility Quota Share Agreement, which Hancock concedes "does not expressly specify 'U.S.A.'" is nonetheless relevant to Sphere Drake's intent in that it demonstrates that "the parties recognized John Hancock's right to demand that Sphere Drake submit to arbitration." (Hancock. Resp., p. 10 n.11.) However, as Sphere Drake has pointed out time and again, Sphere Drake *has* agreed to "submit to arbitration." The issue is whether Sphere Drake ever agreed that Massachusetts would be the situs for any contemplated arbitration. While Sphere Drake contends that none of the service of suit provisions evidences any such agreement, that position is most undeniable with regard to the provision in the Facility Quota Share Agreement, which designates neither the United States nor Massachusetts.

of service of suit provisions is to "'obviate potential problems with obtaining jurisdiction over the parties.'" (Hancock Resp., p. 10 (quoting *Security Life Ins. Co. of Am. v. Hannover Life Reassurance Co. of Am.*, 167 F. Supp. 2d 1086, 1088 (D. Minn. 2001)); *see also* Hancock Resp., p. 11 ("The clauses evidence an unequivocal intent by Sphere Drake to submit to the jurisdiction of U.S. courts.").)[3] In this case, to the extent the service of suit provisions have any applicability (given Sphere Drake's contention that each contract is void), the stated purpose of those provisions has been accomplished – Sphere Drake has submitted to this Court's jurisdiction. The service of suit provisions are of no assistance to Hancock in establishing that the parties agreed to arbitrate in Massachusetts or under Massachusetts law.

In fact, Hancock now expressly concedes that its argument is not "that a service of suit clause is a mandatory forum selection clause." (Hancock Resp., p. 13.) Nor could it persist with a contrary argument given the myriad of cases cited by Sphere Drake. Indeed, Hancock entirely ignores the Massachusetts Supreme Judicial Court's holding in *W.R. Grace & Co. v. Hartford Accident & Indemnity Co.*, 407 Mass. 572, 580 (1990) that "a service of suit clause does not lock an insurance company into the jurisdiction selected by its insured nor does such a provision bar a court in that jurisdiction from considering a plea of forum non conveniens." Hancock also neglects to address the other cases cited by Sphere Drake for this proposition.[4] (Sphere Drake Mem. in Support, p. 12-13.)

---

[3] Hancock also argues that the service of suit provisions "reflect the unequivocal bargained for agreement between the parties that either party can petition to compel arbitration or enforce an arbitration award in the United States." (Hancock Resp., p. 11.) Sphere Drake has never claimed that Hancock could not petition this court for the relief it now seeks, but this has no bearing on whether Sphere Drake agreed to arbitrate in Massachusetts.

[4] Hancock attempts to distinguish the *Brooke Group* case, although it does so in its discussion of Sphere Drake's abstention argument. Sphere Drake cited *Brooke Group* for the proposition that, notwithstanding the existence of a domestic service of suit provision, a court can nonetheless order the parties to arbitrate their dispute in a foreign country. (*See* Hancock Resp., pp. 15-16; Sphere Drake Mem., pp. 12-13 (citing *Brooke Group Ltd. v. JCH Syndicate*, 87 N.Y.2d 530, 532-34 (N.Y. 1996).) The case holds that a service of suit provision "provides no more than a consent to jurisdiction. It does not bind the parties to litigate in a particular forum, or give the insured the

Instead, Hancock claims that a broader course of dealing between the parties demonstrates that the placement of a service of suit clause in some contracts and not others is a significant indication as to where the parties agreed to arbitrate. (*See* Hancock Resp., pp. 4-7.) Hancock posits that service of suit provisions were not included in contracts with an English choice of forum "because it was not intended that John Hancock would be entitled to compel arbitration in the United States with respect to" those contracts. (*Id.*, p. 6.) But this explanation is belied by the existence of a service of suit clause in the slip for the JEH Re/Centaur Program (P24), which expressly provides for arbitration in England. (Original Bell Aff., Ex. B Tab 13.) Hancock's incomprehensible attempt to explain this fact away is mere sophistry. (*See* Hancock Resp., pp. 5-6 n.7.)

Moreover, Hancock's hypothesis as to why only some of the twenty-nine agreements contain a service of suit clause makes no sense in light of the Massachusetts statutory scheme for the regulation of insurance companies. Hancock would have benefited from the inclusion of a service of suit provision in all twenty-nine of the contracts, regardless of where potential arbitration would take place. Because Sphere Drake was not licensed in Massachusetts, Hancock had to satisfy a number of prerequisites before it could take credit on its financial statements for reinsurance it placed with Sphere Drake. *See* M.G.L.A. 175 § 20A. Among those requirements was obtaining Sphere Drake's agreement to "submit to the jurisdiction of an alternative dispute resolution panel or any court of competent jurisdiction in any state of the United States," that is, including service of suit provisions in the agreements. M.G.L.A. 175 § 20A(F)(i).

Not itself able to provide any adequate reason for the inconsistency in the slips, Hancock instead faults Sphere Drake for being unable to "explain why the slips for the Seven Agreements

---

exclusive right to choose a forum unrelated to the dispute." *Brooke Group*, 87 N.Y.2d at 534. *Brooke Group* thus provides direct support for the proposition for which it was cited by Sphere Drake.

contain U.S. Service of Suit clauses[5] similar to the thirteen Contracts under which there is no dispute that Massachusetts is the proper location for arbitrations." (Hancock Resp., p. 6.) Of course Sphere Drake has no way of knowing why Stirling Cooke, who prepared all of the slips, chose to include such a clause in only some of the agreements, as Stirling Cooke was Hancock's agent. As such, Sphere Drake might put it to Hancock to explain why Stirling Cooke also included forum selection and choice of law provisions in some slips but failed to do so with regard to the Seven Agreements before the Court. Regardless of the reason for the presence of service of suit provisions in some of the slips and absence of those clauses in others, there is simply no "pattern of conduct" that demonstrates any intent by Sphere Drake with respect to the site of arbitration for the Seven Agreements.

Hancock also mistakenly argues that "the choice of law provisions [in the 22 reinsurance contracts not before the Court] are consistent with the country of origin of the underlying reinsured business." (Amended Petition to Compel, ¶ 31.) This is simply not the case. (*See* Sphere Drake Mem. in Support, pp. 13-14.) As Sphere Drake has already explained, some of the agreements in which England is expressly designated as the forum cover business written in the United States. (*Id.*) Perhaps most significantly, both the Facility Quota Share Agreement and the Quota Share Agreement, two of the contracts at issue here, cover London Market business. (*Id.*) Hancock's argument based on the type of business reinsured has no merit whatsoever.

Hancock concludes the "contractual evidence" section of its brief by highlighting the fact that Sphere Drake has agreed to arbitrate thirteen of the Sphere Drake-Hancock disputes in Massachusetts. (Hancock Resp., p. 7.) However, as explained above, Sphere Drake's agreement

---

[5] Once again, Hancock has misrepresented to the Court that all seven of the contracts at issue contain a U.S. service of suit provision. As Hancock knows, the clause in the Facility Quota Share Agreement "does not expressly specify 'U.S.A.'" *See* footnote 2, *supra*.

to arbitrate those disputes was expressly independent of the terms of the contracts themselves, which Sphere Drake claims are void. Moreover, even if the contractual terms governed, Sphere Drake's agreement to arbitrate the thirteen purported contracts in the U.S., where each such contract expressly provides for a Massachusetts forum, has no bearing on what Sphere Drake agreed with respect to the agreements containing no forum selection clause. This is especially so given the fact that Hancock has itself agreed to arbitrate disputes arising out of nine other contracts in England, in accordance with the written terms of those contracts. The existence of other contracts, which contain contractual terms designating where arbitration will be held, does not provide evidence of any agreement with regard to the Seven Agreements before the Court that contain no such designation.

Neither the service of suit provisions nor the "course of dealing" between Sphere Drake and Hancock provide any evidence that Sphere Drake agreed to arbitrate its disputes with Hancock under the Seven Agreements in Massachusetts. As a result, Sphere Drake requests that this Court abstain from ruling on Hancock's petition to allow resolution of the disputes in the more appropriate English forum.

## II.     The Court Can and Should Abstain.

In its response to Sphere Drake's abstention argument, Hancock returns to its panacea, the service of suit provisions, contending that "these clauses mandate this Court to exercise its jurisdiction to compel arbitration in Massachusetts and do not permit this Court to abstain. . . ." (Hancock Resp., p. 10.) Hancock then argues that abstention would be inappropriate in this case notwithstanding *Goldhammer* and the other cases cited by Sphere Drake. Hancock is wrong on both counts.

### A. The Court Has Discretion to Abstain In Favor of the English Proceedings.

Hancock bases its argument on the incorrect premise that this Court has no power to abstain in favor of the English proceedings because the provision in Section 4 of the Federal Arbitration Act ("FAA") directing that "'[t]he court *shall* make an order directing the parties to proceed to arbitration'" is a mandatory duty that precludes this Court from declining to exercise its jurisdiction under any circumstances. (Hancock Resp., pp. 12-13 (quoting 9 U.S.C. § 4).) Unfortunately for Hancock, the First Circuit Court of Appeals soundly rejected this argument over 20 years ago. In *Acton Corp. v. Borden, Inc.*, 670 F.2d 377 (1st Cir. 1982), the plaintiff Acton filed a petition in the district court to compel arbitration under 9 U.S.C. § 4, but the defendant Borden moved for a stay on the grounds that the same issue was pending in federal court in Ohio. The district court granted Borden's motion to stay, and Acton appealed, asserting that "the district court lacked the power to stay its proceedings to allow the arbitration issues to be decided in Ohio" based on Section 4's language that the court "shall proceed summarily to the trial" of a dispute over the failure, neglect or refusal to perform an arbitration agreement. 670 F.2d at 382. The Court of Appeals disagreed, ruling:

> Indeed, we find no evidence that Congress felt petitioners' "choice of forum" so important in § 4 cases that it intended a major departure from the ordinary rule allowing one federal court to stay litigation when another federal court is in the process of deciding the same issue. The mandatory language of § 4 refers to a petitioner's right to substantive relief. It does not address the problem of stays or duplicative litigation.

670 F.2d at 383.

The First Circuit Court of Appeals followed *Acton* in *Hewlett-Packard Co. v. Berg*, 61 F.3d 101 (1st Cir. 1995), where it ruled that the district court had the power to stay an action to confirm an arbitration award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 207. In ruling that the statute's use of the words "shall

confirm the award" did not prevent the district court from staying the action pending the results of a second arbitration, the Court of Appeals confirmed *Acton*'s holding that under 9 U.S.C. § 4, "[d]istrict courts have discretion to stay an action to *compel* arbitration pending the outcome of related litigation, even though the Act states that on a motion to compel the court 'shall hear the parties' and 'shall proceed summarily to trial.'" 61 F.3d at 106 (court's emphasis).

Hancock's contention that the "mandatory language" of Section 4 precludes the relief sought by Sphere Drake is thus entirely misplaced. Sphere Drake is not contesting arbitration of these disputes; rather, it is asking this Court to use its discretion to stay this action so that the disputes may be arbitrated in a more appropriate forum, in circumstances where Hancock and Sphere Drake had no agreement on the site of the arbitration. Nothing in the FAA prevents this Court from making such a ruling.

The First Circuit Court of Appeals is not alone in recognizing that Section 4 does not preclude courts from dismissing petitions to compel in deference to adjudication in an alternate forum. *See, e.g., Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1222-24. 1229 (9th Cir. 1989) (district court properly abstained from deciding a motion to compel arbitration "on the grounds of comity" in favor of a parallel action in a tribal court); *Pepsico Inc. v. Oficiana Central de Asesoria Y Auday Tecnica, C.A.*, 945 F. Supp. 69, 70-71 (S.D.N.Y. 1996) (district court abstained from ruling on motion to compel arbitration to allow pending Venezuelan litigation to determine threshold issue of Venezuelan law). Moreover, several other courts have ruled that a petition to compel arbitration may be dismissed on *forum non conveniens* grounds when the factors supporting such action are present. *See, e.g., Gemini Capital Group v. Yap Fishing Corp.*, 150 F.3d 1088, 1092 (9th Cir. 1998) ("a court has the power to dismiss an action on *forum non conveniens* grounds notwithstanding an agreement to

arbitrate in the selected forum"); *Jain v. de Mere,* 51 F.3d 686, 692 (7th Cir. 1995) (*forum non conveniens* is "another reason for which district courts may dismiss a petition to compel arbitration"); *Maria Victoria Naviera, S.A. v. Cementos del Valle, S.A.,* 759 F.2d 1027, 1031 (2d Cir. 1985) ("we hold squarely that district courts have the power to dismiss a petition to compel arbitration on the ground of forum non conveniens."); *CNA Reinsurance Co. v. Trustmark Insurance Co.,* 2001 WL 648948 at *7 (N.D. Ill., June 5, 2001) ("We note at the outset that a dismissal on the grounds of *forum non conveniens* in an arbitration case involving foreign entities has been acknowledged as a possible outcome by the Seventh Circuit."). Here, where no contractual term is present to answer the question of a proper site for the arbitration, abstention is not only within this Court's authority, but is warranted by the facts.

Not surprisingly, none of the cases cited by Hancock for the proposition that a Section 4 petition to compel "must" be tried by a district court addresses abstention or the similar doctrine of *forum non conveniens*. In *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213 (1985), the Supreme Court resolved a split in the circuits by ruling that a district court could not deny a motion to compel arbitration of pendent arbitrable claims because "intertwined" non-arbitrable claims would remain in federal court. 470 U.S. at 217. In *KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.,* 184 F.3d 42 (1st Cir. 1999), the First Circuit Court of Appeals ruled that a Rhode Island state law voiding contractual agreements to arbitrate franchise disputes out-of-state was pre-empted by the Federal Arbitration Act. 184 F.3d at 50-51. In neither case did the court rule that Section 4's "mandatory" language divested a district court of authority to abstain from ruling on a motion to compel in appropriate circumstances. On the contrary, the rulings in *Acton* and *Hewlett-Packard* establish that the terms of Section 4

provide no bar to the district court's exercise of its ordinary discretion to abstain in favor of pending proceedings.

Hancock's argument that Section 4's use of the word "shall" eliminates the court's discretion to abstain is also belied by the next sentence of the authority it cites in support of its proposition. In *United States v. Mass. Water Resources Authority*, 256 F.3d 36 (1st Cir. 2001), the court, as Hancock notes, observed that "when Congress employs the word 'shall' in like contexts, it often means that 'Congress has imposed a mandatory duty on the subject of the command.'" *Id.* at 51 n.17 (citations omitted). Yet, Hancock omits the very next sentence of the footnote: "However, even the use of the word 'shall' does not necessarily eliminate all equitable discretion if Congress's purpose not to eliminate such discretion is manifest." *Id.* As the *Acton* and *Hewlett-Packard* courts decisively ruled, Congress did not intend to limit the courts' ordinary powers to stay litigation by using the term "shall" in Section 4 of the FAA. Here, where the *Goldhammer* factors clearly favor abstention, this Court can and should grant Sphere Drake's motion to stay this litigation to allow the disputes to be heard in England.

Because Section 4 does leave the Court with discretion to abstain, Hancock is incorrect that "[c]ombined with John Hancock's Petition under Section 4 of the FAA, these [service of suit] clauses mandate this Court to exercise its jurisdiction to compel arbitration in Massachusetts and do not permit the Court to abstain. . . ." (Hancock Resp., p. 10.) The service of suit provisions (assuming they apply at all) subject Sphere Drake to this Court's jurisdiction, nothing more. This Court may still stand aside to enable the English Commercial Court to rule on the situs issue, and the cases on which Hancock relies in support of its "FAA plus service of suit" position do not hold otherwise. (*See* Hancock Resp., pp. 10-11 (citing *Travelers Ins. Co. v. Keeling*, No. 91 Civ. 7753, 1993 U.S. Dist. Lexis 491 (S.D.N.Y. Jan. 19, 1993) and *Credit Gen.*

*Ins. Co. v. John Hancock Mut. Life Ins. Co.*, No. 1:99CV02690, 2000 U.S. Dist. LEXIS 9009 (N.D. Ohio May 30, 2000).) Rather, these cases stand for the unremarkable proposition that where a contract contains both a service of suit clause and an arbitration clause, both provisions should be given effect such that an insured can initiate litigation to assert its rights under an arbitration clause, and the insurer will be subject to jurisdiction in the insured's chosen forum to resolve the parties' dispute in accordance with the terms of the arbitration agreement. *See Travelers*, 1993 U.S. Dist. LEXIS, at \*15-\*16; *Credit General*, 2000 U.S. Dist. LEXIS 9009, at \*14. As already stated, Sphere Drake does not object to this Court's jurisdiction, and it has agreed to arbitrate its disputes with Hancock.

### B. The Relevant Factors Favor Abstention In This Case.

In *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 252-53 (D. Mass. 1999), the district court set forth a list of six factors to consider when determining whether international abstention is appropriate. These factors strongly favor abstention in this case. The issues to be decided in this case are identical to those pending in England, and the parties to both actions are also the same. Judicial efficiency will be promoted if the Court abstains in favor of the English proceedings, as abstention will prevent the possibility of duplicative lawsuits proceeding in tandem. Hancock has not questioned the adequacy of an arbitration in England to resolve the parties' dispute, and has, in fact, agreed to arbitrate other similar disputes in England, negating any possible claim of inadequacy of an English forum. Nor has Hancock identified any prejudice that will befall it should the English Commercial Court determine the situs of the arbitration.

Conversely, Sphere Drake has explained that a domestic arbitration will be both unfair and prejudicial to Sphere Drake. In the ensuing arbitration, Sphere Drake's defense to enforceability of the Seven Agreements will depend, in large part, on its contention that its agent

14

lacked authority to bind Sphere Drake to the Seven Agreements, and that Hancock's agent, who was engaged in a conspiracy with Sphere Drake's agent with regard to these very contracts, knew that there was no authority. Significantly, all of the witnesses with any relevant information concerning the placement of these risks, and the conspiracy surrounding that placement, are in England.[6] Hancock's only response to this undisputed fact is that Sphere Drake did not need to call any live witnesses in its arbitration with another ceding company, Clarendon, because Sphere Drake prevailed in that arbitration on summary judgment. (Hancock Resp., p. 19.) Although Sphere Drake expects a similar result in the ensuing arbitrations with Hancock, the outcome of dispositive motions in those arbitrations is not a certainty, and Sphere Drake must protect its opportunity to present live witnesses should it need them to prove the existence of the conspiracy as found by Lord Justice Thomas. Only an arbitration in England will enable Sphere Drake to compel the relevant witnesses to appear and testify. Sphere Drake's "witness availability claim" is not a "red herring," but, rather a clear justification, along with the others discussed above, in favor of abstention.

In its brief, Hancock addresses only one of the *Goldhammer* factors – the relative temporal sequence of the actions in question. (Hancock Resp., pp. 14-15.) Hancock blatantly mischaracterizes the *Goldhammer* decision as finding temporal sequence to be the "critical factor" in that case. (Hancock Resp., p. 14.) In fact, the court stated that its analysis of the six factors, taken in their entirety, established that abstention was appropriate:

> The overarching concerns for a federal court facing concurrent international jurisdiction are demonstrating a proper level of respect for the acts of other sovereign nations, ensuring fairness to litigants, and efficiently using scarce judicial resources. [cite] As will be discussed below, these factors, *on the whole*, militate in

---

[6] Hancock is therefore wrong to conclude that the "only basis for [Sphere Drake's abstention] claim is that Massachusetts is an inconvenient forum." (Hancock Resp., p. 2.)

15

> favor of staying the present action pending the outcome of the
> English action.

*Goldhammer*, 59 F. Supp. 2d at 253 (emphasis added). The court reiterated this sentiment in its final remarks, concluding that a "ledger of the factors that guide the Court's discretion in determining whether to proceed in light of the English action leads to a stay in this action." *Id.* at 255. This approach is consistent with the United States Supreme Court's directive that, in performing an abstention analysis, "[n]o one factor is necessarily determinative." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 818 (1976).

Here, Hancock has put all its eggs in the temporal sequence basket,[7] utterly ignoring the remaining factors considered by the court in *Goldhammer* and the other cases cited by Sphere Drake. Indeed, Hancock's analysis consists entirely of a single, conclusory contention that "[n]one of these factors [relating to temporal sequence] are [sic] present in this case and *Goldhammer* provides no support for Sphere Drake's argument. . . ." (Hancock Resp., p. 15.) To the contrary, the *Goldhammer* factors, taken as a whole, strongly favor abstention.

### III.   Sphere Drake's Prior Pleadings in Other Disputes Have No Bearing on its Request That This Court Stay Or Dismiss Hancock's Petition

Undoubtedly recognizing the weakness of its legal argument, Hancock in desperation attempts to distract the Court from the analysis of the abstention factors by accusing Sphere Drake of "forum shopping." Hancock cites Sphere Drake's positions in prior litigation and arbitration involving other reinsurance contracts as "clear evidence that England is not the only appropriate forum for arbitration." (Hancock Resp., p. 16.) However, Sphere Drake's positions in other litigation involving other contracts have no bearing on the appropriate site for arbitration

---

[7] Hancock is incorrect that the temporal sequence counters against abstention. Sphere Drake's and Hancock's competing arbitration demands were deemed served on the same day. Sphere Drake filed its claim forms seeking a determination that England is the seat of the arbitrations on January 29, 2004, a mere three days after Hancock filed its petition to compel.

16

of the Seven Agreements at issue in this litigation. Hancock's claims with respect to Sphere Drake's litigation of other contracts should be ignored.

Hancock first refers to a lawsuit filed by Sphere Drake in 1999. *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., et al.*, 85 F. Supp. 2d 282 (S.D.N.Y. 2000).[8] In that case, Sphere Drake brought a complaint alleging a conspiracy to defraud and racketeering against a wide variety of defendants, including not only the English entities EIU and Stirling Cooke, but also Stirling Cooke's American subsidiary, an American reinsurance broker (WEB Management LLC), and Bermuda reinsurance agents (JEH Re Underwriting Management Limited and Raydon Underwriting Management Company Limited). For the purposes of proving a fraudulent scheme involving British, Bermudan, and American defendants, the parties and evidence were not confined to any single jurisdiction. As a result, Sphere Drake filed the case in the United States. When the federal court dismissed the complaint on *forum non conveniens* grounds, Sphere Drake had no recourse but to bring an action in the United Kingdom against the defendants subject to jurisdiction in England. It is the judgment of that English court, based on the testimony of witnesses amenable to process in England, that forms the basis of Sphere Drake's defense to Hancock's attempt to enforce the agreements at issue. Because the issue that will be facing the arbitration panel is whether Hancock may enforce these Seven Agreements in the face of the findings made by the Commercial Court in its July 2003 Judgment, the only question before this Court is whether it should abstain in favor of an English forum better situated to determine that issue.

Hancock's complaint of "inconsistency" in Sphere Drake's defense of the arbitration demands by Clarendon National Insurance Company and Clarendon America Insurance

---

[8] At the time it filed the suit, Sphere Drake was known as Odyssey Re (London) Limited.

Company is equally unavailing. Hancock's assertion that Sphere Drake chose to "avail itself" of the U.S. court system with regard to its reinsurance contracts with Clarendon conveniently omits the fact that Sphere Drake was *defending* an arbitration demand brought by Clarendon on six contracts containing clauses requiring arbitration under U.S. law.[9] In response to Clarendon's demand for arbitration in the U.S., Sphere Drake sued Clarendon in federal court in New York seeking a determination that the contracts at issue were void and that Sphere Drake was not obligated to arbitrate. When the federal court denied Sphere Drake's request for relief on all but one of the contracts, Clarendon's demand proceeded to arbitration in New York. *See Sphere Drake Ins. Ltd. v. Clarendon Am. Life Ins. Co.*, 263 F.3d 26, 34 (2d Cir. 2001). Thus, Hancock's claim that Sphere Drake chose to "avail itself" of the U.S. courts is baseless – Sphere Drake had no choice but to defend itself in a U.S. arbitration because the Second Circuit concluded that it had contracted to do so. Here, where the parties have not agreed as to the site of the arbitration or as to the applicable law, Sphere Drake is asking this Court to abstain in favor of parallel proceedings in England.

## CONCLUSION

The circumstances before the Court establish that abstention is clearly warranted. The district court has enumerated six factors to consider in an international abstention analysis, and at least five of those factors favor abstention in this case. Hancock has failed to even address those five factors, instead claiming that a mere three-day head start in petitioning this court to compel

---

[9] For the same reason, Sphere Drake's litigation with All American Life Insurance Company provides no support for Hancock's position. (*See* Hancock Resp., p. 20 n.14 (citing *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, No. 99 C 4573 (N.D. Ill. Sept. 22, 2003).) As with Sphere Drake's proceedings against Clarendon, the dispute with All American was instigated when All American demanded arbitration. Sphere Drake responded to that demand by filing the action cited by Hancock, seeking a declaration that the putative contract at issue was void, and that Sphere Drake was therefore not obligated to arbitrate. The district court in that case ultimately ruled that the contract was void, and granted summary judgment in favor of Sphere Drake. *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 300 F. Supp. 2d 606, 628 (N.D. Ill. 2003).

can be dispositive of the abstention analysis. Hancock also relies on a faulty conclusion that this Court lacks discretion to abstain, and a factually inaccurate depiction of Sphere Drake's intent based on "contractual documentation" and the parties' "course of dealing." As explained herein and in Sphere Drake's Memorandum in Support, there is no evidence that Sphere Drake ever agreed that Massachusetts would be the situs for these arbitrations. This Court not only has discretion to abstain, but should exercise that discretion here. Sphere Drake respectfully requests, therefore, that the Court either dismiss this case, or stay it pending the outcome of the proceedings pending in England

SPHERE DRAKE INSURANCE LIMITED
By its attorneys,

_____
Andrea Peraner-Sweet (BBO#550515)
Heather V. Baer (BBO#566746)
SALLY & FITCH
225 Franklin Street
Boston, MA 02110
(617) 542-5542

OF COUNSEL:
Harold C. Wheeler (Attorney I.D. No. 2996960)
Teresa Snider (Attorney I.D. No. 06210115)
Kevin J. O'Brien (Attorney I.D. No. 06193882)
Mark A. Schwartz (Attorney I.D. No. (6270580)
Butler, Rubin, Saltarelli & Boyd LLP
3 First National Plaza
70 West Madison Street, Suite 1800
Chicago, Illinois 60602

CERTIFICATE OF SERVICE

I, Andrea Peraner-Sweet, hereby certify that a copy of this document was served upon all counsel of record by hand on March 24, 2004.

_____
Andrea Peraner-Sweet