UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------------

In the Matter of the Arbitration Proceedings Between

JOHN HANCOCK LIFE INSURANCE COMPANY,
    Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

-------------------------------------------------------------------

Civil Action No.
04 10181 MLW

## MEMORANDUM IN SUPPORT OF JOHN HANCOCK LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

This action arises out of Sphere Drake Insurance Limited's ("Sphere Drake") failure to pay John Hancock Life Insurance Company ("John Hancock") millions of dollars in reinsurance claims. Sphere Drake has refused to arbitrate in the United States as mandated by the seven reinsurance contracts at issue ("Seven Agreements"). As a result, John Hancock petitioned this Court pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. §4 ("Section 4"), to compel Sphere Drake to arbitrate in the United States. This memorandum is filed in support of John Hancock's Motion for Summary Judgment with respect to its Verified Amended Petition to Compel Arbitration.

The sole question for this Court under a Section 4 analysis is whether there is an agreement to arbitrate between the parties. As will be addressed below, the executed "slips" ("Executed Slips") for the Seven Agreements contain unambiguous references to both "arbitration clauses" and "service of suit clauses." Pursuant to the "service of suit clauses," Sphere Drake contractually relinquished all rights to have disputes under the Seven Agreements resolved anywhere other than the United States, once John Hancock invoked jurisdiction over Sphere Drake by filing its Petition

to Compel Arbitration. As the parties indisputably agreed to submit disputes to arbitration, the Court has no option but to compel Sphere Drake to arbitrate in Massachusetts as a matter of law.

## II.    STATEMENT OF FACTS[1]

Between 1997 and 1998, Sphere Drake's underwriting agent, Euro International Underwriting Limited ("EIU"), accepted twenty-nine reinsurance agreements under which John Hancock, a Massachusetts corporation with its principal place of business in Massachusetts, was identified as the reinsured (collectively the "John Hancock/Sphere Drake Ceded Contracts"). (Joint Fact Statement, ¶ 1, 3, and 6.) John Hancock demanded arbitration proceedings against Sphere Drake with respect to certain John Hancock/Sphere Drake Ceded Contracts. (Joint Fact Statement, ¶¶ 14, 22, 27, 31, 35, 41, and 44; John Hancock's Fact Statement, ¶ 20.) Pursuant to the terms and conditions of thirteen of those contracts, the disputes thereunder will be arbitrated in Massachusetts under Massachusetts law and jurisdiction. (Joint Fact Statement, ¶¶ 29, 30, 33, 34, 37, 38, 39, 40, 43, and 44; John Hancock's Fact Statement, ¶ 21.) Sphere Drake has demanded arbitration proceedings against John Hancock with respect to certain John Hancock/Sphere Drake Ceded Contracts. (John Hancock's Fact Statement, ¶¶ 24 and 45.) Pursuant to the terms and conditions of nine of those contracts, the disputes thereunder will be arbitrated in England under English law and jurisdiction. (Joint Fact Statement, ¶¶ 46, 47, 49, and 50; John Hancock's Fact Statement, ¶¶ 19 and 25.)

The Seven Agreements, which consist of five "Specific Realm Agreements;"[2] the "Quota

---

[1] John Hancock submits two statements of fact with respect to this Memorandum. The first is the Joint Statement of Undisputed Facts agreed between the parties pursuant to the Court's February 27, 2004 Order (herinafter referred to as "Joint Fact Statement.") The second is John Hancock's Local Rule 56.1 Statement of Material Facts. (hereinafter referred to as "John Hancock's Fact Statement.")

[2] The five Specific Realm Agreements are two excess of loss and three aggregate stop loss protections relating to John Hancock's participation in a 75% quota share reinsurance of Realm National Insurance Company. (Joint Fact Statement, ¶¶ 9 and 10.)

Fact Statement, ¶ 29; Beacham Aff., ¶ 13.)  "Service of suit clauses" are designed to relieve U.S. cedents from having to pursue litigation in a foreign jurisdiction. (John Hancock's Fact Statement, ¶ 30; Beacham Aff., ¶ 13.)

In 1997 and 1998, "service of suit clauses" were standard provisions in reinsurance agreements entered into between U.S. cedents and their foreign reinsurers. (John Hancock's Fact Statement, ¶ 31; Beacham Aff., ¶ 14.) A reference to a "service of suit clause" in a slip with a U.S. cedent, such as those in the Executed Slips, would have unambiguously indicated to a London insurance market underwriter that, as a foreign reinsurer, the London reinsurer was agreeing to subject itself to the jurisdiction of the United States courts, if invoked by the cedent, and relinquishing the right to have a dispute resolved by any court outside of the United States. (John Hancock's Fact Statement, ¶¶ 32 and 38; Beacham Aff., ¶¶ 15 and 20.)

There is no material difference between the references in the Executed Slips to "Service of Suit Clause U.S.A.," "Service of Suit Clause - USA," or "Service of Suit Clause." (John Hancock's Fact Statement, ¶ 33; Beacham Aff., ¶ 16.) Indeed, in 1997 and 1998, a London insurance market underwriter would have understood such references to refer to the standard U.S. "service of suit clause" wording in the Lloyd's policy wording book, a reference manual of standard policy forms and clauses that have been approved by the Lloyd's Market Association and available for general use by all Lloyd's underwriters. (John Hancock's Fact Statement, ¶¶ 34 and 35; Beacham Aff., ¶¶ 16 and 17.) The standard U.S. "service of suit clause" found in the Lloyd's policy wording book as of 1997 and 1998 provided, in part, as follows:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction in the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a

> United States District Court, or to seek a transfer of a case to another Court as
> permitted by the laws of the United States or of any State in the United States.

(John Hancock's Fact Statement, ¶ 36; Beacham Aff., ¶ 18.)

In 1997 and 1998, a London insurance market underwriter would have understood that a "service of suit clause" could be utilized by the U.S. cedent to compel arbitration in the United States, challenge an arbitration award in the United States or enforce an arbitration award in the United States. (John Hancock's Fact Statement, ¶ 37; Beacham Aff., ¶ 19.)

In 1997 and 1998, a London insurance market underwriter would have understood that each of the Executed Slips' references to both an "arbitration clause" and variations of a "service of suit clause" unambiguously compelled Sphere Drake as the London reinsurer, if requested by John Hancock as the U.S. cedent, to submit to the jurisdiction of the Courts of the United States and arbitrate such disputes subject to their law and jurisdiction, having contractually relinquished its right to have the dispute resolved by a court outside of the United States. (John Hancock's Fact Statement, ¶ 40, Beacham Aff., ¶ 22.)   The fact that the standard U.S. "service of suit" clause preserves the right of a foreign reinsurer to seek a "transfer of a case to another Court," would not have meant to a London market underwriter that the reinsurer could transfer the case to a court outside the United States.  To the contrary, in 1997 and 1998, a London insurance market underwriter would have understood that this language within the "service of suit clause" provided the reinsurer only with the right to transfer the case from one "competent Court" in the United States to another "competent Court" in the United States. (John Hancock's Fact Statement, ¶ 41; Beacham Aff., ¶ 23.)[6]

Consistent with the Executed Slips, each of the slips for the thirteen John Hancock/Sphere Drake Ceded Contracts to be arbitrated in Massachusetts contains a reference to a "service of suit

---

[6]    *See e.g.*, 28 U.S.C. §§1404, 1406 and 1631 (statutory grounds for transfer of case from one United States Federal Court to another United States Federal Court).

clause." (Joint Fact Statement, ¶¶ 29, 33, 38 and 43; John Hancock's Fact Statement, ¶¶ 18 and 22.) In contrast, none of the slips for the nine John Hancock/Sphere Drake Ceded Contracts to be arbitrated in England contains a "service of suit clause." (Joint Fact Statement, ¶ 49; John Hancock's Fact Statement, ¶¶ 19 and 26.)

Consistent with the Executed Slips, the unexecuted wordings for each of the five Specific Realm Agreements,the Quota Share Agreement and the Facility Quota Share Program exemplar[7] contain an "arbitration clause" and a "service of suit clause." (John Hancock's Fact Statement, ¶¶ 7, 8, 9, 10, 11, 12, 16, and 17.) The "arbitration clause" in each of the unexecuted wordings of the five Specific Realm Agreements and the Quota Share Agreement provides that all disputes under the agreements "shall be submitted to arbitration" and that the law "of the State of Massachusetts" shall govern the arbitration. (John Hancock's Fact Statement, ¶¶ 8 and 11.)[8]

Moreover, the "service of suit clause" in each of the unexecuted wordings of the five Specific Realm Agreements, the Quota Share Agreement and the Facility Quota Share Program exemplar provides, in relevant part:

> [i]n the event of the failure of the [Reinsurers] hereon to pay any amount claimed to be due hereunder, the [Reinsurers]...at the request of the [Reinsured], will submit to the jurisdiction of [a] [c]ourt of competent jurisdiction within the United States. . ."[9]

---

[7]  Although Sphere Drake did not participate until 1998, the Facility Quota Share Program had been in force and continually renewed since 1991. (John Hancock's Fact Statement , ¶ 14.)  All of the previous wordings for the Facility Quota Share Program contained an "arbitration clause" and a "service of suit clause"  which were materially similar, if not identical, to the exemplar wording. (John Hancock's Fact Statement, ¶ 15.)

[8]  The arbitration clause in the exemplar wording for the Facility Quota Share Program provides, in relevant part:

> any dispute or difference hereafter arising with reference to the interpretation,
> application, or effect of this Agreement . . . shall be referred to a Board of Arbitration . . .
> The seat of the Board of Arbitration shall be in Massachusetts, unless the disputants agree
> otherwise.

(John Hancock's Fact Statement, ¶¶ 15 and 16.)

[9]   In the Specific Realm Agreements and the Quota Share Agreement, the "service of suit clause" further provides as follows:

(John Hancock's Fact Statement, ¶¶ 9, 12, 15 and 17.)

Sphere Drake (formerly known as Odyssey Re (London) Limited) has previously availed itself of jurisdiction in the United States by filing an action in 1999 in the United States District Court for the Southern District of New York against "a group of British and Bermudian insurance and reinsurance companies, their subsidiaries and a number of individual principals of those companies" (the "Odyssey Re Action.") *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd. et al.*, 85 F.Supp.2d 282, 286 (S.D.N.Y. 2000). The Odyssey Re Action involved allegations of an "international conspiracy to fraudulently induce [Sphere Drake] to reinsure drastically unprofitable worker's compensation policies." (*Id.*) The Odyssey Re Action related to the same underlying business that is the subject of the Seven Agreements and included references to the Seven Agreements. (John Hancock's Fact Statement, ¶ 42.)

In response to motions to dismiss brought by various defendants under the doctrine of *forum non conveniens*, Sphere Drake asserted that there were substantial connections to the United States with regard to the underlying workers' compensation business (John Hancock's Fact Statement, ¶ 43.) Sphere Drake specifically argued that "although some parties and documents are located in London and others in Bermuda, this dispute . . . [is] centered in and arise[s] from the workers' compensation insurance and reinsurance market in the United States." (John Hancock's Fact Statement, ¶ 43.) Sphere Drake also noted its "significant connection to the United States" as "a licensed excess and surplus lines insurer in 47 states...and . . . accredited and trusteed in 23

---

Nothing in this clause constitutes or should be understood to constitute a waiver of Reinsurers' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any State in the United States.

(John Hancock's Fact Statement, ¶¶ 9 and 12.)

states." (John Hancock's Fact Statement, ¶ 44.) Furthermore, Sphere Drake argued that the

potential for witnesses being unavailable in London and Bermuda was immaterial:

> [T]here is a distinction between "unwilling" witnesses, as to whom the question is whether they can be compelled to appear, and "willing" witnesses, as to whom the question is the cost associated with having them appear.
>
> The SCB Defendants have failed to produce evidence, or even to allege, that particular people would be unwilling to testify . . . nor have they offered any suggestion as to what this testimony might be and whether their inability to obtain it would be prejudicial to them. Moreover, the testimony of various witnesses probably can be secured pursuant to letters rogatory, perhaps even in the manner customary in U.S. courts.

(citations omitted)(John Hancock's Fact Statement, ¶ 45.)

### III.    ARGUMENT

#### A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the pleadings . . . together with any affidavits,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as matter of law." *Mullin v. Raytheon Co.*, 2 F.Supp.2d 165, 168 (D. Mass. 1998)

(*quoting* Fed. R. Civ. P. 56(c)). The burden is on the moving party to demonstrate the absence of

any material factual issue genuinely in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).

To defeat a motion for summary judgment, the party opposing the motion must establish

the existence of at least one issue that is both genuinely in dispute and that would materially affect

the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

#### B.    <u>By Contractually Agreeing to "Service of Suit Clauses" in the Executed Slips, Sphere Drake Relinquished Any Right to Have The Dispute Resolved By a Court Outside of the United States.</u>

It is undisputed that Sphere Drake is bound by the "service of suit clauses" referenced in the

Executed Slips. (John Hancock's Fact Statement, ¶ 38; Beacham Aff., ¶ 20.)  It is also undisputed that the contractual consequences to Sphere Drake of the "service of suit clauses" would have been unambiguously understood by a London market underwriter at the time the slips were executed in 1997 and 1998. (John Hancock's Fact Statement, ¶¶ 32, 38, and 40; Beacham Aff., ¶¶ 15, 20 and 22.)  "Service of suit clauses" were included as standard provisions in reinsurance agreements between U.S. cedents and foreign reinsurers to ensure that the U.S. cedents would not be required to pursue litigation in a foreign jurisdiction in the event of a dispute. (John Hancock's Fact Statement, ¶¶ 30 and 31; Beacham Aff., ¶¶ 13 and 14.)

The "service of suit clauses" in the Executed Slips unambiguously establish that Sphere Drake relinquished the right to have a dispute resolved by a court outside of the United States if John Hancock sought jurisdiction over it in the United States. (John Hancock's Fact Statement, ¶ 38; Beacham Aff., ¶ 20.)  John Hancock invoked this Court's jurisdiction by filing its Petition to Compel Arbitration. Obtaining jurisdiction over Sphere Drake in its domestic country is John Hancock's absolute and unequivocal bargained for right under the Executed Slips.  To hold otherwise would rewrite the contractual terms and conditions between the parties which the Court has no authority to do. *See Accusoft Corp. v. Palo*, 237 F.3d 31, 41 (1ˢᵗ Cir. 2001) (it is not the court's place to "requite contracts freely entered into between sophisticated business entities.")(quoting *Mathewson Corp. v. Allied Marine Indus., Inc.*, 827 F.2d 850, 855 (1ˢᵗ Cir. 1987)).  Having accomplished jurisdiction over Sphere Drake in the United States, the Court must consider this dispute solely within the confines of Section 4 of the FAA.

**C.    The Arbitration Clauses in the Executed Slips and the Mandatory Nature of Section 4 of The FAA, Require the Court To Compel Sphere Drake To Arbitrate In Massachusetts.**

Section 4 of the FAA mandates that when considering a petition to compel arbitration,

9

"[t]he court *shall* hear the parties, and upon being satisfied that the making of the agreement for arbitration…is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C § 4 (emphasis added.) *See e.g., Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 218 (1985) (the FAA "leaves no place for the exercise of discretion by a District Court, but instead mandates that the District Court shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); *KKW Enters. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50 (1st Cir. 1999)(recognizing mandatory nature of Section 4).

As dictated by Section 4, the Court's inquiry in this matter is limited to ascertaining the existence of an agreement to arbitrate between the parties.[10] *See e.g., Baggesen v. Am. Skandia Life Assur. Corp.*, 235 F. Supp. 2d 30, 32 (D.Mass. 2002) (recognizing court's inquiry limited to ascertaining existence of agreement to arbitrate). Critically, Sphere Drake already recognized in open court its obligations to arbitrate in accordance with the Executed Slips. (John Hancock's Fact Statement, ¶ 3.)  In fact, Sphere Drake has admitted that this action is appropriately before this Court and that Massachusetts is the only venue in which the Court can order the parties to arbitrate. (*See* Sphere Drake Memorandum of Law in Support of its Motion to Dismiss or Stay John Hancock's Verified Amended Petition to Compel Arbitration Proceedings ("Memorandum in Support"), p. 2 filed  on February 11, 2004 as Docket Entry number 34.) Thus, there is no dispute as to the existence of an arbitration agreement under the Seven Agreements as evidenced by the Executed Slips.

Service of suit clauses are the mechanism by which an aggrieved U.S. cedent can compel

---

[10]   The evidence submitted by Sphere Drake relating to its position that the Seven Agreements are purportedly void, including the English decision in *Sphere Drake v. EIU, et. al.*, is not properly before this Court and must be disregarded for purposes of a Section 4 analysis. Any such evidence, as well as Sphere Drake's argument as to the enforceability of the Seven Agreements, are properly presentable only to the arbitration panels which will hear the disputes under such agreements.

arbitration in the United States. (John Hancock's Fact Statement, ¶ 37 ; Beacham Aff., 19.) *See also, Security Life Ins. Co. of Am. v. Hannover Life Reassurance Co. of Am.*, 167 F.Supp.2d 1086, 1088-89 (D. Minn. 2001) (service of suit clause provides a means to compel arbitration). "Arbitration clauses" must be read in conjunction with "service of suit clauses" to ensure the federal policy goals of favoring arbitration and to give credence to the negotiated provisions of commercial contracts. *See Travelers Ins. Co. v. Keeling*, 1993 U.S. Dist. LEXIS 491, *13-14 (S.D.N.Y. January 19, 1993) (giving effect to plain language of both arbitration and service of suit clauses, court recognized service of suit clause could be used to force underwriters to submit to any U.S. court to compel arbitration).[11]

Consequently, the inclusion of both the "arbitration clauses" and the "service of suit clauses" in the Executed Slips reflect John Hancock's unequivocal and unambiguous bargained for right to have this Court compel Sphere Drake to arbitrate disputes with respect to the Seven Agreements. (John Hancock's Fact Statement, ¶ 40; Beacham Aff., ¶ 22.) Indeed, this result is consistent with the fact that each of the slips for the thirteen John Hancock/Sphere Drake Ceded Contracts to be arbitrated in Massachusetts contains an applicable "service of suit clause," while none of the slips for the nine John Hancock/Sphere Drake Ceded Contracts to be arbitrated in England contains an  applicable "service of suit clause." (John Hancock's Fact Statement, ¶ 26.)

Having proper jurisidiction over Sphere Drake pursuant to the "service of suit clauses," the Court must, therefore, compel Sphere Drake to arbitrate the disputes under the Seven Agreements in Massachusetts in accordance with Section 4.   *See* 9 U.S.C. §4 ("The hearing and proceedings, under such an agreement, shall be within the district in which the petition for an order directing such arbitration is filed.")

---

[11] This upublished decision is filed herewith as Petitioner's Exhibit 49.

**D.     The "Arbitration Clauses" and "Service of Suit Clauses" in the Unexecuted Wordings for the Seven Agreements Are Consistent With The Executed Slips.**

While the Court need not go further than an examination of the Executed Slips for purposes of its Section 4 analysis, the unexecuted wordings for the Specific Realm Agreements, the Quota Share Agreement and the exemplar wording for the Facility Quota Share Program offer consistency in their elaboration on the "arbitration clauses" and "service of suit clauses" referenced in the Executed Slips.

The unexecuted wordings for the Specific Realm Agreements and the Quota Share Agreement and the Facility Quota Share exemplar wording contain "arbitration clauses" providing that disputes be submitted to arbitration whether in Massachusetts or in accordance with Massachusetts law, thereby illustrating John Hancock's unequivocal intent to domestically arbitrate disputes with respect to these contracts. (John Hancock's Fact Statement, ¶¶ 8, 11, and 16.) Furthermore, the unexecuted wordings for the Specific Realm Agreements, the Quota Share Agreement and the Facility Quota Share exemplar wording contain "service of suit clauses" which provide that the reinsurer, at the request of the reinsured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. (John Hancock's Fact Statement, ¶¶ 9, 12, and 17.) Accordingly, the unexecuted wordings reinforce Sphere Drake's obligation to arbitrate under the Seven Agreements in Massachusetts at John Hancock's request.

**E.     The Court Has No Authority To Stay or Dismiss John Hancock's Petition to Compel Arbitration On Grounds Of International Abstention.**

Sphere Drake has requested that the Court ignore the terms of the Executed Slips and dismiss or stay this action under the doctrine of "international abstention." (*See* Sphere Drake's Memorandum in Support at p 3.) The crux of Sphere Drake's argument rests on the assertions that (1) there is no evidence that the parties intended to arbitrate in the United States; and (2) England

would be a more "sensible" situs for arbitration due to potential problems with witness availability. (Sphere Drake's Memorandum in Support at pp. 9-12 and 17.)  Sphere Drake's grounds for international abstention are disingenuous and unavailing as the evidence is to the contrary.  At best, Sphere Drake is engaging in impermissible forum shopping.

### 1.    *Sphere Drake Will be Arbitrating All Relevant Issues in Massachusetts With Respect to Thirteen John Hancock/Sphere Drake Ceded Contracts.*

The thirteen John Hancock/Sphere Drake Contracts to be arbitrated in Massachusetts involve the same type of U.S. workers' compensation carve-out business as that involved in the Seven Agreements and will involve similar, if not the identical, witnesses including Nick Brown, Jeff Butler, John Whitcombe and Christopher Henton, identified by Sphere Drake in its Memorandum In Support. (*See* Sphere Drake's Memoranum in Support at p. 3.)  In each of these arbitrations, Sphere Drake is expected to assert similar if not the identical legal arguments and rely on the same evidence. (John Hancock's Fact Statement, ¶ 23.)  Under the circumstances, Sphere Drake cannot credibly assert that Massachusetts is not an appropriate site for arbitration of the Seven Agreements.

### 2.    *Sphere Drake's Request For International Abstention Is Disingenuous And Inconsistent With Its Position In Prior U.S. Litigation.*

In 1999, Sphere Drake availed itself of jurisdiction in the United States by filing the Odyssey Re Action in the United States District Court for the Southern District of New York against British and Bermudian insurers and reinsurers, their subsidiaries and certain of the companies' individual principals.  *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd. et al.*, 85 F.Supp.2d 282, 286 (S.D.N.Y. 2000).  The Odyssey Re Action related to the same underlying business that is the subject of the Seven Agreements and, indeed, included references to the Seven Agreements. (John Hancock's Fact Statement, ¶ 42.)

In resisting defendants' motions to dismiss on *forum non conveniens* grounds in the Odyssey Re Action, Sphere Drake emphasized the substantial connections to the United States with regard to the underlying workers' compensation business, arguing that while parties and documents may be abroad, the focus of the dispute was the U.S. workers' compensation insurance and reinsurance market, describing as immaterial the potential for witnesses being unavailable in London and Bermuda. (John Hancock's Fact Statement, ¶¶ 43 and 45.) Sphere Drake also maintained that its status as a U.S. licensed excess and surplus lines insurer, accredited and trusteed in numerous states, further supported the connection to the United States. (John Hancock's Fact Statement, ¶ 44.)

Sphere Drake's position in the Odyssey Re Action is incongruous with its argument on "international abstention" in this matter. Sphere Drake initiated an action in the United States with respect to the same business and agreements at issue in this matter and argued that connections to the United States clearly outweighed any connections with England, notwithstanding the potential for witness unavailability. Now that John Hancock, a Massachusetts corporation, has invoked its contractual right to jurisdiction in a domestic forum, Sphere Drake reverses course, claiming that England is a more "sensible" forum. This is blatant forum shopping.

### 3. *Sphere Drake Has No Support For Its Request For International Abstention.*

When a federal court is asked to abstain in favor of a parallel litigation pending in another court, the presumption is against abstention. *Allendale Mut. Ins. Co. v. Factory Mut. Int'l*, 10 F.3d 425, 430 (7th Cir. 1993)(citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976); and *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989). The general rule is "that a federal court has a duty to exercise the jurisdiction that Congress has given it." *Allendale Mut. Ins. Co.*, 10 F.3d at 430. "Traditionally

14

federal courts have shown reluctance to decline jurisdiction in the face of this 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them.'" *Goldhammer v. Dunkin' Donunts*, Inc., 59 F.Supp.2d 248, 251 (D. Mass. 1999)(*quoting Colorado River Water Conservation Dist.*, 424 U.S. at 817).

The mandatory language of Section 4, in conjunction with the "service of suit clauses," requires the Court to exercise its jurisdiction and compel Sphere Drake to arbitrate in the United States. Sphere Drake has not cited to a single case where the court permitted international abstention on a Section 4 petition to compel arbitration, where the party seeking abstention contractually relinquished any right to have a dispute resolved by a court outside the United States once domestic jurisdiction has been invoked by the other party. In fact, Sphere Drake's reliance on *Goldhammer* and cases interpreting the doctrine of *forum non conveniens* is wholly misplaced. (*See* Sphere Drake's Reply in Further Support of Its Motion to Dismiss or Stay John Hancock's Verified Amended Petition to Compel Arbitration Proceedings ("Sphere Drake's Reply Memorandum") filed March 24, 2004 as Docket Entry number 51, at pp. 10-16.)

Most importantly, *Goldhammer* does not involve a Section 4 petition to compel arbitration. Futher, the agreement at issue in *Goldhammer* did not contain a service of suit clause pursuant to which the party pursuing abstention agreed to submit to the exclusive jurisdiction of the courts of the United States. In denying a motion to dismiss but granting a stay of the Massachusetts action, the *Goldhammer* court employed the following six factor balancing test: (1) similarity of parties and issues involved in the foreign litigation; (2) the promotion of judicial efficiency; (3) adequacy

of relief available in the alternative forum; (4) issues of fairness to and convenience of the parties, counsel, and witnesses; (5) the possibility of prejudice to any of the parties; and (6) the temporal sequence of the filing of the actions. *Id.* at 252-253 (citations omitted).   The court found that the critical factor in the circumstances of that case was the temporal sequence of the filing of the actions.  The court noted that "[t]he sequence of these actions heavily favors a stay" of the Massachusetts action because the lawsuit in England had been filed one year prior to the action in the Massachusetts District Court, discovery was ongoing and the English action was proceeding to trial. *Id.* at 255 (citations omitted).

The "critical" timing factor in *Goldhammer* is not present here.   To the contrary, John Hancock's Petition to Compel Arbitration was filed first.  Perhaps more importantly, abstention would be grossly unfair and prejudicial to John Hancock as it would effectively constitute a rewriting of the Executed Slips to eliminate the bargained for "service of suit clauses."   In contrast, there is no prejudice to Sphere Drake in proceeding with arbitrations in Massachusetts, especially in view of Sphere Drake's contractual commitments made in the Executed Slips, as well as the fact that Sphere Drake will be arbitrating similar, if not identical, cases involving similar, if not identical, witnesses in Massachusetts with regard to thirteen of the John Hancock/Sphere Drake Ceded Contracts.  In short, there is no legal or factual basis for international abstention[12] in this matter. *Cf e.g., Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221 (9th Cir. 1999)(on petition to compel arbitration without a service of suit clause at issue, district

---

[12]   Sphere Drake's *forum non conveniens* cases are readily distinguishable and legally unpersuasive because none involve the legal consequences of a Section 4 petition to compel coupled with "service of suit clauses" invoked by a domestic corporation against a foreign corporation such as the current case. *See e.g., Brooke Group Ltd. v. JCH Syndicate 488*, 87 NY2d 530, 533 (N.Y. 1996)(in case not involving Section 4 petition to compel arbitration, court dismissed action on grounds of *forum non conveniens* because parties were both foreign corporations, insurance was issued in England, covered property was in Russia and there was no connection to New York forum other than the lawsuit); *W.R. Grace & Co. v. Hartford Accident & Indem. Co.*, 407 Mass. 572 (1990)(in case not involving a Section 4 petition, court determined that despite a service of suit clause it could dismiss the Massachusetts action on *forum non conveniens grounds* in favor of the action filed four years previously in New York).

court properly deferred to first filed action before Indian tribal court); *Acton Corp. v. Borden, Inc.*, 670 F.2d 377, 383 (1st Cir. 1982)(court abstained to previously filed action in another United States district court already deciding same issue); and *Pepsico Inc. v. Oficiana Central de Asesoria Y Auda Texnica, C.A.,* 945 F.Supp. 69, 70 (S.D.N.Y. 1996)(district court refrained from ruling on petition to compel arbitration for 60 days to allow Venezuelan court in first filed action to determine a threshold question of Venezuelan law in a case that did not involve a service of suit clause.)[13]

The Court has no legal authority to stay or dismiss John Hancock's Petition to Compel Arbitration, whether on grounds of "international abstention" or otherwise, because of the contractual commitments made in the Executed Slips in 1997 and 1998.  This Court must consider this dispute solely within the confines of Section 4 of the FAA and compel Sphere Drake to arbitrate the Seven Agreements in Massachusetts as a matter of law.

---

[13] These cases are consistent with the "first to file" rule which provides that when deciding which of two parallel federal actions should proceed, the general rule is that 'the first suit should have priority . . .'" *Hanson PLC v. Metro-Goldwyn-Mayer Inc.*, 932 F.Supp. 104, 105 (S.D.N.Y. 1996); *see also, Small v. Wageman,* 291 F.2d 734, 736 (1st Cir. 1961)(describing first to file rule).

## IV.    CONCLUSION

For the foregoing reasons, as well as those previously set forth in John Hancock's Petition

To Compel Arbitration and related filings, John Hancock respectfully requests that the Court grant

its Motion for Summary Judgment on its Petition to Compel Arbitration.

Respectfully submitted,

JOHN HANCOCK
LIFE INSURANCE COMPANY
By its attorneys,

Mitchell S. King, Esq. BBO#272810
Rhonda L. Rittenberg, Esq. BBO# 550498
Michael A. Calawa, Esq. BBO# 643517
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Of Counsel
David A. Silva, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Attorneys for
John Hancock Life Insurance Company

Dated: May 12, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May, 2004, I served a copy of the foregoing Memorandum
In Support of John Hancock Life Insurance Company's Motion For Summary Judgment by hand to
the law firm Sally & Fitch and by regular mail to the law firm Butler Rubin Saltarelli & Boyd.

Michael A. Calawa, Esq. BBO# 643517

18