UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE
INSURANCE COMPANY,
    Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

Civil Action No.
04-10181MLW

---

### JOHN HANCOCK LIFE INSURANCE COMPANY'S
### LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1 and the Court's February 27, 2004 Scheduling Order, John Hancock Life Insurance Company (formerly known as John Hancock Mutual Life Insurance Company) ("John Hancock") hereby submits its Statement of Material Facts in Support of its Motion For Summary Judgment:[1]

    1.    The seven reinsurance agreements at issue in this action ("Seven Agreements") consist of the following John Hancock/Sphere Drake Ceded Contracts:[2] the five Specific Realm Agreements; the Quota Share Agreement; and the Facility Quota Share Agreement. (Affidavit of Joseph P. Welch In Support of Verified Amended Petition to Compel Arbitration Proceedings ("Welch Aff.") ¶ 2.)

---

[1] John Hancock submits this Local Rule 56.1 Statement of Material Facts in addition to the parties' Joint Statement of Undisputed Facts.

[2] For purposes of this Local Rule 56.1 Statement of Material Facts, the phrase "John Hancock/Sphere Drake Ceded Contracts" shall mean the twenty-nine reinsurance agreements accepted by Sphere Drake's underwriting agent Euro International Underwriting Limited ("EIU") between 1997 and 1998, under which John Hancock was identified as the reinsured. This statement is agreed by the parties in the Joint Statement of Undisputed Facts submitted herewith. (See Joint Statement of Undisputed Facts ¶ 3.)

2.  A "slip" is a binding contract setting forth the terms and conditions as agreed between the parties. (Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment ("Beacham Aff.") ¶ 10.)

3.  With respect to the Seven Agreements, respondent, Sphere Drake Insurance Limited ("Sphere Drake") has agreed "to conduct arbitration in accordance with the guidance of the slips themselves." (*See* exhibit 46 to Petitioner's Exhibits in Support of John Hancock's Motion for Summary Judgment ("Petitioner's Exhibits")[3]; *see also*, Petitioner's Exhibit 11.)

4.  Each slip of the five Specific Realm Agreements makes reference to a "Service of Suit Clause U.S.A." (Welch Aff. ¶ 2(a), 2(b), 2(c), 2(d), and 2(e); and Petitioner's Exhibits 1(a), 2(a), 3(a), 4(a), and 5(a).)

5.  The slip for the Quota Share Agreement makes reference to a "Service of Suit Clause – USA." (Welch Aff. ¶ 2(f); and Petitioner's Exhibit 6(a).)

6.  The slip for the Facility Quota Share makes reference to a "Service of Suit Clause." (Welch Aff. ¶2(g); and Petitioner's Exhibit 7(a).)

7.  Petitioner's Exhibits 1(c), 2(c), 3(c), 4(c), and 5(c) are true and accurate copies of unexecuted wordings for each of the five Specific Realm Agreements. (Welch Aff. ¶ 2(a), 2(b), 2(c), 2(d), and 2(e).)

8.  The unexecuted wordings for the five Specific Realm Agreements contain an "arbitration clause" that provides that all disputes under the agreements "shall be

---

[3] With the exception of Petitioner's Exhibits 46-49, all Petitioner's Exhibits cited herein were previously submitted to the Court by John Hancock in support of its Petition to Compel Arbitration Proceedings, its Verified Amended Petition to Compel Arbitration Proceedings and its Opposition to the Motion of Respondent Sphere Drake Insurance Limited to Dismiss or in the Alternative Stay the Petition to Compel Arbitration Proceedings. For the Court's ease of reference, these previously submitted exhibits are identified by their original numbers. All exhibits relied upon by John Hancock are attached to its Motion For Summary Judgment, filed herewith.

2

submitted to arbitration" and that the "law of the State of Massachusetts" shall govern the arbitration. (Welch Aff. ¶¶ 2(a), 2(b), 2(c), 2(d), and 2(e); Petitioner's Exhibits 1(c), Art. 26, 2(c) Art. 26, 3(c) Art. 25, 4(c), Art. 25, 5(c) Art. 25.)

9. The unexecuted wordings for the five Specific Realm Agreements contains a "service of suit clause" that provides, in relevant part:

> in the event of the failure of the Reinsurers hereon to pay any amount claimed to be due hereunder, the Reinsurers hereon, at the request of the Reinsured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of Reinsurers' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any State in the United States.

(Welch Aff. ¶ 2(a), 2(b), 2(c), 2(d), and 2(e); Petitioner's Exhibits 1(c), Art. 12, 2(c) Art. 12, 3(c) Art. 11, 4(c), Art. 11, and 5(c) Art. 11.)

10. Petitioner's Exhibit 6(c) is a true and accurate copy of the unexecuted wording for the Quota Share Agreement. (Welch Aff. ¶ 2(f).)

11. The unexecuted wording for the Quota Share Agreement contains an "arbitration clause" providing that all disputes under the agreement "shall be submitted to arbitration" and that "[t]he laws of the State of Massachusetts shall govern the arbitration." (Welch Aff. ¶ 2(f); Petitioner's Exhibit 6(c) Art. XIV.)

12. The unexecuted wording for the Quota Share Agreement contains a "service of suit clause" that provides, in relevant part:

> in the event of the failure of the Reinsurer hereon to pay any amount claimed to be due hereunder, the Reinsurer hereon, at the request of the [Reinsured], will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to

3

>constitute a waiver of Reinsurers' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any State in the United States.

(Welch Aff. ¶ 2(f); Petitioner's Exhibit 6(c) Art. XV.)

13. The Facility Quota Share Agreement was part of an overall, pre-existing reinsurance program (the "Facility Quota Share Program") in which various reinsurers or retrocessionaires participated, in varying percentages, in exchange for premium payments by John Hancock. The Facility Quota Share Agreement indemnifies John Hancock's Accident and Health and related reinsurance coverages. (Welch Aff. ¶ 5.)

14. Although 1998 was Sphere Drake's first year of participation, the Facility Quota Share Program had been in force and continually renewed since 1991. (Welch Aff. ¶ 6.)

15. Petitioner's Exhibit 8 is a true and accurate copy of an exemplar wording for the Facility Quota Share Program. All of the previous wordings for the Facility Quota Share Program contained an Arbitration Clause and a Service of Suit Clause materially similar, if not identical, to those in Petitioner's Exhibit 8. (Welch Aff. ¶ 6.)

16. The Facility Quota Share Program exemplar wording contains an "arbitration clause" which provides, in relevant part:

>any dispute or difference hereafter arising with reference to the interpretation, application, or effect of this Agreement . . . shall be referred to a Board of Arbitration . . . The seat of the Board of Arbitration shall be in Massachusetts, unless the disputants agree otherwise.

(Welch Aff. ¶ 6; Petitioner's Exhibit 8, Art. XIX.)

4

17. The Facility Quota Share Program exemplar wording contains a "service of suit clause" that provides, in relevant part:

> [i]n the event of the failure of the [Reinsurers] hereon to pay any amount claimed to be due hereunder, the [Reinsurers], at the request of the [Reinsured], will submit to the jurisdiction of any court of competent jurisdiction within the United States...

(Welch Aff. ¶ 6; Petitioner's Exhibit 8 Art. XVIII.)

18. Petitioner's Exhibits 24(a), 25(a), 26(a), and 27(a) are true and accurate copies of the slips for each of the four Bermuda Whole Account Agreements. (Second Affidavit of Joseph P. Welch In Support Of Verified Amended Petition to Compel Arbitration Proceedings And In Opposition To Sphere Drake's Motion to Dismiss ("Second Welch Aff.") ¶ 2(f), 2(g), 2(h), and 2(i).)

19. Petitioner's Exhibits 33(a), 34(a), 35(a), 36(a), 37(a), 38(a), 39(a), and 40(a) are true and accurate copies of the slip policies for each of the eight Bermuda & JEH Corporation London Agreements. (Second Welch Aff. ¶ 2(o), 2(p), 2(q), 2(r), 2(s), 2(t), 2(u), and 2(v).)

20. John Hancock has demanded arbitration proceedings against Sphere Drake with respect to twenty John Hancock/Sphere Drake Ceded Contracts. (Petitioner's Exhibit 14.)

21. Pursuant to the terms and conditions of thirteen of the John Hancock/Sphere Drake Ceded Contracts, the disputes thereunder will be arbitrated in Massachusetts under Massachusetts law and jurisdiction. (Second Affidavit of Joseph P. Welch In Support Of Verified Amended Petition to Compel Arbitration Proceedings And In Opposition To Sphere Drake's Motion to Dismiss ("Second Welch Aff.") ¶ 2(a), 2(b), 2(c), 2(d), 2(e), 2(f), 2(g), 2(h), 2(i), 2(j), 2(k), 2(l), and 2(m); and Petitioner's Exhibits

5

19(a), 20(a), 21(a), 22(a), 23(a), 24(a) and (c), 25(a) and (b), 26(a) and (c), 27(a) and (c), 28(a), 29(a), 30(a), 31(a), 32(a) and 48.)

22. Each of the slips for the thirteen John Hancock/Sphere Drake Ceded Contracts to be arbitrated in Massachusetts contains a reference to a "service of suit clause." (Second Welch Aff. ¶¶ 2(a), 2(b), 2(c), 2(d), 2(e), 2(f), 2(g), 2(h), 2(i), 2(j), 2(k), 2(l), and 2(m); Petitioner's Exhibits 19(a), 20(a), 21(a), 22(a), 23(a), 24(a), 25(a), 26(a), 27(a), 28(a), 29(a), 30(a), and 31(a).)

23. In each of the arbitrations for the thirteen John Hancock/Sphere Drake Ceded Contracts to be arbitrated in Massachusetts, Sphere Drake is expected to assert similar if not the identical legal arguments and rely on the same evidence as in arbitrations for the Seven Agreements. (Petitioner's Exhibit 15.)

24. Sphere Drake has demanded arbitration against John Hancock with respect to sixteen John Hancock/Sphere Drake Ceded Contracts in England. (Petitioner's Exhibit 15 and 47.)

25. Pursuant to the terms and conditions of nine of the sixteen John Hancock/Sphere Drake Ceded contracts, the disputes thereunder will be arbitrated in England under English law and jurisdiction. (Second Welch Aff. ¶ 2(n), 2(o), 2(p), 2(q), 2(r), 2(s), 2(t), 2(u), and 2(v) and Petitioner's Exhibits 32(a), 33(a), 34(a), 35(a), 36(a), 37(a), 38(a), 39(a), and 40(a).)

26. None of the slips for the nine John Hancock/Sphere Drake Ceded Contracts to be arbitrated in England contains an applicable "service of suit clause" (*See* Second Welch Aff. ¶¶ 2(n), 2(o), 2(p), 2(q), 2(r), 2(s), 2(t), 2(u), and 2(v); Petitioner's Exhibits, 32(a), 33(a), 34(a), 35(a), 36(a), 37(a), 38(a), 39(a), and 40(a).)

6

27. In 1997 and 1998, arbitration clauses were standard provisions in reinsurance agreements entered into by the London insurance market. (Beacham Aff. ¶ 11.)

28. In 1997 and 1998, a reference to an "arbitration clause" in a slip would have unambiguously indicated to a London insurance market underwriter that the parties to the contract agreed to submit their disputes to arbitration. (Beacham Aff. ¶ 12.)

29. Since the mid-1980's, London insurance market underwriters have included service of suit clauses in reinsurance contracts to allow United States cedents to obtain United States jurisdiction over foreign reinsurers with which they transact business in the event of a dispute. (Beacham Aff. ¶ 13.)

30. The service of suit clauses are designed to relieve U.S. cedents from having to pursue litigation in a foreign jurisdiction. (Beacham Aff. ¶ 13.)

31. In 1997 and 1998, service of suit clauses were standard provisions in reinsurance agreements entered into between U.S. cedents and their foreign reinsurers. (Beacham Aff. ¶ 14.)

32. In 1997 and 1998, a reference to a "service of suit clause" in a slip with a U.S. cedent would have unambiguously indicated to a London insurance market underwriter that as a foreign reinsurer, the London reinsurer was agreeing to subject itself to the jurisdiction of the United States courts if invoked by the cedent. (Beacham Aff. ¶ 15.)

33. There is no material difference between the references to "Service of Suit Clause U.S.A," "Service of Suit Clause - USA," or "Service of Suit Clause" in the executed slips for the Seven Agreements (the "Executed Slips"). (Beacham Aff. ¶ 16.)

34. In 1997 and 1998, a London insurance market underwriter would have understood references to "Service of Suit Clause U.S.A," "Service of Suit Clause - USA," and "Service of Suit Clause," as contained in the Executed Slips, to refer to the standard U.S. service of suit clause wording in the Lloyd's policy wording book. (Beacham Aff. ¶ 16.)

35. The Lloyd's policy wording book is a reference manual of standard policy forms and clauses that have been approved by the Lloyd's Market Association and available for general use by all Lloyd's underwriters. (Beacham Aff. ¶ 17.)

36. The standard U.S. service of suit clause found in the Lloyd's policy wording book as of 1997 and 1998 provided, in part, as follows:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction in the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

(Beacham Aff. ¶ 18.)

37. In 1997 and 1998, a London insurance market underwriter would have understood that a service of suit clause could be utilized by the U.S. cedent to compel arbitration in the United States, challenge an arbitration award in the United States or enforce an arbitration award in the United States. (Beacham Aff. ¶ 19.)

38. In 1997 and 1998, a London insurance market underwriter would have understood that each of varying references to a "service of suit clause" in the Executed

Slips unambiguously meant that the London reinsurer was relinquishing the right to have a dispute resolved by any court outside of the United States. (Beacham Aff. ¶ 20.)

39.  In 1997 and 1998, a London insurance market underwriter would have understood that the reference to an "arbitration clause" in the Executed Slips unambiguously meant that the London reinsurer agreed to submit disputes to arbitration. (Beacham Aff. ¶ 21.)

40.  In 1997 and 1998, a London insurance market underwriter would have understood that each of the Executed Slips' references to both an "arbitration clause" and some variation of a "service of suit clause" unambiguously compelled the London reinsurer, if requested by the U.S. cedent, to submit to the jurisdiction of the Courts of the United States and arbitrate such disputes subject to the law and jurisdiction of the Courts of the United States. (Beacham Aff. ¶ 22.)

41.  The standard U.S. service of suit clause which preserves the right of a foreign reinsurer to seek a "transfer of a case to another Court," would have meant to a London market underwriter in 1997 and 1998, that the reinsurer has the right to transfer the case from one "competent Court" in the United States to another "competent Court" in the United States, not transfer the case to a court outside the United States. (Beacham Aff. ¶ 23.)

42.  In 1999, Sphere Drake (formerly known as Odyssey Re (London) Limited) filed an action in the United States District Court for the Southern District of New York against a group of British and Bermudian insurance and reinsurance companies, their subsidiaries, and a number of individual principals of those companies concerning the same underlying business and the Seven Agreements ("Odyssey Re

Action"). (Second Affidavit of Mitchell S. King In Support of Verified Amended Petition to Compel Arbitration Proceedings and In Opposition to Sphere Drake's Motion to Dismiss ("Second King Aff."), ¶10; and Petitioner's Exhibit, 43 ¶¶ 61-63 and 74.)

43. In response to motions to dismiss the Odyssey Re Action by various defendants under the doctrine of *forum non conveniens* ("*Forum Non Conveniens Motions*"), Sphere Drake argued: "[A]lthough some parties and documents are located in London and others in Bermuda, this dispute . . . [is] centered in and arise[s] from the workers' compensation insurance and reinsurance market in the United States." (Second King Aff. ¶11; and Petitioner's Exhibit, 44 p.28.)

44. In response to the *Forum Non Conveniens Motions*, Sphere Drake noted its "significant connection to the United States" stating that Sphere Drake "is a licensed excess and surplus lines insurer in 47 states . . . and is accredited and trusteed in 23 states." (Second King Aff., ¶ 11; and Petitioner's Exhibit, 44 p. 31.)

45. In response to the *Forum Non Conveniens Motions*, Sphere Drake also argued that the potential of witnesses being unavailable in London and Bermuda was immaterial, stating:

> [T]here is a distinction between "unwilling" witnesses, as to whom the question is whether they can be compelled to appear, and "willing" witnesses, as to whom the question is the cost associated with having them appear.

> The SCB [] Defendants have failed to produce evidence, or even to allege, that particular people would be unwilling to testify . . . nor have they offered any suggestion as to what this testimony might be and whether their inability to obtain it would be prejudicial to them. Moreover, the testimony of various witnesses probably can be secured pursuant to letters rogatory, perhaps even in the manner customary in U.S. courts.

(citations omitted) (Second King Aff., ¶11; and Petitioner's Exhibit, 44 p. 32.)

Respectfully submitted,

JOHN HANCOCK
LIFE INSURANCE COMPANY
By its attorneys,

_____
Mitchell S. King, Esq. BBO#272810
Rhonda L. Rittenberg, Esq. BBO# 550498
Michael A. Calawa, Esq. BBO# 643517
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Of Counsel
David A. Silva, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Dated: May 12, 2004

Attorneys for
John Hancock Life Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May, 2004, I served a copy of the foregoing John Hancock Life Insurance Company's Local Rule 56.1 Statement of Material Facts by hand to the law firm Sally & Fitch and by regular mail to the law firm Butler Rubin Saltarelli & Boyd.

_____
Michael A. Calawa, Esq. BBO# 643517