IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE INSURANCE COMPANY,
    Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

Civil Action No.
04-10181 MLW

---

### AFFIDAVIT OF JOSEPH P. WELCH
### IN SUPPORT OF VERIFIED AMENDED PETITION TO COMPEL
### ARBITRATION PROCEEDINGS

JOSEPH P. WELCH, being duly sworn, deposes and says

1.    I am a Vice President and Treasurer of John Hancock Management Company and General Director of John Hancock Life Insurance Company ("John Hancock"). In that capacity, I have oversight responsibility for certain John Hancock reinsurance collections and disputes, including the disputes between John Hancock and Sphere Drake Insurance Limited ("Sphere Drake"). The documents described below have been gathered and maintained on behalf of John Hancock under my supervision and I have personal knowledge of the matters set forth herein. This Affidavit is submitted in support of John Hancock's Verified Amended Petition to Compel Arbitration Proceedings.

2.    Between 1997 and 1998 John Hancock (f/k/a John Hancock Mutual Life Insurance Company") and Sphere Drake Insurance Limited (f/k/a Sphere Drake Insurance Plc and Odyssey Re (London) Ltd., hereinafter "Sphere Drake"), entered into

twenty-nine (29) reinsurance agreements pursuant to which Sphere Drake agreed to indemnify John Hancock ("John Hancock/Sphere Drake Ceded Contracts" or "Contracts") with regard to two types of underlying reinsurance business commonly referred to as workers' compensation carve-out business ("Carve-Out") and London Market Excess ("LMX") and similar London market business. This includes the following seven reinsurance agreements (the "Seven Agreements") at issue before the Court:

    (a)    Specific Realm – AH0094197 ("Realm 1"). True and accurate copies of the slip, covernote and wording evidencing this agreement are filed herewith as Petitioner's Exhibits 1(a), 1(b) and 1(c);

    (b)    Specific Realm - AH0094297 ("Realm 2"). True and accurate copies of the slip, covernote and wording evidencing this agreement are filed herewith as Petitioner's Exhibits 2(a), 2(b) and 2(c);

    (c)    Specific Realm - AH0094397 ("Realm 3"). True and accurate copies of the slip, covernote and wording evidencing this agreement are filed herewith as Petitioner's Exhibits 3(a), 3(b) and 3(c);

    (d)    Specific Realm - AH0104997 ("Realm 4"). True and accurate copies of the slip, covernote and wording evidencing this agreement are filed herewith as Petitioner's Exhibits 4(a), 4(b) and 4(c);

    (e)    Specific Realm – AH0105097("Realm 5"). True and accurate copies of the slip, covernote and wording evidencing this agreement are filed herewith as Petitioners Exhibits 5(a), 5(b) and 5(c)

(collectively the "Realm Agreements");

    (f)    BE LMX Quota Share – TNC0906/98 ("Quota Share Agreement"). True and accurate copies of the slip, covernote and wording evidencing this agreement are filed herewith as Petitioner's Exhibits 6(a), 6(b) and 6(c); and

    (g)    95% Quota Share Retrocession – TNC0887/98 (95% Facility Quota Share Agreement"). True and accurate copies of the slip and covernote are filed herewith as Petitioner's Exhibits 7(a) and 7(b).

3.      The Realm Agreements constitute various layers of retrocessional coverage which indemnify John Hancock in respect of its participation on a quota share treaty reinsuring Realm National.

4.      The Quota Share Agreement is a 66.6666% quota share agreement indemnifying John Hancock in respect of business written and allocated by John Hancock to its Personal Accident Non-Proportional account.

5.      The 95% Facility Quota Share Agreement was part of an overall, pre-existing reinsurance program (the "Facility Quota Share Program") in which various reinsurers or retrocessionaires participated, in varying percentages, in exchange for premium payments by John Hancock. The 95% Facility Quota Share Agreement indemnifies John Hancock's Accident and Health and related reinsurance coverages.

6.      Although 1998 was Sphere Drake's first year of participation, the 95% Facility Quota Share Program had been in force and continually renewed since 1991. A true and accurate copy of an exemplar wording for the Facility Quota Share Program is filed herewith as Petitioner's Exhibit 8. Upon information and belief, all of the previous wordings for the Facility Quota Share Program contained an Arbitration Clause, a Service of Suit Clause, and a Governing Law Clause which were materially similar, if not identical, to those in Exhibit 8.

7.      Collectively, over $9,900,000.00 in balances is due and owing to John Hancock under the Seven Agreements.

8.      Sphere Drake has failed to pay the balances owed under the Agreements notwithstanding requests from John Hancock.

9. John Hancock has demanded arbitration in connection with twenty (20) Sphere Drake Ceded Contracts, including the Seven Agreements with respect to which Sphere Drake has refused to arbitrate in accordance with the terms of the contracts, as described in further detail in the Amended Affidavit of Mitchell S. King, filed herewith. There are thirteen (13) Contracts with respect to which Sphere Drake has not challenged Massachusetts law as the law governing the Contracts.

10. Each of the thirteen (13) Contracts for which Sphere Drake has not contested U.S. arbitrations and application of Massachusetts law, is evidenced by some combination of slips, covernotes and wordings indicating that they are governed by U.S. and/or Massachusetts law. In particular, the slips for each of those contracts reference "Service of Suit Clause (USA)" or similar Canadian clauses. Each of these thirteen (13) Contracts also reinsure U.S. business; the choice of laws provisions are consistent with the country of origin of the underlying reinsured business. An exemplar of the slip, covernote and wording for the non-contested Contracts is filed herewith as Petitioner's Exhibit 9(a), 9(b) and 9(c).

11. There are nine (9) other John Hancock/Sphere Drake Ceded Contracts that John Hancock acknowledges as being governed by U.K. law and procedure. In contrast to the other twenty (20) Contracts, none of the slips for these Contracts refer to applicable "Service of Suit Clause (USA)" or similar clauses. Moreover, each of these Contracts reinsures LMX or other London market business, or the underlying business itself is expressly governed by English law. In other words, the choice of law provisions are consistent with the country of origin of the underlying reinsured business. Exemplars of

4

two slips reflecting the applicability of U.K law and procedure for these nine contracts is filed herewith as Petitioner's Exhibit 10(a) and 10(b).

SWORN UNDER THE PAINS AND PENALTIES OF PERJURY THIS 4TH DAY OF FEBRUARY, 2004.

Joseph P. Welch

Dated: February 4, 2004