IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

------------------------------------------------------------

In the Matter of the Arbitration Proceedings Between

2004 MAY 26  P 3: 52

JOHN HANCOCK LIFE INSURANCE COMPANY,
          Petitioner,

U.S. DISTRICT COURT
Civil Action No. 04 10181 MASS.
MLW

          and

SPHERE DRAKE INSURANCE LIMITED,
          Respondent.

------------------------------------------------------------

### SPHERE DRAKE'S MEMORANDUM OF LAW IN OPPOSITION TO JOHN HANCOCK'S MOTION FOR SUMMARY JUDGMENT

Once again, John Hancock Life Insurance Company ("Hancock") has ignored both law and fact in its relentless attempt to distance itself from the findings of the English Commercial Court in the recent "English Action" between Sphere Drake Insurance Limited ("Sphere Drake") and Hancock's broking agents Stirling Cooke Reinsurance Brokers Limited and Stirling Cooke Insurance Brokers Limited (collectively "Stirling Cooke" or "SCB"). In its latest submissions to the Court, Hancock simply reiterates its prior, baseless, contentions to urge the court to compel arbitration in Massachusetts. The only new material upon which Hancock relies is the Affidavit of Malcolm J. Beacham, a London market underwriter.[1] Hancock submits the Beacham affidavit as an aid to interpreting what Hancock claims are unambiguous terms of contracts between the parties. By submitting this affidavit, which purports to explain what a "London insurance market underwriter" would have "understood," Hancock effectively concedes that the nexus of the

---

[1] Sphere Drake has filed herewith a Motion to Strike Affidavit of Malcolm J. Beacham. Because the interpretation of an unambiguous contract is a matter of law for the Court, Beacham's assertions are not properly before the Court. Accordingly, this Court should not consider any "facts" asserted in the Memorandum in Support of John Hancock's Motion for Summary Judgment ("Hancock's Memorandum" or "Hancock's Mem.") or in John Hancock's Local Rule 56.1 Statement of Material Facts ("Hancock's Fact Statement"), which rely on the Beacham Affidavit for support. Alternatively, to the extent the Court does seek guidance in interpreting the service of suit clauses, Sphere Drake has submitted herewith the Affidavit of James H. Hunt. Should the court consider it appropriate to rely on such extrinsic evidence, the Court should permit the parties to conduct discovery.

negotiation and placement of the disputed contracts is London and that the purported contracts should be interpreted according to an English perspective.  This reliance by Hancock on what a London market underwriter would have understood underscores what Sphere Drake has recognized from the beginning – this dispute should be resolved in England by an English court.

The crux of Hancock's position is that references to service of suit clauses in the slips, coupled with Section 4 of the Federal Arbitration Act ("FAA"), tie this Court's hands and effectively mandate that the Court compel the parties to arbitrate in Massachusetts.[2]  Hancock asserts that "Sphere Drake admitted in a hearing before this Court that [it] is obligated to 'conduct arbitration in accordance with the guidance of the slips themselves.'"  (Hancock Mem., p. 3.)  As Sphere Drake has explained, under English law, in contradiction to U.S. law, an arbitration agreement is severable from the contract in which it is contained, and is enforceable even if the larger agreement is void.  (*See* Sphere Drake's Reply in Further Support of its Motion to Dismiss or Stay, pp. 3-4; *see also* Arbitration Act 1996 (attached as Exhibit A to the Supplemental Affidavit of Raymond Gordon Bell (Docket Entry No. 39), submitted to the Court on February 11, 2004), Chapter 23, Part I, Section 7.)  Indeed, Sphere Drake explained that "under the law of England, even though Sphere Drake does contend and will contend that these contracts are void, we still, under English law, have an obligation to arbitrate."  (Exhibit X to the Appendix of Exhibits to Sphere Drake's Local  Rule 56.1 Statement of Material Facts, February 12, 2004 Transcript of Proceedings, p. 21.)

---

[2] By referring herein to the putative reinsurance agreements between Hancock and Sphere Drake as "contracts" or "agreements," Sphere Drake does not agree that any of the twenty-nine "contracts" between Sphere Drake and Hancock accepted by EIU under the Binding Authority (referred to herein as the "John Hancock/Sphere Drake Ceded Contracts") is a valid or enforceable contract. Sphere Drake's position is that all twenty-nine John Hancock/Sphere Drake Ceded Contracts, including the seven contracts at issue before this Court (referred to herein as the "Seven Agreements"), are void.

Notwithstanding the severability of the arbitration agreements from the rest of the void slips, Hancock persists in arguing that the obligation to arbitrate in conjunction with the "service of suit" clauses in the slips means that this Court can do nothing under Section 4 of the FAA but compel Sphere Drake to arbitrate in Massachusetts. Hancock desperately needs the Court to avoid the merits of Sphere Drake's Motion to Dismiss or Stay, as the facts favor abstention. Yet service of suit clauses do not trump arbitration clauses or provide an exclusive forum selection, nor do they provide any guidance in interpreting the scope or terms of the arbitration agreements. Service of suit clauses merely require a foreign reinsurer to submit to the jurisdiction of a domestic court; the foreign reinsurer is then free to seek to transfer the case abroad.

Since Sphere Drake has agreed to arbitrate the dispute over the enforceability of the Seven Agreements, the only issue before the Court is whether it should abstain or exercise its jurisdiction. Because the *Goldhammer* factors point toward abstention, Sphere Drake respectfully requests that this Court deny Hancock's Motion for Summary Judgment and grant Sphere Drake's Motion to Dismiss or Stay Hancock's Amended Petition to Compel.

## **BACKGROUND**

### A.    **The English Judgment**

In January 1997, Sphere Drake entered into an agency agreement (the "Binding Authority") pursuant to which Sphere Drake granted authority to Euro International Underwriting Limited ("EIU") to underwrite certain types of reinsurance risks on Sphere Drake's behalf. (Paragraph 1 to Sphere Drake's Local Rule 56.1 Statement of Material Facts ("SD's Fact Stmnt."); Affidavit of Raymond Gordon Submitted as Docket Entry No. 20 on February 4, 2004 (with original following on February 5, 2004) ("Bell Aff."), ¶ 5.) Over the course of eighteen months, EIU wrote 119 reinsurance contracts purportedly pursuant to the Binding Authority.

(SD's Fact Stmnt. ¶ 10; Bell Aff. ¶ 7.)  London brokers Stirling Cooke, acting on behalf of various insurers including Hancock, placed 112 of these putative contracts with EIU.  (SD's Fact Stmnt. ¶ 11; Bell Aff. ¶ 7.)  Sphere Drake subsequently discovered that Stirling Cooke and EIU had colluded to defraud Sphere Drake, and filed a lawsuit in the Commercial Court in England against EIU, Stirling Cooke, and their principals (including Nick Brown and Jeff Butler, the directors of Stirling Cooke who placed the business at issue).  (SD's Fact Stmnt. ¶ 12; Bell Aff. ¶¶ 6, 9.)  In 2002, Justice Thomas (now Lord Justice Thomas) heard the case during 110 trial days and, in July 2003, issued a lengthy and detailed judgment.  (SD's Fact Stmnt. ¶ 96; Bell Aff. ¶¶ 9-10; *see also Sphere Drake Ins. Ltd. v. Euro Int'l Underwriting Ltd.,* Case No. 2000 Folio 249, 2003 WL 21729222 (Q.B. July 8, 2003) (the "Judgment").)[3]  In sum, Lord Justice Thomas found that EIU had no authority to write the business it accepted purportedly on Sphere Drake's behalf, and further, that Stirling Cooke knew EIU lacked authority to bind Sphere Drake.  (*E.g.*, Judgment Part I at ¶ 1862(viii).)

Lord Justice Thomas made specific findings about the business Stirling Cooke placed with EIU for Hancock, including the Seven Agreements now in dispute.  With respect to each of the Seven Agreements, Lord Justice Thomas found that EIU and Stirling Cooke had acted dishonestly in accepting and placing, respectively, the reinsurance.  (Judgment Part I at ¶¶ 1675-76, Part II at ¶¶ 211-212, 654-55.)  Lord Justice Thomas also found that "SCB colluded with EIU" to cover up, *inter alia,* the lies Stirling Cooke had told EIU about one of the Seven Agreements.  (Judgment Part I at ¶¶ 1680-83.)

---

[3] The Judgment was submitted to the Court as Exhibit 1 to the Memorandum of Law In Support of Sphere Drake's. Motion to Dismiss or Stay Hancock's Verified Amended Petition to Compel Arbitration.

B.    **The Seven Agreements**

The Seven Agreements are evidenced by slips executed by EIU purportedly on behalf of Sphere Drake. (Joint Statement of Undisputed Facts ("Joint Stmnt") ¶¶ 6, 10, 16, 24.) Each of the slips was broked to EIU in London by Stirling Cooke. (SD's Fact Stmnt. ¶ 14; Bell Aff., ¶ 64.) Six of the slips purport to reinsure business written by Hancock's Bermuda-based agent, JEH Re Underwriting Management Bermuda Ltd, which averred that the placement of the business occurred with EIU entirely in England. (SD's Fact Stmnt. ¶¶ 85, 89.) Not one of the slips contains a choice of law provision or a forum selection clause, or even mentions the state of Massachusetts. (SD's Fact Stmnt. ¶ 15; Petitioner's Exs. 1(a)-7(a).) Rather, each merely includes the statement "Arbitration Clause" and either "Service of Suit Clause U.S.A." or simply "Service of Suit Clause." (SD's Fact Stmnt. ¶ 16; Petitioner's Exs. 1(a)-7(a).) Hancock also cites to "unexecuted wordings" for the Specific Realm Contracts and the Quota Share Agreement and "exemplar wording" from a 1991 iteration of the 95% Facility Quota Share to which Sphere Drake was not a party, as "reinforcing" Sphere Drake's obligation to arbitrate disputes under the Seven Agreements in Massachusetts. (Hancock Mem., p. 12.)  Hancock has failed to produce any evidence, however, that Sphere Drake or EIU ever even saw the "unexecuted" or "exemplar" wordings, let alone that either Sphere Drake or EIU agreed to the terms contained therein. This is because they did not. (SD's Fact Stmnt. ¶¶ 24-25, 34-35, 47-48; Bell Aff., ¶¶ 21-24, 28, 31, 55(1).) The slips themselves, therefore, and, in particular, the references to arbitration therein are the only possible documentary evidence of the purported contractual agreements between the parties. (SD's Fact Stmnt. ¶ 17; Petitioner's Exs. 1(a)-7(a); Bell Aff. ¶¶ 21-24, 28, 31, 55(1).)

C.    **The Other 22 John Hancock/Sphere Drake Ceded Contracts**

Stirling Cooke offered and EIU, purportedly acting on Sphere Drake's behalf, accepted

22 other reinsurance contracts reinsuring Hancock. (Joint Stmnt. ¶¶ 29, 33, 38, 43, 49; SD's Fact

Stmnt. ¶ 71; Bell Aff., ¶¶ 32-40, 42-44.) Unlike the slips for the Seven Agreements at issue

before this Court, each of the slips for the other 22 contracts specified where any arbitration

would take place. (Joint Stmnt. ¶¶ 30, 34, 40, 44, 47, 50-51; SD Fact Stmnt. ¶ 72.) The terms of

the slips provide that disputes arising out of the Bermuda & JEH Corporation London

Agreements ("BE & JEH CORP LON Agreements") (Program 1),[4] and the Sun Life / American

Phoenix Specific Agreement (Program 24) are to be resolved in arbitration in England under

English law, whereas disputes arising out of the John Hancock CT & PH Whole Account

(Program 5), the Bridgefield Retrocession (Program 8), American Phoenix/Sun Life Specific

Agreements (Program 30), and Bermuda Whole Account ("BE Whole Account") (Program 12)

are to be resolved in arbitration in Massachusetts pursuant to Massachusetts law.[5] (*Id.*)

D.    **Proceedings Pending Between the Parties**

Hancock has demanded arbitration in Massachusetts on the Seven Agreements that

contain no choice of law or forum and Sphere Drake has demanded arbitration in England on

these same Seven Agreements. (SD's Fact Stmnt. ¶ 75; Bell Aff. Ex B Tab 18, pages 30-44.)

Both parties' arbitration demands with regard to these purported contracts were effective as of

---

[4] Given the potential confusion arising out of the parties' use of different names for the same programs, Sphere Drake will hereafter adopt the names preferred by Hancock. Sphere Drake will refer to Program 1 (previously referred to as the Hancock Per JEH Re Contracts) as the Bermuda & JEH Corporation London Agreements ("BE & JEH CORP LON Agreements"), to Program 5 (previously referred to as the Hancock/Hackett Contracts) as the John Hancock CT & PH Whole Account, to Program 12 (previously referred to as the Hancock Direct Contracts) as the Bermuda Whole Account ("BE Whole Account"), to Program 24 (previously referred to as JEH Re/Centaur Contract) as the Sun Life / American Phoenix Specific Agreement, and to Program 30 (previously referred to as the Hancock/WEB VQS Contracts) as American Phoenix/Sun Life Specific Agreements.

[5] Although the arbitration clauses requiring arbitration in Massachusetts are unenforceable under the FAA because the contracts themselves are void, Sphere Drake has proposed that the dispute over the existence and enforceability of the contracts be resolved in arbitration. (SD's Fact Stmnt. ¶ 66, 68, 70, 74.)

January 26, 2004. (SD's Fact Stmnt. ¶ 76; Bell Aff. Ex. B Tab 18, Page 58.) On January 26, 2004, Hancock filed its Petition to Compel Arbitration. On January 29, 2004, Sphere Drake filed applications in the English Commercial Court to compel Hancock to submit to arbitration over the Seven Agreements in England. (SD's Fact Stmnt. ¶ 77; Bell Aff., ¶ 63 and Ex. F.) Like the Petition presently before this Court, Sphere Drake's applications to the English Commercial Court seek a determination as to where the arbitration over the Seven Agreements should take place. (SD's Fact Stmnt. ¶ 78; Bell Aff. Ex. F.) The very same parties and issues are involved in both proceedings. (SD's Fact Stmnt. ¶¶ 100-01.)

## ARGUMENT

In its Memorandum, Hancock persists in its effort to dissuade the Court from reaching the merits of Sphere Drake's abstention motion, relying instead on a hopelessly faulty reading of "service of suit" clauses referenced in the slips for the Seven Agreements.[6] Indeed, Hancock provides only a cursory analysis of the relevant factors the Court should consider in ruling on a request to dismiss or stay on international abstention grounds. The facts and law clearly show that this Court has the discretion to abstain in favor of the English proceedings, and that abstention is warranted under the present circumstances. Moreover, to the extent that the Court finds the arbitration agreements to be ambiguous, discovery is needed. In either case, summary judgment is not warranted, and the Court should deny Hancock's motion.

## I.    Summary Judgment Standard

To be entitled to summary judgment, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the

---

[6] In prior submissions, Hancock argued that the "country of origin" of the business reinsured pursuant to these other 22 contracts supports Hancock's argument that the parties intended for any arbitration over the Seven Agreements to take place in Massachusetts. (*See, e.g.,* Hancock's Amended Petition to Compel, ¶¶ 30- 31.) Given the lack of any factual support for this argument, Hancock has apparently abandoned its "country of origin" argument.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). After the movant makes such a showing, the "'burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir. 2002) (quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). When considering a summary judgment motion, the court must "constru[e] the record in the light most favorable to the nonmovant and resolv[e] all reasonable inferences in that party's favor." *Rochester*, 287 F.3d at 38.

## II.    Hancock's Continued Reliance on Unexecuted and "Exemplar" Contract Wordings Is Without Merit.

The slips for the Seven Agreements do not contain choice of law provisions or forum selection clauses, and none mentions Massachusetts. Continuing to defy the most basic concepts of contract law, Hancock again asks the Court to consider documentation, neither signed nor seen by Sphere Drake's agent EIU or Sphere Drake, as "evidence" of Sphere Drake's contractual intent. (Hancock Mem., pp. 6-7, 12.) Indeed, there is absolutely no evidence that these wordings were even forwarded to Sphere Drake or EIU prior to the initiation of this lawsuit. (SD's Fact Stmnt. ¶¶ 24-25, 34-35, 47-48.) Nor has Hancock explained when these wordings were created, by whom the wordings were created, or whether other draft wordings with different terms exist. Contractual intent cannot be derived from documents that one of the parties to the "contract" never saw or even knew existed. Moreover, the fact that previous

reinsurers of the 95% Facility Quota Share Program[7] may have agreed to arbitrate in

Massachusetts provides no evidence that *Sphere Drake* would have agreed to do so. *See*

*Czarina, LLC v. W.F. Poe Syndicate,* 254 F. Supp. 2d 1229, 1237 (M.D. Fla. 2002) (concluding

evidence failed to establish that quota share reinsurer would have accepted arbitration clause

contained in wording for prior years on which reinsurer did not participate). Hancock's reliance

on draft or exemplar contract wordings never proffered to Sphere Drake for its approval is

wholly inappropriate and the Court should ignore these wordings in reviewing the issue before it.

## III.    The Service of Suit Clauses Do Not Prevent the Court From Abstaining.

In addition to arguing (wrongly) that a service of suit provision coupled with an

arbitration clause prevents the Court from abstaining in favor of a more suitable forum, Hancock

now also asserts that the service of suit clauses should be read to preclude transfer of the case "to

a court outside the United States." (Hancock Mem., p. 5.)  Both arguments fail as a matter of

law

### A.    The Language in the Standard Service of Suit Clauses Upon Which Hancock Relies Reserves Sphere Drake's Right to Transfer the Case to a Foreign Court.

Hancock assumes that the terms "Service of Suit Clause" in the slips refer to the

following Lloyd's standard wording for service of suit clauses:

> It is agreed that in the event of the failure of the Underwriters
> hereon to pay any amount claimed to be due hereunder, the
> Underwriters hereon, at the request of the Insured (or Reinsured),
> will submit to the jurisdiction of a Court of competent jurisdiction
> in the United States. Nothing in this Clause constitutes or should
> be understood to constitute a waiver of Underwriters' rights to
> commence an action in any Court of competent jurisdiction in the

---

[7] *See* Hancock's Mem. p. 6 n.7. Stirling Cooke's first involvement in placing the 95% Facility Quota Share was in 1998. Hancock placed the prior years of the 95% Facility Quota Share and a portion of the 1998 Quota Share through a different broker, D.W. Van Dyke. (SD's Fact Stmnt ¶ 30-31.) Indeed, in contrast to their current position, in the English action before Justice Thomas, Hancock questioned the relevance of the 1998 Van Dyke slip and wording to SCB's placement of the 1998 Facility Quota Share with EIU. (Judgment Part II at ¶ 636(iv)-(v).)

United States, to remove an action to a United States District Court, or to seek a transfer of a case *to another Court as permitted by the laws of the United States or of any State in the United States.*

(Hancock Mem. pp. 4-5 (emphasis added).) This language only strengthens Sphere Drake's case. Under these terms, Sphere Drake is entitled to transfer this case to another court, so long as such transfer is "permitted by the laws of the United States or of any State in the United States." Notwithstanding this clear and unambiguous language, Hancock maintains that the contractual language only entitles Sphere Drake "to transfer the case from one 'competent Court' in the United States to another 'competent Court' in the United States."[8] (*Id.* at 5.) Yet, the quoted language simply does not say that. Indeed, nothing in the service of suit clauses prevents Sphere Drake from seeking to transfer this case abroad, so long as such a transfer is "permitted by the laws of the United States." Hancock itself has argued that this Court "has no authority" to "rewrite the contractual terms and conditions between the parties," (Hancock Mem., p. 9 (quoting *Accusoft Corp. v. Palo*, 237 F.3d 31, 41 (1st Cir. 2001)), and should thus refrain from asking the Court to read nonexistent restrictions into the service of suit clauses.

Not only is Hancock's position belied by the contract language itself, it is also refuted by the relevant case law. *See Brooke Group Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 532-34 (N.Y. 1996). In that case, New York's highest court held that a "Service of Suit Clause generally provides no more than a consent to jurisdiction. It does not bind the parties to litigate in a particular forum, or give the insured the exclusive right to choose a forum unrelated to the dispute." 87 N.Y.2d at 534. The court therefore dismissed in favor of an *English* arbitration. *Id.*

---

[8] This contention is based solely on the Beacham Affidavit, and should therefore be disregarded by the Court. However, should the Court determine that extrinsic evidence is needed to help interpret the contractual language, Sphere Drake refers the Court to the Hunt Affidavit, which refutes Beacham's unfounded conclusions. Thus, even if this Court considers the parties' affidavits, an issue of material fact as to the meaning of the service of suit clauses prevents this Court from granting summary judgment in Hancock's favor.

at 533-534. *Brooke Group* also undermines Hancock's conclusory statement (again supported solely by the Beacham Affidavit) that "in 1997 and 1998, a London insurance market underwriter would have understood" that a service of suit clause precludes reinsurers from transferring cases to courts "outside the United States." (Hancock Mem., p. 5.) Indeed, defendants in *Brooke Group*, Lloyd's underwriters, clearly believed (as did the court) that a service of suit provision *did not* preclude transfer of the case to arbitration in England. The position taken by the Lloyd's underwriters in *Brooke Group* provides actual, contemporaneous evidence as to what such underwriters thought they were agreeing to by entering into contracts with service of suit clauses. *See also Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 278 Ill. App. 3d 175, 178-80 (Ill. App. Ct. 1996) (Lloyd's underwriters argued, and court agreed, that service of suit clause was not exclusive forum selection clause, and did not preclude underwriters from moving to dismiss on forum *non-conveniens* grounds).

In short, Hancock is simply wrong that by entering into contracts with service of suit clauses, "Sphere Drake relinquished all rights to have disputes under the Seven Agreements resolved anywhere other than the United States." (Hancock Mem., p. 1.) Indeed, both the clear language that Hancock contends constitutes the clauses and the relevant case law establish that Sphere Drake was free to move this Court to abstain in favor of the English proceedings, and that this Court is free to grant Sphere Drake's motion.

## B.   A Service of Suit Clause Is Not the Equivalent of an Exclusive Forum Selection Clause.

Hancock also persists in arguing that by agreeing to a service of suit clause in a contract, a foreign insurer "submit[s] to the *exclusive jurisdiction* of the courts of the United States." (Hancock Mem. p. 15 (emphasis added).) Hancock's position has been rejected time and again by courts, which hold that a service of suit clause is *not* the equivalent of an exclusive or

11

mandatory forum selection clause, and does not preclude a party from initiating or transferring a proceeding to another jurisdiction. In *W.R. Grace & Co. v. Hartford Accident & Indemnity Co.*, 407 Mass. 572, 580 (1990), for example, the Massachusetts Supreme Judicial Court considered this identical issue, and concluded that "a service of suit clause does not lock an insurance company into the jurisdiction selected by its insured nor does such a provision bar a court in that jurisdiction from considering a plea of forum non conveniens." Notwithstanding the service of suit clause in the contract and the fact that the insured had selected Massachusetts as the appropriate place for service, the court in *W.R. Grace* affirmed dismissal of the Massachusetts case on *forum non-conveniens* grounds. *Id.* at 575, 581-82.

Other courts and commentators have adopted the same approach, concluding that a service of suit provision is not a mandatory forum selection clause. *See, e.g., Friar v. TL Dallas (Special Risks) Ltd.*, No. H-02-0030, 2003 WL 22095664, at *4-*5 & n.3 (S.D. Tex. Jan. 27, 2003); *Whirlpool Corp.*, 278 Ill. App. 3d at 180; *Price v. Brown Group Inc.*, 206 A.D.2d 195, 199 (N.Y. App. Div. 1994); 16 Couch on Insurance § 228:63 (3d ed. 2003). And, as explained in Section III. A., *supra*, the same reasoning applies where the defendant insurer seeks to transfer the dispute to a foreign tribunal.[9]

Hancock has not offered a single case that holds to the contrary, or even suggests that a service of suit clause that reserves the insurer's right to transfer is the equivalent of a mandatory forum selection clause. Instead, Hancock maintains that the mere existence of service of suit clauses, in conjunction with the strictures of the FAA, prevents this Court from entertaining

---

[9] The fallacy in Hancock's position is illustrated by a review of the Sun Life / American Phoenix Specific Agreement (Program 24). That slip refers to a "service of suit clause – (if applicable)" and also expressly provides for arbitration "governed by and construed in accordance with English law under the jurisdiction of the English courts." (Sphere Drake's Response to Hancock Fact ¶ 26.) The reference to a service of suit clause in that contract has had no bearing on the situs of the arbitration, which is proceeding in England. (SD's Fact Stmnt ¶ 64.) This fact establishes that a service of suit clause is neither a forum selection clause nor a choice of law provision. Rather, it is simply a mechanism whereby a foreign reinsurer can be compelled to submit to a domestic court's jurisdiction.

Sphere Drake's Motion to Dismiss or Stay. (Hancock Mem., pp. 9-11.) Again, Hancock misses the mark.

### C.    Section 4 of the FAA Does Not Prevent This Court From Abstaining.

Hancock contends that this Court has no power to abstain in favor of the English proceedings because Section 4 of the FAA, which directs that "'[t]he court *shall* make an order directing the parties to proceed to arbitration'" imposes a mandatory duty that precludes this Court from declining to exercise its jurisdiction under any circumstances. (Hancock Mem, pp. 9-10 (quoting 9 U.S.C. § 4).) However, the First Circuit Court of Appeals soundly rejected this argument over 20 years ago. In *Acton Corp. v. Borden, Inc.,* 670 F.2d 377 (1st Cir. 1982), the plaintiff Acton filed a petition in the district court to compel arbitration under 9 U.S.C. § 4, but the defendant Borden moved for a stay on the grounds that the same issue was pending in federal court in Ohio. The Massachusetts district court granted Borden's motion to stay, and Acton appealed, asserting that "the district court in this case lacked the power to stay its proceedings to allow the arbitration issues to be decided in Ohio" based on Section 4's language that the court "shall proceed summarily to the trial" of a dispute over the failure, neglect or refusal to perform an arbitration agreement. 670 F.2d at 382. The Court of Appeals disagreed, ruling:

> Indeed, we find no evidence that Congress felt petitioners' "choice of forum" so important in § 4 cases that it intended a major departure from the ordinary rule allowing one federal court to stay litigation when another federal court is in the process of deciding the same issue. The mandatory language of § 4 refers to a petitioner's right to substantive relief. It does not address the problem of stays or duplicative litigation.

670 F.2d at 383; *see also Hewlett-Packard Co. v. Berg,* 61 F.3d 101, 106 (1st Cir. 1995) (quoting 9 U.S.C. § 4) (reconfirming *Acton* court's holding that "[d]istrict courts have discretion to stay an action to *compel* arbitration pending the outcome of related litigation, even though the [Federal

Arbitration] Act states that on a motion to compel the court 'shall hear the parties' and 'shall proceed summarily to trial'").

Not surprisingly, none of the cases cited by Hancock for the proposition that a Section 4 petition to compel "must" be tried by a district court addresses abstention or the similar doctrine of *forum non conveniens*. In *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985), the Supreme Court ruled that a district court could not deny a motion to compel arbitration of pendent arbitrable claims because "intertwined" non-arbitrable claims would remain in federal court. In *KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.,* 184 F.3d 42, 50-51 (1st Cir. 1999), the First Circuit ruled that a Rhode Island state law voiding contractual agreements to arbitrate franchise disputes out-of-state was pre-empted by the FAA. In neither case did the court rule that Section 4's "mandatory" language divested a district court of authority to abstain from ruling on a motion to compel in appropriate circumstances. Moreover, Sphere Drake is not contesting arbitration of these disputes, and cases such as *Baggesen v. American Skandia Life Assurance Corp.,* 235 F. Supp. 2d 30, 31 (D. Mass. 2002), in which one of the parties to a contract sought to avoid its obligation to arbitrate, are thus clearly inapposite.

The First Circuit Court of Appeals is not alone in recognizing that Section 4 does not preclude courts from dismissing petitions to compel in deference to adjudication in an alternate forum. *See, e.g., Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1222-24, 1229-30 (9th Cir. 1989) (district court properly abstained from deciding a motion to compel arbitration "on the grounds of comity" in favor of a parallel action in a tribal court); *Pepsico Inc. v. Oficina Central de Asesoria y Auday Tecnica, C.A.,* 945 F. Supp. 69, 70-71 (S.D.N.Y. 1996) (district court abstained from ruling on motion to compel arbitration to allow pending Venezuelan litigation to determine threshold issue of Venezuelan law). Moreover,

several other courts have ruled that a petition to compel arbitration may be dismissed on *forum non conveniens* grounds. (*See* Sphere Drake Reply in Further Support of its Motion to Dismiss or Stay, pp. 11-12 and cases cited therein.) In the present circumstances, where no contractual term or other agreement establishes the site for the arbitration, abstention is not only within this Court's authority, but is warranted by the facts.

Because Section 4 does leave the Court with discretion to abstain, Hancock is incorrect that "the Court must . . . compel Sphere Drake to arbitrate the disputes under the Seven Agreements in Massachusetts in accordance with Section 4." (Hancock Mem. p. 11.) The service of suit provisions subject Sphere Drake to this Court's jurisdiction, nothing more. This Court may still stand aside to enable the English Commercial Court to rule on the situs issue, and the cases on which Hancock relies in support of its "FAA plus service of suit" position do not hold otherwise. Rather, these cases stand for the unremarkable proposition that where a contract contains both a service of suit clause and an arbitration clause, both provisions should be given effect. (*See* Hancock Mem., p. 11 (citing *Travelers Ins. Co. v. Keeling*, No. 91 Civ. 7753, 1993 U.S. Dist. Lexis 491, at *13 (S.D. N.Y. Jan. 19, 1993) (noting that an "arbitration clause's presence does not subvert the effect of a [service of suit clause]" and concluding that the court "has little difficulty giving effect to the plain language of both clauses"); and *Security Life Ins. Co. of Am. v. Hannover Life Reassurance Co. of Am.*, 167 F. Supp. 2d 1086, 1087-88 (D. Minn. 2001) (rejecting cedent's argument that "service of suit provision . . . carves out an exception to mandatory arbitration" and holding that "service of suit clauses do not abridge an agreement to arbitrate all disputes arising out of a relationship")).)

Hancock's interpretation of the interplay between the service of suit and arbitration clauses in the Seven Contracts is unreasonable. The service of suit clauses have served their

function, as Sphere Drake has submitted to this court's jurisdiction. This Court remains free to abstain from exercising that jurisdiction, and as shown below, the Court should do so.

## IV.    The Court Should Dismiss or Stay This Action Pending the Outcome of the English Proceedings Under the Doctrine of International Abstention.

Hancock argues that there is no legal or factual basis for this court to abstain, claiming that the framework set up in *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 252-53 (D. Mass. 1999) to resolve a claim of international abstention is inapposite because *Goldhammer* did not involve a service of suit clause. (Hancock Mem. at 15.) But, as discussed above, references to a service of suit clause in the slips do not preclude this court from exercising its discretion to abstain from hearing this dispute.

In *Goldhammer*, the district court set forth a list of six factors to consider when determining whether international abstention is appropriate:

> (1) similarity of parties and issues involved in the foreign litigation; (2) the promotion of judicial efficiency; (3) adequacy of relief available in the alternative forum; (4) issues of fairness to and convenience of the parties, counsel, and witnesses; (5) the possibility of prejudice to any of the parties; and (6) the temporal sequence of the filing of the actions.

*Id.* at 252-53 (citations omitted). These factors strongly favor abstention in this case. The issues to be decided here are identical to those pending in England, and the parties to both actions are also the same. Judicial efficiency will be promoted if the Court abstains in favor of the English proceedings, as abstention will prevent the possibility of duplicative lawsuits proceeding in tandem. Hancock has not questioned the adequacy of an arbitration in England to resolve the

parties' dispute, and has, in fact, agreed to arbitrate other similar disputes in England, negating any possible claim of inadequacy of an English forum.[10]

Nor has Hancock identified any real prejudice that will befall it should the English Commercial Court determine the situs of the arbitration. Conversely, Sphere Drake has explained that a domestic arbitration will be both unfair and prejudicial. In the ensuing arbitration, Sphere Drake's defense to enforceability of the Seven Agreements will depend, in large part, on its contention that EIU lacked authority to bind Sphere Drake to the Seven Agreements, and that Hancock's agent Stirling Cooke, who was engaged in a conspiracy with EIU with regard to these very contracts, knew that there was no authority. Significantly, all of the witnesses with any relevant information concerning the placement of these risks, and the conspiracy surrounding that placement, are in England. (SD's Fact Stmnt. ¶¶ 14, 70-88; *see also CNA Reinsurance Co., Ltd. v. Trustmark Ins. Co.*, No. 01 C 1652, 2001 WL 648948, at *7 (dismissing petition to compel arbitration on *forum non conveniens* grounds because, *inter alia*, critical witnesses were in England).) If Hancock disputes the findings in the English Action, only arbitration in England will enable Sphere Drake to compel the relevant witnesses to appear and testify.[11]

Despite a renewed opportunity to do so, Hancock again fails to confront Sphere Drake's abstention argument head-on, instead falling back, once again, on its "service of suit plus Section 4" position. Indeed, Hancock discusses only two of the six *Goldhammer* factors in its

---

[10] Indeed, in an unrelated dispute with LDG Re, Hancock agreed to arbitrate in England "for convenience," notwithstanding the fact that the contract there at issue apparently provided for arbitration in Bermuda. (SD's Fact Stmnt. ¶¶ 94-95.)

[11] In addition to the usual difficulties in obtaining testimony in domestic arbitrations from foreign non-party witnesses, an additional hurdle will need to be surmounted should the Court compel arbitration in Massachusetts or allow discovery regarding in this action. On August 7, 2003, Lord Justice Thomas ordered that, prior to taking evidence from Henton, Whitcombe, Butler and Brown "in support of foreign proceedings," a party must first demonstrate that "there are good reasons for taking such evidence notwithstanding the existence of a transcript record of the evidence given by those individuals in these proceedings." (SD's Fact Stmnt. ¶ 99.)

Memorandum – the relative temporal sequence of the actions in question, and the prejudice to the parties.[12] (Hancock Mem., p. 16.) Hancock blatantly mischaracterizes the *Goldhammer* decision as finding temporal sequence to be the "critical factor" in that case (even placing the word "critical" in quotation marks despite the fact that the term never appears in the *Goldhammer* decision). (Hancock Resp., p. 14.) In fact, the *Goldhammer* court stated that its analysis of the six factors, *taken in their entirety*, established that abstention was appropriate:

> The overarching concerns for a federal court facing concurrent international jurisdiction are demonstrating a proper level of respect for the acts of other sovereign nations, ensuring fairness to litigants, and efficiently using scarce judicial resources. As will be discussed below, these factors, *on the whole*, militate in favor of staying the present action pending the outcome of the English action.

*Goldhammer*, 59 F. Supp. 2d at 253 (emphasis added) (citations omitted). This approach is consistent with the United States Supreme Court's directive that, in performing an abstention analysis, "[n]o one factor is necessarily determinative." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 818 (1976). And, when the temporal sequence of the filings is examined, it is evident that this factor does not counter against abstention. The parties' competing arbitration demands were deemed served on the same day. Sphere Drake filed its claim forms seeking a determination that England is the seat of the arbitrations on January 29, 2004, a mere three days after Hancock filed its petition to compel. Thus, Hancock's reliance on the temporal sequence of the actions to try to dissuade the court from abstaining is unpersuasive.

As to prejudice, Hancock maintains that abstention would be "grossly unfair and prejudicial to Hancock as it would effectively constitute a rewriting of the executed Slips to

---

[12] Hancock also argues that abstention is inappropriate because Sphere Drake will be arbitrating thirteen of the John Hancock/Sphere Drake Ceded Contracts in Massachusetts. Yet, Hancock itself will be arbitrating nine of the John Hancock/Sphere Drake Ceded Contracts in England. (Joint Stmnt. ¶¶ 47, 50-51.)

eliminate the bargained for 'service of suit clauses.'" (Hancock Mem., p. 16.)  As the service of suit clauses are not an exclusive forum selection, do not preclude this Court from abstaining, and thus do not interfere with Hancock's "bargained for" right to ensure that Sphere Drake submits to this Court's jurisdiction, this perceived prejudice is non-existent.[13]  Conversely, actual prejudice would result should Sphere Drake be unable to obtain testimony to support its theory of the case, a likely result of a Massachusetts arbitration.  The *Goldhammer* factors, taken as a whole, strongly favor abstention.

## V.    The Court's Ruling in the Odyssey Re Action Supports Sphere Drake's Case For Abstention.

In a final attempt to escape the inevitable conclusion that abstention in favor of the English proceedings is appropriate, Hancock accuses Sphere Drake of adopting a position inconsistent with one that it took in *Odyssey Re (London) Limited v. Stirling Cooke Brown Holdings Limited*, 85 F. Supp. 2d 282 (S.D. N.Y. 2000) (the "Odyssey Re Action").  (Hancock Mem., pp. 7-8, 13-14.)  But Hancock ignores the outcome reached by the court in the Odyssey Re Action, which supports rather than refutes Sphere Drake's abstention argument in this case. In the Odyssey Re Action, the New York court granted the Stirling Cooke and EIU defendants' motions to dismiss on *forum non conveniens* grounds, concluding that, "at bottom, this is an allegation of fraud committed by English defendants against an English plaintiff in England."  85 F. Supp. 2d at 307.  The court also ruled that the issue of witness availability tipped in favor of dismissal in favor of an English proceeding.  *Id.* at 307-08.  Moreover, the court noted,

---

[13] It is also noteworthy that the Quota Share Agreement is a renewal of the BE & JEH CORP LON Agreements, which the parties agree are subject to arbitration in England. (SD's Fact Stmnt. ¶¶ 57-58; Joint Stmnt. ¶ 47.) Hancock has not even attempted to explain how submitting to arbitration in London to resolve the parties' disputes over the Quota Share Agreement, which covers the same class of business as the BE & JEH CORP LON Agreements and which Stirling Cooke understood was a renewal of those agreements (SD's Fact Stmnt. ¶¶ 50, 56-57) could be prejudicial to Hancock.

> this Court's direct process could not compel the attendance of non-party witnesses located in England nor could it secure the production of documents in control of non-party witnesses there. . . . In stark contrast, Odyssey has identified no critical non-party witnesses in the United States.

*Id.* at 308. In this case, the witness availability concerns are multiplied, given both a domestic arbitration panel's relative inability to secure process of non-party English witnesses, and also Lord Justice Thomas' requirement that he first sanction requests for such testimony.

Hancock focuses on a distinction Sphere Drake made in the Odyssey Re Action between an "unwilling" witness, whom the court in that case could compel to testify, and a "willing" witness, as to whom the question is the cost associated with having him appear. (Hancock Mem., p. 8.) However, Sphere Drake's position in the Odyssey Re Action was based on Stirling Cooke's failure to prove, as was its burden, that witnesses would be unavailable. In contrast, Lord Justice Thomas' July 30, 2003 Order (SD's Fact Stmnt. ¶ 99) precludes material witnesses from being compelled to testify in any U.S. proceeding absent further court order by Lord Justice Thomas. Moreover, unlike the court in the Odyssey Re Action, an arbitration panel sitting in Massachusetts will be unable to compel testimony of witnesses residing abroad.

Hancock's reference to the Odyssey Re Action is a red herring. Indeed, the court's analysis in that case actually supports Sphere Drake's international abstention position.

## **CONCLUSION**

Nothing in the Seven Agreements or the FAA precludes this Court from abstaining in deference to an English proceeding. In these circumstances, abstention is appropriate, as only the English Commercial Court can compel the parties to arbitrate in England. The Court should deny Hancock's Motion for Summary Judgment, and grant Sphere Drake's Motion to Dismiss or Stay.

SPHERE DRAKE INSURANCE LIMITED
By its attorneys,

Andrea Peraner-Sweet  (BBO#550515)
Heather V. Baer (BBO#566746)
SALLY & FITCH
225 Franklin Street
Boston, MA 02110
(617) 542-5542

OF COUNSEL:
Harold C. Wheeler (Attorney I.D. No. 2996960)
Teresa Snider (Attorney I.D. No. 06210115)
Kevin J. O'Brien (Attorney I.D. No. 06193882)
Mark A. Schwartz (Attorney I.D. No. (6270580)
Butler, Rubin, Saltarelli & Boyd LLP
3 First National Plaza
70 West Madison Street, Suite 1800
Chicago, Illinois 60602

## CERTIFICATE OF SERVICE

I, Andrea Peraner-Sweet, hereby certify that a copy of this document was served upon all counsel of record by hand on May 26, 2004.

Andrea Peraner-Sweet

W:\S\Sphere\Hancock\Pleadings\response to summary judgment final.doc