FILED
IN CLERKS OFFICE
2004 MAY 26  P 3: 52

U.S. DISTRICT COURT
DISTRICT OF MASS.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings Between

JOHN HANCOCK LIFE INSURANCE COMPANY,
  Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
  Respondent.

---

Civil Action No. 04 10181 MLW

### SPHERE DRAKE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AFFIDAVIT OF MALCOLM J. BEACHAM AND PORTIONS OF JOHN HANCOCK'S RULE 56.1 STATEMENT AND MEMORANDUM IN SUPPORT OF HANCOCK'S MOTION FOR SUMMARY JUDGMENT

John Hancock Insurance Company ("Hancock") has submitted the Affidavit of Malcolm J. Beacham In Support of John Hancock's Motion For Summary Judgment ("Beacham Affidavit" or "Beacham Aff.") in a blatant attempt to usurp this Court's province of interpreting the terms of the purported contracts at issue in this case.[1] Under well-settled principles, contract interpretation is generally a question of law. Only where a contract is ambiguous – that is, where it is susceptible of more than one *reasonable* interpretation – is it appropriate for a court to consider extrinsic evidence in interpreting a contract. Here, Hancock has argued repeatedly that the terms in the slips for the Seven Agreements are unambiguous. Yet it offers an interpretation through the opinion testimony in Beacham's affidavit, which would impose a restriction nowhere to be found in any of the slips' terms. The wording of the service of suit clauses referenced by

---

[1] By referring herein to putative reinsurance agreements between Hancock and Sphere Drake as "contracts" or "agreements," Sphere Drake does not agree that any of the twenty-nine "contracts" between Sphere Drake and Hancock accepted by EIU under the Binding Authority (referred to herein as the "John Hancock/Sphere Drake Ceded Contracts") is a valid or enforceable contract. Sphere Drake's position is that all twenty-nine John Hancock/Sphere Drake Ceded Contracts, including the seven contracts at issue before this Court (referred to herein as the "Seven Agreements") are void.

Hancock unambiguously provides that although Sphere Drake must submit to this Court's jurisdiction (which it has done), it remains free to request the Court to stay this action and effectively transfer the case to England. Because this wording is unambiguous, the Beacham Affidavit, as well as all "facts" in Hancock's Local Rule 56.1 Statement of Material Facts and in the Memorandum In Support of John Hancock Life Insurance Company's Motion For Summary Judgment that are supported by the Beacham Affidavit, should be stricken.

## ARGUMENT

The Beacham Affidavit is rife with blatantly improper interpretations of specific terms of the Seven Agreements. The majority of the substantive paragraphs in the Beacham Affidavit is dedicated to conclusory statements as to what certain provisions in the Seven Agreements "would have unambiguously indicated to a London insurance market underwriter," or what such an underwriter "would have understood" in the face of those contractual provisions. (Beacham Aff., ¶¶ 12, 15, 16, 19-23.) Yet Beacham's interpretation flies in the face of the plain terms of the Lloyd's provisions that Hancock claims apply, and is thus manifestly unreasonable. This Court, not a third party with no involvement in the transactions at issue, bears the responsibility for interpreting the Seven Agreements.

### I.   Contract Interpretation Is Solely the Province of the Court.

It is this Court, not Malcolm J. Beacham, who is charged with interpreting the meaning of the various provisions in the Seven Agreements, as contract interpretation is a question of law for the Court. *See, e.g. Keystone Shipping Co. v. New England Power Co.*, 109 F.3d 46, 50 (1st Cir. 1997) ("arbitrability depends on contract interpretation, which is a question of law") (quotation marks omitted); *Bertrand v. Quincy Mkt. Cold Storage & Warehouse Co.*, 728 F.2d 568, 571 (1st Cir. 1984) ("we need not debate exactly what the plaintiff meant by this line in his affidavit because whether or not Bertrand was covered by the contract at a certain time is a question of

interpreting the contract, which makes it a question of law"); *Peck v. Horrocks Engineers, Inc.*, 106 F.3d 949, 955-56 (10th Cir. 1997) (affirming district court's decision to ignore affidavit because affidavit attempted to "interpret the contract and that is a function of law for the court").

This is especially so where the contracts at issue are unambiguous. Indeed, it is hornbook law that "[c]ontract interpretation is solely the province and the responsibility of [the] court to determine as a matter of law, absent an ambiguity." *Davis v. Dawson, Inc.*, 15 F. Supp. 2d 64, 89 n.75 (D. Mass. 1998) (court refused to consider "interpretations made by other individuals in their depositions or affidavits in arriving at the meaning of the unambiguous language in the agreement"); *see also, e.g., Cury v. Colonial Life Ins. Co. of Am.*, 737 F. Supp. 847, 854 (E.D. Pa. 1990) ("Because I conclude that the language of the pre-existing condition exclusion in Colonial's policy is unambiguous and susceptible to only one reasonable interpretation, I agree that Dr. Lynch's 'interpretation' of the policy is not admissible. . . . Therefore, to the extent that Dr. Lynch's affidavit offers a legal interpretation of the clause at issue in this case, I shall not consider his opinion.").

Even if Hancock were correct that extrinsic evidence is somehow appropriate in order to interpret what it asserts are unambiguous contracts, it is significant that Hancock has not offered a single fact witness to attest to the parties' intentions with regard to the contractual terms. Indeed, since all of the individuals and entities who played any role in drafting, negotiating and executing the slips for the Seven Agreements are in England, Hancock cannot produce a fact witness without tacitly supporting Sphere Drake's position – that England is the appropriate place to resolve the parties' disputes given that all relevant witnesses reside in England. The First Circuit Court of Appeals has recognized that evidence as to the parties' actual intent provides the most useful evidence to aid in contract interpretation. *See, e.g., Den Norske Bank*

*AS v. First Nat'l Bank of Boston*, 75 F.3d 49, 52-53 (1st Cir. 1996) ("In descending order of importance, extrinsic evidence may include: (1) the parties' negotiations on the particular loan, (2) their course of performance, (3) their prior course of dealing, and (4) trade usage in the relevant . . . industry.") (citations omitted). Yet, rather than providing a fact witness to testify about the parties' intent, Hancock relies on the statement of Mr. Beacham, who clearly had no involvement in the placement of the contracts at issue. Hancock's attempted use of this "expert" testimony merely highlights the fact that it is an *English* underwriter's perspective that would be needed to construe any ambiguities in the contract terms.

## II. The Seven Agreements Are Unambiguous.

### A. The Plain Language of the Lloyd's "Standard" Service of Suit Clause Reserves Sphere Drake's Right to Seek to Transfer This Case to England.

When interpreting an insurance contract, a court "must construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter. Moreover, where the words of an insurance contract are plain and free from ambiguity they must be construed in their usual and ordinary sense." *Jacobs v. U.S. Fid. & Guar. Co.*, 417 Mass. 75, 76-77 (Mass. 1994) (citations and quotation marks omitted); *see also, e.g., Liberty Mut. Ins. Co. v. United Tech. Corp.*, No. 011466BLS, 2003 WL 369672, at *3 (Mass. Super. Ct. Jan. 13, 2003) (quoting *Brooke Group, Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (N.Y. 1996) ("In cases of contract interpretation, the words and phrases used by the parties are to be afforded their 'plain meaning.'"). The First Circuit Court of Appeals recently held that the "interpretation of an insurance policy is a question of law for the trial judge, and then for the reviewing court." *Ctr. for Blood Research Inc. v. Coregis Ins. Co.*, 305 F.3d 38, 41 (1st Cir. 2002) (citations and quotation marks omitted). In that case, the court adopted the following standard for determining whether a contract or contract term is ambiguous:

4

> A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons differ as to which meaning is the proper one. An ambiguity is not created simply because a controversy exists between the parties. Nor does the mere existence of multiple dictionary definitions of a word, without more, suffice to create an ambiguity, for most words have multiple definitions.

*Id.*[2]

The question, then, is whether the service of suit clauses referenced in the slips for the Seven Agreements, either taken alone or in combination with the arbitration provisions, are susceptible of more than one *reasonable* interpretation. When making this determination, the words in the contracts must be given their plain and ordinary meaning. Under this standard, the contracts are unambiguous.

Beacham asserts that the shorthand term "Service of Suit Clause" found in the slips at issue refers to the following Lloyd's "standard wording" for those clauses in effect during 1997 and 1998:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction in the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

---

[2] The court in *Coregis* also applied the principle that "when policy language is ambiguous, a court should adopt an interpretation of the ambiguous term favorable to the insured." 305 F.3d at 41. The "pro-insured" principle of interpreting insurance contracts does not apply where the parties to the contract are both sophisticated business entities. *See, e.g., Fed. Dep. Ins. Corp. v. Ins. Co. of North Am.*, 105 F.3d 778, 786-87 (1st Cir. 1997) ("The presumption against the insurer is not applied where the policy language results from the bargaining between sophisticated commercial parties of similar bargaining power.").

(Beacham Aff. ¶¶ 16-18.) The meaning of this language could not be clearer. Notwithstanding Sphere Drake's obligation to submit to the Court's jurisdiction (which it has done), this clause provides Sphere Drake with the right to request that the Court abstain in favor of the proceedings pending in England. Indeed, nothing in the language of the above-quoted provision even suggests that Sphere Drake is precluded from making such a request, or that the Court is somehow prohibited from granting it.

The District Court for the Northern District of Illinois recently interpreted a similar service of suit provision, and held that the provision was not ambiguous. *See Ashland P'Ship III v. Pacific Ins. Co.*, No. 99 C 1498, 2000 WL 1671501, at *2 (N.D. Ill. Nov. 3, 2000). The provision at issue in *Ashland* required the insurer to submit to the jurisdiction of a "court of competent jurisdiction within the United States of America or Canada." However, the service of suit clause went on to provide that the insurer "specifically reserves the right to remove any suit brought under this Policy to a Federal Court of the United States." *Id.* Plaintiffs brought suit in state court in California. Pursuant to the reservation of rights as stated in the service of suit clause, defendant insurer first removed the case to federal court in California, then sought and obtained a transfer of the case to Illinois district court. Plaintiffs moved to remand the case back to the California state court, arguing that the reservation of rights in the service of suit clause was "entirely antithetical to everything that precedes it and creates a hopeless ambiguity." *Id.* The court disagreed, holding that the "reservation of right clause does not create an ambiguity in the service of suit provision." *Id.*

The same result is warranted here. The service of suit provisions require Sphere Drake to submit to this Court's jurisdiction, nothing more. The provisions expressly and unambiguously reserve Sphere Drake's right to effect a transfer of the case to any other court "as permitted by

6

the laws of the United States." *See also, e.g., W.R. Grace & Co. v. Hartford Accident & Indemnity Co.*, 407 Mass. 572, 580 (1990) ("a service of suit clause does not lock an insurance company into the jurisdiction selected by its insured nor does such a provision bar a court in that jurisdiction from considering a plea of forum non conveniens.").

> B. **The Existence of Arbitration Provisions in the Slips Does Not Create Any Ambiguity As To the Clear Meaning of the Service of Suit Clause.**

The crux of Hancock and Beacham's position boils down to the following statement:

> In 1997 and 1998, a London insurance market underwriter would have understood that each of the Executed Slips' references to both an 'arbitration clause' and variations of a 'service of suit clause' unambiguously compelled Sphere Drake as the London reinsurer, if requested by John Hancock as the U.S. cedent, to submit to the jurisdiction of the Courts of the United States and arbitrate such disputes subject to their law and jurisdiction, having contractually relinquished its right to have the dispute resolved by a court outside of the United States.

(Hancock Mem., p. 5; *see also* Beacham Aff. ¶¶ 20, 22.) The problem for Hancock is that the contractual provisions upon which it relies simply do not say that, and proffering an affidavit suggesting a contrary meaning cannot create an ambiguity. As explained above, the "Standard Wording" for the service of suit clauses reserves Sphere Drake's right to transfer this proceeding to any court "as permitted by the laws of the United States." Thus, Sphere Drake was entirely justified in requesting that this Court abstain in favor of the English Commercial Court proceedings to enable the English Court to determine the seat of the arbitration.

The fact that the slips also provide for arbitration does not alter this conclusion. First Circuit case law, squarely on point, holds that

> we find no evidence that Congress felt petitioners' "choice of forum" so important in § 4 cases that it intended a major departure from the ordinary rule allowing one federal court to stay litigation when another federal court is in the process of deciding the same issue. The mandatory language of § 4 refers to a petitioner's right

7

>to substantive relief. It does not address the problem of stays or duplicative litigation.

*Acton Corp. v. Borden, Inc.*, 670 F.2d 377, 383 (1st Cir. 1982); *see also Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 106 (1st Cir. 1995).

Pursuant to the arbitration provisions referenced in the slips, Sphere Drake must arbitrate the parties' disputes over the validity and enforceability of the Seven Agreements.[3] And, under the service of suit provisions, Sphere Drake must submit to this Court's jurisdiction. Read together, the clear and unambiguous meaning of the Seven Agreements is that Sphere Drake must submit to this Court's jurisdiction, but is free to move this Court to allow this dispute to be heard in a more suitable jurisdiction.

### C. Hancock and Beacham's Interpretation of the Seven Agreements Is Manifestly Unreasonable.

Although Hancock's reading of the service of suit clauses (as supplied by Beacham) differs from Sphere Drake's, this does not render the contracts ambiguous, as an "ambiguity is not created simply because a controversy exists between the parties." *Coregis*, 305 F.3d at 41. Rather, an ambiguity exists only if a contract is "susceptible of more than one meaning and reasonably intelligent persons differ as to which meaning is the proper one." *Id.* The wording upon which Hancock and Beacham rely expressly states, "Nothing in this [service of suit] Clause constitutes or should be understood to constitute a waiver of [Sphere Drake's] right to . . . seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States." Nevertheless, Beacham inexplicably maintains that the language in

---

[3] As explained in Sphere Drake's Memorandum of Law in Opposition to Hancock's Motion for Summary Judgment, under English law (which Sphere Drake contends governs these disputes) the arbitration provisions in the Seven Agreements are severable from the larger contracts, which Sphere Drake maintains are void. (Sphere Drake's Mem. in Opp. to Hancock's Motion for Summary Judgment, pp. 2-3.) Accordingly, Sphere Drake has agreed to arbitrate these disputes notwithstanding, and expressly reserving, its position that the Seven Agreements are void and unenforceable.

the service of suit clauses reserving Sphere Drake's right to seek a transfer "provided the reinsurer only with the right to transfer the case from one 'competent Court in the United States to another 'competent Court' in the United States." (Beacham Aff., ¶ 23; *see also* Hancock Mem., p. 5. (by entering into contracts with service of suit clauses, Sphere Drake has "contractually relinquished its right to have the dispute resolved by a court outside of the United States.").) Of course, this limitation is nowhere to be found in the contractual language. Hancock itself has argued that this Court "has no authority" to "rewrite the contractual terms and conditions between the parties." (Hancock Mem., p. 9 (quoting *Ashcroft Corp. v. Palo*, 237 F.3d 31, 41 (1st Cir. 2001)). Yet it asks the Court to do just that as it seeks to add restrictions on the transfer of cases to the plain language of the Lloyd's service of suit clauses.

Not only is Beacham and Hancock's position unreasonable, but it is also refuted by the relevant case law. In *Brooke Group*, New York's highest court held that a "Service of Suit Clause generally provides no more than a consent to jurisdiction. It does not bind the parties to litigate in a particular forum, or give the insured the exclusive right to choose a forum unrelated to the dispute." 87 N.Y.2d at 534. The court therefore dismissed the case in favor of the English arbitration. *Id.* at 533-534. *Brooke Group* also undermines Hancock's conclusory statement that "in 1997 and 1998, a London insurance market underwriter would have understood" that a service of suit clause precludes reinsurers from transferring cases to courts "outside the United States." (Hancock Mem., p. 5; *see also* Beacham Aff. ¶ 23.) Indeed, defendants in *Brooke Group*, Lloyd's underwriters, clearly believed (as did the court) that a service of suit provision *did not* preclude transfer of the case to England. Thus, in contrast to Beacham's self-serving statements as to what a London market insurer "would have understood" in the mid- to late-1990s, the position taken by the Lloyd's underwriters in *Brooke Group* provides actual,

9

contemporaneous evidence as to what such underwriters thought they were agreeing to by entering into contracts with service of suit clauses. *See also Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 278 Ill. App. 3d 175, 178-80 (Ill. App. Ct. 1996) (Lloyd's underwriters argued, and court agreed, that service of suit clause was not exclusive forum selection clause, and did not preclude underwriters from moving to dismiss on forum *non conveniens* grounds).

Because the plain language is susceptible of only one reasonable interpretation, the contracts are unambiguous, and extrinsic evidence such as the Beacham Affidavit should not be considered.

In the alternative, even if the Court decides to consider the substance of the Beacham Affidavit to aid its interpretation of the contracts, Sphere Drake has filed with the Court the Affidavit of James H. Hunt. Mr. Hunt, a London Market underwriter with thirty-four years' experience within the London insurance and reinsurance market, affirms that a London Market underwriter's understanding of a service of suit clause is consistent with its terms – that is, the reinsurer is subject to a U.S. court's jurisdiction. However, Mr. Hunt affirms that nothing in the "service of suit clause" at issue here prevents or bars the transfer of a case to another U.S. or foreign court, and that a London Market Underwriter would not read such a restriction into the "service of suit clause." As a result, even were the Beacham Affidavit admissible, the factual disputes raised by the contrasts between the Hunt and Beacham Affidavits would preclude the Court from entering summary judgment in Hancock's favor and would require that discovery be permitted in this case.

## CONCLUSION

For the reasons stated herein, the Beacham Affidavit and all "facts" in Hancock's Local Rule 56.1 Statement of Material Facts and in the Memorandum In Support of John Hancock Life Insurance Company's Motion For Summary Judgment that are supported by the Beacham Affidavit should be stricken.

SPHERE DRAKE INSURANCE LIMITED
By its attorneys,

Andrea Peraner-Sweet (BBO#550515)
Heather V. Baer (BBO#566746)
SALLY & FITCH
225 Franklin Street
Boston, MA 02110
(617) 542-5542

OF COUNSEL:
Harold C. Wheeler (Attorney I.D. No. 2996960)
Teresa Snider (Attorney I.D. No. 06210115)
Kevin J. O'Brien (Attorney I.D. No. 06193882)
Mark A. Schwartz (Attorney I.D. No. (6270580)
Butler, Rubin, Saltarelli & Boyd LLP
3 First National Plaza
70 West Madison Street, Suite 1800
Chicago, Illinois 60602

## CERTIFICATE OF SERVICE

I, Andrea Peraner-Sweet, hereby certify that a copy of this document was served upon all counsel of record by hand on May 26, 2004.

Andrea Peraner-Sweet

W:\S\Sphere\Hancock\Pleadings\motion to strike beacham aff final.doc