UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------------
In the Matter of the Arbitration Proceedings Between

JOHN HANCOCK LIFE INSURANCE COMPANY,        Civil Action No.
    Petitioner,                                04 10181 MLW

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.
-------------------------------------------------------------------

**JOHN HANCOCK'S REPLY TO SPHERE DRAKE'S
OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Sphere Drake's Opposition to John Hancock's Motion for Summary Judgment ("Sphere Drake Opposition" or "Opposition") is the proverbial "throw it all on the wall" attack on John Hancock's Motion for Summary Judgment. [1] None of the arguments stick. Sphere Drake's plea for "international abstention" attempts to distract the court from the straightforward and limited question presented by John Hancock's Petition to Compel Arbitration, which is whether the parties have an agreement to arbitrate under the seven reinsurance contracts at issue ("Seven Agreements").

No legal or factual grounds support Sphere Drake's international abstention arguments. The action before the court is an FAA Section 4 Petition and the narrow issue presented is

---

[1] A prime example is Sphere Drake's Local Rule 56.1 which is the antithesis of a "concise" statement of facts, consisting of 129 separate paragraphs of purportedly material facts in opposition to John Hancock's Summary Judgment Motion. Not only does the statement fail to comply with the mandate of Rule 56.1 in its overly expansive and convoluted meandering, but Sphere Drake does not even cite to 80 of the 129 paragraphs in its opposition papers. Specifically, Sphere Drake fails to cite paragraphs 2-9, 13, 18-23, 26-29, 32-33, 36-45, 49, 51-55, 59-63, 65, 67, 69, 90-93, 97-98, and 102-129. Sphere Drake's 56.1 Statement is a complete perversion of the rule and should be stricken as set forth more fully in John Hancock's Motion to Strike filed herewith.

whether the court must compel arbitration under Section 4 where, as here, there is clear and undisputed material evidence of jurisdiction over Sphere Drake and an arbitration clause between the parties.  Sphere Drake cannot cite to any legal authority to support the court's staying or dismissing a matter under the doctrine of international abstention because there is no case law that would allow the court to abstain when presented with a Section 4 Petition in conjunction with unambiguous and unequivocal "service of suit clauses."  Even if the court believes that an abstention analysis is nevertheless warranted, Sphere Drake cannot factually establish that international abstention is appropriate under the circumstances.  The sole reason advanced by Sphere Drake for abstention – potential witnesses to the arbitrations reside in England – is simply inadequate and disingenuous.

      The material facts supporting John Hancock's Section 4 Petition and its Summary Judgment Motion are clear and indisputable.  Although the Affidavit of James H. Hunt ("Hunt Affidavit") submitted by Sphere Drake purports to rebut the Affidavit of Malcolm J. Beacham ("Beacham Affidavit") submitted by John Hancock by interjecting a number of immaterial issues into the case, it creates no question of material fact with respect to the consequences of the references in the Executed Slips to both an "arbitration clause" and a "service of suit clause."  Indeed, John Hancock's position is fully buttressed by Mr. Beacham in the original Beacham Affidavit and his Supplemental Affidavit of Malcolm J.Beacham ("Supplemental Beacham Affidavit") filed herewith, as well as by Mr. Keith Tunstall, Sphere Drake's own Senior Deputy Underwriter in 1997 and 1998 in the Affidavit of Keith Tunstall ("Tunstall Affidavit"), also filed herewith.[2]  In particular, Mr. Tunstall confirms that Sphere Drake would have understood that the

---

[2] Sphere Drake has moved to strike the Beacham Affidavit on the basis that it constitutes inadmissible extrinsic evidence as to the unambiguous slip references to "arbitration" and "service of suit" clauses.  As set forth more fully in John Hancock's Opposition to the Motion to Strike the Beacham Affidavit filed herewith, the Beacham Affidavit as well as the Supplemental Beacham Affidavit and Tunstall Affidavit provide the context to the slip references

inclusion of the "arbitration clauses" and the "service of suit clauses" in the Executed Slips undeniably bound Sphere Drake to submit to the jurisdiction of the courts of the United States and to arbitration in the United States in the event that John Hancock elected to invoke such jurisdiction over Sphere Drake.  In fact, Mr. Tunstall establishes that as a Sphere Drake underwriter at the time, he would not have considered under any circumstances that these slip references could be viewed to mean either that London was to be the seat of arbitration or that English law would govern.  Consequently, "discovery" as requested -- but notably undefined -- by Sphere Drake, would be superfluous in providing any assistance to the court in its interpretation of the unambiguous slip references at issue.  Based on John Hancock's Summary Judgment Motion with supporting briefs and affidavits, the case is ripe for a ruling granting John Hancock's Section 4 Petition.

**II.    ARGUMENT**

    **A.    The *Goldhammer* Factors Render Abstention Entirely Innappropriate.**

Sphere Drake's claim for international abstention rests largely on one factual assertion – potential witnesses to the arbitrations reside in England – and one case – *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F.Supp.2d 248 (D. Mass. 1999).  Given that *Goldhammer* arose in the context of a breach of contract containing no "service of suit clause," and not in the context of a Section 4 Petition involving "service of suit clauses" pursuant to which the party pursuing abstention agreed to submit to the exclusive jurisdiction of the U.S. courts if invoked by the domestic company.  Sphere Drake's reliance on *Goldhammer* specifically, and the doctrine of international abstention in general, is entirely misplaced.  When the elements of international abstention are properly considered, Sphere Drake cannot demonstrate any exceptional

---

which have a clear meaning in the London insurance market and, therefore, are entirely appropriate and necessary for the court to consider.

circumstances which would justify this court's abdication of its "virtually unflagging obligation…to exercise the jurisdiction given to [it]" by Congress. *See Goldhammer*, 59 F.Supp.2d at 251.

*Goldhammer* involved a dispute over an agreement to sell donuts in England between a Massachusetts corporation, Dunkin' Donuts Inc. ("Dunkin' Donuts") and an English corporation DD UK, Ltd. ("DD UK"). In December of 1997, Dunkin' Donuts elected not to file suit in Massachusetts, but instead, filed a suit in England against DD UK seeking damages under agreements to develop the Dunkin' Donuts brand of donuts in England. A year later, DD UK filed a parallel action in the federal District Court of Massachusetts notwithstanding the fact that discovery was ongoing and the parties were proceeding to trial in the English action. *Id.* at 250. Subsequently, Dunkin's Donuts moved to dismiss or stay the U.S. action pending the outcome of the first-filed English action. *Id.* at 250. Judge Saris stayed the second-filed Massachusetts action, finding that three of six balancing factors weighed in favor of abstention. *Id.*

Although the *Goldhammer* court noted that there is "support for declining motions to stay when the foreign litigation is in its early stages," it determined that "[t]he sequence of the[] actions heavily favor[ed] a stay" because the Massachusetts action was filed a full year after the first-filed English action, discovery was ongoing, and the English action was proceeding to trial. *Id.* at 255 (citations omitted). Contrary to *Goldhammer*, the temporal sequence of filings weighs heavily in favor of this court exercising its jurisdiction because John Hancock's Petition was first-filed and the English action filed by Sphere Drake has not proceeded beyond the initial filing, but rather, has been suspended until this court makes its determination.

The *Goldhammer* court also found that the similarity of the parties "lean[ed] in favor of staying the action." Unlike *Goldhammer*, however, because John Hancock filed first in its

4

domestic forum, the similarity of the parties does not weigh in favor of either this court or a foreign court making a determination on the parties' dispute. Although it is a requirement that the parties be similar if a court is to abstain, the simple fact the parties are the same should not weigh in favor of abstention where the party seeking abstention filed its action in response to a first-filed action in the United States.

The *Goldhammer* court also found that judicial efficiency weighed in favor of abstention because the staying of the Massachusetts action would avoid duplicative litigation. *Id.* at 254. In this action, however, John Hancock and Sphere Drake have specifically agreed to suspend the English proceedings until this court makes its ruling. (*See* Parties' Revised Stipulation Pursuant to February 13, 2004 Court Order filed with the Court on March 17, 2004 as Docket Entry number 49.) Contrary to Sphere Drake's assertion, there is absolutely no risk of the possibility of "duplicative lawsuits proceeding in tandem." (*See* Sphere Drake Opposition at p. 16.) Abstention in this matter would cause judicial inefficiency by requiring the parties to reargue and re-brief all of the issues presently before this court, to an English court unfamiliar with the matter, and perhaps more importantly, without authority to grant adequate and appropriate relief to John Hancock.

Significantly, the *Goldhammer* court recognized that the inadequacy of relief in England weighed against abstention because some of the claims made in the Massachusetts action, including a M.G.L. c. 93A claim, were not available in the English litigation. In fact, the court stayed rather than dismissed the Massachusetts action to allow the future opportunity for relief in Massachusetts after the action in England was completed. *Id*. In the present matter, an English court has no authority to entertain John Hancock's Section 4 Petition because it is brought under a U.S. federal statute which extends authority to compel arbitration within the U.S. In fact, an

English court cannot grant the relief sought by John Hancock in its Section 4 Petition because it has no authority to compel the parties to arbitrate outside of England. (*See* Second Affidavit of Mitchell S. King in Support of Verified Amended Petition to Compel Arbitration Proceedings, ¶ 6.) Unlike *Goldhammer*, a stay in this action would not leave open the possibility of future relief for John Hancock in the United States because a ruling by an English court compelling arbitration in England would completely foreclose and, therefore, prejudice John Hancock's ability to arbitrate in Massachusetts pursuant to the FAA. Accordingly, John Hancock would have no adequate relief if this court abstains from ruling on its Section 4 Petition.

      As was the case in *Goldhammer*, the convenience of the parties, counsel and witnesses do not favor either a stay or the court retaining jurisdiction of this matter. The *Goldhammer* court found that this factor was a draw for both sides given that English law applied to the agreement at issue and one party was an English company with witnesses located in England, where the other party had a principal place of business in Massachusetts with witnesses residing in Massachusetts. Likewise, in this action, Sphere Drake is an English company with potential witnesses residing in England and John Hancock is a Massachusetts company with potential witnesses residing in Massachusetts. Sphere Drake cannot credibly claim inconvenience with respect to Massachusetts arbitrations because it will be alleging the exact same defenses and arguments and relying on the exact same witnesses in thirteen arbitrations in Massachusetts with John Hancock pursuant to reinsurance contracts involving the same workers' compensation carve-out business at issue in this matter. (*See* John Hancock's Fact Statement ¶¶ 20-23.) Sphere Drake's claim of potential prejudice on account that it might have difficulty obtaining the testimony of witnesses located in England is illusory given its past practice of relying not on live witnesses, but rather, on the English Court's decision, the prior testimony and the witness statements in the *Sphere Drake v.*

*EIU, et. al.* action in England (the "English Action") as a means to assert collateral estoppel.[3] (*See* Sphere Drake Opposition at p. 19; Second Affidavit of Mitchell S. King ("Second King Affidavit") at ¶12; Petitioner's Exhibit 45, ¶¶ 10-16.)

Conversely, John Hancock would be irreparably prejudiced if the court abstains in favor of an English Court. By abstaining, the court would essentially be rewriting the Executed Slips to eliminate the bargained for "service of suit clauses." This potential prejudice is dramatically more significant than in *Goldhammer,* where the court recognized that limitations on discovery in England weighed against staying the Massachusetts action.

The *Goldhammer* factors definitively militate against abstention in this matter. This court, therefore, should entertain and allow John Hancock's Section 4 Petition.

> **B.  Sphere Drake Has Cited No Other Authority For Its Proposition That The Court May Stay or Dismiss John Hancock's Section 4 Petition on Grounds of International Abstention.**

Although Sphere Drake has neither expressly relied on the doctrine of *forum non conveniens,* nor articulated the elements or standard with respect to a claim of *forum non conveniens,* it repeatedly cites to this doctrine in support of its request for international abstention. It would appear that Sphere Drake has refrained from arguing the doctrine of *forum non* conveniens in this case given its vehement resistance to an identical *forum non conveniens* attack on the *Odyssey Re v. Stiling Cooke, et. al.* case it filed in the Southern District of New York in which Sphere Drake took the diametrically opposite position that the United States, not England, was the appropriate forum for its lawsuit involving the same business at issue, notwithstanding the fact that witnesses resided in England. (*See* Second King Affidavit, ¶11; Petitioner's Exhibit 44, pp. 28, 31)

---

[3] John Hancock was not a party to the English Action and, therefore, collateral estoppel would not apply.

Similar to the rigorous constraints on international abstention, the doctrine of *forum non conveniens* permits a court to dismiss a case to avoid serious unfairness where an alternative forum is available in another jurisdiction. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996) (determining that defendant failed to establish sufficient reasons to support dismissal of United States District Court action in favor of available Hong Kong forum). There is a strong presumption in favor of the petitioner's choice of forum, especially where the petitioner has chosen its home jurisdiction. *See id*. at 719 ("the doctrine of *forum non conveniens* is used to avoid '*serious unfairness*' and [the petitioner's] choice of a forum will be disturbed only rarely") (emphasis added.)

To overcome this presumption, a respondent seeking dismissal of an action on *forum non conveniens* grounds bears the burden of proving that: (1) an adequate alternative forum is available; and (2) considerations of convenience and judicial efficiency *strongly favor* litigating the claim in the alternative forum. *Id.* at 719 (emphasis added.) Moreover, the United States Supreme Court has stated that:

> [w]here there are only two parties to a dispute . . . [the petitioner] should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such *oppressiveness and vexation to a [respondent]* as to be out of all proportion to [petitioner's] convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

*Koster*, 330 U.S. at 518, 524 (1947)(emphasis added).

Sphere Drake is unable to show that this court's consideration of John Hancock's Section 4 Petition will result in any type of "oppressiveness and vexation" to Sphere Drake disproportionate to the actual prejudice to John Hancock if the action is dismissed in favor of an

English proceeding. [4]  *See Nowak*, 94 F.3d at 720.  This is particularly clear given that Sphere Drake will already be alleging the exact same defenses and arguments and relying on the exact same witnesses in thirteen arbitrations in Massachusetts pursuant to reinsurance contracts involving the same workers' compensation carve-out business at issue in this matter.  (*See* John Hancock's Fact Statement, ¶ 20-23.)  Indeed, Sphere Drake strenuously fought in favor of the United States being the appropriate and convenient forum and England being an inappropriate and entirely inconvenient forum for its *Odyssey Re* dispute. (*See* Second King Affidavit, ¶11; Petitioner's Exhibit 44, pp. 28, 31.)  There is no rational reason in this matter to disturb John Hancock's choice of its home forum, let alone to support Sphere Drake's claim for international abstention especially in view of the "service of suit clauses" which contractually require Sphere Drake to submit to John Hancock's selection of a domestic forum and the mandatory nature of Section 4.

Moreover, each *forum non conveniens* case cited by Sphere Drake is distinguishable by its facts, and provides no support for Sphere Drake's claim for international abstention.  For example, *Brooke Group Ltd. v. JCH Syndicate*, 87 NY2d 530 (N.Y. 1996) involved a civil action for damages, not a Petition under Section 4, in which the plaintiff sought to use a service of suit clause as "an alternative to arbitration" to allow the action to be litigated and not arbitrated.  The defendant responded to the action by initiating arbitration in London and moving to dismiss the litigation in New York.  *Id*. at 533.  The New York Supreme Court dismissed the action on grounds of *forum non conveniens* because the parties were both foreign corporations, the insurance was issued in England, and the covered property was in Russia.  *Id.*  The court found that dismissal was proper because there was no connection to the New York forum other than the

---

[4]  Sphere Drake has not suggested, nor would there be grounds to suggest, that any trial before this court would be inappropriate because of any judicial administrative and legal problems.

lawsuit. Id. At 535.  In contrast, John Hancock has selected its domestic forum and is utilizing the "service of suit clauses" to compel arbitration pursuant to a Section 4 Petition.

Likewise, *W.R. Grace & Co. v. Hartford Accident & Indem. Co.*, 407 Mass. 572 (1990) involved a declaratory judgment brought in Massachusetts four years subsequent to a similar declaratory judgment action brought in New York.  The court determined that despite a service of suit clause it could dismiss the Massachusetts action on *forum non conveniens* grounds in favor of the action filed four years previously in New York.  The court in *W.R. Grace*, however, did not consider a Section 4 Petition or a foreign company's agreement to submit to U.S. jurisdiction under a service of suit clause.  Furthermore, the court stayed the action in *W.R. Grace*, in a favor of proceedings before another competent U.S. court rather than a foreign court.[5]   Importantly, the court noted that a party's own inconvenience was insufficient to establish *forum non conveniens*. *Id.* at 580.

Sphere Drake's citation to case law interpreting Section 4 of the FAA in support of its assertion that the court can abstain in favor of an English court despite the "service of suit clauses" in the Executed Slips and the mandatory provisions of Section 4 is similarly unpersuasive.  (Sphere Drake's Reply In Further Support of Its Motion to Dismiss or Stay John Hancock's Verified Amended Petition at pp. 10-11.)  In *Acton Corp. v. Borden, Inc.*, 670 F.2d 377

---

[5]  Sphere Drake has cited additional *forum non conveniens* cases in its submissions to this court, all of which are similarly irrelevant to its assertions regarding "international abstention" and are fatally distinguishable on their facts. *See e.g., Gemini Capital Group v. Yap Fishing Corp.*, 150 F.3d 1088, 1090 (9th Cir. 1988) (Ninth Circuit affirmed court's decision to stay action to compel arbitration with respect to agreements that all "contained choice of law and choice of forum clauses subjecting the agreement to the laws of the Federated States of Micronesia and the State of Yap, with all parties agreeing to submit to the jurisdiction of the courts of the [Federated States of Micronesia] . . ."); *Maria Naviera, S.A. v. Cementos del Valle, S.A.*, 759 F.2d 1027, 1031 (2d Cir. 1985) (Second Circuit affirmed district court's refusal to dismiss on *forum non conveniens* grounds where parties agreed to arbitrate in New York.); *Jain v. de Mere*, 51 F.3d 686 (7th Cir. 1995) (In a case which did not involve a service of suit clause or a company seeking to arbitrate in its home domicile, the court stated that if one foreign party petitions to compel another foreign party to arbitrate in the United States, the defendant may invoke forum non conveniens arguments); *CNA Reinsurance Co. v. Trustmark Ins. Co*., 2001 U.S. Dist. LEXIS 7523 (N.D. Ill. June 5, 2001) (In a case which did not involve a service of suit clause, where an English company sought to compel arbitration in the United States against a domestic carrier the court could dismiss on grounds of *forum non conveniens.*)

(1st Cir. 1982), the defendant sought a stay of the plaintiff's petition to compel arbitration in the District of Massachusetts because it had previously initiated similar proceedings in federal District Court in Ohio. The First Circuit affirmed the district court's decision to stay the Massachusetts action because the arbitration issue was already being determined by another federal court. *Acton*, 670 F.2d at 382. The court reconciled a stay of a petition with the mandates of Section 4 in circumstances "when another ***federal court*** is in the process of deciding the same issue."[6] *Id*. at 383 (emphasis added.) Unlike *Acton*, this matter does not involve another federal court in the process of deciding the same issue. Moreover, the contracts in this matter contain "service of suit clauses" pursuant to which Sphere Drake specifically agreed to submit to the jurisdiction of the courts of the United States. *Acton* provides no support for Sphere Drake's position.

Sphere Drake's reliance on *Pepsico Inc. v. Oficiana Central de Asesoria Y Auda Texnica, C.A.,* 945 F.Supp. 69 (S.D.N.Y. 1996) is equally misguided. In *Pepsico*, a petition to compel arbitration was filed in the Southern District of New York when the issue of the arbitrability of claims under the contracts (which provided that they were governed by the laws of Venezuela) was already before a Venezuelan court. *Id*. at 70-71. The federal court refrained from ruling on the petition to compel arbitration for sixty days to allow the Venezuelan court to make a determination with respect to a threshold question of Venezuelan law.[7] *Id*. at 70. The petition to compel arbitration in *Pepsico, Inc.*, was filed subsequent to a parallel action in another court and the agreements specifically provided that they were to be governed by Venezuela law. In this

---

[6] This is essentially another way of stating the "first to file" rule which provides that "[i]n deciding which of two parallel [federal] actions should proceed, the general rule . . . is that 'the first suit should have priority . . .'" *Hanson PLC v. Metro-Goldwyn-Mayer Inc.*, 932 F.Supp. 104, 106 (S.D.N.Y. 1996)(citation omitted.)

[7] For the same reasons, *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221 (9th Cir. 1999) does not support Sphere Drake's assertions with respect to abstention. *In Stock West*, a party filed a motion to compel arbitration in the Eastern District of Washington seven months after an action was filed in tribal court. The Ninth Circuit affirmed the district court's decision to defer to the tribal court on grounds of comity stating "Congress is committed to a policy of supporting tribal self-government and self-determination." *Id*. at 1230 (citation omitted.)

matter, John Hancock's Petition was the first filed and the Executed Slips do not provide that English law governs. Most importantly, however, the contracts in *Pepsico, Inc.* did not contain service of suit clauses pursuant to which the party seeking a stay agreed to submit to the jurisdiction of the United States. The "service of suit clauses" in conjunction with the mandatory nature of a Section 4 Petition impenetrably embrace Sphere Drake into the jurisdiction of the United States courts and, consequently, into arbitrating in the United States as a matter of law.

    **C.**    **The Beacham and Tunstall Affidavits Indisputably Establish That Sphere Drake Unequivocally Relinquished Any Right To Have This Dispute Resolved By A Court Outside Of The United States.**

In its submissions, Sphere Drake deemed it significant that John Hancock had "not offered a single fact witness to attest to the parties' intentions with respect to the contractual terms" of the Seven Agreements. (*See* Sphere Drake's Memorandum of Law In Support of Its Motion To Strike Affidavit of Malcolm J. Beacham and Portions of John Hancock's Rule 56.1 Statement and Memorandum in Support of Hancock's Motion for Summary Judgment, at p. 3.) The Tunstall Affidavit does just that. Mr. Tunstall was a Senior Deputy Underwriter at Sphere Drake during 1997 and 1998, the years the Executed Slips were accepted on behalf of Sphere Drake. (*See* Joint Fact Statement, ¶¶ 3, 6.)

Mr. Tunstall agrees entirely with John Hancock's position with respect to the operation of the Executed Slips' "arbitration" and "service of suit clauses." (*See* generally Tunstall Affidavit, ¶¶ 8-18.) Both Mr. Tunstall and Mr. Beacham affirm that the "service of suit clauses" in the Executed Slips unambiguously and unequivocally establish that Sphere Drake relinquished the right to have this dispute resolved by a court outside the United States if John Hancock sought jurisdiction over it in the United States. (*See* Tunstall Affidavit, ¶¶ 13, 14 and 15; Beacham Affidavit, ¶¶ 18, 19 and 20.) Furthermore, the reference to an "arbitration clause" in the Executed

Slips undeniably binds Sphere Drake to submit disputes to arbitration.  (*See* Beacham Affidavit, ¶ 21; Tunstall Affidavit, ¶¶ 10, 16.)  Consequently, as the Executed Slips reference both an "arbitration clause" and a "service of suit clause," they unequivocally and unambiguously bound Sphere Drake, at the election of John Hancock, to submit to the jurisdiction of the Courts of the United States and to arbitrate such disputes in the United States.  (*See* Beacham Affidavit, ¶ 22; Tunstall Affidavit, ¶ 17.)  Equally significant, Mr. Tunstall affirmatively states that given the Executed Slips' references to the "service of suit clauses" and the "arbitration clauses," he would not have considered that London would be the seat of arbitration or that English law would govern the disputes. (*See* Tunstall Affidavit, ¶ 18.)  Given Mr. Tunstall's statements, in particular, it is abundantly clear why Sphere Drake has not offered a single fact witness with respect to the parties' intentions.

### D. By Virtue Of The Hunt Affidavit, Sphere Drake Removed Any Barriers To The Court's Consideration Of The Treaty Wordings Which Illustrate Consistency With The Pertinent Slip References.

The wordings for the Seven Agreements ("Treaty Wordings") illustrate consistency in John Hancock's position that the references to the "arbitration clauses" and "service of suit clauses" in the Executed Slips conclusively establish Sphere Drake's agreement to submit to the jurisdiction of the courts of the United States as well as the parties' intention to arbitrate in the United States.  (*See* Petitioners' Ex. 1(c) Art. 12 and 26; Ex. 2(c) Art. 12 and 26; Ex. 3(c) Art. 11 and 25; Ex. 4(c) Art. 11 and 25; Ex. 5(c) Art. 11 and 25; Ex. 6(c) Art. XV and XIV; and Ex. 8 Art. XVIII and XIX.; *see also*, John Hancock's Memorandum in Support of its Motion for Summary Judgment, § III D.)    Although Sphere Drake has maintained that the Treaty Wordings are irrelevant to this action, it submits the Hunt Affidavit to aid in the interpretation of the Seven Agreements.  (*See* Sphere Drake Opposition, p. 1 n. 1.)  The Hunt Affidavit  focuses on three

13

arbitration clauses from various standard London market reinsurance treaty wordings. (*See* Sphere Drake Opposition, p.1 n. 1; Hunt Affidavit, ¶¶ 14-25.) Mr. Hunt's exclusive reliance on these standard treaty wordings to support the "opinions" in his affidavit confirms the relevancy of the actual arbitration and service of suit clauses set forth in the Treaty Wordings as an aid in the court's interpretation of the corresponding slip references. By virtue of the Hunt Affidavit, Sphere Drake has removed any barriers to the court's consideration of the Treaty Wordings. In fact, at least one federal court has looked to an unsigned wording to obtain an understanding of an "arbitration clause" reference in a reinsurance slip. *See e.g., North Carolina League of Municipalities v. Clarendon National Ins. Co.*, 733 F.Supp. 1009, 1010 n.2 (E.D.N.C. 1990)(the court looked to the draft treaty wording for the text of the "arbitration clause" referenced in the reinsurance slip.)

        E.        **The Hunt Affidavit Does Not Materially Challenge The Consequences Of The Service Of Suit Clauses To Sphere Drake.**

In an effort to create a material factual dispute, Sphere Drake claims that because the Executed Slips are silent as to the seat of arbitration, London should be considered the seat of arbitration by default. In support, Sphere Drake submitted the Hunt Affidavit to "assist" the court in its interpretation of the Executed Slips' "arbitration clauses" and "service of suit clauses." (*See* Sphere Drake Opposition, p. 1 n. 1.) Nowhere in the affidavit, however, does Mr. Hunt indicate that he has, in fact, reviewed the Executed Slips. Furthermore, Mr. Hunt concedes that he ceased actively underwriting in the London market by 1992, at least five years before the Executed Slips were accepted on behalf of Sphere Drake (*See* Hunt Affidavit, ¶¶ 5, 11; Joint Fact Statement, ¶ 3.) Indeed, the overwhelming majority of the Hunt Affidavit rests on standard London market arbitration clauses which have absolutely no bearing on the Executed Slips. Thus, any utility of the Hunt Affidavit is severely compromised.

Specifically, Mr. Hunt addresses the following three standard arbitration clauses which he suggests, without support, stand for the proposition that London would be the seat of arbitration with respect to the Executed Slips: (a) the ARIAS Arbitration Clause; (b) the Joint Excess Loss Committee arbitration clause ("JELC Arbitration Clause"); and (c) the arbitration clause in the London Personal Accident excess of loss reinsurance market standard contract wording ("L.M.X. P.A.1. – 1992") (Hunt Affidavit, ¶¶ 14-25.)

However, there is absolutely no indication in the Executed Slips, express or otherwise, that the parties selected London as the seat of arbitration with English law governing the disputes pursuant to any of the arbitration clauses relied on by Mr. Hunt. (*See* Hunt Affidavit, ¶¶ 41 and 45; Supplemental Beacham Affidavit, ¶¶ 4, 5-9, 11, 13-14 and 16 and Tunstall Affidavit, ¶ 18.) To the contrary, the Executed Slips' references to "service of suit clauses" and "arbitration clauses" unequivocally, unambiguously and undeniably establish that the parties intended that Sphere Drake would be subject to U.S. jurisdiction and, consequently arbitration in the United States if invoked by John Hancock. (Supplemental Beacham Affidavit, ¶¶ 10, 12, 15 and 17 and Tunstall Affidavit, ¶ 17.)    Indeed, the Treaty Wordings illustrate consistency with the Executed Slip references to "service of suit clauses" and "arbitration clauses." (*See* Petitioners' Ex. 1(c) Art. 12 and 26; Ex. 2(c) Art. 12 and 26; Ex. 3(c) Art. 11 and 25; Ex. 4(c) Art. 11 and 25; Ex. 5(c) Art. 11 and 25; Ex. 6(c) Art. XV and XIV; and Ex. 8 Art. XVIII and XIX.)

Finally, Mr. Hunt's seemingly careless misinterpretation of statements made in the Beacham Affidavit does not create a material factual dispute. For example, Mr. Hunt challenges Mr. Beacham's purported suggestion that the "service of suit clause" overrides the "arbitration clause." (*See* Hunt Affidavit, ¶ 38.) The Beacham Affidavit does not state that. Rather, it clearly states that the references to the "arbitration clause" and "service of suit clause" are read together

15

and compel a London reinsurer, if requested by a U.S. cedent, to submit to the jurisdiction of the Courts of the United States and to arbitrate such disputes in the United States. (*See* Supplemental Beacham Affidavit, ¶ 17; Beacham Affidavit, ¶ 22.)

Mr. Hunt also claims that Mr. Beacham is wrong in stating that a London insurance market underwriter in 1997 and 1998 would have understood that each of the varying references to a "service of suit clause" in the Executed Slips unambiguously meant that the London reinsurer was relinquishing the right to have a dispute resolved by a court outside of the United States. However, his reasoning is that in 1997 and 1998 a London insurance market underwriter would have understood the service of suit clauses "to mean that the reinsured could apply to a U.S. court to enforce an arbitration award (*See* Hunt Affidavit, ¶ 43.) A "service of suit clause" equally allows a reinsured to apply to a U.S. Court to compel arbitration which Mr. Hunt does not deny anywhere in his affidavit. (*See* Supplemental Beacham Affidavit, ¶ 18.)

Finally, Mr. Hunt assumes, without support, a clearly improper understanding of the "transfer" language in the "service of suit clause" set forth in the Lloyd's policy wording book and detailed in Section F below (*See* Hunt Affidavit, ¶ 47; Supplemental Beacham Affidavit, ¶ 19.)

Mr. Hunt's faulty reasoning and bald assertions do not credibly or materially challenge the Beacham Affidavit. As Sphere Drake has established no material disputed fact, there is no justification for "discovery" as obliquely requested by Sphere Drake. There is absolutely nothing to discover. Given the indisputable consequences of the Executed Slip references to "service of suit clauses" and the "arbitration clauses" in conjunction with a Section 4 Petition, John Hancock's Motion for Summary Judgment and Petition to Compel are ripe for the court's ruling as a matter of law.

### F.   Contrary To The Hunt Affidavit, United States Courts Cannot "Transfer" Cases To Foreign Courts.

Sphere Drake has adamantly denied the relevance and materiality of the "service of suit clauses" in the Executed Slips until it filed its recent opposition papers.   Wishing to take advantage of the "transfer" language in the standard Lloyd' policy wording service of suit clause, Sphere Drake now claims that it is seeking to "transfer" this case abroad. [8]  (*See* Sphere Drake's Opposition at pp. 3, and 10–11; Hunt Affidavit, ¶¶ 46 and 47.)   Apart from Mr. Hunt's unsupported assumption in this regard, Sphere Drake cannot cite any statute or case allowing a U.S. court to "transfer" a case abroad.  In fact, case law and statutory grounds for transferring cases establish that the "transfer" language in the service of suit clause protecting Underwriters' rights to seek a transfer of a case to another court grants only the right to transfer a case from one competent United States Court to another competent United States Court.

In fact, before the "transfer" language on which Sphere Drake relies was added to the standard service of suit clause, some courts determined that an insurer waived its right to challenge venue, by any means, when it agreed to submit to jurisdiction pursuant to such a clause. *See, e.g., Consolidated Sun Ray, Inc. v. Steel Ins. Co.*, 190 F. Supp 171, 174 (E.D. Penn. 1961). *See also International Ins. Co. v. McDermott, Inc.*, 956 F.2d 93, 95-96 (5th Cir. 1992) (recognizing

---

[8]   The relevant language relied on by Sphere Drake from the Service of Suit Clause is as follows:

> …Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any **Court of competent jurisdiction in the United States**, to remove an action to a United States District Court, or to seek a **transfer of a case to another Court** as permitted by the laws of the United States or of any State in the United States.

(Hunt Affidavit, ¶¶ 46 and 47; John Hancock's Fact Statement, ¶ 36; Beacham Affidavit, ¶ 18) (emphasis added.)

Of particular note is that a plain and consistent reading of the reference to "Court" as capitalized throughout this clause refers to a court of competent jurisdiction in the United States, not a foreign court.

that a service of suit clause is a forum selection clause); *Logan v. Associated Internat'l Ins. Co.*, 131 F. Supp. 2d 986, 988 (N.D. Ill. 2001) (same). Other courts routinely determined that an insurer's assent to a service of suit clause was at least a relinquishment of its right to seek removal of an action from a state court to a federal court. *See, e.g., Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1216-18 (3rd Cir.), *cert. denied*, 502 U.S. 908 (1991) (recognizing that, by consenting to submit to any court of competent jurisdiction at the request of the cedent, the reinsurer "agreed to go to, *and stay in*, the forum chosen by" the cedent); *City of Rose v. Nutmeg Ins. Co.*, 931 F.2d 13, 15 (5th Cir. 1991) (finding that by virtue of the "service of suit" endorsement in the insurance policy, the insurer "has forgone its right to remove the action, " from the insured's chosen forum); *Archdiocese of Milwaukee v. Underwriters at Lloyd's, London*, 955 F. Supp. 1066, 1069 (E.D. Wis. 1997) (court remanded insurance coverage dispute to state court based on its determination that the "service of suit" clause in the insurance policy prevented the insurer from removing the case to federal court); *Travelers Ins. Co. v. Keeling*, 1993 U.S. Dist LEXIS 491, *9 (S.D.N.Y. 1993)[9] (recognizing that "many courts" have held that a "service of suit clause" in a reinsurance contract waives the reinsurer's privilege of removal, and finding no reason to depart from that rule); *Capital Bank & Trust Co. v. Associated Internat'l Ins. Co.*, 576 F. Supp. 1522, 1524-25 (M.D. La. 1984) (holding that,"[b]y agreeing to 'submit' to a state forum, the defendant insurer waives the right to defend in federal court.")

The "transfer" language in a service of suit clause specifying that there was no waiver of rights to seek removal of an action to a United States District Court, or to seek a transfer of a case to another United States Court, was obviously in reaction to the decisions that so broadly had construed the waiver manifested by the former standard language. *See, e.g., Nutmeg*, 931 F.2d at 15 ("if [the insurer] had wished to preserve the right to remove any action filed against it in state

---

[9] This unpublished case was produced to the court as Petitioner's Exhibit 49.

court, it could easily have said so in the [contract].")

Indeed, a United States District Court has no authority to "transfer" a case to a foreign court as Mr. Hunt and Sphere Drake suggest. *See e.g.,* 28 U.S.C. §§1404, 1406 and 1631 (statutory grounds for transfer of case from one United States Federal Court to another United States Federal Court.) Sphere Drake has not requested that the court transfer this matter, but instead, has requested that the court dismiss or stay this action. A dismissal or stay is not a "transfer" because under either action, the case is not being sent from one court or judge to another. A dismissal is a "[t]ermination of an action or cause without further hearing." Black's Law Dictionary 482 (7th ed. 1999). A stay is "[t]he postponement or halting of a proceeding, judgment, or the like." Black's Law Dictionary 1424 (7th ed. 1999).[10]

Sphere Drake's assertion that the "transfer" language in the Lloyd's standard policy wording service of suit clause permits the court to stay or dismiss this action is clearly manipulative. Sphere Drake's only recourse to John Hancock's filing of its Section 4 Petition within this court's jurisdiction is limited to seeking a transfer of the Petition to another United States District Court. Short of that, Sphere Drake remains a captive respondent to John Hancock's Section 4 Petition.

---

[10] The *Brooke Group* and *Whirlpool Corp.* cases do not support Sphere Drake's position as neither case involves a transfer of the case to a foreign court, but rather a dismissal of the cases. *See Brooke Group Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530 (N.Y. 1996)(court dismissed civil action); *Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 278 Ill.App.3d 175 (Ill. App. Ct. 1996)(defendants requested the court dismiss action in Illinois in favor of an action in Michigan).

### III.   CONCLUSION

For the foregoing reasons, as well as those set forth in its prior submissions, John Hancock respectfully requests that the court grant John Hancock's Motion For Summary Judgment, allow its Section 4 Petition and deny Sphere Drake's Motion to Stay or Dismiss.

        Respectfully submitted,

        JOHN HANCOCK
        LIFE INSURANCE COMPANY
        By its attorneys,


        _/s/Rhonda L. Rittenberg_____
        Mitchell S. King, Esq. BBO#272810
        Rhonda L. Rittenberg, Esq. BBO# 550498
        Michael A. Calawa, Esq. BBO# 643517
        Prince, Lobel, Glovsky & Tye LLP
        585 Commercial Street
        Boston, MA 02109
        (617) 456-8000

        Of Counsel
        David A. Silva, Esq.
        Mound, Cotton, Wollan & Greengrass
        One Battery Park Plaza
        New York, New York 10004
        (212) 804-4200

        Attorneys for
        John Hancock Life Insurance Company

Dated: June 4, 2004