UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------------

In the Matter of the Arbitration Proceedings Between

JOHN HANCOCK LIFE INSURANCE COMPANY,                Civil Action No.
     Petitioner,                                        04 10181 MLW

and

SPHERE DRAKE INSURANCE LIMITED,
     Respondent.

-----------------------------------------------------------------

### JOHN HANCOCK'S OPPOSITION TO SPHERE DRAKE'S
### MOTION TO STRIKE AFFIDAVIT OF MALCOLM J. BEACHAM

John Hancock Life Insurance Company ("John Hancock") hereby opposes the motion of

Sphere Drake Insurance Limited ("Sphere Drake") to strike the Affidavit of Malcolm J. Beacham in

Support of John Hancock's Motion for Summary Judgment (the "Beacham Affidavit") and portions

of John Hancock's Rule 56.1 Statement of Material Facts and Memorandum in Support of its

Motion for Summary Judgment that rely on the Beacham Affidavit ("Motion to Strike Beacham

Affidavit.")

## I.     INTRODUCTION

In its Motion for Summary Judgment, John Hancock submits that the Executed Slips for the

Seven Agreements at issue contain unambiguous references to both "arbitration clauses" and

"service of suit clauses." Pursuant to the referenced clauses, Sphere Drake contractually

relinquished all rights to have disputes under the Seven Agreements resolved in arbitrations

anywhere other than the United States, once John Hancock invoked jurisdiction over Sphere Drake

by filing its Petition to Compel Arbitration. In support of its Motion, John Hancock relies on, *inter*

*alia*, the Beacham Affidavit, which Sphere Drake asserts should be stricken because it purportedly

constitutes inadmissible extrinsic evidence concerning unambiguous contract language. While the references to "arbitration clauses" and "service of suit clauses" in the Executed Slips are unambiguous and, thus, amenable to interpretation as a matter of law, they are shorthand industry references with particular meanings in the insurance and reinsurance industry. Consequently, the Beacham Affidavit and similar evidence regarding the contract terms are a necessary tool to aid the court in its interpretation of these slip references.[1] As set forth below, these circumstances warrant a departure from the "plain meaning" rule precluding the admissibility of extrinsic evidence in the interpretation of unambiguous contract language.

## II.    ARGUMENT

### A.    Extrinsic Evidence is Appropriate to Assist the Court in Interpreting the Special Meaning of the Unambiguous Shorthand Terms as They Are Used in the Reinsurance Industry.

The interpretation of unambiguous contract language presents a question of law for the court to determine. *See Crowe v. Bolduc*, 365 F.3d 86, 2004 U.S. App. LEXIS 7986, * 22 (1st Cir. 2004). As a general principle, a court will not consider extrinsic evidence to discern the meaning of a contract term, unless the term is ambiguous, and instead will rely on the ordinary and usual meaning of the term. *See Donoghue v. IBC USA (Publications), Inc.*, 70 F.3d 206, 214 (1st Cir 1995); *Davis v. Dawson*, 15 F. Supp. 2d 64, 109 (D. Mass. 1998). The general rule eschewing the admission of extrinsic evidence, however, has no application where the parties' intent cannot be manifested solely by reference to the ordinary and usual meaning of the terms because, for example, the parties are sophisticated members of a specialized industry and have employed special industry terms in their contract. *See, e.g., Davis*, 15 F. Supp. 2d at 109 ("[w]ords within an agreement are construed in

---

[1] John Hancock, in support of its Reply to Sphere Drake's Opposition to Summary Judgment, has submitted, *inter alia*, the Supplemental Affidavit of Malcom J. Beacham ("Supplemental Beacham Affidavit") and the Affidavit of Keith Tunstall ("Tunstall Affidavit"). The arguments in this Opposition with regard to the Beacham Affidavit apply with equal force to the Supplemental Beacham Affidavit (together, the "Beacham Affidavits") and the Tunstall Affidavit. Accordingly, the Court should exercise its discretion to consider all three affidavits as extrinsic evidence of the special meaning of the unambiguous slip references in the London insurance market.

their ordinary and usual sense, unless it appears that the words are to be given a peculiar or technical meaning"); RESTATEMENT (SECOND) OF CONTRACTS § 202(3)(b) ("[u]nless a different intention is manifested, . . . technical terms and words of art are given their technical meaning when used in a transaction in their technical field.")

The First Circuit has recognized a "modern approach" to contract interpretation which allows the introduction of extrinsic evidence to aid in the court's interpretation of an unambiguous contract. *See, e.g., Fleet Nat'l Bank v. H&D Entertainment, Inc.*, 96 F.3d 532, 539 (1st Cir. 1996) (recognizing that "solid extrinsic proof" may warrant resort to the modern approach). *See also* 5-24 CORBIN ON CONTRACTS § 24.7 (there is a trend toward abolishing the "plain meaning" rule based on the recognition that "it is impossible to ascertain the intended meaning of contract terms without reference to evidence of surrounding circumstances.") In this regard, the Restatement of Contracts advises that "meaning can almost never be plain except in a context." RESTATEMENT (SECOND) OF CONTRACTS § 212. In *Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 682 F.2d 12, 18 (1st Cir. 1982), the court acknowledged that authority exists for the proposition that, even where the contract language is unambiguous, "evidence of such surrounding circumstances [as the customary usage of persons in the same commercial setting,] should generally be admitted to enable the court to determine what the 'plain and clear' meaning of the contract is." *See also* 5-24 CORBIN ON CONTRACTS § 24.7 ("[w]hen a judge refuses to consider relevant extrinsic evidence on the ground that the meaning of stated words is plain and clear, that decision is formed by and wholly based upon the completely extrinsic evidence of the judge's own personal education and experience[, which] may not be the best evidence.")

The decision whether to admit extrinsic evidence to aid in the court's interpretation of special terms in a contract is ultimately within the court's discretion. *See Eagle-Picher*, 682 F.2d at

18.  In exercising that discretion, the First Circuit has advised that, "[g]iven that the primary goal of contract interpretation is to ascertain the intentions of the parties, . . . a district judge, sitting without a jury, might be well advised to admit provisionally all extrinsic evidence of the parties' intent, unless it is clearly inadmissible, privileged, or too time consuming[.]" *Id.*  A court's exercise of its discretion to admit and consider extrinsic evidence is especially appropriate where the court is required to interpret the meaning of references in reinsurance slips.  *See, e.g., North Carolina League of Municipalities v. Clarendon Nat'l Ins. Co.*, 733 F. Supp 1009, 1010 n.2 (E.D.N.C. 1990) (recognizing that where a slip only contained the words "arbitration clause," rather than the actual clause itself, the court could look to unexecuted treaty wording as a tool for obtaining the parties' intent.)

> **B.**    **This Court Should Exercise Its Discretion and Consider the Beacham Affidavits and Tunstall Affidavit to Aid in Its Interpretation of the Shorthand References in the Executed Slips to "Arbitration Clauses" and "Service of Suit Clauses."**

References to a "service of suit clause" in conjunction with an "arbitration clause" within a reinsurance slip involving a U.S. cedent have a special meaning in the London insurance market, which may not be understood by reading the references in isolation.  The Beacham Affidavits and the Tunstall Affidavit are invaluable tools to the court in understanding the unambiguous meanings of the referenced clauses because the affidavits place the slip references in the context of how Sphere Drake would have understood them when they were executed in 1997 and 1998.

Mr. Beacham has spent close to three decades working as an underwriter in the London insurance market.  (*See* Beacham Affidavit ("Beacham Aff."), ¶ 1.)  Mr. Tunstall has worked in the London insurance market nearly as long and, between 1994 and 1998, was employed as a Sphere Drake Senior Deputy Underwriter.  (*See* Tunstall Affidavit ("Tunstall Aff."), ¶ 1.)  Their affidavits neither contradict nor seek to modify unambiguous language, but rather, explain the London

insurance market's use of the references and define the consequences to Sphere Drake of having such references appear together in the Executed Slips. They provide the necessary information to give substance to the slip references.

It is, for example, important for the court interpreting the references to understand that "service of suit clauses," such as those in the Executed Slips have been incorporated in reinsurance contracts by U.S. cedents and their foreign reinsurers for a specific purpose – namely, to allow the cedent to obtain domestic jurisdiction over foreign reinsurers in the event of a dispute, rather than having to pursue litigation in a foreign jurisdiction. (*See* Beacham Aff., ¶ 13.) At the time the Executed Slips were entered into, these clauses were standard provisions between U.S. cedents and their foreign reinsurers. (*See* Beacham Aff., ¶ 14; Tunstall Aff., ¶ 11.)

The Beacham and Tunstall Affidavits conclusively establish that a reasonable London insurance market underwriter at that time, including Sphere Drake, would have understood that the reference in each of the Executed Slips to a "service of suit clause," was a shorthand reference to a particular standard provision. (*See* Beacham Aff., ¶ 16; Tunstall Aff., ¶ 13.) A reasonable London insurance market underwriter at that time, including Sphere Drake, also would have understood that, within the industry, the clause was consistently used to require, *inter alia*, that the participating London reinsurer, in this case, Sphere Drake, relinquished the right to have a dispute resolved by any court outside the United States. (*See* Beacham Aff., ¶ 20; Supplemental Beacham Affidavit ("Supp. Beacham Aff."), ¶ 18; Tunstall Aff., ¶ 15.) Moreover, a reasonable London insurance market underwriter, including Sphere Drake, would have understood that each of the Executed Slips' references to *both* an "arbitration clause" and a "service of suit clause" compelled Sphere Drake, if requested by John Hancock, to submit to the jurisdiction of the courts of the United States and arbitrate such disputes subject to the law and jurisdiction of the courts of the United States. (*See*

5

Beacham Aff., ¶ 22; Supp. Beacham Aff., ¶ 17; Tunstall Aff., ¶ 17.)  Indeed, the Tunstall Affidavit conclusively establishes that, as a Sphere Drake Senior Deputy Underwriter in 1997 and 1998, he would not have considered under any circumstances that the references to the "service of suit clauses" in the Executed Slips could be viewed to mean either that London was to be the seat of arbitration or that English law would govern the arbitration proceeding.  (*See* Tunstall Aff., ¶ 18.)

The references in the Executed Slips are unambiguous, but have special meanings that may not be readily perceived unless the references are read together and in the context of what a reasonable underwriter in the London insurance market, including Sphere Drake, would have understood and intended.  For this reason, the court should admit the Beacham Affidavits and the Tunstall Affidavits to aid in the interpretation of the Executed Slips.

### III.    CONCLUSION

For the foregoing reasons, John Hancock respectfully requests that the court deny Sphere Drake's Motion to Strike the Beacham Affidavit and consider both the Beacham Affidavits, as well as the Tunstall Affidavit.

Respectfully submitted,

JOHN HANCOCK
LIFE INSURANCE COMPANY
By its attorneys,


  /s/Rhonda L. Rittenberg_____
Mitchell S. King, Esq. BBO#272810
Rhonda L. Rittenberg, Esq. BBO# 550498
Michael A. Calawa, Esq. BBO# 643517
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Of Counsel
David A. Silva, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Attorneys for
John Hancock Life Insurance Company

Dated: June 4, 2004