UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE
INSURANCE COMPANY,
    Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

Civil Action No.
04-10181MLW

---

### AFFIDAVIT OF KEITH TUNSTALL IN SUPPORT OF JOHN HANCOCK'S MOTION FOR SUMMARY JUDGMENT

I, Keith Tunstall, being duly sworn, depose and state the following:

1. I have been employed in the London market insurance industry for over 28 years. For my entire professional career to the present, I have served as either a Lloyd's or London market company underwriter in various underwriting capacities. For purposes of this matter, it is relevant to note that between 1994 and 1998, I was employed as a Senior Deputy Underwriter for Sphere Drake Insurance Limited (hereinafter "Sphere Drake.")

2. From 1976 to 1982, I served as Assistant Underwriter with the International Property Department of Andrew Drysdale Limited Agency, a London market insurance underwriting agency that had a binding authority on behalf of Terra Nova Insurance Company.

3. From 1982 to 1993, I served as Deputy Underwriter at a Lloyd's syndicate known as V.W.Broad Syndicate. In my position as Deputy Underwriter, I was

1

responsible for underwriting the International Property account and the Contingency account. The Contingency business I underwrote was a casualty book of business which included North American risks.

4. During my tenure as Senior Deputy Underwriter for Sphere Drake in its Property Department from 1994 to 1998, I was responsible for overseeing the underwriting of, as well as actively underwriting, the company's International Property account and the Contingency account, which included North American risks.

5. In 1998, I left Sphere Drake to establish the Lloyds' consortium, Holt UK Ltd., a consortium of Lloyd's syndicates. I served as a Deputy Underwriter until 2003, and was responsible for underwriting the same type of accounts I underwrote at Sphere Drake.

6. In 2003, I left Holt UK to become, and continue to serve as, a Joint Managing Director and Underwriter of Contessa Ltd., a London market insurance underwriting agency that has binding authority on behalf of G.E. Frankona and Munich Re and writes a UK Property account.

7. Throughout my underwriting career in the London insurance market, I have underwritten thousands of insurance contracts covering various sectors of London insurance market business.

8. The statements made in this affidavit are based on my personal knowledge, experience and training with respect to underwriting London insurance market business, as well as my review of the seven executed "slips" in this matter which I understand have been designated as Petitioner's Exhibits 1(a)-7(a) and referred to as the five "Realm Specific Agreements," the "Quota Share Agreement," and the "Facility

Quota Share Agreement" (hereinafter referred to as the "Executed Slips"), a review of the Affidavit of James H. Hunt ("Hunt Affidavit") submitted on behalf of Sphere Drake and a review of the original and Supplemental Affidavit of Malcolm J. Beacham ("Beacham Affidavits") submitted on behalf of John Hancock Life Insurance Company (hereinafter "John Hancock.")

9. The opinions and statements made in the Beacham Affidavits are entirely consistent with my understanding of the points addressed therein.

10. While I did not personally review the Executed Slips at the time they were executed in 1997 and 1998 by Euro International Underwriting Limited ("EIU") on behalf of Sphere Drake, had I reviewed them at that time, I would have understood that they unconditionally bound Sphere Drake to the terms and conditions set forth therein, including the "arbitration clause" and the "service of suit clauses."

11. As a Sphere Drake Senior Deputy Underwriter, I would have expected in 1997 and 1998 that reinsurance slips, such as the Executed Slips, would include references to an "arbitration clause" and a "service of suit clause" because those clauses were standard reinsurance clauses with U.S. cedents such as John Hancock.

12. In 1997 and 1998, as a Senior Deputy Underwriter at Sphere Drake, I would not have considered and currently do not consider there to be any material difference between the references in the Executed Slips to "Service of Suit Clause U.S.A," "Service of Suit Clause - USA," or "Service of Suit Clause."

13. In 1997 and 1998, as a Sphere Drake Senior Deputy Underwriter, I would have understood and continue to understand the references in the Executed Slips to "Service of Suit Clause U.S.A," "Service of Suit Clause - USA," or "Service of Suit

Clause," to refer to the standard U.S. "service of suit clause" wording in the Lloyd's policy wording book which is referenced in paragraph 18 of the original Beacham Affidavit.

14. In 1997 and 1998, as a Sphere Drake Senior Deputy Underwriter, I would have understood and continue to understand that the "service of suit clause" referenced in each of the Executed Slips could be employed by John Hancock, not only to enforce the payment of an arbitration award against Sphere Drake in the United States as suggested in paragraphs 28, 30, 40 and 43 of the Hunt Affidavit, but also, to compel Sphere Drake to arbitrate in the United States or challenge an arbitration award with Sphere Drake in the United States as stated in the Beacham Affidavits.

15. In 1997 and 1998, as a Sphere Drake Senior Deputy Underwriter, I would have understood and continue to understand that by virtue of the varying references to a "service of suit clause" in the Executed Slips, Sphere Drake undeniably relinquished any right to have a dispute resolved by any court outside of the United States if John Hancock invoked jurisdiction against Sphere Drake in the United States.

16. In 1997 and 1998, as a Sphere Drake Senior Deputy Underwriter, I would have understood and continue to understand that the reference to an "arbitration clause" in the Executed Slips undeniably binds Sphere Drake to submit disputes to arbitration.

17. In 1997 and 1998, as a Sphere Drake Senior Deputy Underwriter, I would have understood and continue to understand that EIU's acceptance of each of the Executed Slips referencing both an "arbitration clause" and some variation of the "service of suit clause" undeniably bound Sphere Drake, at the election of John Hancock, to

submit to the jurisdiction of the Courts of the United States and arbitrate such disputes in the United States as ordered by the United States Court.

18. In 1997 and 1998, as a Sphere Drake Senior Deputy Underwriter, I would not have considered under any circumstances that the references in the "service of suit clauses" in the Executed Slips could be viewed to mean either that London was to be the seat of arbitration or that English law would govern the arbitration proceeding.

19. The contents of this Affidavit are true to the best of my knowledge and belief.

I make this affidavit on 3 June 2004.

_____ (Keith Tunstall)

SWORN before me, Darren Olivier Thompson of Clausen Miller LLP
148 Leadenhall St., London EC3V 4QT

A Solicitor empowered to administer oaths