UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE
INSURANCE COMPANY,
    Petitioner,

and

SPHERE DRAKE INSURANCE LIMITED,
    Respondent.

Civil Action No.
04-10181MLW

---

**SUPPLEMENTAL AFFIDAVIT OF MALCOLM J. BEACHAM IN SUPPORT OF JOHN HANCOCK'S MOTION FOR SUMMARY JUDGMENT**

I, Malcolm J. Beacham, being duly sworn, depose and state the following:

1. I have reviewed and considered the Affidavit of James H. Hunt with exhibits (hereinafter referred to as the "Hunt Affidavit") submitted by Sphere Drake in this matter.

2. I believe that certain of the statements made in the Hunt Affidavit require a response by me so as to avoid any misunderstanding of the statements I made in my original affidavit (hereinafter referred to as the "Beacham Affidavit") submitted by John Hancock in this matter.

3. As with the Beacham Affidavit, the opinions and statements made in this supplemental affidavit are based on my personal knowledge, experience and training with respect to underwriting London insurance market direct and reinsurance business, as well as my review of the seven executed "slips" in this matter which I understand have been designated as Petitioner's Exhibits 1(a)-7(a)(hereinafter referred to as the "Executed Slips.")

1

4. With respect to Paragraph 11 of the Hunt Affidavit, he states that *'the London market is perceived as being ... the international centre of arbitration for the resolution of disputes throughout the world. London is often the chosen forum for reinsurance disputes and English law the chosen law for reinsurance contracts involving parties domiciled in different countries.'* While this is undoubtedly true, it must be seen in the context of London being a highly regarded and well established reinsurance market with there being many cedents who wish to take advantage of the London reinsurance market from countries that have no established arbitration procedures that would be acceptable to a London reinsurer. Therefore, London would be the natural place to choose as the seat of arbitration with English law as governing under those circumstances. Critically however, it would be necessary for the parties to expressly provide for London as their choice for the seat of arbitration with English law governing on the pertinent slip.

5. There is absolutely no indication in the Executed Slips, express or otherwise, that Sphere Drake and John Hancock selected London as the seat of arbitration or English law as the choice of law. To the contrary, by virtue of the referenced "service of suit clauses," the parties unequivocally and unambiguously expressed their intention of relying upon U.S. jurisdiction and, therefore, US arbitration in the event that John Hancock elected to invoke such jurisdiction over Sphere Drake.

6. In Paragraphs 14-17 of the Hunt Affidavit, Mr. Hunt discusses the "ARIAS Arbitration Clause" and explains that under this clause if the parties fail to express a choice for the seat of arbitration, the default forum will be London. He seems

to suggest, although he does not expressly state, that the ARIAS Arbitration Clause should be deemed applicable to the Executed Slips.

7. Attached as part of Exhibit 2 to the Hunt Affidavit is the recommended slip reference for the ARIAS Arbitration Clause which provides, in part, as follows:

> The ARIAS Arbitration Clause may be incorporated into a reinsurance contract by adding the following three words to any placement slip or slip contract:
>
> **"ARIAS Arbitration Clause"**

(emphasis in original.)

8. In my experience, when parties to a reinsurance contract want to have the ARIAS (UK) Arbitration Rules govern their disputes, they incorporate the reference to "ARIAS Arbitration Clause" in the pertinent slip in accordance with the above recommendation.

9. From my review of the Executed Slips there is no reference to an "ARIAS Arbitration Clause" in any of these slips, and there is nothing to suggest, expressly or otherwise, that Sphere Drake and John Hancock intended to have the ARIAS (UK) Arbitration Rules govern their disputes  The fact that they chose not to incorporate this clause indicates that the parties were not looking to arbitrate in London.

10. Given the foregoing, it would not be reasonable to suggest or rational to conclude that London is the default seat of arbitration with English law governing. Rather, by virtue of the referenced "service of suit clauses," the Executed Slips conclusively establish that if jurisdiction over Sphere Drake is invoked by John Hancock in the United States, the seat of arbitration will be in the United States.

11. In Paragraphs 18-20 of the Hunt Affidavit, Mr. Hunt discusses the JELC Arbitration Clause 15 (hereinafter referred to as "Clause 15.") This arbitration clause is employed by the London Marine market in marine contracts and is not applicable to the instant matter which involves non-marine business. Indeed, the Executed Slips do not make any reference to or incorporate Clause 15, expressly or otherwise.

12. Given the foregoing, it would not be reasonable to suggest or rational to conclude that London is the seat of arbitration with English law governing. Rather, by virtue of the referenced "service of suit clauses," the Executed Slips conclusively establish that if jurisdiction over Sphere Drake is invoked by John Hancock in the United States, the seat of arbitration will be in the United States.

13. In Paragraphs 21-25 of the Hunt Affidavit, Mr. Hunt discusses the LMX P.A.1.-1992 standard contract wording (hereinafter referred to as the "LMX Standard Wording"), used by the LMX PA market, including the Arbitration Clause which is set forth in Article 21 (hereinafter referred to as the "LMX Article 21.") The LMX Standard Wording is a reinsurance wording designed for outward reinsurance of London market cedents and, therefore, designates London, the cedent's domestic forum, as the seat of arbitration with English law governing. The Executed Slips are not outward reinsurance of a London market cedent, but rather, are inwards reinsurance of a U.S. cedent.

14. In my experience, when parties to a reinsurance contract want to use the LMX P.A. 1 Wording or have Article 21 thereof govern their disputes, they will expressly state this on the slip. The Executed Slips do not state or indicate any intention to incorporate the LMX P.A. 1 Wording or Article 21 thereof, expressly or otherwise.

4

15. Given the foregoing, it would not be reasonable to suggest or rational to conclude that because the Executed Slips do not expressly designate a particular seat of arbitration, London is the seat of arbitration with English law governing. Rather, by virtue of the referenced "service of suit clauses," the Executed Slips conclusively establish that if jurisdiction over Sphere Drake is invoked by John Hancock in the United States, the seat of arbitration will be in the United States.

16. Furthermore, Mr. Hunt's statements in Paragraphs 41 and 45 of the Hunt Affidavit that a United States Court cannot override London as the seat of arbitration or English law as the proper law governing the contracts is based on the faulty premise that the ARIAS Arbitration Clause, Clause 15 and/or the LMX Article 21 pertain to the Executed Slips and, therefore, London is the seat of arbitration by default. As noted above, these arbitration clauses have not been referenced, expressly or otherwise, in the Executed Slips. London, therefore, cannot reasonably be considered the seat of arbitration by default especially given the consequences of the "service of suit clauses" as I have previously explained.

17. In Paragraphs 38 of the Hunt Affidavit, Mr. Hunt appears to have misunderstood my point about the purpose of a "service of suit clause." I never stated or suggested that the "service of suit clause" in any way serves to override an "arbitration clause." To the contrary, a fair reading of the Beacham Affidavit establishes that references to both an "arbitration clause" and a "service of suit clause" are read together and unambiguously compel a London reinsurer, if requested by its U.S. cedent, to submit to the jurisdiction of the Courts of the United States and arbitrate such disputes subject to the law and jurisdiction of the Courts of the United States.

5

18.  In Paragraph 43 of the Hunt Affidavit, Mr. Hunt suggests that I am wrong to state that a London reinsurer agreeing to a "service of suit clause" with a U.S. cedent "was relinquishing the right to have a dispute resolved by any Court outside of the United States," but in the same breath agrees that the "service of suit clause" references in the Executed Slips mean that the reinsured could apply to a U.S. court to enforce an arbitration award. This appears to be inherently contradictory. My statement encapsulates the essential purpose of the clause. Moreover, I am in full agreement with Mr. Hunt's statement that the "service of suit clause" permits the reinsured to apply to a U.S. Court to enforce an arbitration award. It equally allows the same reinsured to apply to a U.S. Court to compel arbitration, which Mr. Hunt does not expressly deny anywhere in his affidavit. In fact, Mr. Hunt acknowledges this in Paragraph 41 of the Hunt Affidavit when he recognizes circumstances '... *where a US cedent has sought the intervention of a U.S. court in compelling a party to arbitration...*

19.  In Paragraph 47 of the Hunt Affidavit, Mr. Hunt assumes an understanding of the "transfer" language in the "service of suit clause" set forth in the Lloyd's policy wording book and claims that I am wrong in my statement that a "transfer" would be interpreted by a London market underwriter to mean only from one Court in the United States to another Court within the United States. Mr. Hunt's statements are misguided and not reasonably based as the essential purpose of the "service of suit clause" is to ensure that the U.S. cedent or policyholder is unequivocally protected by the U.S. Courts.

2004-6-2 Final Supp Beacham Aff.doc

20. The contents of this Affidavit are true to the best of my knowledge and belief.

I make this affidavit on 3 June 2004.

_____ (Malcolm J. Beacham)

SWORN before me, Darren Olivier Thompson of Clausen Miller LLP 148 Leadenhall Street, London EC3V 4QT

A Solicitor empowered to administer oaths