UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------------
In the Matter of the Arbitration Proceedings between

JOHN HANCOCK LIFE                                    Civil Action No.
INSURANCE COMPANY,                                   04-10181MLW
      Petitioner,

        and

SPHERE DRAKE INSURANCE LIMITED,
      Respondent.
-----------------------------------------------------------------

## JOHN HANCOCK'S RESPONSE TO
## SPHERE DRAKE'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS

John Hancock Life Insurance Company ("John Hancock") hereby submits its Response to Sphere Drake's Local Rule 56.1 Statement of Material Facts ("Response"). John Hancock has filed this Response and has also filed a Motion to Strike Sphere Drake's Local Rule 56.1 Statement of Material Facts in its entirety and a separate Motion To Strike Portions of Sphere Drake's Opposition to John Hancock's Motion For Summary Judgment and Sphere Drake's Rule 56.1 Statement and Accompanying Exhibits ("Motion to Strike"). This Response is submitted for the Court's consideration only in the event that the Court does not strike Sphere Drake's Local Rule 56.1 Statement of Material Facts in its entirety.

Sphere Drake's Local Rule 56.1 Statement of Material Facts is a perversion and abuse of Local Rule 56.1 under which Sphere Drake is to submit a "concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried." Local Rule of the United States District Court For the District of Massachusetts 56.1. Sphere Drake's 129 paragraphs of purported material facts are

1

anything but concise or material.  Sphere Drake fails to cite to 80 of the 129 paragraphs

in its Memorandum of Law in Opposition to John Hancock's Motion for Summary

Judgment.  By responding herein, John Hancock in no way admits the truth or validity of

any statements made by Sphere Drake and specifically reserves the right to further

challenge and/or to admit or deny such statements in response to an appropriate pleading.

## SPHERE DRAKE INTRODUCTORY PARAGRAPH:

Defendant Sphere Drake Insurance Limited ("Sphere Drake") submits the following as its
Statement of Material Facts Pursuant to Local Rule 56.1 ("Sphere Drake's Statement").
In Sphere Drake's Statement, Sphere Drake refers to putative reinsurance agreements
between John Hancock Life Insurance Company ("John Hancock") and Sphere Drake as
"contracts." In so doing, Sphere Drake does not agree that any of the twenty-nine
"contracts" between Sphere Drake and Hancock accepted by EIU under the Binding
Authority (referred to herein as the "John Hancock/Sphere Drake Ceded Contracts") is a
valid or enforceable contract. Moreover, by discussing the business John Hancock ceded
under certain of these contracts, Sphere Drake does not thereby agree that such cessions
were effective or appropriate under those purported contracts. As described in the
Affidavit of Raymond Gordon Bell ("Bell Aff."), Sphere Drake's position is that all
twenty-nine John Hancock/Sphere Drake Ceded Contracts, including the seven contracts
at issue before this Court (the "Seven Agreements") are void.

## RESPONSE TO SPHERE DRAKE INTRODUCTORY PARAGRAPH:

John Hancock objects to Sphere Drake's introductory paragraph because it is

immaterial and irrelevant to this action which is limited to the inquiry of whether under

the Seven Agreements[1] there is an agreement to arbitrate between the parties pursuant to

9 U.S.C. § 4 and because significant portions of the Affidavit of Raymond Gordon Bell

("Bell Affidavit") and references thereto, are the subject of subject of John Hancock's

various Motions to Strike.[2]  John Hancock also objects to Sphere Drake's assertions that

---

[1]  The Seven Agreements consist of and are also referred to by the parties as: the five "Specific Realm Agreements;" the "Quota Share Agreement;" and the "Facility Quota Share Agreement."

[2]  John Hancock has filed a February 11, 2004 Motion To Strike Portions of Sphere Drake's Supporting Memorandum and the Affidavit of Raymond Gordon Bell With Exhibits; a March 10, 2004 Motion to

any agreements between John Hancock and Sphere Drake are void as this is not a claim Sphere Drake is making before the Court in this action and John Hancock maintains that the twenty-nine reinsurance agreements ceded to Sphere Drake by John Hancock are valid and enforceable.

The following are the paragraphs of Sphere Drake's Local Rule 56.1 Statement of Material Fact followed by John Hancock's response to each paragraph:

1.    In January 1997, Sphere Drake granted a binding authority (i.e., an agency agreement) in respect of personal accident business and related classes (the "Binding Authority") to Horace Holman International Limited ("HHI"). (Binding Authority, Exhibit A to the Appendix of Exhibits to Sphere Drake's Local Rule 56.1 Statement of Material Facts ("App. Ex.") at 1; App. Ex. B, 1 Broad at ¶1; Bell Aff. ¶5)

**RESPONSE:**

John Hancock objects to ¶ 1 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 1 is subject to John Hancock's Motion to Strike filed herewith.

2.    Under the heading "Named Underwriters," the Binding Authority states "The persons authorised to accept and who are responsible for the operation of this Agreement are: J.H. Whitcombe, Esq." (App. Ex. A at 1.)

**RESPONSE:**

John Hancock objects to ¶ 2 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

---

Strike Portions of Sphere Drake's Memorandum in Support of its Motion to Dismiss John Hancock's Verified Amended Complaint and Exhibit 1 (Docket Entry No. 45); and has submitted herewith its Motion to Strike Sphere Drake's Local Rule 56.1 Statement of Material Facts and its Motion To Strike Portions of Sphere Drake's Opposition to John Hancock's Motion For Summary Judgment and Sphere Drake's Rule 56.1 Statement and Accompanying Exhibits.

3.    Euro International Underwriting Limited ("Euro") was established as an underwriting agency in about February 1997. (App. Ex. B, 1 Broad at ¶ 1.)

**RESPONSE:**

John Hancock objects to ¶ 3 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 3 is subject to John Hancock's Motion to Strike filed herewith.

4.    A February 4, 1997 endorsement to the Binding Authority states that "It is hereby noted and agreed that the attached stamp impression in conjunction with the confirmation note, also attached, are approved for the binding of business under Sphere Drake Contract number 50413 and Horace Holman Cover Note Number 17X1253 underwritten 100% by Sphere Drake Insurance plc UK per Sphere Drake Underwriting Management Ltd. Sphere Drake Insurance plc UK have approved John Whitcombe as underwriter for this Contract." (App. Ex. A, Binding Authority at 5.)

**RESPONSE:**

John Hancock objects to ¶ 4 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

5.    The first page attached to the February 4, 1997 endorsement is a form "Confirmation of Acceptance under Horace Holman Contract No. 50413 underwritten by Sphere Drake Insurance Plc per Sphere Drake Underwriting Management Ltd." (App. Ex. A, Binding Authority at 6.)

**RESPONSE:**

John Hancock objects to ¶ 5 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

6.    The second page attached to the February 4, 1997 endorsement is the "attached stamp impression" referred to in the endorsement. The stamp includes the legend "subject to written confirmation." (App. Ex. A, Binding Authority at 5, 7.)

**RESPONSE:**

John Hancock objects to ¶ 6 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

7.    An endorsement to the Binding Authority dated September 1, 1997 states "It is hereby noted and agreed that 'Named Underwriters' is amended to read: The company authorised to accept and who are responsible for the operation of this agreement is Euro International Underwriting Ltd. The named underwriter being J.H. Whitcombe Esq." (App. Ex. A, Binding Authority at 9.)

**RESPONSE:**

John Hancock objects to ¶ 7 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

8.    Another endorsement to the Binding Authority states that "Mr Chris Henton added to authorised persons to accept as Named Underwriter." This endorsement stated that it was "with effect from 1St January, 1998." (App. Ex. A, Binding Authority at 12.)

**RESPONSE:**

John Hancock objects to ¶ 8 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

9.    In order to bind business on Sphere Drake's behalf, Euro, Whitcombe and Henton (collectively "EIU") were required to confirm acceptance of such business in the form of the "confirmation note" attached to the February 4, 1997 endorsement to the Binding Authority. (App. Ex. C, 1 Henton at ¶¶ 48, 51, 54.)

**RESPONSE:**

John Hancock objects and moves to strike ¶ 9 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 9 is subject to John Hancock's Motion to Strike filed herewith.

10.    Over the course of eighteen months, EIU wrote 119 reinsurance contracts purportedly pursuant to the Binding Authority. (Bell Aff., ¶ 7.)

**RESPONSE:**

John Hancock objects to ¶ 10 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 10 is subject to John Hancock's Motion to Strike filed herewith.

11.    London brokers Stirling Cooke Brown Insurance Brokers Limited and Stirling Cooke Brown Reinsurance Brokers Limited (collectively "Stirling Cooke"), acting on behalf of various insurers including Hancock, placed 112 of these putative contracts with EIU. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 11 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 11 is subject to John Hancock's Motion to Strike filed herewith.

12.    Sphere Drake subsequently discovered that Stirling Cooke and EIU had colluded to defraud Sphere Drake, and filed a lawsuit in the Commercial Court in England against EIU, Stirling Cooke, and their principals (including Nick Brown and Jeff Butler, the directors of Stirling Cooke who placed the business at issue) (the "English Action"). (*Id.*, ¶¶ 6, 9.)

**RESPONSE:**

John Hancock objects to ¶ 12 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 12 is subject to John Hancock's Motion to Strike filed herewith.  In addition, John Hancock objects to ¶ 12 on the ground that it calls for a legal conclusion.

13.    The Seven Agreements are evidenced by slips executed by EIU purportedly on behalf of Sphere Drake. (Petitioners Exhibits in Support of John Hancock's Motion for Summary Judgment ("Petitioner's Exs.") 1(a), 2(a), 3(a), 4(a), 5(a), 6(a), 7(a).)

**RESPONSE:**

John Hancock objects Sphere Drake's use of the word "purportedly" in ¶ 13.  The Seven Agreements are evidenced by executed slips.  (*See* Joint Statement of Undisputed Facts filed with this Court on May 12, 2004 as Docket Entry No. 56 ("Joint Fact Statement"), ¶¶ 10, 16, and 24.)

14.    Each of the slips was broked to EIU in London by Stirling Cooke, English brokers. (Bell Aff., ¶ 64.)

**RESPONSE:**

John Hancock objects to ¶ 14 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 14 is subject to John Hancock's Motion to Strike filed herewith.

15.    Not one of the slips for the Seven Agreements contains a choice of law provision or a forum selection clause, or even mentions the state of Massachusetts. (Petitioner's Exs. 1(a), 2(a), 3(a), 4(a), 5(a), 6(a), 7(a).)

**RESPONSE:**

John Hancock objects to ¶ 15 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

16.    Each of the slips for the Seven Agreements includes the statement "Arbitration Clause" and either "Service of Suit Clause U.S.A." or simply "Service of Suit Clause." (*Id*.)

**RESPONSE:**

John Hancock objects to ¶ 16 as the Quota Share Agreement includes the statement "Service of Suit Clause-USA." John Hancock acknowledges that each of the slips for the Seven Agreements includes the statement "Arbitration Clause" and either "Service of Suit Clause U.S.A.," "Service of Suit Clause-USA," or "Service of Suit Clause." (Petitioner's Exs. 1(a), 2(a), 3(a), 4(a), 5(a), 6(a), 7(a).)

17.    The slips themselves, and in particular, the references to arbitration therein are the only possible documentary evidence of the purported contractual agreements between the parties. (Petitioner's Exs. 1(a), 2(a), 3(a), 4(a), 5(a), 6(a), 7(a); Bell Aff. ¶¶ 21-24, 28, 31, 55(1).)

**RESPONSE:**

John Hancock objects to ¶ 17 on the ground that it calls for a legal conclusion and is not a statement of fact and on the ground that ¶ 17 is subject to John Hancock's Motion to Strike filed herewith.

18.    On December 24, 1997, Henton of EIU met with Nicholas Brown of Stirling Cooke at Stirling Cooke's office in London. (App. Ex. C, 1 Henton at ¶ 261-65.)

**RESPONSE:**

John Hancock objects to ¶ 18 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 18 is subject to John Hancock's Motion to Strike filed herewith.

19.    During the course of the December 24, 1997 meeting, Brown of Stirling Cooke presented and Henton of EIU provisionally accepted a group of reinsurance contracts (the "Christmas Eve Contracts"), including the Specific Realm Contracts, by signing a "slip" for each of the contracts. (App. Ex. C, 1 Henton at ¶¶ 265, 276, 294-307.)

**RESPONSE:**

John Hancock objects to ¶ 19 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 19 is subject to John Hancock's Motion to Strike filed herewith.

20.    The Specific Realm Contracts are two excess of loss and three aggregate stop loss protections wherein Sphere Drake purportedly reinsured John Hancock with respect to John Hancock's reinsurance of Realm National Insurance Company. (Petitioner's Exhibits 1(a), 2(a), 3(a), 4(a), 5(a); Bell Aff. ¶19; App. Ex. D, Henton 4/25/02, pp. 66-67.)

**RESPONSE:**

John Hancock objects to ¶ 20 on the ground that it is subject to John Hancock's Motion to Strike filed herewith. Subject to the foregoing objection, John Hancock acknowledges that the Specific Realm Contracts are two excess of loss and three

aggregate stop loss protections relating to John Hancock's participation in a 75% quota share reinsurance of Realm National Insurance Company.  (Joint Fact Statement ¶ 9.)

21.    Following Henton's meeting with Brown on December 24, 1997, Henton returned to EIU's office in London and told Whitcombe (of EIU) about the placement of the Christmas Eve Contracts. (App. Ex. C, 1 Henton ¶¶ 265-66.)

**RESPONSE:**

John Hancock objects to ¶ 21 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 21 is subject to John Hancock's Motion to Strike filed herewith.

22.    EIU completed "Confirmation of Acceptance" forms for the Specific Realm Contracts on December 29, 1997. (Petitioner's Exhibits 1(a), 2(a), 3(a), 4(a), 5(a).)

**RESPONSE:**

John Hancock objects to ¶ 22 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

23.    There is no reference in the slips for the Specific Realm Contracts to choice of law or forum for the arbitration. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 23 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

24.    Neither EIU nor Sphere Drake ever received a draft full wording for the Specific Realm Contracts. (Bell Aff. ¶¶ 21-24, 55(1).)

**RESPONSE:**

John Hancock objects to ¶ 24 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 24 is subject to John Hancock's Motion to Strike filed herewith.

25.    Neither EIU nor Sphere Drake ever agreed a full wording for the Specific Realm Contracts. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 25 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 25 is subject to John Hancock's Motion to Strike filed herewith.

26.    Jeff Butler of Stirling Cooke offered EIU a participation on the 95% Facility Quota Share Agreement in Stirling Cooke's office in London on December 31, 1997. (App. Ex. C, 1 Henton ¶¶ 425-26, 476 (and heading thereto).)

**RESPONSE:**

John Hancock objects to ¶ 26 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 26 is subject to John Hancock's Motion to Strike filed herewith.

27.    Henton provisionally accepted the 95% Facility Quota Share Agreement on December 31, 1997. (App. Ex. C, 1 Henton ¶¶ 476 (and heading thereto).)

**RESPONSE:**

John Hancock objects to ¶ 27 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 27 is subject to John Hancock's Motion to Strike filed herewith.

28.    Whitcombe confirmed EIU's acceptance of the 95% Facility Quota Share Agreement on March 30, 1998. (App. Ex. C, 1 Henton ¶ 488; Petitioner's Exhibit 7(a).)

**RESPONSE:**

John Hancock objects to ¶ 28 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 28 is subject to John Hancock's Motion to Strike filed herewith.

29. The 95% Facility Quota Share Agreement covered business written by JEH Re Underwriting Management Bermuda Ltd ("JEH Re") for Hancock. (App. Ex. E, Whitcombe 3/26/02 at 85-86; App. Ex. F, 1 Brown ¶ 145.)

**RESPONSE:**

John Hancock objects to ¶ 29 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 29 is subject to John Hancock's Motion to Strike filed herewith.

30.    Prior to 1998, Stirling Cooke was not involved in the 95% Facility Quota Share Agreement. (App. Ex. F, 1 Brown ¶ 145; App. Ex. G, Butler 5/29/02 at 111-12.)

**RESPONSE:**

John Hancock objects to ¶ 30 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 30 is subject to John Hancock's Motion to Strike filed herewith.

31.    Hancock placed the prior years of the 95% Facility Quota Share and a portion of the 1998 Quota Share through a different broker, D.W. Van Dyke. (App. Ex. F, 1 Brown ¶ 145; App. Ex. G, Butler 5/29/02 at 111-12.)

**RESPONSE:**

John Hancock objects to ¶ 31 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 31 is subject to John Hancock's Motion to Strike filed herewith.

32.    There is no reference in the slip for the 95% Facility Quota Share Agreement to choice of law or forum for the arbitration. (Petitioner's Exhibit 7(a).)

**RESPONSE:**

John Hancock objects to ¶ 32 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

33. The slip for the 95% Facility Quota Share Agreement did not contain a provision for a full wording or that any such wording was to be agreed only by the Leading Underwriter. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 33 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

34.    Neither EIU nor Sphere Drake ever received a draft full wording for the 95% Facility Quota Share Agreement. (Bell Aff. ¶¶ 28, 55(1).)

**RESPONSE:**

John Hancock objects to ¶ 34 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 34 is subject to John Hancock's Motion to Strike filed herewith.

35.    Neither EIU nor Sphere Drake ever agreed a full wording for the 95% Facility Quota Share Agreement. (*Id*.)

**RESPONSE:**

John Hancock objects to ¶ 35 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 35 is subject to John Hancock's Motion to Strike filed herewith.

36.    London Market Excess of Loss ("LMX") business was specifically excluded from the 95% Facility Quota Share prior to 1998. (App. Ex. H, Butler 6/19/02 at 60-61.)

**RESPONSE:**

John Hancock objects to ¶ 36 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground

that ¶ 36 is subject to John Hancock's Motion to Strike filed herewith.

37.     Stirling Cooke removed the LMX exclusion from the 95% Facility Quota Share once Stirling Cooke became involved in this account. (*Id.*)

**<u>RESPONSE:</u>**

John Hancock objects to ¶ 37 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground

that ¶ 37 is subject to John Hancock's Motion to Strike filed herewith.

38.     The slip for the 95% Facility Quota Share does not contain terms barring LMX business from being ceded to the 95% Facility Quota Share. (*Id.*; Petitioner's Exhibit 7(a).)

**<u>RESPONSE:</u>**

John Hancock objects to ¶ 38 on the ground that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground

that ¶ 38 is subject to John Hancock's Motion to Strike filed herewith.

39.     Hancock has ceded LMX business to the 95% Facility Quota Share. (App. Ex. I, Ceded Results: Specific Retrocessionaire Summary Report; English Judgment Part II at ¶ 639(iii).)

**<u>RESPONSE:</u>**

John Hancock objects to ¶ 39 on the ground that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground

that ¶ 39 is subject to John Hancock's Motion to Strike filed herewith.

40.     Brown of Stirling Cooke initially presented the Quota Share Agreement to Henton at EIU's office in London on April 30, 1998. (App. Ex. C, 1 Henton ¶ 633; App. Ex. J, 4 Henton ¶ 10; App. Ex. K, Henton 4/15/02 at 115.)

**RESPONSE:**

John Hancock objects to ¶ 40 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 40 is subject to John Hancock's Motion to Strike filed herewith.

41.     EIU provisionally accepted the Quota Share Agreement on April 30, 1998. (App. Ex. C, 1 Henton ¶633 (and heading thereto).)

**RESPONSE:**

John Hancock objects to ¶ 41 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 41 is subject to John Hancock's Motion to Strike filed herewith.

42.     Whitcombe was present during the April 30, 1998 meeting between Brown and Henton at EIU's office in London. (App. Ex. L, Whitcombe 3/19/02 at 49-50; App. Ex. M, Whitcombe 3/27/02 at 11-12.)

**RESPONSE:**

John Hancock objects to ¶ 42 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 42 is subject to John Hancock's Motion to Strike filed herewith.

43.    On June 10, 1998, Brown returned to EIU's office in London and had further discussions with Henton regarding the Quota Share Agreement. (App. Ex. N, Henton 5/15/02 at 86-87; App. Ex. O, Brown 7/19/02 at 122-23.)

**RESPONSE:**

John Hancock objects to ¶ 43 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 43 is subject to John Hancock's Motion to Strike filed herewith.

44.    On June 19, 1998, Brown again returned to EIU's office in London, at which time further discussions regarding the Quota Share Agreement took place. (App. Ex. C, 1 Henton ¶ 640.)

**RESPONSE:**

John Hancock objects to ¶ 44 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 44 is subject to John Hancock's Motion to Strike filed herewith.

45.    On June 19, 1998, Whitcombe of EIU confirmed EIU's acceptance of the Quota Share Agreement. (Petitioner's Exhibit 6(a).)

**RESPONSE:**

John Hancock objects to ¶ 45 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

46.    There is no reference in the slip for the Quota Share Agreement to the choice of law or the forum for the arbitration. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 46 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

47.    Neither EIU nor Sphere Drake ever received a draft full wording of the Quota Share Agreement. (Bell Aff. ¶¶ 31, 55(1).)

**RESPONSE:**

John Hancock objects to ¶ 47 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 47 is subject to John Hancock's Motion to Strike filed herewith.

48.    Neither EIU nor Sphere Drake ever agreed a full wording of the Quota Share Agreement. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 48 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 48 is subject to John Hancock's Motion to Strike filed herewith.

49.    The Quota Share Agreement covered London and international business including LMX. (App. Ex. K, Henton 4/15/02 at 122; App. Ex. N, Henton 5/15/02 at 50; App. Ex. F, 1 Brown ¶ 153.)

**RESPONSE:**

John Hancock objects to ¶ 49 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 49 is subject to John Hancock's Motion to Strike filed herewith. Subject to the foregoing objections, John Hancock acknowledges that the Quota Share Agreement is a 66.6666% quota share relating to business written and allocated by John Hancock to its personal accident non-proportional account. (Joint Fact Statement, ¶ 15.)

50. Under "Class," the slip for the Quota Share Agreement provides as follows: "[a]ll business written by [the Reinsured] and allocated to their Personal Accident Non-Proportional Account, including London and International Non-Proportional business...." (Petitioner's Ex. 6(a).)

**RESPONSE:**

John Hancock objects to ¶ 50 on the ground that it is irrelevant/immaterial to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4. Subject to the foregoing objection, John Hancock acknowledges that the quoted language is contained in the slip for the Quota Share Agreement.

51. The slip for the Quota Share Agreement provides as follows: ". . . where the Reinsured has written a Personal Accident London Market Excess of Loss Reinsurance which is based on the Standard Wording LMX PA1 but which does not contain any of the following Standard exclusions.... Then Reinsurers hereon agree to indemnify the Reinsured in respect of losses arising from these normally excluded perils" (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 51 on the ground that it is irrelevant/immaterial to this action which is limited to the inquiry of whether under the Seven Agreements there is

an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  Subject to the

foregoing objection, John Hancock acknowledges that the slip for the Quota Share

Agreement states the following:  ". . . where the Reinsured has written a Personal

Accident London Market Excess of Loss Reinsurance which is based on the Standard

Wording LMX PA1. but which does not contain any of the following Standard

exclusions.... Then Reinsurers hereon agree to indemnify the Reinsured in respect of

losses arising from these normally excluded perils."


52.     The BE & JEH CORP LON Agreements are comprised of eight putative
excess of loss contracts that were effective as of January 1, 1997 and provided coverage for
$4,000,000 excess of $100,000. (Bell Aff. at ¶ 33.)

**RESPONSE:**

John Hancock objects to ¶ 52 on the ground it is subject to John Hancock's

Motion to Strike filed herewith.


53.     A true and accurate copy of a sample slip from the BE & JEH CORP LON
Agreements (the bottom layer) is attached to the Bell Affidavit at Exhibit B, tab 16. (Bell
Aff. ¶¶ 33-34; Bell Aff. Ex. B, tab 16.)

**RESPONSE:**

John Hancock objects to ¶ 53 on the ground that it is subject to John Hancock's

Motion to Strike filed herewith.


54.     The BE & JEH CORP LON Agreements are subject to arbitration in
England under English law. (Bell Aff. ¶ 34; Bell Aff. Ex. B tab 16.)

**RESPONSE:**

John Hancock objects to ¶ 54 on the ground that it is subject to John Hancock's

Motion to Strike filed herewith.  Subject to the foregoing objections, John Hancock

acknowledges that the executed slip policy for each of the BE & JEH CORP LON

Agreements provides that "[t]his contract of reinsurance shall be governed by and

construed in accordance with English law under the jurisdiction of the English courts.

The arbitration contract shall also be subject to English law and jurisdiction." (Joint Fact

Statement ¶ 47.)

        55.      The BE & JEH CORP LON Agreements cover the same class of business as
does the Quota Share Agreement. (Bell Aff. Ex. B tab 16; Petitioner's Exhibit 6(a).)

**RESPONSE:**

        John Hancock objects to ¶ 55 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that

¶ 55 is subject to John Hancock's Motion to Strike filed herewith.

        56.      Under "Class," the slip policies for the BE & JEH CORP LON Agreements
provide as follows: "[a]ll business written by the Reinsured and allocated to their Personal
Accident Non-Proportional Account (including London Market Excess of Loss. . . ." (Bell
Aff. Ex. B tab 16.)

**RESPONSE:**

        John Hancock objects to ¶ 56 on the ground that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that

¶ 56 is subject to John Hancock's Motion to Strike filed herewith.  Subject to the

foregoing objection, John Hancock acknowledges that the quoted language is contained in

the slip policies for the BE & JEH CORP LON Agreements.

57.     The Quota Share Agreement was effectively a renewal of the BE & JEH CORP LON Agreements. (App. Ex. G, Butler 5/29/02 at 123.)

**RESPONSE:**

John Hancock objects to ¶ 57 on the ground that Sphere Drake's use of the term "effectively" is ambiguous.  In addition, John Hancock objects to ¶ 57 on the  ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 57 is subject to John Hancock's Motion to Strike filed herewith.

58.     The slip for the BE & JEH CORP LON Agreements classify the business as "U.S. Reinsurance." (Bell Aff. ¶ 34; Bell Aff. Ex. B tab 16.)

**RESPONSE:**

John Hancock objects to ¶ 58 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 58 is subject to John Hancock's Motion to Strike filed herewith.  Subject to the foregoing objections, John Hancock acknowledges that the slips for the BE & JEH CORP LON Agreements under "US CLASSIFICATION" state as follows: "US Reinsurance Treaty."

59.     John Hancock and Sphere Drake are currently engaged in arbitration in England over their disputes concerning the BE & JEH CORP LON Agreements. (Bell Aff. ¶ 35.)

**RESPONSE:**

John Hancock objects to ¶ 59 on the ground that it is immaterial/irrelevant to

this action which is limited to the inquiry of whether under the Seven Agreements there

is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

60.    The Sun Life / American Phoenix Specific Agreement was a retrocession of
50% of Hancock's reinsurance of business accepted by John Cackett (through Centaur) for
Sun Life and Phoenix. (Bell Aff. ¶¶ 36-37.)

**RESPONSE:**

John Hancock objects to ¶ 60 on the ground that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that

¶ 60 is subject to John Hancock's Motion to Strike filed herewith.  Subject to the foregoing

objection, John Hancock acknowledges that the Sun Life / American Phoenix Specific

Agreement relates to John Hancock's participation on an Accident and Health Excess of

Loss Contract reinsuring Sun Life Assurance company of Canada and American Phoenix

Life and Reassurance Company (Connecticut) and/or Phoenix Home Life Mutual Insurance

Company (New York).  (Joint Fact Statement, ¶ 48.)

61.    The Sun Life / American Phoenix Specific Agreement reinsures United
States business. (App. Ex. P, Stirling Cooke Information Sheet.)

**RESPONSE:**

John Hancock objects to ¶ 61 on the ground that it is irrelevant/immaterial to

this action which is limited to the inquiry of whether under the Seven Agreements

there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

62.     The Sun Life / American Phoenix Specific Agreement is subject to arbitration in England under English law. (Bell Aff. ¶ 38; Bell Aff. Ex. B tab 13; Bell Aff. Ex. 18 at p. 59.)

**RESPONSE:**

John Hancock objects to ¶ 62 on the ground that it is subject to John Hancock's Motion to Strike filed herewith.  Subject to the forgoing objections, John Hancock acknowledges that the retrocessional portion of the slip policy for the Sun Life / American Phoenix Specific Agreement provides that "This contract of reinsurance shall be governed by and construed in accordance with English law under the jurisdiction of the English Courts.  The arbitration contract shall also be subject to English law and jurisdiction." (Joint Fact Statement, ¶ 50.)

63.     The slip for the Sun Life / American Phoenix Specific Agreement classifies the business as "U.S. Reinsurance." (Bell Aff. ¶ 39; Bell Aff. Ex. B tab 13.)

**RESPONSE:**

John Hancock objects to ¶ 63 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 63 is subject to John Hancock's Motion to Strike filed herewith.   Subject to the forgoing objections, John Hancock acknowledges that under "US CLASSIFICATION" the slip for the Sun Life / American Phoenix Specific Agreement states as follows: "(A) Non-regulated. (B) U.S. Reinsurance Treaty."

64.     John Hancock and Sphere Drake are currently engaged in arbitration in England over their disputes concerning the Sun Life / American Phoenix Specific Agreements. (Bell Aff. ¶ 40.)

**RESPONSE:**

John Hancock objects to ¶ 64 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

65.    The territorial scope listed on the slips for the John Hancock CT & PH Whole Account Agreements is "losses wheresoever occurring." (Petitioner's Exhibits 28(a)-31(a).)

**RESPONSE:**

John Hancock objects to ¶ 65 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  Subject to the foregoing objection, John Hancock acknowledges that the territorial scope listed on the slips for the John Hancock CT & PH Whole Account Agreement is "Losses wheresoever occurring."

66.    Notwithstanding its position that the John Hancock CT & PH Whole Account Agreements are void, Sphere Drake has agreed to arbitrate the parties' disputes over the existence and enforceability of the John Hancock CT & PH Whole Account Agreements in a United States forum on the condition that John Hancock accept certain terms as described in Sphere Drake's February 20, 2004 letter to John Hancock's Counsel (the "O'Brien Letter"). (App. Ex. Q, O'Brien Letter.)

**RESPONSE:**

John Hancock objects to ¶ 66 in respect of Sphere Drake's claims that the John Hancock CT & PH Whole Account Agreements are void.  Subject to the foregoing objection, John Hancock acknowledges that Sphere Drake will be arbitrating disputes under the CT & PH Whole Account Agreements in Massachusetts.

67.    The territorial scope listed on the slip for the Specific Bridgefield Agreement includes "worldwide" losses. (Petitioner's Ex. 19(a).)

**RESPONSE:**

John Hancock objects to ¶ 67 on the ground that it is irrelevant/immaterial to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4. Subject to the foregoing objection, John Hancock acknowledges that the under "TERRITORIAL SCOPE" the Specific Bridgefield Agreement provides the following: "[l]osses occurring in the United States of America and incidental worldwide, with risks principally domiciled in the state of Florida (as original)."

68.    Notwithstanding its position that the Specific Bridgefield Agreement is void, Sphere Drake has agreed to arbitrate the parties' disputes over the existence and enforceability of this purported contract in a United States forum on the condition that Hancock accept certain terms as described in the O'Brien letter. (App. Ex. Q, O'Brien Letter.)

**RESPONSE:**

John Hancock objects to ¶ 68 in respect of Sphere Drake's claims that the Specific Bridgefield Agreement is void. Subject to the foregoing objection, John Hancock acknowledges that Sphere Drake will be arbitrating disputes under the Specific Bridgefield Agreement in Massachusetts.

69.    The territorial scope listed on the slips for the American Phoenix/Sun Life Specific Agreements is "worldwide, as original," with the original scope being "losses wheresoever occurring." (Petitioner's Exhibits 20(a)-23(a).)

**RESPONSE:**

John Hancock objects to ¶ 69 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4. In addition, John

Hancock objects to ¶ 69 as ambiguous as there is no reference to original scope in the slips

for the American Phoenix/Sun Life Specific Agreements. Subject to the foregoing

objections, John Hancock acknowledges that the territorial scope listed on the slips for the

American Phoenix/Sun Life Specific Agreements is "[w]orldwide, as original."

70.    Notwithstanding its position that the American Phoenix/Sun Life Specific
Agreements are void, Sphere Drake has agreed to arbitrate the parties' disputes over the
existence and enforceability of these purported contracts in a United States forum on the
condition that Hancock accept certain terms as described in the O'Brien letter. (App. Ex. Q,
O'Brien Letter.)

**RESPONSE:**

John Hancock objects to ¶ 70 in respect of Sphere Drake's claims that the American

Phoenix/Sun Life Specific Agreements are void. Subject to the foregoing objection, John

Hancock acknowledges that Sphere Drake will be arbitrating disputes under the American

Phoenix/Sun Life Specific Agreements in Massachusetts.

71.    Appendix Exhibit R contains true and accurate copies of the slips for each of
the four BE Whole Account Agreements. (App. Ex. R.)

**RESPONSE:**

72.    The slips for the BE Whole Account Agreements provide: "This contract of
reinsurance shall be governed by and construed in accordance with the laws of the state of
Massachusetts, U.S.A. under the jurisdiction of the courts of the State of Massachusetts,
U.S.A. The Arbitration contract shall also be subject to the laws and jurisdiction of the
State of Massachusetts, U.S.A." (*Id*.)

**RESPONSE:**

73.    The territorial scope listed on the slips for the BE Whole Account Contracts
is "losses wheresoever occurring." (*Id*.)

**RESPONSE:**

John Hancock objects to ¶ 73 on the ground that it is irrelevant/immaterial to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  Subject to the

foregoing objection, John Hancock acknowledges that the territorial scope listed on the

slips for the BE Whole Account Contracts is "[l]osses wheresoever occurring."


74.    Notwithstanding its position that the BE Whole Account Contracts are void,
Sphere Drake has agreed to arbitrate the parties' disputes over the existence and
enforceability of these contracts in a United States forum on the condition that Hancock
accept certain terms as described in the O'Brien letter. (App. Ex. Q, O'Brien Letter.)

**RESPONSE:**

John Hancock objects to ¶ 74 in respect of Sphere Drake's claims that the BE

Whole Account Contracts are void.  Subject to the foregoing objection, John Hancock

acknowledges that Sphere Drake will be arbitrating disputes under the BE Whole Account

Contracts in Massachusetts.


75.    Hancock has demanded arbitration in Massachusetts on the Seven
Agreements that contain no choice of law or forum and Sphere Drake has demanded
arbitration in England on these same Seven Agreements. (Bell Aff. Ex B Tab 18, pages 30-
44.)

**RESPONSE:**

John Hancock objects to ¶ 75 on the grounds that the Sphere Drake's statement that

the agreements "contain no choice of law or forum" is ambiguous and irrelevant/immaterial

to this action which is limited to the inquiry of whether under the Seven Agreements there

is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  Subject to the

foregoing objection, John Hancock acknowledges that it has demanded arbitration on the

Seven Agreements in Massachusetts and that Sphere Drake has demanded arbitration on

the Seven Agreements in England.  (Joint Fact Statement, ¶¶ 14, 22, and 27.)

76.    Both parties' arbitration demands with regard to these purported contracts were effective as of January 26, 2004. (*Id.*, Page 58.)

**RESPONSE:**

John Hancock objects to ¶ 76 on the ground that it is irrelevant/immaterial to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

77.    On January 29, 2004, Sphere Drake filed applications in the English Commercial Court to compel Hancock to submit to arbitration over the Seven Agreements in England. (Bell Aff. ¶ 63 and Ex. F.)

**RESPONSE:**

John Hancock objects to ¶ 77 on the ground that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

78.    Sphere Drake's applications to the English Commercial Court seek a determination as to where the arbitration over the Seven Agreements should take place. (Bell Aff. Ex. F.)

**RESPONSE:**

John Hancock objects to ¶ 78 on the ground that it is irrelevant/immaterial to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  Subject to the

foregoing objection, John Hancock acknowledges that Sphere Drake has filed

applications to the Commercial Court in London, England seeking a determination from

the Commercial Court that England is the seat of the arbitration with respect to disputes under the Seven Agreements. Sphere Drake's action before the Commercial Court has been suspended until this Court makes its ruling in this action. (Joint Fact Statement, ¶ 5.)

79. Stirling Cooke is an English entity. (Bell Aff., ¶ 64.)

**RESPONSE:**

John Hancock objects to ¶ 79 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 79 is subject to John Hancock's Motion to Strike filed herewith.

80. Nicholas Brown resides in England. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 80 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 80 is subject to John Hancock's Motion to Strike filed herewith.

81. Jeff Butler resides in England. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 81 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 81 is subject to John Hancock's Motion to Strike filed herewith.

82.    EIU is an English entity. (*Id*.)

**RESPONSE:**

John Hancock objects to ¶ 82 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 82 is subject to John Hancock's Motion to Strike filed herewith.

83.    Chris Henton resides in England. (*Id*.)

**RESPONSE:**

John Hancock objects to ¶ 83 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 83 is subject to John Hancock's Motion to Strike filed herewith.

84.    John Whitcombe resides in England. (*Id*.)

**RESPONSE:**

John Hancock objects to ¶ 84 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 84 is subject to John Hancock's Motion to Strike filed herewith.

85.    JEH Re was Hancock's managing general agent with respect to the five Specific Realm Contracts and the Quota Share Agreement. (Petitioner's Exs. 1(b), 2(b), 3(b), 4(b), 5(b), 6(b).)

**RESPONSE:**

John Hancock objects to ¶ 85 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

86.    JEH Re is a Bermudian entity. (App. Ex. S, Declaration of Reginald Billyard in Support of Motion of Defendants James E. Hackett Reinsurance Corporation, JEH Re Underwriting Management (Bermuda) Limited, and Reginald Billyard to Dismiss the Complaint in Civil Action No. 99 Civ. 2326 ("Billyard Declaration") at ¶ 3.)

**RESPONSE:**

John Hancock objects to ¶ 86 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  Subject to the foregoing objection, John Hancock acknowledges that JEH Re was a Bermudian entity.

87.    Reginald Billyard was the president of JEH Re. (App. Ex. S, Billyard Declaration at ¶ 1.)

**RESPONSE:**

John Hancock objects to ¶ 87 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

88.    Billyard currently resides in England. (App. Ex. T, Companies House Listing.)

**RESPONSE:**

John Hancock objects to ¶ 88 on the ground that it is irrelevant/immaterial to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

89.     All of the contracts involving Sphere Drake and JEH Re were made through a series of London-based brokers (Stirling Cooke) and Sphere Drake's London-based agents (EIU). (App. Ex. U, Supplemental Declaration of Reginald Billyard in Further Support of Motion of Defendants James E. Hackett Reinsurance Corporation, JEH Re Underwriting Management (Bermuda) Limited, and Reginald Billyard to Dismiss the Complaint in Civil Action No. 99 Civ. 2326 ("Supplemental Billyard Declaration"), ¶ 5.)

**RESPONSE:**

John Hancock objects to ¶ 89 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

90.     JEH Re maintains no office, employees or agents in the United States. (App. Ex. S, Billyard Declaration, ¶ 3.)

**RESPONSE:**

John Hancock objects to ¶ 90 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

91.     JEH Re owns no assets or other property (including bank accounts and real property) in the United States. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 91 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

92.     JEH Re never negotiated with a broker located in the United States in connection with any of the contracts involving Sphere Drake and JEH Re. (App. Ex. U, Supplemental Billyard Declaration, ¶ 5.)

**RESPONSE:**

John Hancock objects to ¶ 92 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

93.     Hancock has been represented by English legal counsel with regard to matters arising out of the purported contracts between Sphere Drake and Hancock, including the seven contracts at issue in this litigation, for more than four years.

**RESPONSE:**

John Hancock objects to ¶ 93 on the grounds that it is irrelevant/immaterial to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.

94.     In November of 2001, Hancock agreed to arbitrate a dispute with LDG Re in England "for convenience." (App. Ex. V, November 14, 2001 Letter from Joseph P. Welch.)

**RESPONSE:**

John Hancock objects to ¶ 94 as irrelevant/immaterial to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  In addition, John Hancock objects

to ¶ 94 on the grounds that the letter cited in support of ¶ 94 refers only to the first

adjourned hearing with respect to John Hancock's dispute with LDG Re, and the second

hearing and related applications took place in Bermuda as the parties could no longer

agree to London, and on the ground that ¶ 94 is subject to John Hancock's Motion to

Strike filed herewith.

94. 95.    The arbitration provision in the contract between Hancock and LDG Re
specified that the seat of the arbitration was Bermuda. (*Id.*)

**<u>RESPONSE:</u>**

John Hancock objects to ¶ 95 as irrelevant/immaterial to this action which is

limited to the inquiry of whether under the Seven Agreements there is an agreement to

arbitrate between the parties pursuant to 9 U.S.C. § 4, and on the ground that ¶ 95 is

subject to John Hancock's Motion to Strike filed herewith.

96.    In 2002, Justice Thomas (now Lord Justice Thomas, sitting on the Court of
Appeal and the Senior Presiding Judge for England and Wales) presided over the English
Action during 110 trial days and, in July 2003, issued a lengthy and detailed judgment. (Bell
Aff., ¶¶ 9-10; *see also Sphere Drake Ins. Ltd. v. Euro Int'l Underwriting Ltd.,* Case No. 2000
Folio 249, 2003 WL 21729222 (Q.B. July 8, 2003) (the "Judgment") The English Action was
presided over by Lord Justice Thomas. (English Judgment.)

**<u>RESPONSE:</u>**

John Hancock objects to ¶ 96 on the ground that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground

that ¶ 96 is subject to John Hancock's Motion to Strike filed herewith.

97.    On July 8, 2003, the Commercial Court issued its judgment in the English
Action (the "English Judgment"). (English Judgment.)

**RESPONSE:**

John Hancock objects to ¶ 97 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 97 is subject to John Hancock's Motion to Strike filed herewith.

98.    A copy of the English Judgment was provided to this Court on February 11, 2004.

**RESPONSE:**

John Hancock objects to ¶ 98 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 98 is subject to John Hancock's Motion to Strike filed herewith.

99.    On July 30, 2003, Lord Justice Thomas ordered that

> [n]o order shall be made for the taking of evidence in England and Wales in support of foreign proceedings, to which the Claimants [Sphere Drake] are a party, against any of the following persons, that is to say ... Christopher Henton, John Whitcombe, Jeffrey Butler, [and] Nicholas Brown ... unless it be demonstrated that there are good reasons for taking such evidence notwithstanding the existence of a transcript record of the evidence given by those individuals in these proceedings.

(App. Ex. W, July 30, 2003 Order, ¶ 15.)

**RESPONSE:**

John Hancock objects to ¶ 99 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 99 is subject to John Hancock's Motion to Strike filed herewith.

100.    The issues to be decided by the Commercial Court in London, England pursuant to Sphere Drake's Applications are the same as the issues to be decided by the District Court of Massachusetts pursuant to Hancock's Amended Petition to Compel Arbitration. (*See* John Hancock Life Insurance Company's Verified Amended Petition to Compel Arbitration Proceedings; Bell Aff. ¶ 63 and Ex. F.)

**RESPONSE:**

John Hancock objects to ¶ 100 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 100 is subject to John Hancock's Motion to Strike filed herewith.  In addition, John Hancock objects to ¶ 100 on the ground that the claims before this Court and the Commercial Court in London England are different.  John Hancock has submitted a Petition to Compel Arbitration under Section 4 of the Federal Arbitration Act ("Section 4 Petition") requesting the Court compel arbitration in Massachusetts.  An English court has no authority to hear a Section 4 Petition and cannot compel the parties to arbitrate outside of England.

101.    The parties to the action commenced by Sphere Drake in London, England to determine the seat of the arbitration over the Seven Agreements are the same as the parties to the action commenced by Hancock in the District Court of Massachusetts to determine the seat of the arbitration over the Seven Agreements. (*See* John Hancock Life Insurance Company's Verified Amended Petition to Compel Arbitration Proceedings; Bell Aff. ¶ 63 and Ex. F.)

**RESPONSE:**

John Hancock objects to ¶ 101 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and on the ground that ¶ 101 is subject to John Hancock's Motion to Strike filed herewith.

John Hancock also objects to ¶ 101 on the ground that it mischaracterizes the action before this court which is a Section 4 Petition requesting that arbitration be compelled in Massachusetts, not an action to determine the seat of arbitration over the Seven Agreements.

102.    Pursuant to the Arbitration Act 1996, where the parties to an arbitration agreement have not designated the seat of the arbitration, the English Commercial Court has the power to determine the seat of the arbitration having regard to the parties' agreement and all the relevant circumstances. (Supplemental Affidavit of Raymond Gordon Bell ("Supp. Bell Aff.") at 15, and Arbitration Act 1996 (attached thereto) at § 3.)

**RESPONSE:**

John Hancock objects to ¶ 102 on the grounds that it is constituted of legal conclusions and argument, is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and is subject to John Hancock's Motion to Strike filed herewith.

103.    The Arbitration Act 1996 provides that an English arbitral tribunal will be required to act fairly and impartially as between the parties, giving each party a reasonable opportunity of putting his case and dealing with that of his opponent, and to adopt procedures suitable to the circumstances of the particular case, avoiding unnecessary delay or expense, so as to provide a fair means for the resolution of the matters falling to be determined. (Supp. Bell Aff. at ¶ 7 and Arbitration Act 1996 (attached thereto) at § 33.)

**RESPONSE:**

John Hancock objects to ¶ 103 on the grounds that it is constituted of legal conclusions and argument, is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and is subject to John Hancock's Motion to Strike filed herewith.

104.    The Arbitration Act 1996 provides for several enumerated grounds for challenging an arbitral award, which grounds are categorized as follows: (1) challenges based on lack of substantive jurisdiction by the tribunal; (2) challenges based on a serious irregularity affecting the tribunal, the proceedings or the award; and (3) appeal based on a question of law. (Supp. Bell Aff., ¶ 9 and Arbitration Act 1996 (attached thereto) at §§ 67-69.)

**RESPONSE:**

John Hancock objects to ¶ 104 on the grounds that it is constituted of legal conclusions and argument, is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and is subject to John Hancock's Motion to Strike filed herewith.

105.    In most arbitration clauses in reinsurance contracts that have been placed by London brokers, the seat of arbitration is London and the applicable law is the law of England. (Affidavit of James H. Hunt filed contemporaneously herewith ("Hunt Aff."), ¶ 11.)

**RESPONSE:**

John Hancock objects to ¶ 105 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

106.    The London market is perceived as the center of reinsurance excellence where the world's insurers come to place their reinsurances. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 106 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment;

Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for

Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion

for Summary Judgment.)


107.    The London market is perceived as the international center of arbitration for
the resolution of disputes throughout the world. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 107 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment;

Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for

Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion

for Summary Judgment.)


108.    London is often the chosen forum for reinsurance disputes and English law
the chosen law for reinsurance contracts involving parties domiciled in different countries.
(*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 108 on the grounds that it is immaterial/irrelevant to

this action which is limited to the inquiry of whether under the Seven Agreements

there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

109.    Towards the end of the 1980s some of the London company market leaders recognized the sense in having a standard arbitration clause and rules for conducting arbitrations that were tailored specifically to the needs of the insurance and reinsurance industry. (*Id.*, ¶ 13.)

**RESPONSE:**

John Hancock objects to ¶ 109 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

110.    In 1991 ARIAS (UK) ("A.I.D.A. Reinsurance and Insurance Arbitration Society (UK), being a UK-based Chapter of AIDA (Association Internationale de Droit des Assurances)") was formed by a group of underwriters and brokers together with solicitors and barristers specializing in insurance and reinsurance disputes. ARIAS (UK) set about drafting arbitration rules specifically geared to the needs of the insurance and reinsurance industry for world-wide use by the parties to any insurance or reinsurance dispute. The ARIAS Arbitration Rules were introduced in 1994 and revised in 1997 following the coming into force of the English Arbitration Act 1996. (Id., ¶ 14 and Exhibit 2 thereto.)

**RESPONSE:**

John Hancock objects to ¶ 110 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment;

Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for

Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion

for Summary Judgment.)

111.    In the ARIAS Arbitration Clause the seat of arbitration and the proper law
of the contract can be agreed by the parties at the time of negotiating the contract or at the
contract wording drafting stage, but in default of a specific choice the seat of arbitration is
always London. Unless the parties have chosen a particular law it is for the arbitrators to
decide which law applies to the contractual obligations of the parties. (*Id.*, ¶ 16 and Exhibit
2 thereto.)

**RESPONSE:**

John Hancock objects to ¶ 111 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment;

Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for

Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion

for Summary Judgment.)

112.    The London Marine market's Joint Excess Loss Committee ("JELC")
adopted a set of standard clauses in 1997 which together comprise the standard excess of
loss reinsurance contract for use in that market. Clause 15 deals with Arbitration. The
clause opens "15.1 The parties agree that prior to recourse to courts of law any dispute
between them concerning the provisions of this contract shall first be the subject of
arbitration." (*Id.*, ¶ 18 and Exhibit 3 thereto.)

**RESPONSE:**

John Hancock objects to ¶ 112 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment;

Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for

Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion

for Summary Judgment.)

113.    Unless otherwise agreed by the parties at the time of negotiating the contract
or at the contract wording drafting stage and specified as such in the contract schedule, the
JELC clause provides at ¶15.9 that the seat of arbitration shall be in London and the
arbitrators shall apply English law as the proper law of the contract. (*Id*., ¶ 19 and Exhibit
3 thereto.)

**RESPONSE:**

John Hancock objects to ¶ 113 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment;

Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for

Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion

for Summary Judgment.)

114.    Another example of a standard arbitration clause is the London Personal
Accident excess of loss reinsurance market ("LMX PA market") which in 1992 adopted a
standard contract wording known as "LMX P.A.1. – 1992" (also known as
"LSW148A(1/92)." (*Id*., ¶ 21.)

**RESPONSE:**

John Hancock objects to ¶ 114 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment;

Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for

Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion

for Summary Judgment.)

115.    A copy of the first page of LMX P.A.1. - 1992 is attached to the Hunt Affidavit as Exhibit 4, together with a copy of Article 21 of that wording.

**RESPONSE:**

John Hancock objects to ¶ 115 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment;

Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for

Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion

for Summary Judgment.)

116.    At Article 21 of that wording is the Arbitration Clause. It opens "This Article shall form a separate Agreement between the Reinsured hereon and the Reinsurers hereunder from the main Agreement ... All matters in difference between the Reinsured and the Reinsurers ... in relation to the main Agreement, including its formation and validity, and whether arising during or after the period of the main Agreement, shall be referred to an Arbitration Tribunal in the manner hereinafter set out." *(1d, ¶ 23* and Exhibit 4 thereto.)

**RESPONSE:**

John Hancock objects to ¶ 116 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment;

Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for

Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion

for Summary Judgment.)

117.    In the penultimate paragraph of the LMX P.A. 1. - 1992 wording, Article 21
provides that "[T]he seat of the Arbitration shall be in London and the Arbitration Tribunal
shall apply the laws of England as the proper law of the main Agreement." (*Id.*, ¶ 24 and
Exhibit 4 thereto.)

**RESPONSE:**

John Hancock objects to ¶ 117 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4.  (*See* Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment;

Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for

Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion

for Summary Judgment.)

118.    The inclusion of a service of suit clause in a reinsurance agreement that also
includes an arbitration clause is a mechanism whereby each reinsurer agrees to submit to
the jurisdiction of a U.S. court of competent jurisdiction in the event of their failure to pay
an arbitration award. (*Id.* ¶ 30.)

**RESPONSE:**

John Hancock acknowledges that a service of suit clause in a reinsurance

agreement that also includes an arbitration clause permits the reinsured to apply to a U.S.

Court to enforce an arbitration award and equally allows the reinsured to apply to a U.S.

Court to compel arbitration.  (*See* Affidavit of Malcolm J. Beacham in Support of John

Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J.

Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of

Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

119.    The inclusion of a service of suit clause in a reinsurance agreement which includes an arbitration clause does not provide an alternative to arbitration or replace or revise any of the terms of the arbitration clause, nor does it provide an alternative to or vary the choice of law or seat of arbitration specified in the arbitration clause or as may be specified elsewhere within the reinsurance contract. (*Id*., ¶ 31.)

**RESPONSE:**

John Hancock objects to ¶ 119 on the ground that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶ 119 to the extent it states conclusions of law.  (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

120.    Where a reinsurance contract or the arbitration clause within such a contract specifies that the contract is governed by the law of a particular country other than U.S. law, the mere inclusion of a service of suit clause does not amend the contract so that it is governed by U.S. law or any other law. (*Id*., ¶ 32.)

**RESPONSE:**

John Hancock objects to ¶ 120 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶ 120 to the extent it states conclusions of law.  (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

121.    Where a reinsurance contract is governed by English law as a default in the absence of the parties' specifying their choice of law, the mere inclusion of a service of suit clause does not amend the contract so that it is governed by U.S. law or any other law. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 121 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶ 121 to the extent it states conclusions of law.  (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

122.    Where an arbitration clause specifies that the seat of arbitration shall be in a particular city outside the U.S. or in a country other than the U.S., the mere inclusion of a service of suit clause does not amend the arbitration clause so that the seat of arbitration is moved to the U.S. (*Id.*, ¶ 33.)

**RESPONSE:**

John Hancock objects to ¶ 122 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶ 122 to the extent it states conclusions of law.  (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

123.    Where an arbitration clause fails to specify the seat of the arbitration such that London, England is the default seat of the arbitration, the mere inclusion of a service of suit clause does not amend the arbitration clause so that the seat of arbitration is moved to the U.S. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 123 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶ 123 to the extent it states conclusions of law. (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

124.    A service of suit clause is not the equivalent of a choice of law clause. (*Id.*, ¶ 34.)

**RESPONSE:**

John Hancock objects to ¶ 124 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶ 124 to the extent it states conclusions of law. (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

125.    A service of suit clause is not the equivalent of a forum selection clause. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 125 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶ 125 to the extent it states conclusions of law.  (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

126.    The inclusion of a service of suit clause does not provide a U.S. cedent with the option of pursuing litigation over arbitration. (*Id.*, ¶ 38.)

**RESPONSE:**

John Hancock objects to ¶ 126 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶ 126 to the extent it states conclusions of law.  (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

127.    The inclusion of a service of suit clause does not provide a U.S. cedent with the ability to change the seat of arbitration or change the law of the contract from that specified in the arbitration clause. (*Id.*)

**RESPONSE:**

John Hancock objects to ¶ 127 on the grounds that it is immaterial/irrelevant to this action which is limited to the inquiry of whether under the Seven Agreements there is an agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶ 127 to the extent it states conclusions of law.  (*See* Affidavit of Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and

Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

128.    Because the slips for the Seven Agreements do not contain choice of law or forum selection clauses, the seat of arbitration is London and the law governing the Seven Agreements is English law. (*Id*., ¶ 45.)

**RESPONSE:**

John Hancock objects to ¶ 128 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶

128 to the extent it states conclusions of law.  (*See* Affidavit of Malcolm J. Beacham in

Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and

Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.)

129.    There is nothing in the wording of the service of suit clause quoted by Hancock at pages 4-5 of the Memorandum in Support of John Hancock Life Insurance Company's Motion for Summary Judgment that prevents or bars the transfer of this case to a court outside the U.S. (*Id*., ¶ 47.)

**RESPONSE:**

John Hancock objects to ¶ 129 on the grounds that it is immaterial/irrelevant to this

action which is limited to the inquiry of whether under the Seven Agreements there is an

agreement to arbitrate between the parties pursuant to 9 U.S.C. § 4 and also objects to ¶

129 to the extent it states conclusions of law.  (*See* Affidavit of Malcolm J. Beacham in

Support of John Hancock's Motion for Summary Judgment; Supplemental Affidavit of

Malcolm J. Beacham in Support of John Hancock's Motion for Summary Judgment; and

Affidavit of Keith Tunstall in Support of John Hancock's Motion for Summary Judgment.

Respectfully submitted,

JOHN HANCOCK LIFE INSURANCE
COMPANY
By its attorneys,


 _/s/Rhonda L. Rittenberg_____
Mitchell S. King, Esq. BBO#272810
Rhonda L. Rittenberg, Esq. BBO# 550498
Michael A. Calawa, Esq. BBO# 643517
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Of Counsel
David A. Silva, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Attorneys for
John Hancock Life Insurance Company

Dated: June 4, 2004